No. 23-3332

IN THE

# United States Court of Appeals
### FOR THE SIXTH CIRCUIT

APOGEE COAL COMPANY, *et al.*,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR, *et al.*,

*Respondents.*

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

## JOINT APPENDIX

Mark E. Solomons, Esq.
Dominic E. Draye, Esq.
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2361
(202)331-3168
solomonsm@gtlaw.com
drayed@gtlaw.com
Counsel for Arch Resources

Jeffrey S. Goldberg, Esq.
Office of the Solicitor

U.S. Department of Labor
Suite N-2117
200 Constitution Avenue, N.W.
Washington, D.C.  20210
(202) -693-5650
Goldberg.jeffrey@dol.gov
Counsel for the Director, OWCP, Department of Labor

Brad Austin, Esq.
Wolfe, Williams & Reynolds
baustin@wwrlawfirm.com
Counsel for David Howard

# TABLE OF CONTENTS

**ITEM**                                                                 **PAGE NO.**

Arch's Motion for Abeyance and Bifurcation dated August 9, 2017          J.A. 1

Arch's Motion to Extend Discovery Deadlines dated August 9, 2017         J.A. 8

Order Denying Abeyance, Bifurcation and Discovery Deadlines              J.A. 13
dated August 17, 2017

BRB Order Dismissing Appeal dated September 15, 2017                     J.A. 22

BRB Order Denying Reconsideration dated April 30, 2018                   J.A. 26

Arch's Request for Subpoenas dated April 29, 2019                        J.A. 28

Arch's Written Discovery regarding Coverage and APA violations           J.A. 39
Served upon DOL dated April 29, 2019

Order denying Arch's Request for Subpoenas dated May 28, 2019            J.A. 49
and June 17, 2019

DOL's Responses to Arch's Discovery regarding coverage and APA           J.A. 61
violations dated July 3, 2019

Arch's Closing Brief before the ALJ dated December 20, 2019             J.A. 78

ALJ Decision and Order Awarding Benefits dated February 25,             J.A. 109
2020

Arch's Notice of Appeal to the BRB dated March 20, 2020                 J.A. 144

Arch's Petition for Review to the BRB dated August 10, 2020             J.A. 147

Director's Response Brief to the BRB dated November 30, 2020            J.A. 191

Arch's Reply Brief to BRB on coverage issues dated February 8,          J.A. 218
2021

BRB Decision and Order affirming Award dated October 18, 2022    J.A. 235

Arch's Motion for Reconsideration *En Banc* dated November 17, 2022    J.A. 258

Director's Opposition to Motion for Reconsideration dated November 28, 2022    J.A. 267

Arch's Reply in further support of Motion for Reconsideration dated December 19, 2022    J.A. 272

BRB Order Denying Motion for Reconsideration dated February 17, 2023    J.A. 279

Arch's Petition for Review of Orders to the 6th Circuit dated April 18, 2023    J.A. 282

Notice of Claim to Patriot Coal dated December 9, 2014 (Dx. 21)    J.A. 284

Schedule for Submission of Evidence to Patriot Coal dated August 25, 2015 (Dx. 26)    J.A. 293

Notice of Claim to Arch Coal dated December 8, 2015 (Dx. 22)    J.A. 319

Schedule for Submission of Evidence to Arch Coal dated March 17, 2016 (Dx. 27)    J.A. 329

Arch's CM-2970(a) dated April 11, 2016    J.A. 349

Preliminary Decision and Order dated September 26, 2016    J.A. 350

ALJ Order dated July 10, 2019    J.A. 365

**Official Case Record Forwarded to the Board Electronically**

Administrative Law Judge Materials

Transcript of Hearing held on March 27, 2019

Claimant's Exhibits 1 through 3

Employer's Exhibits 1 through 7, 19 and 22

Director's Exhibits 1 through 43

ALJ Decision and Order Awarding Benefits
dated February 25, 2020

**UNITED STATES DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**
Cherry Hill, New Jersey

| | |
|---|---|
| DAVID M. HOWARD, )<br><br>Claimant, )<br><br>v. )<br><br>APOGEE COAL CO., LLC, *et al.*, )<br><br>Employer-Carrier, )<br><br>and )<br><br>DIRECTOR, OFFICE OF WORKERS'<br>COMPENSATION PROGRAMS, )<br><br>Party-In-Interest. ) | Case No. 2017-BLA-05163<br><br>OWCP No. xxx-xx-6902<br><br>Hon. Scott Morris |

## ARCH'S MOTION FOR ABEYANCE OR BIFURCATION

Pursuant to 29 C.F.R. §§ 18.33, 18.43(b), Arch Coal, Inc. respectfully requests that the ALJ hold these proceedings in abeyance because the D.C. Circuit is considering the question whether the ALJ or the federal district court has jurisdiction to decide Arch Coal's liability for black lung claims initially brought against Patriot Coal ("Patriot"). See *Arch Coal, Inc. v. Acosta.*, No. 17-5074 (docketed April 17, 2017, D.C. Circuit). In the alternative, Arch Coal requests that the ALJ bifurcate the proceedings and only address the merits of Mr. Howard's entitlement. Arch Coal states the following in support of this motion for abeyance or bifurcation.

1.    This case presents a claim for federal black lung benefits filed by David Howard on November 19, 2014. Dx. 2, Dx. 44-2. DOL concluded that Mr. Howard last worked for one year at Apogee Coal. Dx. 26, Dx. 27, Dx. 44. DOL initially provided notice of the claim to Patriot Coal ("Patriot") because Patriot had acquired the stock including all assets and liabilities of Apogee Coal. Dx. 21. There is no dispute that the Department of Labor authorized Patriot to self-insure

all outstanding Apogee Coal claims including this claim and that Patriot posted security to guarantee this and all other Apogee Coal claims in an amount required and approved by the Department following self-insuring procedures in force since the beginning of the employer-financed Part C program. There also is no dispute that DOL repudiated its long-standing regulations and practices for the first time after Patriot filed for bankruptcy. DOL named Arch Coal which at one time owned the stock of Apogee Coal for reasons that are unknown to Arch Coal. DOL did not inform the bankruptcy court or Arch Coal of its intent, thus depriving Arch Coal of the right to make a claim in the course of the Patriot bankruptcy or to protect itself in any way from an unauthorized and unfair decision to ignore the rules of self-insurance. Nothing in the record shows that DOL exhausted Patriot's security for its self-insurance program. There was no attempt to seek recovery from a remote stockholder that had legally transferred its interest to others. Moreover, nothing in the record shows why DOL changed its policy and acted contrary to its regulations. Previously, when a self-insured approved by DOL was no longer able to pay benefits, the Trust Fund assumed liability. *See* 20 C.F.R. § 725.495(a)(4); 65 Fed. Reg. 79920, 80008 (Dec. 20, 2000). DOL named Arch Coal based on Bulletin No. 16-01. Unlike DOL's regulations, the Bulletin did not go through notice and comment rulemaking and from all appearances seems to reflect illegal, retroactive rulemaking by the Department.

2.      While this case and others involving Arch Coal were pending before the agency, Arch Coal challenged DOL's decision to pursue Arch Coal for Patriot's liability in federal district court. *See Arch Coal v. Perez*, Case No. 16-0669. DOL argued that the federal district court had no jurisdiction over the matter and that ALJs needed to address the liability issue in every case where DOL has now named Arch Coal. Arch Coal argued that the federal district court needed to address the liability issue in the first instance because Arch Coal could not

effectively and efficiently litigate the issue in every claim for entitlement and because ALJs have no proper jurisdiction to invalidate regulatory action by DOL.[1] The district court ultimately found that it had no jurisdiction. *See* Order dated March 16, 2017. Arch Coal appealed from that ruling, and that matter is now pending before the D.C. Circuit. *Arch Coal v. Acosta*, Case No. 17-5074 (D.C. Cir.).

3. Given that the D.C. Circuit is addressing which tribunal has jurisdiction to resolve the liability issue, the ALJ must either hold these proceedings in abeyance or bifurcate the proceedings so as to only address the merits of this claim. *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976); *Landis v. North Am. Co.*, 299 U.S. 248 254-55 (1936); *Beydoun v. Holder*, 2015 U.S. Dist. LEXIS 17795 (E.D. Mic. 2015). All the factors that the ALJ should consider when deciding whether to hold a case in abeyance—(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party[2]—weigh in favor of granting abeyance here.

4. The resolution of *Acosta* will directly impact the resolution of this case. If the D.C. Circuit agrees with Arch Coal and finds that federal district court has jurisdiction over the liability issue, this ALJ cannot address whether Arch Coal is a proper party and the case would necessarily need to be bifurcated. When a higher court is specifically addressing an issue that is before a lower court that will affect resolution of the matter, abeyance is warranted. *Bechtel Corp.* 544 F.2d at 1215; *U.S. ex. rel. FLFMC, LLC v. William Bounds, LTD.*, 2010 WL 2990725 (W.D. Pa. July 28, 2010) (staying a qui tam action pending resolution of the same

---

[1]    There are now upwards of 200 cases in which DOL has named Arch Coal rather than Patriot.

[2]    *See Meyers v. Bayer AG,* 143 F. Supp. 2d 1044, 1047 (E.D. Wis. 2001).

issue in a different case by the Court of Appeals for the Federal Circuit); *Homa v. American Express Co.*, 2010 WL 4116481 (D.N.J. Oct. 18, 2010) (holding a case in abeyance pending resolution of the same issue in a different case by the Supreme Court).

5.      Holding the matter in abeyance will not prejudice Mr. Howard.  DOL has already awarded benefits to Mr. Howard and the Trust Fund is paying those benefits and will continue to do so as long as an award is in place.  Dx. 46, Dx. 47. Further, Arch Coal is not asking the ALJ to hold the claim in abeyance indefinitely.  Arch Coal is asking the ALJ to hold the claim in abeyance pending the resolution of *Acosta*.  In sum, holding this case in abeyance does not deny Mr. Howard any benefits or unduly delay his claim in a manner contrary to the BLBA.

6.      However, denial of abeyance or bifurcation prejudices Arch Coal. Arch Coal is entitled to develop evidence concerning its liability, whether DOL improperly exonerated Patriot's self-insurance program from liability and whether DOL's policy change in assessing liability in cases of bankrupt self-insureds is proper.[3]  Arch Coal specifically told the federal district court that it needed to conduct both written discovery and to obtain testimony from DOL witnesses on these issues.  *See* Hearing Tr. at 32, 38, 59; *Arch Coal v. Perez*, Case No. 16-0669. DOL also asserted that Arch Coal could make its case fairly and effectively on these issues before the ALJs.  *Id.* at 7.  If the Director is correct and this ALJ has jurisdiction over whether Arch Coal is properly named, Arch Coal is entitled to discovery from DOL in this proceeding.  If Arch Coal cannot pursue such discovery in district court, it must be permitted to conduct the same discovery and make its case before this ALJ.  There is no reason for Arch Coal to conduct this

---

[3]      Here, the evidence which Arch Coal seeks to develop and submit does not address the liability of Apogee Coal, *i.e.,* whether Apogee Coal is the proper responsible operator.  The evidence sought involves an issue of coverage.

discovery in this case before the ALJ given that it is still unclear whether the issue is properly before the district court or the ALJ. Holding the matter in abeyance will protect Arch Coal's right to develop evidence concerning its liability without causing any prejudice to Mr. Howard or DOL.

7.    If abeyance is not warranted, this ALJ has the discretion pursuant to 29 C.F.R. § 18.43(b) to bifurcate the proceedings "[f]or convenience, to avoid prejudice or to expedite and economize." *See Kosters v. Seven-Up Co.*, 595 F.2d 347 (6th Cir. 1979). Bifurcation is proper here in order to avoid prejudice to the parties and to expedite and economize the proceedings. As indicated above, there is no prejudice to either DOL or Mr. Howard. Mr. Howard is receiving benefits from the Trust Fund. Arch Coal has been defending this claim on the merits pursuant to a reservation of rights and could continue to do so while the jurisdictional challenge is decided by the D.C. Circuit. Bifurcation will also avoid confusion and will be in the interests of judicial economy. If the D.C. Circuit holds that the district court has jurisdiction over the liability issue, such a ruling would effectively require the ALJ to at least bifurcate proceedings because he will not be able to address the liability issue. Furthermore, any discovery on Arch's liability before the ALJ would have to stop and restart in the district court.[4]

---

[4]    Out of an abundance of caution, Arch Coal also has filed a Motion to Extend Deadlines for Evidentiary Development on the Liability Issue. In that motion, Arch Coal requests at least 120 days from the date of any decision denying abeyance or bifurcation to conduct discovery on its liability for claims initially brought against Patriot.

For the reasons set forth above, Arch Coal respectfully requests that the ALJ hold this case in abeyance or bifurcate the proceedings so as to only address Mr. Howard's entitlement and not the issue of Arch Coal's liability.

Respectfully requested,

Patricia C. Karppi, Esq.
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C.  20037
(202) 530-8519/fax (202) 261-0170
karppip@gtlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2017, the undersigned served Arch Coal's Motion for Abeyance or Bifurcation by regular mail, postage prepaid to:

Robin Napier, Lay Representative for David M. Howard
Stone Mountain Health Services
P.O. Drawer S
St. Charles, VA 24282-0269

Matt Shepherd Esq.
U.S. Department of Labor
Office of the Regional Solicitor
618 Church Street, Suite 230
Nashville, Tennessee 37219

*Patricia C Karppi*

_____
Patricia C. Karppi

|  |  |  |
|---|---|---|
| DAVID M. HOWARD, | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | Case No.    2017-BLA-05163 |
| | ) | |
| APOGEE COAL CO., LLC, *et al.,* | ) | OWCP No. xxx-xx-6902 |
| Employer-Carrier, | ) | Hon.  Scott Morris |
| | ) | |
| and | ) | |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, | ) | |
| Party-In-Interest. | ) | |

## ARCH COAL'S MOTION TO EXTEND DEADLINE
## FOR EVIDENTIARY DEVELOPMENT ON LIABILITY ISSUE

Pursuant to 29 C.F.R. § 18.33 and 20 C.F.R. § 725.456(b), Arch Coal, Inc., respectfully requests that the ALJ extend the deadline for it to submit evidence addressing whether Arch Coal is a proper party if the ALJ does not hold this claim in abeyance or bifurcate this proceeding.  Arch Coal requests an additional 120 days after the ALJ's ruling for Arch Coal to develop and submit such proof.  Arch Coal states the following good cause for this request.

1.     This case presents a claim for federal black lung benefits filed by David Howard on November 19, 2014.  Dx. 2, Dx. 44-2.   DOL awarded benefits and Arch Coal timely requested a hearing.  Dx. 44, Dx. 45.   The case then proceeded to the Office of Administrative Law Judges and is now set for a hearing on October 31, 2017.  Dx. 49; Order dated May 23, 2017.  The hearing order and regulations provide that all evidence must be developed and presented to the other parties by October 11, 2017, twenty days before the hearing.  Order at 7, *citing* 20 C.F.R. § 725.456(b)(2).

2.     If the ALJ denies Arch Coal's motion for abeyance or bifurcation, Arch Coal needs to develop the record before this ALJ on whether Arch Coal is liable for this claim.  Specifically, Arch Coal will need to obtain discovery from DOL (both former and current employees) on whether:  (1) DOL retroactively violated the rulemaking provisions of the Administrative Procedure Act and the BLBA in changing previously applied liability regulations without engaging in APA-mandated rulemaking; (2) whether in naming Arch Coal as a responsible party DOL was authorized by the BLBA to pierce the corporate veil and reach back to impose liability on a company that never directly employed the miner but had engaged in valid transactions in which a buyer of the miner's employing company fully assumed any and all liability for the miner's claim; and (3) whether DOL was obligated and limited in seeking recovery for any liability that attached to this claim to the assets of Patriot Coal's self-insurance program which DOL approved for the payment of this claim.  If this case is not held in abeyance or bifurcated, and if the D.C. Circuit decides that ALJs have jurisdiction over this dispute, Arch Coal must make its record here.

3.     Arch Coal will not be able to meet the deadline for presenting evidence on this issue by October 11, 2017, or by the hearing date through no fault of its own.  Arch Coal had no reason to develop evidence concerning its liability when this matter was before DOL and still has no reason to do so.  As noted in its other motion, Arch Coal contested the jurisdiction of the ALJ to decide its liability in federal district court.  Whether this ALJ has jurisdiction over the issue is still being litigated before the D.C. Circuit.  *Arch Coal v. Acosta*, Case No. 17-5074 (D.C. Cir.).    If the D.C. Circuit determines that federal district court has jurisdiction over the issue, all evidence regarding the issue must be developed in federal district court.  Only if the D.C. Circuit finds that federal district court does not have jurisdiction will it be appropriate for discovery on the liability issue to

take place before this ALJ. The D.C. Circuit will not likely resolve this issue before the deadline for exchanging evidence, *i.e.*, October 11, 2017, or the hearing scheduled for October 31, 2017. This is why Arch Coal has requested abeyance or bifurcation of these proceedings.

4.     Even if the ALJ denies abeyance or bifurcation in short order, Arch Coal will not have sufficient time to develop the record on the liability issue by the evidence deadline or hearing date. Arch Coal will need at least four months from the ALJ's order denying abeyance and bifurcation to obtain discovery and testimony from DOL on why DOL has not sought to impose potential liability for this claim on Patriot Coal's self-insurance program and on DOL's policy change regarding the allocation of liability in cases of bankrupt self-insureds. The length of time needed also will depend on DOL's level of co-operation with discovery.

5.     There is no reason for precluding Arch Coal from obtaining discovery from DOL on these issues. Arch Coal specifically stated to the federal district court that it would need such discovery from DOL witnesses and DOL asserted that Arch Coal could make its case effectively and efficiently on the issue before the ALJs. Hearing Tr. at 7, 32, 38, 59; *Arch Coal v. Perez*, Case No. 16-0669. Here, the evidence that Arch Coal seeks to develop and submit does not address the liability of Apogee Coal, *i.e.*, whether Apogee Coal is the proper responsible operator. Rather, the evidence Arch Coal seeks to develop and submit addresses whether DOL violated the APA, the BLBA and the self-insurance agreements entered into between DOL and Patriot Coal. It involves an issue of coverage that Arch Coal did not develop earlier because of the federal litigation over the issue. Arch Coal continues to believe that federal district court is the proper venue for litigating the issues raised here but has no choice but to try to protect its right to litigate the issues here, if necessary.

For the reasons provided above, if the ALJ denies abeyance and bifurcation, he should provide Arch Coal with 120 days from his order denying that relief for Arch Coal obtain discovery from DOL on the coverage and liability issues raised by this case.

Respectfully submitted,

Patricia C. Karppi, Esq.
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C.  20037
(202) 331-3100/fax (202) 261-0170
karppip@gtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2017, the undersigned served Arch Coal's Motion to Extend Deadline for Evidentiary Development on Liability Issue on the following parties by first-class mail, postage prepaid:

> Robin Napier, Lay Representative
> Stone Mountain Health Services
> P.O. Drawer S
> St. Charles, Virginia 24282-0269
>
> Matt Shepherd, Esq.
> U.S. Department of Labor
> Office of the Regional Solicitor
> 618 Church Street, Suite 230
> Nashville, Tennessee 37219

_Patricia C Karppi_
Patricia C. Karppi

**U.S. Department of Labor**     Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

(856) 486-3800
(856) 486-3806 (FAX)



**Issue Date: 17 August 2017**

Case No.:     2017-BLA-05163

In the Matter of:

**DAVID M. HOWARD**
          Claimant

     v.

**APOGEE COAL COMPANY**
          Employer

     and

**BRICKSTREET MUTUAL INSURANCE**
          Carrier

     and

**DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS**
          Party-in-Interest

<u>**ORDER DENYING EMPLOYER'S MOTION FOR ABEYANCE OR TO BIFURCATE
PROCEEDINGS; DENYING EMPLOYER'S MOTION TO EXTEND DEADLINE FOR
EVIDENTIARY DEVELOPMENT ON LIABILITY ISSUE; AND GRANTING
DIRECTOR'S MOTION FOR PROTECTIVE ORDER**</u>

          This matter arises from a claim for benefits under the Black Lung Benefits Act, 30 U.S.C.
§§ 901-945 (the "Act") and the regulations issued thereunder, which are found in Title 20 of the
Code of Federal Regulations.[1]     Regulations referred to herein are contained in that Title.

---

[1] The regulations cited are the amended regulations that became effective on January 19, 2001. 20
C.F.R. § 718, *et seq.* The regulations were amended, effective October 25, 2013, in order to implement
the amendments to the Act made by the Patient Protection and Affordable Care Act ("PPACA").

Benefits under the Act are awarded to coal miners who are totally disabled within the meaning of the Act due to pneumoconiosis, or to the survivors of coal miners whose death was due to pneumoconiosis. Pneumoconiosis, commonly known as "black lung," is a disease of the lungs resulting from coal dust inhalation.

### Procedural History

On December 7, 2016, District Chief Administrative Law Judge Odegard issued a Notice of Docketing in this matter informing the parties, among other matters, to begin discovery. The matter was subsequently assigned to this Tribunal.

On May 23, 2017, this Tribunal issued a Notice of Hearing and Pre-hearing Order setting the hearing in this matter for October 31, 2017 in Middlesboro, Kentucky. This pre-hearing order again referenced the conduct of discovery as well as disclosure of whether Employer believes it is improperly identified as the responsible operator. The Tribunal also specifically referenced the 20-day requirement to identify and present evidence to the opposing party as set forth in 20 C.F.R. § 725.456.

On June 13, 2017, Employer served the District Director with a Notice of Rule 30(b)(6) Deposition to DOL seeking information pertaining to various medical issues addressed in the Black Lung Regulations Preamble.

On June 20, 2017, the Director submitted a Motion for Protective Order seeking protection from the noticed deposition about the preamble to the regulations. The Director asserts that the deposition sought cannot lead to discovery of relevant evidence, the granting of such a request violates 5 U.S.C. § 554(d) and 5 C.F.R. § 2635.805 and is barred by the deliberative process privilege, and Employer is collaterally estopped from disputing the medical conclusions set forth in the preamble.

On July 7, 2017, Employer filed its Opposition to the Solicitor's Motion for a Protective Order. Employer asserts that the information requested is relevant, not precluded by the regulatory litigation, not protected by the deliberative process privilege, and raises no ethical concerns.

On August 9, 2017, Employer filed a Motion for Abeyance or Bifurcation and Motion to Extend Deadline for Evidentiary Development on Liability Issue. Employer argues that holding the matter in abeyance would not prejudice Claimant. Instead, Employer argues that forcing the parties to proceed in this case without waiting for direction from the D.C. Circuit would prejudice Employer and complicate these proceedings. As for the Motion to Extend Deadline for Evidentiary Development on Liability Issue, Employer requested a 120-day continuance for Employer to conduct discovery from the Department of Labor ("the Department" or "DOL") on the coverage and liability issues in this matter.

---

Regulations Implementing the Byrd Amendments, 78 Fed. Reg. 59102 (Sept. 25, 2013). The newly revised regulations, as published in the Federal Register, will be applied herein.

### Abeyance or Bifurcation

Whether abeyance and bifurcation should occur in a given case is within the discretion of an administrative law judge. *See* 20 C.F.R. 725.454(d); *see also* 29 C.F.R. § 18.41(b)(1). The party making a request to do either should at least show good cause for the requested action. This Tribunal recognizes that bifurcated proceedings should be avoided if possible. *See Kincell v. Consolidation Coal Co.,* 9 BLR 1-221 (Dec. 29, 1986). At a minimum, the Tribunal should balance the harm to each party when considering such requests. Further, one of the purposes of the Act is to obtain speedy resolution of claims. Therefore, from the very outset, a delay in adjudicating the claim should be disfavored.

Claimant filed his claim in November 2014. DX 2. The District Director issued a Proposed Decision and Order, dated September 26, 2016, awarding benefits and identified Employer as the designated responsible operator. DX 44. Employer requested a hearing. DX 45. Claimant apparently worked for various coal mine operators from 1977 to 1996. DX 3- DX 8. The District Director found Claimant had 17 years of qualifying coal mine employment. DX 44. Thus, it appears that the Claimant is eligible to have the benefit of the presumption in 20 C.F.R. § 718.305. Because the District Director awarded benefits, Claimant is currently receiving benefits and, assuming a reversal on appeal, he would be placed in an overpayment status. Therefore, Claimant would suffer harm by the delay in adjudicating this matter, for it would extend the amount of money due plus interest in the case of reversal.

Employer references a pending appeal in the District of Columbia Circuit as the basis for the requested action. However, that is an unrelated matter. Furthermore, in its Motion for Abeyance or to Bifurcate Proceedings, Employer has provided no case law for its assertion that this Tribunal does not have jurisdiction over the responsible operator issue and thus no jurisdiction to decide the motion for partial summary decision on its merits. That bold assertion is in direct conflict with the regulations. It is clear to this Tribunal that it has the authority to determine the responsible operator issue in this case. *See* 20 C.F.R. § 725.495(d). This Tribunal does not dispute that the District of Columbia Circuit is a superior court to this Tribunal. But that does not mean that this Tribunal should not proceed with adjudicating the cases before it. If, ultimately, the D.C. Circuit rules in favor of Employer, it is always free to raise this issue to this Tribunal prior to its issuance of the decision and order, or the appropriate appellate body.

This Tribunal is unwilling to hold this matter in abeyance pending the results of an unrelated matter and it does not believe that bifurcating the proceedings is warranted. Under Employer's proposal, it asks to delay this Tribunal's ruling until after it has concluded its litigation in another matter pending in federal circuit court. Yet there is nothing that would prevent the Employer, after this delay, from separately adjudicating the responsible operator issue in this case. The net result would be an even further delay in the resolution of the Claimant's matter.

Employer has also filed a Motion to Extend Deadline for Evidentiary Development on Liability Issue. Employer argues that it " will not have sufficient time to develop the record" and

J.A. 15

to obtain discovery from the Department of Labor, and it will not be able to meet the deadlines established in this case.

The decision on when to conduct discovery is left to the parties, subject to limitations provided by the Tribunal. In this case, the parties have been on notice for almost nine months that the case was going to be docketed, and has for almost three months known the actual hearing date. Employer claims that it did not develop this evidence earlier due to the federal litigation of this issue. However, Employer has been on notice that it was a potential responsible operator since at least December 16, 2014. DX 23. Further, assuming *arguendo*, that Employer had no notice prior to this date, it has failed to explain what has hampered its efforts to develop the evidence *since December 16, 2014*. Both parties were informed to begin discovery on at least two occasions. Here, Claimant should not be penalized by continuing this matter because of Employer's failure to develop its evidence. All of the assertions or potential contentions raised in Employer's motions are not new matters within the realm of Black Lung litigation, and Employer's decision not to develop evidence in this case "because of the federal litigation over the issue" does not constitute good cause.

### Protective Order

Employer's request for a Rule 30(b)(6) deposition must be denied for two reasons: (1) the high government official doctrine; and (2) the deliberative process doctrine. It is well-established that high government officials are protected from being compelled, absent extraordinary circumstances, to testify concerning the reasons for taking official action; inquiry into decision-making process is permitted only on clear showing of misconduct or wrongdoing. *Walker v. NCNB Nat'l Bank of Florida*, 810 F. Supp. 11, 13 (D.D.C. 1993) (citing *U.S. v. Morgan*, 313 U.S. 409 (1941); *Thomas v. Baker*, 925 F.2d 1523, 1525 (D.C. Cir. 1991); *Franklin Savings Ass'n v. Ryan*, 922 F.2d 209 (4th Cir. 1991)). Employer has offered no evidence or argument whatsoever to establish the extraordinary circumstances required to overcome the doctrine.

The Director cites the deliberative process privilege, which permits an agency to withhold information related to its pre-decisional, deliberative process its invocation is both implied in the Director's argument and follows as a result of the information Employer seeks. The deliberative process privilege "protects material disclosing the deliberative process, including evaluations, expressions of opinion, and policy recommendations." *See Walker*, 810 F. Supp. at 13. Thus, the privilege invokes DOL's right to withhold the sort of the information that Employer seeks. Specifically, the privilege protects the agency from disclosing the individuals who wrote, drafted or otherwise contributed to several sections of the preamble. Likewise, the privilege extends to those requests seeking the medical research on which DOL based its findings in the preamble. Requested access to such information necessarily encompasses these government employees' and/or officials' mental impressions, evaluations, expressions of opinion, and policy recommendations. Accordingly, the deliberative process privilege is applicable.

"In order to overcome the privilege, the party seeking disclosure must show that the interests in disclosure outweigh the interests in non-disclosure." *Walker*, 810 F. Supp. at 13

-4-

(citing *Bigelow v. District of Columbia*, 122 F.R.D. 111, 113 (D.D.C. 1988)). "The Court should consider the interest in accurate judicial fact-finding, the relevance of the evidence sought, the effect disclosure will have on future deliberations by the agency involved, and the role of the government in the litigation." *Id.* In light of this standard and with regard to the evidence it seeks, Employer has not met its burden to overcome the privilege for several reasons.

First, as the Director correctly notes, the preamble and revised regulations were promulgated in accordance with the following administrative process, the summary of is contained in the preamble and merits quoting at length:

> On *January 22, 1997, the Department issued a proposed rule* to amend the regulations implementing the Black Lung Benefits Act. 62 FR 3338-3435 (Jan. 22, 1997). When the comment period closed on August 21, 1997, the Department had received written submissions from almost 200 interested persons, including coal miners, coal mine operators, insurers, physicians, and attorneys. *The Department also held hearings in Charleston, West Virginia, and Washington, D.C. at which over 50 people testified.* The Department carefully reviewed the testimony and the comments and, on October 8, 1999, issued a second notice of proposed rulemaking. 64 FR 54966-55072 (Oct. 8, 1999). In its second notice, the Department proposed changing several of the most important provisions in its initial proposal. The Department also explained its decision not to alter the original proposal with respect to other key regulations based on the comments received to date. Finally, the Department prepared an initial regulatory flexibility analysis. *In order to ensure that small businesses that could be affected by the Department's proposal received appropriate notice of the Department's proposed changes, the Department mailed a copy of the second notice of proposed rulemaking to all coal mine operators contained in the databases maintained by the Mine Safety and Health Administration.*
>
> The Department initially *allowed interested parties until December 7, 1999 to file comments* to its second proposal, but *extended that period until January 6, 2000*. The Department received 37 written submissions before the close of the comment period, from groups representing both coal miners and coal mine operators. The Department also received comments from individual miners, various coal mining and insurance companies, as well as from claims processing organizations, attorneys, and various professional organizations. The Department has carefully reviewed all of the comments, and is issuing its final rule. The rule contains a final regulatory flexibility analysis as required by the Regulatory Flexibility Act.

65 Fed. Reg. 79,920 (Dec. 20, 2000) (emphasis added).

Employer was free to present other scientific evidence or research studies challenging the scientific data and conclusions reached during the rulemaking process. Employer cannot now resurrect this missed opportunity, which would circumvent the processes established by the

Administrative Procedure Act.[2] Moreover, the preamble itself contains citations to specific medical and scientific studies that Employer seeks.[3]

Furthermore, the Tribunal must consider the consequences of allowing this discovery, including the impact on potential witnesses. 5 U.S.C. § 554(d) explicitly prohibits agency adjudicators from performing investigative or prosecutorial functions. Here, granting Employer's discovery request would violate the prohibition of an administrative law judge's use of its authority for investigative purposes to attack the scientific basis for a rule promulgated fifteen years ago. That is not the proper role for an administrative law judge. In addition, Employer's request would create practical and ethical issues for the unnamed federal employee(s). As a general matter, 5 C.F.R. § 2635.805 generally bars current employees from testifying as experts in a federal forum where the U.S. is party, or has a direct and substantial interest. Though this can be waived by the federal agency, the Director's position and the absence of evidence to the contrary makes waiver improbable.[4] *See generally, U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Moreover, Employer argues that it does not ask the Tribunal to investigate or prosecute in contravention of 5 U.S.C. § 554(d), and neither does 5 C.F.R. § 2635.805 bar the discovery sought. It cites *Dean v. Veterans Admin.*, 151 F.R.D. 83, 85 (N.D. Ohio 1993), which set limits on the extent to which the VA can prevent a physician from testifying in a civil matter invoking agency privilege. *See* Employer Opp., at 13-14. This matter, on the other hand, is distinguishable in that Employer is requesting identification of individuals who promulgated the preamble, the significance of which is discussed above, as opposed to a

---

[2] The Employer is, however, free to present other scientific evidence or research studies challenging the scientific data and conclusions by use of its own experts developed after the rulemaking process. *See Blue Mountain Energy v. Director, OWCP [Gunderson]*, 805 F.3d 1254, 1262 (10th Cir. 2015) (An employer could "submit evidence or expert opinions to persuade the ALJ that the preamble's findings were no longer valid or were not relevant to the facts of this case."); *Cent. Ohio Coal Co. v. Director, OWCP [Sterling]*, 762 F.3d 483, 491, 25 BLR 2-633, 2-645 (6th Cir. 2014) (Recognizing that an employer can submit evidence that purports to invalidate the DOL's position as expressed in the preamble).

[3] The Tribunal finds Employer's arguments in its Opposition are unpersuasive. For example, Employer cites *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993) for the proposition that it "must be permitted to test the reliability and scientific foundation of the statements in the preamble." Employer's Opposition to the Solicitor's Motion for Protective Order ("Employer Opp."), at 3-4. However, this case is inapposite as that matter involved a private drug company, not a federal government agency.

Moreover, Employer asserts that it "does not seek information about deliberations at DOL concerning revisions to the regulations and the drafting of the preamble. It seeks only facts, *i.e.*, the scientific support for these medical conclusions drawn by DOL in the preamble and how the science supports application of those conclusions to this case." Employer Opp., at 12. Since the preamble itself, and the documents published through the notice and comment process, cite specific medical studies upon which the Department relied in promulgating the revised regulations, Employer has not suggested any information in the possession of any Department employee or other "appropriate federal health authority" could not be obtained from published reports and available agency documents. *See, e.g., Simplex Time Recorder Co. v. Sec'y of Labor*, 247 U.S. App. D.C. 85 (1985).

[4] Further, if Employer is asking for a subpoena for a person that was involved in the scientific evidence related to the rulemaking itself, 18 U.S.C. § 207(a)(1) & (j)(6), generally bar former employees from testifying as experts on the same official matter in which they participated for the government.

- 6 -

J.A. 18

physician testifying to an individual's condition in an employment discrimination claim. The other case Employer cites, *Gulf Group General Enters. Co. v. U.S.*, 98 Fed. Cl. 639 (2011) similarly concerns a termination matter and does not turn on agency-promulgated rules or regulations.

Finally, though the preamble is not binding authority, the Benefits Review Board ("BRB" or "Board") and several U.S. Courts of Appeal have consistently upheld citation to the preamble and the Act's implementing regulations in adjudicating claims under the Act. Regarding the Board's decisions, the Board has held that the preamble "comprises an authoritative statement of medical principles accepted by the Department of Labor." *Tackett v. H.J. Mining Co., Inc.*, BRB No. 13-0502 BLA, at 9 (Jul. 10, 2014) (affirming the administrative law judge's decision to discredit physicians' views that a miner's bullous and panlobular emphysemas were unrelated to coal dust exposure as contrary to the preamble) (unpub.). The Board has also made clear that "the scientific premises underlying the regulations, as set forth in the preamble, establish that exposures to coal dust and smoking cause similar types of emphysema." *Id.* Similarly, in upholding an administrative law judge's finding of legal pneumoconiosis, the Board cited the preamble, "which acknowledges the prevailing view of the medical community that the risks of smoking and coal mine dust exposure are additive." *Pennington, Jr. v. Bates Contracting and Construction, Inc.*, BRB No. 13-0287 BLA, at 6 (Feb. 25, 2014) (unpub.).

Similarly, among the U.S. Courts of Appeal, it is well-established that administrative law judges may consider whether a physician's opinion is consistent with the preamble to the revised regulations in making credibility determinations. In *Arch on the Green, Inc. v. Groves*, the Sixth Circuit pointedly stated, "This court has heard and rejected these kinds of arguments before," and observed, "The preamble is an instructive resource that explains the DOL's evaluation of conflicting medical and scientific literature." 761 F.3d 594, 601 (6th Cir. 2014) (quoting *Little David Coal Co. v. Dir. OWCP*, 532 Fed. App'x 633, 636 (6th Cir. 2012) (holding that the administrative law judge did not err when he, "in effect use[d] the preamble to test whether the theories of Arch's doctors were consistent with medical literature"). Accordingly, "[i]n the face of conflicting opinions from two credible sources," it is reasonable for an administrative law judge "to give greater weight to the testimony of the medical expert whose opinion was supported by the prevailing view of the medical and scientific community as reflected in the regulatory preamble." *Little David Coal*, 532 Fed. App'x at 636; *see also A & E Coal Co. v. Adams*, 694 F.3d 798, 801-02 (6th Cir. 2012) (holding that although administrative law judges need not look to the preamble to assess doctors' credibility, the ALJ did not err by looking "to the preamble, in addition to the applicable regulations, to assess [the doctors'] credibility"); *Harman Mining Co. v. Dir., OWCP [Looney]*, 678 F.3d 305, 313 (4th Cir. 2012) (explaining that "it was proper to find Dr. Fino's opinion was premised on a view contrary to the preamble"); *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 483 n.7 (7th Cir. 2001) (affirming the discrediting of a physician's opinion on grounds that during a rule making proceeding, the Department of Labor considered a similar presentation by [that physician] and concluded that his opinions "are not in accord with the prevailing view of the medical community or the substantial weight of the medical and scientific literature.") 65 Fed. Reg. 79,920, 79,939 (Dec. 20, 2000)).

Notably, in *Central Ohio Coal Co. v. Dir. OWCP*, "[t]he sole issue presented . . . [was] whether the ALJ was entitled to discredit Dr. Rosenberg's medical opinion because it 'plainly

- 7 -

contradicts the DOL's position' as set forth in the preamble." 762 F.3d 483, 491 (6th Cir. 2014). The Sixth Circuit held that "the answer to that question is unequivocally yes," even though "Dr. Rosenberg may be right as a matter of scientific fact." *Id.*

In sum, the Board and several U.S. Courts of Appeals have made clear that the preamble is persuasive authority, which the administrative law judge may utilize when analyzing a physician's opinion, as well as the evidence as a whole. As discussed above, Employer was free to present other scientific evidence or research studies that challenged the scientific data and conclusions reached during the rulemaking process, which are of public record, approximately fifteen years ago. Employer also has access to the medical studies relied upon by the Department during the rulemaking process. Furthermore, under relevant statutes and regulations, agency adjudicators are explicitly prohibited from performing investigative or prosecutorial functions, and Employer's request would also create practical and ethical issues for the unnamed federal employee(s). Employer has been provided more than ample time to formulate and present its evidence. Accordingly, Employer has failed to provide evidence sufficient to overcome the high government official and deliberative process doctrines. Employer is free to challenge the substance of the Department's position, but Employer's request for a deposition is not an appropriate tool to that end in this case.

## ORDER

1. Employer's Motion for Abeyance or to Bifurcate Proceedings is **DENIED**.

2. Employer's Motion to Extend Deadline for Evidentiary Development on Liability Issue is **DENIED**.

3. The Director's Motion for a Protective Order is **GRANTED**.

4. The hearing in this matter remains set for October 31, 2017.

SO ORDERED.



Cherry Hill, New Jersey

J.A. 20

<div align="center">

**SERVICE SHEET**

</div>

Case Name:  **HOWARD_DAVID_M_v_APOGEE_COAL_COMPANY__**

Case Number: **2017BLA05163**

Document Title: **ORDER DENYING EMPLOYER'S MOTION FOR ABEYANCE OR TO BIFURCATE PROCEEDINGS; DENYING EMPLOYER'S MOTION**

I hereby certify that a copy of the above-referenced document was sent to the following this 17th day of August, 2017:



Digitally signed by Donna M. Broome
DN: CN=Donna M. Broome, OU=Paralegal
Specialist, O=US DOL Office of
Administrative Law Judges, L=CHERRY
HILL, S=NJ, C=US
Location: CHERRY HILL NJ

**Donna M. Broome**
Paralegal Specialist

District Director
United States Department Labor
OWCP_DCMWC
Branch of Standards, Regulations and Procedures
200 Constitution Ave NW, Rm N3464
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

Associate Regional Solicitor
U. S. Department of Labor
Suite 230
618 Church Street
NASHVILLE TN 37219-2456
        *{Hard Copy - Regular Mail}*

David M. Howard
P.O. Box 135
BAXTER KY 40806
        *{Hard Copy - Regular Mail}*

Ron Carson, Program Director
Stone Mountain Health Services
P.O. Drawer S
ST. CHARLES VA 24282-0269
        *{Hard Copy - Regular Mail}*

Apogee Coal Company Inc.
c/o Healthsmart CCS
P.O. Box 3389
CHARLESTON WV 25333
        *{Hard Copy - Regular Mail}*

W. William Prochot, Esq.
Greenberg Traurig, LLP
2101 L Street, NW, STE 1000
WASHINGTON DC 20037
        *{Hard Copy - Regular Mail}*

Arch Coal Inc.
1 City Place Drive, STE 300
ST. LOUIS MO 63141
        *{Hard Copy - Regular Mail}*

**U.S. Department of Labor**     Benefits Review Board
P.O. Box 37601
Washington, D.C. 20013-7601



BRB No. 17-0615 BLA
Case No. 17-BLA-5163

| | | |
|---|---|---|
| DAVID M. HOWARD | ) | |
| | ) | |
| Claimant-Respondent | ) | DATE ISSUED: **SEP 1 5 2017** |
| | ) | |
| v. | ) | |
| | ) | |
| APOGEE COAL COMPANY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRICKSTREET MUTUAL INSURANCE | ) | |
| | ) | |
| Employer/Carrier- | ) | |
| Petitioner | ) | |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS, UNITED | ) | |
| STATES DEPARTMENT OF LABOR | ) | |
| | ) | |
| Party-in-Interest | ) | ORDER |

By letter dated September 6, 2017, the Board acknowledged receipt of employer's Notice of Appeal of the administrative law judge's Order Denying Employer's Motion for Abeyance or to Bifurcate proceedings, Denying Employer's Motion to Extend Deadline for Evidentiary Development on Liability issue, and Granting Director's Motion for Protective Order issued August 17, 2017. The Board assigned employer's appeal BRB No. 17-0615 BLA.

By motion dated September 8, 2017, the Director requests that employer's appeal be dismissed as interlocutory. The Director subsequently filed a Motion to Expedite Review of Motion to Dismiss Employer's Interlocutory Appeal. In support of the motion, the Director states that the administrative law judge's order is clearly non-final as he has not addressed the merits of claimant's entitlement or the identity of the liable party.

Generally, a decision or order of an administrative law judge must be final before the Board will consider an appeal from that decision. The Board, however, will accept an interlocutory appeal if it is necessary to properly direct the course of the adjudicatory process. *See Butler v. Ingalls Shipbuilding, Inc.*, 28 BRBS 114 (1994). Additionally, the Board will accept an appeal of an order which is interlocutory in nature if it meets the following three-pronged test. First, the order must conclusively determine the disputed question. Secondly, the order must resolve an important issue, which is completely separate from the merits of the action. Finally, the order must be effectively unreviewable on appeal from a final judgment. *See Canada Coal Co. v. Stiltner*, 866 F.2d 153 (6th Cir. 1989); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133 (1988).

The administrative law judge's Order Denying Employer's Motion for Abeyance or to Bifurcate Proceedings, Denying Employer's Motion to Extend Deadline for Evidentiary Development on Liability Issue, and Granting Director's Motion for Protective Order issued August 17, 2017, does not meet the three-pronged test for accepting an interlocutory appeal, nor does this case require the Board to direct the course of the adjudicatory process. *See Arjona v. Interport Maintenance,* 24 BRBS 222 (1991). The administrative law judge's actions are fully reviewable after a final decision is issued. *See Tignor v. Newport News Shipbuilding and Dry Dock Co.*, 29 BRBS 135 (1995). The Board, therefore, grants the Director's motion and dismisses employer's appeal as interlocutory. Any party who is aggrieved by the administrative law judge's final decision may file an appeal with the Board within thirty (30) days from the date the decision is filed. 33 U.S.C. §921(a), (b); 20 C.F.R. §802.205.

Service of this Order has been made on all parties, the Solicitor of Labor and the District Director.

BETTY JEAN HALL, Chief
Administrative Appeals Judge

JUDITH S. BOGGS
Administrative Appeals Judge

RYAN GILLIGAN
Administrative Appeals Judge

# CERTIFICATE OF SERVICE

2017-0615-BLA David M. Howard v. Apogee Coal Company LLC, Brickstreet Mutual Insurance Co., Inc., Arch Coal, Inc., Director, Office of Workers' Compensation Programs (Case No. 17-BLA-5163)

I certify that the parties below were served this day.

_Thomas O. Shepherd, Jr._

09/15/2017
(DATE)

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

Alexander Franklin Smith
Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Washington, DC 20001
--Electronic

Maia Fisher
Associate Solicitor, U.S. Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210
--Electronic

David M. Howard
P.O. Box 135
Baxter, KY 40806
--Certified

Michael Chance
District Director
U.S. Department of Labor
Suite C-3515, NDOL
Washington, DC 20210

Laura Metcoff Klaus, Esq.
Greenberg Traurig LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
--Electronic

Ron Carson
Stone Mountain Health Services
P.O. Box Drawer S
St. Charles, VA 24282
--Certified

Hon. Scott R. Morris
U.S. Department of Labor
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002



BRB No. 17-0615 BLA
Case No. 17-BLA-5163

DAVID M. HOWARD )
)
     Claimant-Respondent )
)
     v. )  **NOT-PUBLISHED**
)
APOGEE COAL COMPANY )
)  DATE ISSUED: 04/30/2018
     and )
)
BRICKSTREET MUTUAL INSURANCE )
)
     Employer/Carrier- )
     Petitioners )
)
DIRECTOR, OFFICE OF WORKERS' )
COMPENSATION PROGRAMS, UNITED )
STATES DEPARTMENT OF LABOR )
)  ORDER ON MOTION FOR
)  RECONSIDERATION
     Party-in-Interest )  EN BANC

     After consideration of employer's contentions and review of the Board's disposition of the case, the Board denies employer's motion for reconsideration en banc. 33 U.S.C. §921(b)(5); 20 C.F.R. §§801.301(c), 802.407(b), (d), 802.409.

     On September 15, 2017 employer filed a Motion to Consolidate and Suspend Briefing requesting the Board to consolidate the appeal in this case with three other cases pending before the Board: *Ison v. Arch of Ky/Apogee*, BRB No 17-0612 BLA; *Creech v. Apogee Coal Co.*, BRB No 17-0613 BLA; and *Browning v. Arch of Kentucky/Apogee Coal Co.*, BRB No. 17-0614 BLA.

     As the appeal in this case was dismissed by the Board in an Order dated September 15, 2017, and the motion for reconsideration is denied, employer's Motion to Consolidate and Suspend Briefing is moot.

By Order of the Board:

Thomas O. Shepherd, Jr.
Clerk of the Appellate Boards

2

 GreenbergTraurig

Patricia C Karppi
karppip@gtlaw.com
202.530.8519
Fax: 202.261.0170

April 29, 2019

**Via UPS Next Day Air**
Administrative Law Judge Lauren Boucher
United States Department of Labor
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, New Jersey 08002

**Re:  David M. Howard v. Arch of Ky/Apogee Coal, LLC, *et al.***
**Case No. 2017-BLA-05163; OWCP: PI xxx-xx-6902**

Dear ALJ Boucher:

Arch Coal respectfully requests that the ALJ sign and return the attached subpoenas for Mr. Michael Chance and Ms. Kim Kasmeier. The subpoenas are for deposition testimony and the production of documents at deposition regarding issues related to Arch Coal's coverage for this claim and DOL's violation of the Administrative Procedure Act. The deposition dates have not yet been set.

Thank you for your attention to this matter.

Respectfully submitted,

*Patricia C Karppi*

Patricia C. Karppi

Enclosure

cc:  Robin Napier, Lay Representative (by regular mail)
Theresa Ball Esq. (by regular mail)

Greenberg Traurig, LLP | Attorneys at Law
2101 L Street, N.W. | Suite 1000 | Washington, D.C. 20037 | T +1 202.331.3100 | F +1 202.331.3101

www.gtlaw.com

J.A. 28

# United States Department of Labor
# OFFICE OF ADMINISTRATIVE LAW JUDGES

In Re:

David M. Howard

(Plaintiff/Complainant/Claimant)

v.

Apogee Coal Co. et al.

OALJ Case No: 2017-BLA-05163

(Defendant/Respondent/Employer/Carrier)

## SUBPOENA TO APPEAR AND TESTIFY AT A DEPOSITION

To: Michael A. Chance, Director DCMWC  Address  200 Constitution Ave., NW, Room C-3520

City Washington  State  DC  Zip Code 20210

**YOU ARE DIRECTED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in the above captioned proceeding. If you are an organization that is not a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

Place of Testimony:

Date: _____

Greenberg Traurig, LLP
2101 L Street NW, Suite 1000
Washington, D.C. 20037

Time: 10:00 AM _____

The deposition will be recorded by this method: Stenographic means

**YOU MUST ALSO BRING WITH YOU** the following documents, electronically stored information, or tangible things and permit their inspection, copying, testing or sampling of material (blank if not applicable):

See attached list.

The provisions of Code of Federal Regulations (CFR) 29 C.F.R. §§18.56(c) and 18.52(a), relating to your protection as a person subject to a subpoena, and 29 CFR §§18.56(d) and 18.56(e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

This subpoena is issued upon the application of (indicate attorney/representative for named party):

(Person requesting subpoena)    (Address and Telephone Number)

Firm Name  Greenberg Traurig LLP

| | | | |
|---|---|---|---|
| Name | Patricia C Karppi | Address | 2101 L Street NW, Suite 1000 |
| Bar Number | VA 36038/DC 450958 | City | Washington |
| Phone Number | 2025308519 | State  DC | Zip Code  20037 |

**If this subpoena commands the production of documents, electronically stored information, or tangible things, a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. 29 C.F.R. §18.56(b)**

IN WITNESS WHEREOF the undersigned United States Administrative Law Judge has hereunto set his/her hand and caused the seal of the United States Department of Labor to be affixed.

_____      _____      To be valid, a raised USDOL Seal must appear here
Signature of U.S. Administrative Law Judge      Date

## NOTICES

**NOTICE:** This subpoena is only valid in proceedings before the Office of Administrative Law Judges or Office of Workers' Compensation Programs. To be valid, this subpoena must bear a raised United States Department of Labor (USDOL) seal, and the signature of a Department of Labor (DOL) administrative law judge.

**29 C.F.R. §18.56 Subpoenas**

(c) **Protecting a Person Subject to a Subpoena.**
(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or representative responsible for requesting, issuing or serving a subpoena must take reasonable steps to avoid imposing undue burden on a person subject to the subpoena. The judge must enforce this duty and impose an appropriate sanction.
(2) *Command to Produce Materials or Permit Inspection.*
    (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition or hearing.
    (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or representative designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises  - or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served
        (i) At any time, upon notice to the commanded person, the serving party may move the judge for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) *Quashing or Modifying a Subpoena.*
    (A) *When Required.* On timely motion, the judge must quash or modify a subpoena that:
        (i) fails to allow a reasonable time to comply;
        (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person - except that, subject to paragraph (c)(3)(B)(iii) of this section, the person may be commanded to attend the formal hearing;
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) *When permitted.* To protect a person subject to or affected by a subpoena, the judge may, on motion, quash or modify the subpoena if it requires:
        (i) disclosing a trade secret or other confidential research, development, or commercial information;
        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
        (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend the formal hearing.

(d) **Duties in Responding to a Subpoena.**
(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is usually maintained or in a reasonably usable form or forms.

**HIPAA NOTICE:** In regard to the Privacy of Individually Identifiable Health Information under the Health Insurance Portability and Accountability Act of 1996, if this subpoena does not bear a raised USDOL seal and the signature of a DOL administrative law judge, it is not valid under 45 C.F.R. §§164.512(e), 164.512(f) or 164.512(l).

    (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or expense. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the judge may nonetheless order discovery from such sources if the requesting party show good cause. The judge may specify conditions for the discovery.
(2) *Claiming Privilege or Protection.*
    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as hearing-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as hearing-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the judge *in camera* for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
(e) **Failure to Obey.** When a person fails to obey a subpoena, the party adversely affected by the failure may, when authorized by statute or law, apply to the appropriate District Court to enforce the subpoena.

**29 C.F.R. §18.52 Protective orders**

(a) **In General.** A party or person from whom discovery is sought may file a written motion for a protective order. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the affected parties in an effort to resolve the dispute without the judge's action. The judge may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) Forbidding the disclosure or discovery;
(2) Specifying terms, including a designation of the time and place,  for the disclosure or discovery;
(3) Prescribing a discovery method other than the one selected by the party seeking discovery;
(4) Forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
(5) Designating the persons who may be present while discovery is conducted;
(6) Requiring that a deposition be sealed and only opened on the judge's order;
(7) Requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
(8) Requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the judge directs.

## PROOF OF SERVICE

On _____ I received this subpoena and served it pursuant to 29 CFR §18.56(b) as follows:

_____          _____
Person served (print name)                         Date of Service

_____          _____
Place of Service                                          Manner of Service

☐  I have also tendered to the witness fees for one day's attendance and the mileage allowed by law, in the amount of
$ _____

☐  I have not tendered witness fees for one day's attendance and for the mileage allowed by law.

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Address: _____

_____          
Signature of Server           Date

_____          
Name of Server (Print Name)

City: _____   State: _____   ZIP: _____

DAVID M. HOWARD,                    )
                                    )
            Claimant,               )
                                    )
    v.                              )        Case No.    2017-BLA-05163
                                    )
APOGEE COAL CO., LLC, *et al.,*     )        OWCP No.  xxx-xx-6902
                                    )
            Employer-Carrier,       )        ALJ Lauren Boucher
                                    )
    and                             )
                                    )
DIRECTOR, OFFICE OF WORKERS'        )
COMPENSATION PROGRAMS,              )
                                    )
            Party-In-Interest.      )
                                    )

## ATTACHMENT TO SUBPOENA
## LIST OF DOCUMENTS TO PRODUCE AT DEPOSITION

1. Any and all documents in any format used in the development and adoption of BLBA Bulletin No. 16-01.

2. Any and all documents in any format that relate to Patriot Coal's federal black lung self-insurance program, Patriot Coal's application(s) for self-insurance, DOL's approval of Patriot Coal's self-insurance program or application(s) and any plan for the disposition or distribution of Patriot Coal's self-insurance assets.

3. Any and all documents in any format relating to DOL's approvals of Arch Coal as a federal black lung self-insurer from July 1997 to the present and DOL's response to Arch Coal's letter of January 6, 2006, informing DOL that Arch Coal would no longer cover past, present or future liabilities for the subsidiaries that it sold to Magnum Coal Company as of January 1, 2006.

4. Any and all documents in any format relating to how DOL allocates liability for federal black lung claims of coal miners who worked for Magnum Coal on or after January 1, 2006.

5. Any and all documents in any format addressing how DOL allocated black lung liability in cases filed before BLBA Bulletin No. 16-01 was issued involving the parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

6. Any and all documents in any format other than BLBA Bulletin No. 16-01 from 1974 to the present providing instructions to claims examiners relating to parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

7. Any and all documents in any format including public comments received relating to DOL's "Proposed Collection of Information; Comment Request" at 82 Fed. Reg. 50166 (Oct. 30, 2017), which requires a mine operator as a condition of being authorized to self-insure black lung liabilities to have its parent company, if any, forever guarantee the payment of black lung benefits to miners who worked during any period for a self-insured subsidiary.

8. Any parental guaranty form, agreement or document that DOL used in self-insurance applications and renewals before January 1, 2006.

9. Any parental guaranty form, agreement or document that DOL currently uses in self-insurance applications and renewals.

2

# United States Department of Labor
# OFFICE OF ADMINISTRATIVE LAW JUDGES

In Re:

David M. Howard

_____

(Plaintiff/Complainant/Claimant)

v.

Apogee Coal Co. LLC et al.                    OALJ Case No:  2017-BLA-05163

_____

(Defendant/Respondent/Employer/Carrier)

## SUBPOENA TO APPEAR AND TESTIFY AT A DEPOSITION

To:  Ms. Kim Kasmeier-OWCP/DCMWC          Address   200 Constitution Ave., NW, Room C-3520

City  Washington                                State   DC   Zip Code   20210

**YOU ARE DIRECTED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in the above captioned proceeding.  If you are an organization that is not a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

Place of Testimony:                              Date: _____

        Greenberg Traurig, LLP
        2101 L Street NW, Suite 1000         Time:  10:00 AM
        Washington, D.C. 20037                _____

The deposition will be recorded by this method:  Stenographic means

**YOU MUST ALSO BRING WITH YOU** the following documents, electronically stored information, or tangible things and permit their inspection, copying, testing or sampling of material (blank if not applicable):

See attached list.

The provisions of Code of Federal Regulations (CFR) 29 C.F.R. §§18.56(c) and 18.52(a), relating to your protection as a person subject to a subpoena, and 29 CFR §§18.56(d) and 18.56(e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

This subpoena is issued upon the application of (indicate attorney/representative for named party):

(Person requesting subpoena)                              (Address and Telephone Number)

                                     Firm Name   Greenberg Traurig LLP

Name          Patricia C Karppi                       Address   2101 L Street NW; Suite 1000

Bar Number   VA 36038/DC 450958                 City       Washington

Phone Number   2025308519                          State   DC        Zip Code   20037

**If this subpoena commands the production of documents, electronically stored information, or tangible things, a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  29 C.F.R. §18.56(b)**

IN WITNESS WHEREOF the undersigned United States Administrative Law Judge
has hereunto set his/her hand and caused the seal of the United States Department
of Labor to be affixed.

_____     _____
Signature of U.S. Administrative Law Judge          Date          To be valid, a raised USDOL Seal must appear here

J.A. 34

## NOTICES

**NOTICE:** This subpoena is only valid in proceedings before the Office of Administrative Law Judges or Office of Workers' Compensation Programs. To be valid, this subpoena must bear a raised United States Department of Labor (USDOL) seal, and the signature of a Department of Labor (DOL) administrative law judge.

### 29 C.F.R. §18.56 Subpoenas

**(c) Protecting a Person Subject to a Subpoena.**

*(1)* *Avoiding Undue Burden or Expense; Sanctions.* A party or representative responsible for requesting, issuing or serving a subpoena must take reasonable steps to avoid imposing undue burden on a person subject to the subpoena. The judge must enforce this duty and impose an appropriate sanction.

*(2)* *Command to Produce Materials or Permit Inspection.*

    *(A)* *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition or hearing.

    *(B)* *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or representative designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises - or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served

        (i) At any time, upon notice to the commanded person, the serving party may move the judge for an order compelling production or inspection.

        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3)* *Quashing or Modifying a Subpoena.*

    *(A)* *When Required.* On timely motion, the judge must quash or modify a subpoena that:

        (i) fails to allow a reasonable time to comply;

        (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person - except that, subject to paragraph (c)(3)(B)(iii) of this section, the person may be commanded to attend the formal hearing;

        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

        (iv) subjects a person to undue burden.

    *(B)* *When permitted.* To protect a person subject to or affected by a subpoena, the judge may, on motion, quash or modify the subpoena if it requires:

        (i) disclosing a trade secret or other confidential research, development, or commercial information;

        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

        (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend the formal hearing.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is usually maintained or in a reasonably usable form or forms.

**HIPAA NOTICE:** In regard to the Privacy of Individually Identifiable Health Information under the Health Insurance Portability and Accountability Act of 1996, if this subpoena does not bear a raised USDOL seal and the signature of a DOL administrative law judge, it is not valid under 45 C.F.R. §§164.512(e), 164.512(f) or 164.512(I).

    (C) *Electronically Stored Information Produced in Only One Form* The person responding need not produce the same electronically stored information in more than one form.

    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or expense. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the judge may nonetheless order discovery from such sources if the requesting party show good cause. The judge may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as hearing-preparation material must:

        (i) expressly make the claim; and

        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as hearing-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the judge *in camera* for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Failure to Obey.** When a person fails to obey a subpoena, the party adversely affected by the failure may, when authorized by statute or law, apply to the appropriate District Court to enforce the subpoena.

### 29 C.F.R. §18.52 Protective orders

**(a) In General.** A party or person from whom discovery is sought may file a written motion for a protective order. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the affected parties in an effort to resolve the dispute without the judge's action. The judge may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) Forbidding the disclosure or discovery;

(2) Specifying terms, including a designation of the time and place, for the disclosure or discovery;

(3) Prescribing a discovery method other than the one selected by the party seeking discovery;

(4) Forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(5) Designating the persons who may be present while discovery is conducted;

(6) Requiring that a deposition be sealed and only opened on the judge's order;

(7) Requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(8) Requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the judge directs.

## PROOF OF SERVICE

On _____        I received this subpoena and served it pursuant to 29 CFR §18.56(b) as follows:

_____        _____
Person served (print name)                                  Date of Service

_____        _____
Place of Service                                                   Manner of Service

☐  I have also tendered to the witness fees for one day's attendance and the mileage allowed by law, in the amount of
   $ _____

☐  I have not tendered witness fees for one day's attendance and for the mileage allowed by law.

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Address: _____

_____        _____
Signature of Server                     Date

_____
Name of Server (Print Name)

City: _____   State: ____   ZIP: _____

J.A. 36

UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES
Cherry Hill, New Jersey

| | |
|---|---|
| DAVID M. HOWARD, )<br><br>       Claimant, )<br><br>       v. )<br><br>APOGEE COAL CO., LLC, *et al.,* )<br><br>       Employer-Carrier, )<br><br>       and )<br><br>DIRECTOR, OFFICE OF WORKERS'<br>COMPENSATION PROGRAMS, )<br><br>       Party-In-Interest. ) | Case No.    2017-BLA-05163<br><br>OWCP No.  xxx-xx-6902<br><br>ALJ Lauren Boucher |

## ATTACHMENT TO SUBPOENA
## LIST OF DOCUMENTS TO PRODUCE AT DEPOSITION

1.  Any and all documents in any format used in the development and adoption of BLBA Bulletin No. 16-01.

2.  Any and all documents in any format that relate to Patriot Coal's federal black lung self-insurance program, Patriot Coal's application(s) for self-insurance, DOL's approval of Patriot Coal's self-insurance program or application(s) and any plan for the disposition or distribution of Patriot Coal's self-insurance assets.

3.  Any and all documents in any format relating to DOL's approvals of Arch Coal as a federal black lung self-insurer from July 1997 to the present and DOL's response to Arch Coal's letter of January 6, 2006, informing DOL that Arch Coal would no longer cover past, present or future liabilities for the subsidiaries that it sold to Magnum Coal Company as of January 1, 2006.

4.  Any and all documents in any format relating to how DOL allocates liability for federal black lung claims of coal miners who worked for Magnum Coal on or after January 1, 2006.

5. Any and all documents in any format addressing how DOL allocated black lung liability in cases filed before BLBA Bulletin No. 16-01 was issued involving the parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

6. Any and all documents in any format other than BLBA Bulletin No. 16-01 from 1974 to the present providing instructions to claims examiners relating to parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

7. Any and all documents in any format including public comments received relating to DOL's "Proposed Collection of Information; Comment Request" at 82 Fed. Reg. 50166 (Oct. 30, 2017), which requires a mine operator as a condition of being authorized to self-insure black lung liabilities to have its parent company, if any, forever guarantee the payment of black lung benefits to miners who worked during any period for a self-insured subsidiary.

8. Any parental guaranty form, agreement or document that DOL used in self-insurance applications and renewals before January 1, 2006.

9. Any parental guaranty form, agreement or document that DOL currently uses in self-insurance applications and renewals.

2

UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES
Cherry Hill, New Jersey

DAVID M. HOWARD,

        Claimant,

    v.

APOGEE COAL CO., LLC, *et al.*,

        Employer-Carrier,

    and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

        Party-In-Interest.

Case No.    2017-BLA-05163

OWCP No.  xxx-xx-6902

ALJ Lauren Boucher

## ARCH COAL'S INTERROGATORIES AND REQUESTS
## FOR PRODUCTION OF DOCUMENTS REGARDING LIABILITY

Pursuant to 20 C.F.R. § 725.351(a), Arch Coal hereby propounds these interrogatories and requests for production of documents to a person or persons selected by the Department of Labor ("DOL"). That person shall respond separately and fully in writing and under oath. Responses should be served no later than thirty (30) days from service of these requests, *i.e.*, **May 31, 2019**. DOL, through its counsel, should contact the undersigned promptly to discuss any objections or questions regarding these requests. Please send the responses to these interrogatories and requests for documents to Patricia C. Karppi, Esq., GREENBERG TRAURIG, LLP, 2101 L Street, N.W., Suite 1000, Washington, DC 20037.

## DEFINITIONS

1.    "And" and "or" shall be construed disjunctively or conjunctively so as to permit the broadest scope possible; "all" includes "each" and "every."

2.    Arch Coal, Inc. ("Arch" or "Arch Coal") includes all past subsidiaries and affiliated companies.

3.    "Communication" refers to any meeting, conversation, discussion, e-mail message, facsimile, correspondence, or other transmittal of information.

4.    "Department of Labor," "Department," "You," or "Your" means the United States Department of Labor and any of its past and present divisions, departments, agencies, offices, officers, employees, agents and anyone acting on its behalf, including, but not limited to, persons or entities involved in the processing of federal black lung claim in the Division of Coal Mine Workers' Compensation (DCMWC).

5.    "Document(s)" means originals or copies of information maintained in any tangible, electronic, or other format. This includes, but is not limited to, electronic or computerized data compilations, writings, drawings, graphs, charts, photographs, reports, communications, bills, instructions, memoranda, notices, letters, notations, summaries, agreements, contracts, subcontracts, desk calendars, appointment books, messages, public or governmental filings, writings, sound recordings and images. A non-identical copy is a separate document within the meaning of this term. A document includes all documents appended thereto.

6.    "Employees" means current or former employees of the Department of Labor, as well as anyone acting on the Department's behalf as described above in the definition of "Department of Labor," "Department," "You," or "Your."

7.    "Identify" means to describe with particularity. When used in reference to a person, "Identify" means (a) with respect to a natural person, describe his or her name, home or business address and last known job title or

J.A. 40

position; and (b) with respect to a person other than a natural person, describe its full name, type of organization, the address of its principal place of business. When used in reference to a fact or communication, "Identify" means to state the date and source of the fact or communication, including where available, any and all documents evidencing that fact or communication (listed by Bates number and date of production, if applicable), and any and all witnesses with knowledge of that fact or communication.

8.     Peabody Investments Corporation ("Peabody") includes all past subsidiaries and affiliated companies.

## INSTRUCTIONS

1.     Each interrogatory and request for production is to be fully and separately answered.

2.     If you elect to answer an interrogatory by identifying or producing documents, identify such responsive documents specifically by Bates number.

3.     With respect to each request for production, if you are able to provide some, but not all, of the documents requested, you must provide such documents as you are able to provide and specifically identify the items or aspects as to which you are not providing.  If you do not have sufficient documents to respond fully, please identify the reason for such insufficiency.   In the event that such insufficiency is cured – whether fully or partially – during the pendency of this litigation, you must supplement your response to provide those items or aspects as to which you were initially unable to provide.

4.     If you refuse to answer any interrogatory or request for production, in whole or in part, you shall state the grounds for such refusal, including any claim of privilege or any other claim of immunity from disclosure, in sufficient detail to permit the adjudication of the validity of the refusal.   Please note that federal law requires the production of a privilege log.

3

5.  Your answers and responses shall be based on information known to you or within DOL's possession, custody, or control, whether it is based on your personal knowledge or that of DOL's representatives or agents.

6.  You may not give lack of information or knowledge as a reason for failure to respond to any discovery requested unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to respond.

## DEFINITIONS

9.  "And" and "or" shall be construed disjunctively or conjunctively so as to permit the broadest scope possible; "all" includes "each" and "every."

10.  Arch Coal, Inc. ("Arch" or "Arch Coal") includes all past subsidiaries and affiliated companies.

11.  "Communication" refers to any meeting, conversation, discussion, e-mail message, facsimile, correspondence, or other transmittal of information.

12.  "Department of Labor," "Department," "You," or "Your" means the United States Department of Labor and any of its past and present divisions, departments, agencies, offices, officers, employees, agents and anyone acting on its behalf, including, but not limited to, persons or entities involved in the processing of federal black lung claim in the Division of Coal Mine Workers' Compensation (DCMWC).

13.  "Document(s)" means originals or copies of information maintained in any tangible, electronic, or other format.  This includes, but is not limited to, electronic or computerized data compilations, writings, drawings, graphs, charts, photographs, reports, communications, bills, instructions, memoranda, notices, letters, notations, summaries, agreements, contracts, subcontracts, desk calendars, appointment books, messages, public or governmental filings, writings, sound

4

recordings and images. A non-identical copy is a separate document within the meaning of this term. A document includes all documents appended thereto.

14. "Employees" means current or former employees of the Department of Labor, as well as anyone acting on the Department's behalf as described above in the definition of "Department of Labor," "Department," "You," or "Your."

15. "Identify" means to describe with particularity. When used in reference to a person, "Identify" means (a) with respect to a natural person, describe his or her name, home or business address and last known job title or position; and (b) with respect to a person other than a natural person, describe its full name, type of organization, the address of its principal place of business. When used in reference to a fact or communication, "Identify" means to state the date and source of the fact or communication, including where available, any and all documents evidencing that fact or communication (listed by Bates number and date of production, if applicable), and any and all witnesses with knowledge of that fact or communication.

16. Peabody Investments Corporation ("Peabody") includes all past subsidiaries and affiliated companies.

**INSTRUCTIONS**

7. Each interrogatory and request for production is to be fully and separately answered.

8. If you elect to answer an interrogatory by identifying or producing documents, identify such responsive documents specifically by Bates number.

9. With respect to each request for production, if you are able to provide some, but not all, of the documents requested, you must provide such documents as you are able to provide and specifically identify the items or aspects as to which you are not providing. If you do not have sufficient documents to respond fully, please identify the reason for such insufficiency. In the event that such

insufficiency is cured – whether fully or partially – during the pendency of this litigation, you must supplement your response to provide those items or aspects as to which you were initially unable to provide.

10. If you refuse to answer any interrogatory or request for production, in whole or in part, you shall state the grounds for such refusal, including any claim of privilege or any other claim of immunity from disclosure, in sufficient detail to permit the adjudication of the validity of the refusal. Please note that federal law requires the production of a privilege log.

11. Your answers and responses shall be based on information known to you or within DOL's possession, custody, or control, whether it is based on your personal knowledge or that of DOL's representatives or agents.

12. You may not give lack of information or knowledge as a reason for failure to respond to any discovery requested unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to respond.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify (a) the person(s) answering these interrogatories and requests for production and (b) the person(s) consulted in connection with the preparation of the answers to them.

### INTERROGATORY NO. 2:

Identify the person(s) who participated in or contributed to the development of BLBA Bulletin No. 16-01.

### INTERROGATORY NO. 3:

6

Identify any and all policies, procedures, manuals, instructions or other documents and communications provided to claims examiners instructing them on how to administer or implement BLBA Bulletin No. 16-01.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Any and all documents or communications supporting or referenced in DOL's response to Interrogatory No. 3.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all documents in any format used in the development and adoption of BLBA Bulletin No. 16-01.

**REQUEST FOR PRODUCTION NO. 3:**

The self-insurance agreement that allegedly makes Arch Coal liable for this claim.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all other documents in any format that DOL believes establish Arch Coal's liability for this claim.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all documents in any format that relate to Patriot Coal's federal black lung self-insurance program, Patriot Coal's application(s) for self-insurance,

DOL's approval of Patriot Coal's self-insurance program or application(s) and any plan for the disposition or distribution of Patriot Coal's self-insurance assets.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all documents in any format relating to DOL's approvals of Arch Coal as a federal black lung self-insurer from July 1997 to the present and DOL's response to Arch Coal's letter of January 6, 2006, informing DOL that Arch Coal would no longer cover past, present or future liabilities for the subsidiaries that it sold to Magnum Coal Company as of January 1, 2006.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all documents in any format relating to how DOL allocates liability for federal black lung claims of coal miners who worked for Magnum Coal on or after January 1, 2006.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all documents in any format addressing how DOL allocated black lung liability in cases filed before BLBA Bulletin No. 16-01 was issued involving the parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all documents in any format other than BLBA Bulletin No. 16-01 from 1974 to the present providing instructions to claims examiners relating to parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all documents in any format including public comments received relating to DOL's "Proposed Collection of Information; Comment Request" at 82 Fed. Reg. 50166 (Oct. 30, 2017), which requires a mine operator as a condition of being authorized to self-insure black lung liabilities to have its parent company, if

8

any, forever guarantee the payment of black lung benefits to miners who worked during any period for a self-insured subsidiary.

**REQUEST FOR PRODUCTION NO. 11:**

Any parental guaranty form, agreement or document that DOL used in self-insurance applications and renewals before January 1, 2006.

**REQUEST FOR PRODUCTION NO. 12:**

Any parental guaranty form, agreement or document that DOL currently uses in self-insurance applications and renewals.

**REQUEST FOR PRODUCTION NO. 13:**

All documents, not otherwise identified, that you reviewed or considered in responding to these Interrogatories.

Respectfully submitted,

*Patricia C Karppi*

Patricia C. Karppi, Esq.
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 331-3100/fax (202) 261-0170
karppip@gtlaw.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, the undersigned served the foregoing Interrogatories and Requests for Production of Documents on Arch's Liability on the following people by UPS Next Day Air on:

Theresa Ball, Esq.
Office of the Regional Solicitor
U.S. Department of Labor
618 Church Street, Suite 230
Nashville, TN 37219

And by regular mail on:

Robin Napier, Lay Representative
Stone Mountain Health Services
P.O. Drawer S
St. Charles, VA 24282-0269

*Patricia C Karppi*
Patricia C. Karppi

**U.S. Department of Labor**
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

(856) 486-3800
(856) 486-3806 (FAX)



**Issue Date: 28 May 2019**

Case No.:     2017-BLA-05163

In the Matter of

**DAVID M. HOWARD**
                    Claimant

            v.

**APOGEE COAL COMPANY**
                    Self-Insured Employer

            and

**ARCH COAL INC.**
                    Carrier

**DIRECTOR, OFFICE OF WORKERS'**
**COMPENSATION PROGRAMS**
                    Party-in-Interest

<u>**ORDER DENYING REQUEST FOR SUBPOENAS**</u>

This matter involves the claim of David M. Howard ("Claimant") against Apogee Coal Company ("Employer"), self-insured through Arch Coal Inc. ("Arch"), for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, and its implementing regulations, 20 C.F.R. Parts 718 and 725.

On April 29, 2019, Employer submitted a request for subpoenas to be served on two individuals: (1) Mr. Michael Chance, Director of the U.S. Department of Labor's ("Department") Division of Coal Mine Workers' Compensation ("DCMWC"); and (2) Ms. Kim Kasmeier, an employee of DCMWC. Employer requested subpoenas directing the named individuals to appear for deposition and to produce documents "regarding issues related to Arch Coal's coverage for this claim and [the Department]'s violation of the Administrative Procedure Act." On May 16, 2019, the Director of the Office of Workers' Compensation Programs filed an opposition to Employer's request for subpoenas.

As part of its defense, Employer contends that Arch is not the liable insurance carrier in this claim because Patriot Coal Corporation ("Patriot") acquired Employer's assets and liabilities in 2008, and Patriot became Employer's self-insurer. Employer asserts that the Department

approved Patriot as a self-insurer, and because Patriot is now insolvent, liability must fall to the Black Lung Disability Trust Fund. (DX 25.)

The applicable regulations provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." 29 C.F.R. §18.51(a). "Relevant information need not be admissible at the hearing if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The regulations governing the admissibility of testimony in these proceedings provide in pertinent part:

> In accordance with the schedule issued by the district director, all parties must notify the district director of the name and current address of any potential witness whose testimony pertains to the liability of a potentially liable operator or the designated responsible operator. Absent such notice, the testimony of a witness relevant to the liability of a potentially liable operator or the designated responsible operator will not be admitted in any hearing conducted with respect to the claim unless the administrative law judge finds that the lack of notice should be excused due to extraordinary circumstances.

§ 725.414(c). The regulations also provide: "In the case of a witness offering testimony relevant to the liability of the responsible operator, in the absence of extraordinary circumstances, the witness must have been identified as a potential hearing witness while the claim was pending before the district director." § 725.457(c)(1).

The district director's Schedule for the Submission of Additional Evidence ("SSAE") issued on March 17, 2016, explained:

> The designated responsible operator listed above may now submit to this office additional documentary evidence relevant to liability, and may identify witnesses relevant to liability that the designated responsible operator intends to call if the case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.414(b), (c). Absent a showing of extraordinary circumstances, no documentary evidence relevant to liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.456(b)(1).

(DX 27.) The SSAE instructed Employer to submit its liability evidence by May 16, 2016. Employer responded to the SSAE on April 11, 2016. (DX 29.) The record does not reflect that Employer identified either Mr. Chance or Ms. Kasmeier as a potential witness on the issue of liability at any time while this claim was pending before the district director. Employer thus failed to comply with the notice requirement of § 725.414(c).

Accordingly, the deposition testimony of Mr. Chance and Ms. Kasmeier would be admissible in this matter only if extraordinary circumstances exist to excuse Employer's lack of

2

notice. §§ 725.414(c), 725.457(c)(1). Employer makes no argument that extraordinary circumstances are present in this case, and I find none.

Because Employer did not notify the district director that Mr. Chance and Ms. Kasmeier were potential liability witnesses, and extraordinary circumstances do not exist to excuse that lack of notice, the testimony of those individuals would be inadmissible in these proceedings. Therefore, the requested subpoenas are not "reasonably calculated to lead to the discovery of admissible evidence."[1] 29 C.F.R. §18.51(a). I conclude Employer is not entitled to the issuance of the subpoenas, and I **DENY** Employer's request for the subpoenas.

**SO ORDERED**.

LAUREN C. BOUCHER
Administrative Law Judge

Cherry Hill, New Jersey

---

[1] Similarly, the regulations governing the admissibility of documentary evidence in these proceedings provide in pertinent part: "Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director <u>shall not be admitted</u> into the hearing record in the absence of extraordinary circumstances." § 725.456(b)(1) (emphasis added). The record does not reflect that Employer submitted any evidence to the district director on the issue of liability. Employer makes no argument that extraordinary circumstances exist to admit the documents it now seeks, and I find none. Thus, I conclude the subpoenas are not reasonably calculated to lead to the discovery of admissible documentary evidence.

3

**U.S. Department of Labor**

Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

(856) 486-3800
(856) 486-3806 (FAX)



**Issue Date: 17 June 2019**

Case No.:     2017-BLA-05163

In the Matter of

**DAVID M. HOWARD**
          Claimant

          v.

**APOGEE COAL COMPANY**
          Self-Insured Employer

          and

**ARCH COAL INC.**
          Carrier

**DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS**
          Party-in-Interest

<u>**ORDER GRANTING MOTION TO RECONSIDER AND
DENYING REQUEST FOR SUBPOENAS**</u>

This matter involves the claim of David M. Howard ("Claimant") against Apogee Coal Company ("Employer"), self-insured through Arch Coal Inc. ("Arch"), for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, and its implementing regulations, 20 C.F.R. Parts 718 and 725. A hearing is scheduled in this matter on July 17, 2019.

On April 29, 2019, Employer submitted a request for subpoenas to be served on two individuals: (1) Mr. Michael Chance, Director of the U.S. Department of Labor's ("Department") Division of Coal Mine Workers' Compensation ("DCMWC"); and (2) Ms. Kim Kasmeier, an employee of DCMWC. Employer requested subpoenas directing the named individuals to appear for deposition and to produce documents "regarding issues related to Arch Coal's coverage for this claim and [the Department]'s violation of the Administrative Procedure Act."

On May 20, 2019, the Director of the Office of Workers' Compensation Programs ("Director") filed objections to Employer's request for subpoenas. On May 28, 2019, I issued an

order denying Employer's request for subpoenas. On May 29, 2019, Employer filed its opposition to the Director's objections. On June 6, 2019, Employer filed a Motion to Reconsider my order of May 28 on the grounds set forth in Employer's opposition. I **GRANT** Employer's Motion to Reconsider, and I now fully consider Employer's opposition.

<u>Background</u>

As part of its defense, Employer contends that Arch is not the liable insurance carrier in this claim because Patriot Coal Corporation ("Patriot") acquired Employer's assets and liabilities in 2008, and Patriot became Employer's self-insurer. Employer asserts that the Department approved Patriot as a self-insurer, and because Patriot is now insolvent, liability must fall to the Black Lung Disability Trust Fund. (DX 25.)

The Director's objections first assert that the requested subpoenas are not authorized by law. The Director next argues that, because Employer did not identify Mr. Chance or Ms. Kasmeier as potential liability witnesses while the case was pending before the district director, their testimony is inadmissible absent extraordinary circumstances. 20 C.F.R. § 725.414(c); § 725.457(c)(1). Likewise, the Director contends Employer's document requests are improper because any liability-related documentary evidence not submitted to the district director is inadmissible absent extraordinary circumstances. § 725.414(d); § 725.456(b)(1). The Director maintains extraordinary circumstances are not present here.

The Director also emphasizes that Claimant was never employed by Patriot or a Patriot-owned subsidiary. Because Arch was Employer's self-insurer at the time Claimant worked for Employer as a miner, the Director asserts it is clear that Employer, as self-insured by Arch, is liable in this matter. Finally, the Director argues that the decision issued in *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018), precludes any argument that Bulletin No. 16-01 was issued in violation of the APA and precludes further litigation of (and discovery related to) that issue.

Employer's opposition asserts the information it seeks is relevant to its defense because Bulletin 16-01 created a new and impermissibly retroactive rule that imposes "perpetual parental liability" on Arch Coal and other self-insured mine operators, in violation of the APA. Employer also argues the regulations limiting the introduction of liability-related evidence do not apply here because its arguments relate to coverage of the insurance carrier, whereas the plain language of the regulations applies only to liability of the responsible operator. Employer emphasizes that the Department cannot claim surprise that its own employees have knowledge and information relevant to Employer's defense. Employer also emphasizes that it contested Arch's liability at all stages of this matter.

In the alternative, Employer argues extraordinary circumstances exist to permit the development and admission of its liability evidence. Specifically, Employer explains that, when this matter was pending before the district director, the *Acosta* case was still pending—so the issues of whether the federal district court or the administrative agency had jurisdiction to decide Arch's liability and whether there was an APA violation—were still pending, and Arch "had no reason to develop and submit the evidence to the district director." (Empl. Opp. 11.) Employer

2

emphasizes that, since *Acosta*, and despite representations that the Director would comply with discovery, the Director has obstructed its discovery efforts in numerous cases by refusing to produce information and opposing subpoena requests.

Employer contends that, even if it had sought discovery in this case, it "had no way to compel DOL to produce the requested information and documents when the matter was before the district director" and "could only seek discovery on the issue when the matter was sent to an ALJ." (Empl. Opp. 12.) Employer also contends that submission of its liability evidence to the district director "would have made no difference" to Arch's designation in light of Bulletin 16-01. (Empl. Opp. 12.) Finally, Employer disputes the Director's argument that the *Acosta* decision precludes its discovery efforts and contends the applicable regulations are invalid.

### Applicable Regulations

The regulations governing the admissibility of *testimony* in these proceedings provide in pertinent part:

> In accordance with the schedule issued by the district director, all parties must notify the district director of the name and current address of any potential witness whose testimony pertains to the liability of a potentially liable operator or the designated responsible operator. Absent such notice, the testimony of a witness relevant to the liability of a potentially liable operator or the designated responsible operator will not be admitted in any hearing conducted with respect to the claim unless the administrative law judge finds that the lack of notice should be excused due to extraordinary circumstances.

§ 725.414(c) (emphasis added). The regulations also provide: "In the case of a witness offering testimony relevant to the liability of the responsible operator, in the absence of extraordinary circumstances, the witness must have been identified as a potential hearing witness while the claim was pending before the district director." § 725.457(c)(1).

Similarly, the regulations governing the admissibility of *documentary* evidence in these proceedings provide in pertinent part: "Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances." § 725.456(b)(1) (emphasis added).

The regulations governing the general development of evidence reinforce this point: "Except to the extent permitted by §§725.456 and 725.310(b), the limitations set forth in this section apply to all proceedings conducted with respect to a claim, and no documentary evidence pertaining to liability may be admitted in any further proceeding conducted with respect to a claim unless it is submitted to the district director in accordance with this section." § 725.414(d).

The district director's Schedule for the Submission of Additional Evidence ("SSAE") issued on March 17, 2016, explained:

3

The designated responsible operator listed above may now submit to this office additional documentary evidence relevant to liability, and may identify witnesses relevant to liability that the designated responsible operator intends to call if the case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.414(b), (c). Absent a showing of extraordinary circumstances, no documentary evidence relevant to liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.456(b)(1).

(DX 27.) The SSAE instructed Employer to submit its liability evidence by May 16, 2016. Employer responded to the SSAE on April 11, 2016. (DX 29.) The record does not reflect that Employer identified either Mr. Chance or Ms. Kasmeier as a potential witness on the issue of liability at any time while this claim was pending before the district director. Employer thus failed to comply with the notice requirement of § 725.414(c). Accordingly, assuming for the sake of argument that the deposition testimony of Mr. Chance and Ms. Kasmeier is relevant, it would be admissible in this matter only if extraordinary circumstances exist to excuse Employer's lack of notice. §§ 725.414(c), 725.457(c)(1).

Likewise, the record does not reflect that Employer submitted any evidence to the district director on the issue of liability or propounded any discovery requests on the Department for documents relevant to the issue of liability. Therefore, assuming for the sake of argument that the documents Employer seeks are relevant, they would be admissible in this matter only if extraordinary circumstances exist to excuse Employer's failure to produce them to the district director. §§ 725.414(d), 725.456(b)(1).

<u>Extraordinary Circumstances</u>

The regulations are clear that neither testimony (of witnesses not timely identified to the district director) nor documentary evidence (not timely provided to the district director) related to liability may be admitted in these proceedings absent extraordinary circumstances. The Director argues there are no extraordinary circumstances in this matter that would permit admission of the requested testimony and documents. Employer argues, however, that the extraordinary circumstances standard does not apply here. In the alternative, Employer argues that extraordinary circumstances do exist to permit the development and admission of its liability evidence.

Employer first explains that the issue here is liability of the insurance carrier (Arch), not liability of the designated responsible operator (Apogee Coal Company). Employer contends that the plain language of the regulations governing the admissibility of liability evidence addresses the liability of an operator, not a carrier. Employer concludes the regulations governing admissibility of evidence relating to responsible operator liability are inapplicable to evidence relating to carrier liability, so the testimony and documents it seeks would be admissible in these proceedings.

4

The Benefits Review Board ("Board") has previously determined that the regulations governing liability evidence apply to carriers as well as to operators. *See Olenick v. Olenick Bros. Coal Co.*, BRB No. 11-0833 BLA, 2012 WL 5267588 (Sept. 19, 2012) (unpub.) (citing *Boyd v. Peres Processing, Inc.*, BRB No. 08-0625 BLA, 2009 WL 2104861 (June 30, 2009) (unpub.)). Additionally, § 725.414(d) generally prohibits the admission of "documentary evidence pertaining to liability" that was not submitted to the district director (without reference to carrier or operator liability).

Moreover, the regulatory limits on the admission of liability evidence are designed to ensure that the district director has all relevant evidence before designating a responsible operator and/or carrier. As the Board explained: "[b]ecause the identification of the responsible operator or carrier must be finally resolved by the district director before a case is referred to the OALJ, the regulations require that, absent extraordinary circumstances, all liability evidence must be submitted to the district director." *Marcum v. Excel Mining, Inc.* BRB Nos. 17-0130 BLA, 17-0130 BLA-A, 2017 WL 6049474 (Nov. 30, 2017) (unpub) (emphasis added); *see also McClanahan v. Brem Coal Co.*, BRB No. 18-0052 BLA, 2018 WL 7046796 (Dec. 12, 2018); § 725.418(d) ("The proposed decision and order must reflect the district director's final designation of the responsible operator liable for the payment of benefits."). Thus, the regulatory purpose is equally served by requiring potential carriers (as well as operators) to present all liability evidence to the district director.

Employer emphasizes that the Director is in possession of the requested information, so the Department cannot claim surprise, and any argument that the information was not timely submitted is unavailing. Employer's argument fails to recognize that the regulations are designed to ensure that the *district director* has all relevant evidence before designating a responsible operator and/or carrier because, as explained, once the district director makes that designation, it is final. Other potentially liable operators/carriers are dismissed, and the district director is not permitted to designate a different responsible operator or carrier after the claim is referred to OALJ. § 725.407(d). Employer has cited no authority to support the argument that documents or information in the possession of the Director (or the Department generally) can be imputed to the district director. The regulations specifically differentiate between the roles of Director and district director. §725.101(15)-(16).

It is Employer that believes the testimony and documents it now seeks are relevant to this matter and to Arch's liability, so it was incumbent upon Employer to seek those documents from the Director. Importantly, Employer made no effort to obtain this information while this claim was pending before the district director. Employer contends that, even if it had sought discovery in this case, it had no way to compel the Director to produce any information. On this basis, and because the Director has not complied with Employer's discovery requests in other cases, Employer apparently decided not to seek discovery in this case. That Employer would not be able to compel production of the evidence until a later stage in the proceedings (in the event the Director refused to comply with its discovery requests) does not excuse Employer's failure to make any effort to obtain the information and does not constitute extraordinary circumstances.

Employer asserts the nature of the coverage dispute was clear while this claim was pending before the district director because it contested Arch's designation as Employer's self-

insurer and requested that the district director instead name Patriot as the responsible entity. Employer argues that the Department "cannot ignore a party's request for documents that it had or should have had in its possession which shows that DOL's designation of the self-insurer was wrong and then bar discovery and admission of such evidence once the case has been referred for hearing." (Empl. Opp. 11.) Employer's argument may be compelling if Employer had attempted to obtain, *in this claim*, the information it now seeks. However, as noted above, Employer did not seek discovery of any liability-related documents *in this claim*. Instead, Employer generally argues that the Director has obstructed its discovery efforts in other cases. The Director's actions in separate claims, though, have no bearing on how the regulations apply to the evidence in this claim.

Employer speculates that, even if it had obtained evidence relevant to its liability through discovery and submitted it to the district director, any such evidence would have been ignored and would not have made a difference in Arch's designation as the responsible carrier. Employer contends it believed that the Department may not have jurisdiction to decide the coverage dispute it raises, so it had "no reason" to develop its liability evidence or submit it to the district director.

To the contrary, the reason to develop this evidence before the district director is that the regulations specifically require Employer to do so. Even if it believed that a court would agree with its jurisdictional argument, the regulations were (and are) in effect during the pendency of this claim. It was Employer's responsibility to comply with those regulations regardless of whether the district director ultimately designated Arch as the responsible carrier or whether it was ultimately determined that the coverage issue should be decided by a court. Employer's own failure to abide by the applicable regulations does not constitute extraordinary circumstances. I am not indifferent to Employer's due process rights. However, by failing to make any effort at seeking or presenting liability evidence before the district director, Employer itself has failed to secure its right to present such evidence at this stage in the proceedings.

Based on the foregoing analysis, I conclude the regulations restricting the presentation of liability evidence are applicable here. I also conclude extraordinary circumstances do not exist to permit the admission of the deposition testimony or the documentary evidence Employer now seeks.

Because Employer did not notify the district director that Mr. Chance and Ms. Kasmeier were potential liability witnesses, and extraordinary circumstances do not exist to excuse that lack of notice, the testimony of those individuals would be inadmissible in these proceedings. Similarly, because Employer did not submit its documentary liability evidence to the district director (or even seek to obtain it at that stage in the proceedings), and extraordinary circumstances do not exist to excuse that failure, the documents Employer now seeks would be inadmissible in these proceedings. Therefore, the requested subpoenas are not "reasonably calculated to lead to the discovery of admissible evidence." 29 C.F.R. §18.51(a).[1]

---

[1] Because I decide the requested subpoenas seek inadmissible evidence, I need not decide whether the evidence is relevant or whether the *Acosta* decision precludes discovery of the evidence. Additionally, I lack the authority to invalidate the applicable regulations. Employer has preserved its arguments for appeal.

6

Accordingly, I conclude Employer is not entitled to the issuance of the subpoenas, and I **DENY** Employer's request for the subpoenas.

**SO ORDERED**.



Digitally signed by Lauren C. Boucher
DN: CN=Lauren C. Boucher,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=CHERRY HILL, S=NJ, C=US
Location: CHERRY HILL NJ

**LAUREN C. BOUCHER**
Administrative Law Judge

Cherry Hill, New Jersey

7

<center>**SERVICE SHEET**</center>

Case Name:  **HOWARD_DAVID_M_v_APOGEE_COAL_COMPANY__**

Case Number: **2017BLA05163**

Document Title: **ORDER GRANTING MOTION TO RECONSIDER AND**

I hereby certify that a copy of the above-referenced document was sent to the following this 17th day of June, 2019:


Digitally signed by Donna M. Broome
DN: CN=Donna M. Broome, OU=Paralegal
Specialist, O=US DOL Office of
Administrative Law Judges, L=CHERRY
HILL, S=NJ, C=US
Location: CHERRY HILL NJ

**Donna M. Broome**
Paralegal Specialist

District Director
United States Department of Labor
OWCP_DCMWC
200 Constitution Ave., NW
RM N3464
WASHINGTON DC 20210
    *{Hard Copy - Regular Mail}*

Associate Regional Solicitor
U. S. Department of Labor
Suite 230
618 Church Street
NASHVILLE TN 37219-2456
    *{Hard Copy - Regular Mail}*

Mark Solomons, Esq.
Greenberg Traurig, LLP
2101 LStreet N.W. Suite 1000
WASHINGTON DC 20037
    *{Hard Copy - Regular Mail}*

Matt Shepherd, Esq.
Associate Regional Solicitor
US Dept of Labor
Suite 230
Church Street
NASHVILLE TN 37219
    *{Hard Copy - Regular Mail}*

Ron Carson, Program Director
Stone Mountain Health Services
P.O. Drawer S
ST. CHARLES VA 24282-0269
    *{Hard Copy - Regular Mail}*

W. William Prochot, Esq.
Greenberg Traurig, LLP
2101 L Street, NW, STE 1000
WASHINGTON DC 20037
    *{Hard Copy - Regular Mail}*

David M. Howard
P.O. Box 135
BAXTER KY 40806
    *{Hard Copy-Registered Mail}*

Apogee Coal Company Inc.
c/o Healthsmart CCS
P.O. Box 3389
CHARLESTON WV 25333
       *{Hard Copy - Regular Mail}*

Arch Coal Inc.
1 City Place Drive, STE 300
ST. LOUIS MO 63141
       *{Hard Copy - Regular Mail}*

**U.S. Department of Labor**

Office of the Solicitor
618 Church Street, Suite 230
Nashville, Tennessee 37219
615/781-5330, ext. 231 (tel)
615/781-5321 (fax)
smith.christopher.m@dol.gov
SOL/CMS



VIA REGULAR U.S. MAIL

July 3, 2019

Patricia C. Karppi, Esq.
Greenberg Traurig, LLP
2101 L Street N.W., Suite 1000
Washington, D.C. 20037

Re:    David M. Howard, Claimant, v. Apogee Coal Company LLC, et. al.
        Case No. 2017-BLA-05163
        OWCP No. XXX-XX-6902

Dear Ms. Karppi:

Enclosed please find the Director's Response to Arch Coal's Interrogatories and Requests for
Production of Documents Regarding Liability.

Very truly yours,

THERESA BALL
Associate Regional Solicitor

By _____
    CHRISTOPHER M. SMITH
    Attorney

Enclosure

cc:

Robin Napier
Stone Mountain Health Services
P.O. Drawer S
St. Charles, Virginia 24282
(w/ enclosure)

UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES
Cherry Hill, New Jersey

| | |
|---|---|
| IN THE MATTER OF | ) |
| | ) |
| DAVID M. HOWARD, | ) |
|     Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| APOGEE COAL COMPANY LLC, | ) |
|     Employer, | ) |
| | ) |
| self-insured through | ) |
| | ) |
| ARCH COAL, INC., c/o | ) |
| HEALTHSMART CCS, | ) |
|     Carrier, | ) |
| | ) |
| and | ) |
| | ) |
| DIRECTOR, OWCP, | ) |
|     Party in Interest. | ) |

Case No. 2017-BLA-05163
OWCP No. XXX-XX-6902

Administrative Law Judge:
Lauren C. Boucher

## DIRECTOR'S RESPONSE TO ARCH COAL'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS REGARDING LIABILITY

Pursuant to the applicable procedural rules in 20 C.F.R. Parts 718 and 725, Office of Administrative Law Judges Rules of Practice and Procedure, and Federal Rules of Civil Procedure, the Director, Office of Workers' Compensation Programs, submits her responses and objections to the Interrogatories and Requests for Production of Documents Regarding Liability ("Interrogatories and Requests") propounded by Apogee Coal Co., self-insured through Arch Coal, Inc. ("Employer").

## GENERAL

1. By answering any part of the Interrogatories and Requests and/or by providing any part of the requested information, the Director does not concede the relevance, materiality or

admissibility of any of the information sought therein for use as evidence in any hearing. The Director expressly reserves the right to object to further discovery on the subject matter and claims in any of these Interrogatories and Requests.

  2. The Director objects to Employer's definition of the "Department of Labor" ("DOL"). The Department of Labor has over 17,000 employees and innumerable contractors, who could each fit within Defendants' definition. Thus, unless otherwise noted, the Director will respond to these interrogatories on behalf of the Office of Workers' Compensation Programs ("OWCP") and the Atlanta Region of the Solicitor's Office, of which the Nashville Solicitor's Office is a part.

## INTERROGATORIES

**Interrogatory No. 1:** Identify (a) the person(s) answering these interrogatories and requests for production and (b) the person(s) consulted in connection with the preparation of the answers to them.

**Response:** The Director objects to the extent that this interrogatory seeks information subject to the work product and deliberative process privileges. Notwithstanding these objections, the Director states that the legal responses, which consist of objections, were provided by Director's counsel.

**Interrogatory No. 2:** Identify the person(s) who participated in or contributed to the development of BLBA Bulletin No. 16-01.

**Response:** The Director objects to this interrogatory as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R.

2

§§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

The Director further objects to this interrogatory as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch Coal, Inc. ("Arch") is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. This interrogatory seeks information to support Arch's argument that BLBA Bulletin No. 16-01 (the "Bulletin") is a rule subject to Administrative Procedure Act requirements, which is not relevant to the question of Arch's liability in this case. In addition, this issue is no longer legitimately in dispute after the D.C. Circuit's decision in *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. Apr. 27, 2018) ("*Acosta*"). In *Acosta*, the D.C. Circuit rejected Arch's argument that the Bulletin is "a substantive 'rule.'" *Id.* at 501 (citing 5 U.S.C. § 551(4)). The court recognized that the Bulletin is, instead, "an enforcement policy," which "only requires District Directors to initiate proceedings concerning Arch's potential responsibility for [certain] claims" under the BLBA. *Id.* The court further noted: "It is well understood that the notice-and-comment provisions . . . of the [Administrative Procedure Act, 5 U.S.C. §§ 551-559] do not apply to [such] agency bulletins . . . ." *Id.* In light of the D.C. Circuit's decision in *Acosta*, there is no valid basis for this interrogatory. Arch may not conduct discovery now on an issue that it has already litigated and lost in federal court. *See Muscar v. Director, OWCP*, 18 BLR 1-7, 1-8 (DOL Ben. Rev. Bd. Sept. 23, 1993) ("An inferior court has no power or authority to deviate from the mandate issued by an appellate court.") (citing *Briggs v. Pa. R. Co.*, 334 U.S. 304 (1948)); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 218-21 (4th Cir. 2006) (applying the doctrine of collateral estoppel to bar a coal company's re-litigation of whether a miner had pneumoconiosis).

3

**Interrogatory No. 3:** Identify any and all policies, procedures, manuals, instructions or other documents and communications provided to claims examiners instructing them on how to administer or implement BLBA Bulletin No. 16-01.

**Response:** The Director objects to this interrogatory as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

The Director further objects to this interrogatory as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch Coal, Inc. ("Arch") is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. This interrogatory seeks information to support Arch's argument that BLBA Bulletin No. 16-01 (the "Bulletin") is a rule subject to Administrative Procedure Act requirements, which is not relevant to the question of Arch's liability in this case. In addition, this issue is no longer legitimately in dispute after the D.C. Circuit's decision in *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. Apr. 27, 2018) ("*Acosta*"). In *Acosta*, the D.C. Circuit rejected Arch's argument that the Bulletin is "a substantive 'rule.'" *Id.* at 501 (citing 5 U.S.C. § 551(4)). The court recognized that the Bulletin is, instead, "an enforcement policy," which "only requires District Directors to initiate proceedings concerning Arch's potential responsibility for [certain] claims" under the BLBA. *Id.* The court further noted: "It is well understood that the notice-and-comment provisions . . . of the [Administrative Procedure Act, 5 U.S.C. §§ 551-559] do not apply to [such] agency bulletins . . . ." *Id.* In light of the D.C. Circuit's decision in *Acosta*, there is no

4

valid basis for this interrogatory. Arch may not conduct discovery now on an issue that it has already litigated and lost in federal court. *See Muscar v. Director, OWCP*, 18 BLR 1-7, 1-8 (DOL Ben. Rev. Bd. Sept. 23, 1993) ("An inferior court has no power or authority to deviate from the mandate issued by an appellate court.") (citing *Briggs v. Pa. R. Co.*, 334 U.S. 304 (1948)); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 218-21 (4th Cir. 2006) (applying the doctrine of collateral estoppel to bar a coal company's re-litigation of whether a miner had pneumoconiosis).

The Director also objects to the extent that this interrogatory seeks information subject to the attorney-client, work product, and deliberative process privileges.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:** Any and all documents or communications supporting or referenced in DOL's response to Interrogatory No. 3.

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. This request for production seeks information to support Arch's argument that BLBA Bulletin No. 16-01 (the "Bulletin") is a rule

subject to Administrative Procedure Act requirements, which is not relevant to the question of Arch's liability in this case. In addition, this issue is no longer legitimately in dispute after the D.C. Circuit's decision in *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. Apr. 27, 2018) ("*Acosta*"). In *Acosta*, the D.C. Circuit rejected Arch's argument that the Bulletin is "a substantive 'rule.'" *Id.* at 501 (citing 5 U.S.C. § 551(4)). The court recognized that the Bulletin is, instead, "an enforcement policy," which "only requires District Directors to initiate proceedings concerning Arch's potential responsibility for [certain] claims" under the BLBA. *Id.* The court further noted: "It is well understood that the notice-and-comment provisions . . . of the [Administrative Procedure Act, 5 U.S.C. §§ 551-559] do not apply to [such] agency bulletins . . . ." *Id.* In light of the D.C. Circuit's decision in *Acosta*, there is no valid basis for this interrogatory. Arch may not conduct discovery now on an issue that it has already litigated and lost in federal court. *See Muscar v. Director, OWCP*, 18 BLR 1-7, 1-8 (DOL Ben. Rev. Bd. Sept. 23, 1993) ("An inferior court has no power or authority to deviate from the mandate issued by an appellate court.") (citing *Briggs v. Pa. R. Co.*, 334 U.S. 304 (1948)); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 218-21 (4th Cir. 2006) (applying the doctrine of collateral estoppel to bar a coal company's re-litigation of whether a miner had pneumoconiosis).

The Director also objects to the extent that this request for production seeks information subject to the attorney-client, work product, and deliberative process privileges.

**Request for Production No. 2:**   Any and all documents in any format used in the development and adoption of BLBA Bulletin No. 16-01.

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the

6

Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. This request for production seeks information to support Arch's argument that BLBA Bulletin No. 16-01 (the "Bulletin") is a rule subject to Administrative Procedure Act requirements, which is not relevant to the question of Arch's liability in this case. In addition, this issue is no longer legitimately in dispute after the D.C. Circuit's decision in *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. Apr. 27, 2018) ("*Acosta*"). In *Acosta*, the D.C. Circuit rejected Arch's argument that the Bulletin is "a substantive 'rule.'" *Id.* at 501 (citing 5 U.S.C. § 551(4)). The court recognized that the Bulletin is, instead, "an enforcement policy," which "only requires District Directors to initiate proceedings concerning Arch's potential responsibility for [certain] claims" under the BLBA. *Id.* The court further noted: "It is well understood that the notice-and-comment provisions . . . of the [Administrative Procedure Act, 5 U.S.C. §§ 551-559] do not apply to [such] agency bulletins . . . ." *Id.* In light of the D.C. Circuit's decision in *Acosta*, there is no valid basis for this interrogatory. Arch may not conduct discovery now on an issue that it has already litigated and lost in federal court. *See Muscar v. Director, OWCP*, 18 BLR 1-7, 1-8 (DOL Ben. Rev. Bd. Sept. 23, 1993) ("An inferior court has no power or authority to deviate from the mandate issued by an appellate court.") (citing *Briggs v. Pa. R. Co.*, 334 U.S. 304 (1948)); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 218-21 (4th Cir. 2006) (applying the doctrine of collateral estoppel to bar a coal company's re-litigation of whether a miner had pneumoconiosis).

7

The Director also objects to the extent that this request for production seeks information subject to the attorney-client, work product, and deliberative process privileges.

**Request for Production No. 3:** The self-insurance agreement that allegedly makes Arch Coal liable for this claim.

**Response:** The Director objects to this request for production as untimely, unlikely to lead to admissible evidence, and unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

**Request for Production No. 4:** Any and all other documents in any format that DOL believes establish Arch Coal's liability for this claim.

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

**Request for Production No. 5:** Any and all documents in any format that relate to Patriot Coal's federal black lung self-insurance program, Patriot Coal's application(s) for self-insurance, DOL's approval of Patriot Coal's self-insurance program or application(s) and any plan for the disposition or distribution of Patriot Coal's self-insurance assets.

8

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

This request for production is also unduly burdensome because the Director previously produced documents responsive to an identical request for production from Arch Coal in two district director claims: *Thomas Christopher Ward v. Catenary Coal Company UC*, OWCP No. xxx-xx-2731; and *Michael G. Cash v. Arch of Kentucky/Apogee Coal Co.*, OWCP No. xxx-xx-5853.

**Request for Production No. 6:** Any and all documents in any format relating to DOL's approvals of Arch Coal as a federal black lung self-insurer from July 1997 to the present and DOL's response to Arch Coal's letter of January 5, 2006, informing DOL that Arch Coal would no longer cover past, present or future liabilities for the subsidiaries that it sold to Magnum Coal Company as of January 1, 2006.

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

9

**Request for Production No. 7:** Any and all documents in any format relating to how DOL allocates liability for federal black lung claims of coal miners who worked for Magnum Coal on or after January 1, 2006.

**Response:** The Director objects to this request for production as untimely, unlikely to lead to admissible evidence, and unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown and cannot show extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Claimant never worked for Magnum Coal. *See* DX 3, 8.

**Request for Production No. 8:** Any and all documents in any format addressing how DOL allocated black lung liability in cases filed before the BLBA Bulletin No. 16-01 was issued involving the parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

**Response:** The Director objects to this request for production as untimely, unlikely to lead to admissible evidence, and unduly burdensome, especially as the request does not appear to be bounded in time. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown and cannot show extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. §

10

18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. How liability was allocated in other cases is immaterial to the resolution of this claim.

The Director further objects to the extent that this request for production seeks information subject to the attorney-client, work product, and deliberative process privileges.

**Request for Production No. 9:** Any and all documents in any format other than BLBA Bulletin No. 16-01 from 1974 to present providing instructions to claims examiners relating to parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent.

**Response:** The Director objects to this request for production as untimely, unlikely to lead to admissible evidence, and unduly burdensome, especially as it seeks the production of documents from the past 44 years. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown and cannot show extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. How liability was allocated in other cases is irrelevant to this case.

The Director further objects to the extent that this request for production seeks information subject to the attorney-client, work product, and deliberative process privileges.

11

**Request for Production No. 10:** Any and all documents in any format including public comments received relating to DOL's "Proposed Collection of Information: Comment Request" at 82 Fed. Reg. 50166 (Oct. 30, 2017), which requires a mine operator as a condition of being authorized to self-insure black lung liabilities to have its parent company, if any, forever guarantee the payment of black lung benefits to miners who worked during any period for a self-insured subsidiary.

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown and cannot show extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. How liability may be allocated in other cases is irrelevant to this case.

**Request for Production No. 11:** Any parental guaranty form, agreement or document that DOL used in self-insurance applications and renewals before January 1, 2006.

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R.

12

§§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a[] party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. Documents used in self-insurance applications and renewals in other cases are irrelevant to this case.

The Director further objects to the extent that this request for production seeks information subject to the attorney-client, work product, and deliberative process privileges.

**Request for Production No. 12:** Any parental guaranty form, agreement or document that DOL currently uses in self-insurance applications and renewals.

**Response:** The Director objects to this request for production as untimely and unlikely to lead to admissible evidence, and thus unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown, and cannot show, extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a[] party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. Documents used in self-insurance applications and renewals in other cases are irrelevant to this case.

13

The Director further objects to the extent that this request for production seeks information subject to the attorney-client, work product, and deliberative process privileges.

**Request for Production No. 13:**     All documents, not otherwise identified, that you reviewed or considered in responding to these Interrogatories.

**Response:** The Director objects to this request for production as untimely, unlikely to lead to admissible evidence, and unduly burdensome. No documentary evidence pertaining to liability that was not submitted before the District Director may be admitted before the Administrative Law Judge without a showing of extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(d), 725.456(b)(1). Employer has not shown and cannot show extraordinary circumstances for presenting new evidence here.

The Director further objects to this request for production as irrelevant. Discovery is permissible only with respect to matters that are "relevant to a party's claim or defense." 29 C.F.R. § 18.51(a). The issue in this case is whether Arch is liable for any benefits awarded to this specific claimant under the BLBA and its implementing regulations. This request for production and the interrogatories above seek information to support Arch's argument that BLBA Bulletin No. 16-01 (the "Bulletin") is a rule subject to Administrative Procedure Act requirements, which is not relevant to the question of Arch's liability in this case. In addition, this issue is no longer legitimately in dispute after the D.C. Circuit's decision in *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. Apr. 27, 2018) ("*Acosta*"). In *Acosta*, the D.C. Circuit rejected Arch's argument that the Bulletin is "a substantive 'rule.'" *Id.* at 501 (citing 5 U.S.C. § 551(4)). The court recognized that the Bulletin is, instead, "an enforcement policy," which "only requires District Directors to initiate proceedings concerning Arch's potential responsibility for [certain] claims" under the BLBA. *Id.* The court further noted: "It is well understood that the notice-and-comment provisions . . . of the [Administrative

14

Procedure Act, 5 U.S.C. §§ 551-559] do not apply to [such] agency bulletins . . . ." *Id.* In light of the D.C. Circuit's decision in *Acosta*, there is no valid basis for this interrogatory. Arch may not conduct discovery now on an issue that it has already litigated and lost in federal court. *See Muscar v. Director, OWCP*, 18 BLR 1-7, 1-8 (DOL Ben. Rev. Bd. Sept. 23, 1993) ("An inferior court has no power or authority to deviate from the mandate issued by an appellate court.") (citing *Briggs v. Pa. R. Co.*, 334 U.S. 304 (1948)); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 218-21 (4th Cir. 2006) (applying the doctrine of collateral estoppel to bar a coal company's re-litigation of whether a miner had pneumoconiosis).

The Director also objects to the extent that this request for production seeks information subject to the attorney-client, work product, and deliberative process privileges.

Signed as to objections,

KATE S. O'SCANNLAIN
Solicitor of Labor

STANLEY E. KEEN
Regional Solicitor

Post Office Address:

U. S. Department of Labor
Office of the Solicitor
618 Church Street
Suite 230
Nashville, Tennessee 37219

THERESA BALL
Associate Regional Solicitor

CHRISTOPHER M. SMITH
Attorney

Phone: 615/781-5330, ext. 231
Fax: 615/781-5321

U. S. Department of Labor
Attorneys for Director, OWCP

15

## CERTIFICATE OF SERVICE

I hereby certify that copies of the Director's Response to Arch Coal's Interrogatories and Requests for Production of Documents Regarding Liability were sent by postage-pre-paid, first-class mail this 3rd day of July, 2019, to:

Patricia C. Karppi, Esq.
Greenberg Traurig, LLP
2101 L Street N.W., Suite 1000
Washington, D.C. 20037

Robin Napier
Stone Mountain Health Services
P.O. Drawer S
St. Charles, VA 24282

CHRISTOPHER M. SMITH
Attorney

|  |  |
|---|---|
| DAVID M. HOWARD, ) | |
| Claimant, ) | |
| ) | |
| v. ) | Case No: 2017-BLA-05163 |
| ) | |
| APOGEE COAL CO., LLC, *et al.*, ) | OWCP No. xxx-xx-6902 |
| ) | |
| Employer, ) | ALJ Lauren Boucher |
| and ) | |
| ) | |
| DIRECTOR, OFFICE OF WORKERS' ) | |
| COMPENSATION PROGRAMS, UNITED ) | |
| STATES DEPARTMENT OF LABOR, ) | |
| ) | |
| Party-in-Interest. ) | |

## CLOSING BRIEF

Apogee Coal Co. ("Apogee") and Arch Coal submit this brief in support of their position that if this ALJ has authority to decide this claim,[1] it should be denied and that Arch Coal must be dismissed. The claimant, David Howard, left mining in 1997, due to a totally disabling back, neck and knee injury, which is not compensable under the Black Lung Benefits Act. The evidence proves that his totally disabling respiratory impairment was due to his twenty-five to fifty pack/year smoking habit. Even if benefits are due, Arch Coal is not a proper party and liability should be transferred to the Black Lung Disability Trust Fund.

---

[1] Apogee preserves its objections to the adjudication of this claim by any current DOL ALJ who is still part of the competitive service. That appointment and the removal provisions violate *Lucia v. Securities and Exchange Comm'n,* 585 U.S. ___, 138 S.Ct. 2044 (2018), *Free. Enter. Fund. v. Public Co. Accounting Oversight Bd..,* 561 U.S. 477, 492-93 (2010), Art. II, § 2, cl. 2 of the Constitution and Executive Order 13843 (2018). *See* Motion To Cancel Hearing (January 25, 2019), Prehearing Statement (June 25, 2019), Hearing Tr. 47-49. *See also* Ex. 10.

## STATEMENT OF THE CASE

Howard filed for benefits on November 19, 2014. Dx. 2. He identified his last employer as Apogee, stating that his employment ended in February 1997. Dx. 3. On December 31, 2005, Arch Coal sold Apogee and its federal black lung liabilities to Magnum Coal. It promptly informed the Department of Labor ("DOL") of the sale and renewed and adjusted its self-insurance applications to exclude Apogee in 2006, 2012 and 2015. Dx. 24, Ex. 12-Ex. 17, Ex. 19-Ex. 20. DOL approved those applications, none of which provided insurance coverage for any employee of Apogee no matter when they worked. Through a series of transactions, Patriot ultimately acquired Apogee's assets and liabilities in 2008. In 2011, DOL approved Patriot's application for self-insurance which included coverage of Apogee's past, present and future liabilities. Ex. 16, Ex. 19, Ex. 20. DOL did not require Arch Coal to include any Apogee claim in its self-insurance program. *See* Ex. 17 (Briscoe Tr.) at 51-56. It did not inform Arch Coal that it retained potential contingent liability for Apogee. And, DOL never notified Apogee–or Arch Coal-- of any alleged violations of 20 C.F.R. § 726.300. *Id.* at 54-55. As a self-insurer, pursuant to 20 C.F.R. § 726.102(b)(3), Arch Coal thus rid itself of liability for this claim. *See* Ex. 17 (Briscoe Tr. at 62)(renewed applications excluding Apogee establish that Arch Coal "provided no coverage for any of the Magnum claims"); 20 C.F.R. § 725.495(a)(4).

Thus. after Howard filed this claim, the district director named Apogee as the responsible operator and Patriot Coal as the responsible insurer. Dx. 2, Dx. 21. Patriot Coal responded to the notice of claim and agreed that it was a proper party. Dx. 23. Similarly, in the schedule issued in August 2015, the district director again named Patriot Coal as the insurer for this claim. Dx. 26. In October 2015, Patriot's insurance assets were ceded to DOL and Patriot was dissolved. *See In re: Patriot Coal*, No. 15-32450 (Bankr. E.D. Va. 2015). In November 2015, DOL issued

Bulletin 16-01 imposing liability on Arch Coal as the responsible self-insurer in cases involving its sold subsidiaries where the last day of the miner's work was before December 31, 2005. On December 8, 2015, the district director issued a second Notice of Claim that, for the first time, named Arch Coal as the insurer for this claim. Dx. 22.

In early 2016, Arch Coal filed suit to challenge Bulletin 16-01. *Arch Coal, Inc. v. Perez*, No. 16-cv-00669-JDB (D.D.C. 2016). In defending the Bulletin, the government assured the court that the Bulletin does not "determine Arch's rights or obligations" but merely requires Arch to "participate in an agency proceeding." Answering Brief, *Arch Coal, Inc. v. Acosta*, 2017 WL 4386632, at *29 (D.C. Cir. Oct. 2. 2017). The D.C. Circuit affirmed the district court's dismissal for lack of jurisdiction without addressing the merits of Arch's challenge to the Bulletin or its assertions that DOL's actions violated the BLBA and APA, concluding that Arch's arguments fell within the exclusive authority of the BLBA. *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 499-500 (D.C. Cir. 2018). The Court, however, held that "Arch is entitled to reasonable discovery before the Department." *Id.* at 502.

In the meantime, on September 26, 2016, the district director proposed an award of benefits in Howard's case and named Apogee–not Arch Coal--as the responsible operator and Patriot Coal—not Arch Coal--as the insurer.[2] Dx. 44 at 11. To avoid the entry of a default judgment, Arch Coal, through its attorney, responded to the proposed decision, and again agreed that Patriot Coal, not Arch Coal, was the proper self-insurer. Dx. 45. At no time did the district director address Arch's arguments or provide (or even cite) any insurance policy or self-insurance agreement

---

[2]     Because the district director did not properly name and serve Arch Coal, Arch Coal filed a Motion to Transfer Liability to the Trust Fund arguing that these failures violated due process. On July 10, 2019, this ALJ concluded that the reference to Patriot was a typographical error and any failure to name or serve Arch Coal did not constitute a due process violation. Arch Coal respectfully disagrees with the ALJ's order for the reasons set forth in its motion dated June 19, 2019.

that showed that Arch Coal still insured this claim. *Id.* The claim proceeded to the Office of Administrative Law Judges for a hearing, which occurred on October 30, 2017, before ALJ Scott Morris. Before a decision on the merits, the case then was reassigned to this ALJ for *de novo* proceedings pursuant to *Lucia, supra.*

Prior to the *de novo* hearing, Arch Coal propounded written discovery to DOL regarding support for certain statements in DOL's preamble. In an order dated July 31, 2019, this ALJ prohibited this discovery stating that Arch Coal can challenge the ALJ's reliance on the preamble by an appeal or through expert witness testimony. Arch Coal also requested that the ALJ issue subpoenas to two DOL employees (Michael Chance and Kim Kasmeier) to testify regarding Arch Coal's liability, Patriot Coal's self-insurance program and the allocation of Patriot Coal's assets to cover certain black lung claims. Arch Coal also served written discovery on DOL regarding its liability. *See* Ex. 21. In a June 17, 2019 order, the ALJ denied the requests because Arch Coal had not identified these liability witnesses or served discovery at the district director level and extraordinary circumstances did not exist.

At a telephonic hearing on July 18, 2019, the ALJ admitted Dx. 1-Dx. 51,[3] Cx. 1, Cx. 4-7 and Ex. 1-Ex. 9, Ex. 24-26. [4] Tr. 5, 8, 15. The ALJ granted the parties' request for post-hearing evidence development and Arch Coal timely submitted Ex. 24, the deposition of Dr. Rosenberg. Claimant did not submit Cx. 2. The ALJ excluded Arch Coal's liability evidence (Ex. 12-17, Ex. 19-21) as untimely but accepted them as the appeal exhibits (Ex. 10, Ex. 18, Ex. 22) to be included in the administrative record. Tr. 11-17. Arch Coal preserved its objections to these orders as well as other legal issues including the ALJ's authority under *Lucia*, the constitutionality of the fifteen-year presumption at 20 C.F.R. § 718.305, and the

---

[3] Arch Coal preserved its objection to Dx. 43 (the rebuttal report of Dr. Ajjarapu obtained pursuant to DOL's pilot program) as its admission the pilot program violates Arch Coal's due process and regulatory rights. See Tr. 5-6.

[4] Ex. 23 and Cx. 3 were withdrawn at the hearing. Tr. at 7, 9, 11.

validity of certain regulations (20 C.F.R. § 718.201(a) (c), § 718.305(d)). Tr. 47-49; *see also* Prehearing Statement (June 25, 2019).

## STATEMENT OF FACTS

**A.    Personal and Employment History.** Howard was 61 years old at the time of the hearing. Dx. 2, Tr. 21, 42.   He worked underground from 1978 to February 27, 1997, all in Kentucky and was credited with seventeen years.  Tr. 23-25, 34, Dx. 3, Ex. 7 (Howard Tr. at 30-31); Dx. 44.   Howard last worked for one year at Arch of Ky./Apogee Coal as a shearer operator, which required standing all day and lifting 75 pounds once daily. Dx. 7-2, Tr. 21-22, 40-41, Ex. 7 (Howard Tr. at 31); *see* Dx. 4-2 (stand for 8 hours, carry 70 pounds 600 feet one time per day); Ex. 7 (Howard Tr. at 32-33).

Howard injured his back, neck and knees in work-related accidents in 1996 and 1997.  Tr. 24, 30-31, Ex. 7 (Howard Tr. at 31, 33-35).  Despite rehabilitation, he was not able to return to any work. *Id.* at 28, 42-43.   He must use a cane and has taken pain medications continuously.   *Id.* at 30-31, 43-44.   He received Social Security disability benefits for this injury.  *Id.* at 32, Ex. 7 (Howard Tr. at 36).

After leaving the mines in 1997, Howard continued to smoke, at least one package daily until 2014 or 2015.  Tr. 44.  However, he testified previously that he started smoking in 1990 and continued to smoke until 2017. Ex. 7 (Howard Tr. at 45-46).  Carboxyhemoglobin tests conducted in November 2016, were consistent with smoking one to two packages of cigarettes daily, a habit confirmed by other documentary evidence.  Ex. 1; Dx. 14-24 (one package per day from 1990 to 2015); Ex. 4 at 72, 372, 390, 398, 410, 426, 436 (one package daily from 2001 to 2015); Ex. 4 at 361, 376, 380 (more than one pack per day); Ex. 5 at 204 (smoking one and one-half packages per day in 1999), Ex. 5 at 87, 92-96 (smoked two packages per day for 25 years).   The record thus establishes between twenty-five to fifty pack/years of smoking.  Howard claims his wife as a dependent.

## B. Relevant Medical Evidence

On the merits, the only issue to be decided is whether the evidence rebuts the presumption that Howard's totally disabling respiratory impairment is due to pneumoconiosis under 20 C.F.R. § 718.305.[5] Howard has established at least fifteen years of coal mining and that he is totally disabled based on the medical opinions and qualifying pulmonary function tests. *See* Dx. 14, Dx. 17, Dx. 18, Dx. 44, Ex. 2, Ex. 3, Ex. 6, Ex. 9, Ex. 26, Ex. 24 (Rosenberg Tr. at 28-29), Cx. 4. The evidence of pneumoconiosis and the source of Howard's disability conflicts sharply.

The record contains conflicting readings of four x-rays. Dr. Alexander, a board-certified radiologist and B-reader, found the May 9, 2013 x-ray positive for clinical pneumoconiosis, but Dr. Meyer, a dually-qualified reader and professor of radiology did not. *Compare* Dx. 15 *with* Dx. 19. Drs. DePonte and Alexander, board-certified radiologists and B-readers, read a March 4, 2015 x-ray as positive but Drs. Seaman, and Meyer, dually-qualified readers and professors of radiology did not. *Compare* Dx. 14-5 and Dx. 17 *with* Dx. 19 at 3, 25. An April 26, 2016 x-ray similarly received conflicting readings by Drs. DePonte and Seaman. Cx. 1, Ex. 8. The most recent x-ray and CT scan, dated November 30, 2016, were read without contradiction as negative. Ex. 1. The CT scan showed centrilobular ground-glass opacities with emphysema, findings of respiratory bronchiolitis secondary to smoking.[6] Ex. 1-3. The x-rays for treatment, dated August 15, 2007, January 8,

---

[5]      The applicability of the fifteen-year presumption remains in doubt. In *Texas v. United States*, No. 19-10011 (5th Cir. December 18, 2019), the Fifth Circuit found the Affordable Care Act unconstitutional but the severability analysis incomplete and therefore remanded to the district court for further explanation. Given that the validity of the fifteen-year presumption remains in doubt, Arch Coal continues to object to its application. *See* Ex. 11 (Amended Response and Controversion challenging the application of the fifteen-year presumption); Tr. 47-49.

[6]      Dr. Meyer explained that chest CT scans are more sensitive than x-rays in confirming or refusing the presence of pneumoconiosis. Ex. 1-4.

2008 and February 3, 2017, also revealed clear lung fields, with no pneumoconiosis. *See* Ex. 4 at 285, Ex. 5 at 18, 74.

Treatment records confirm that as of 1997, Howard was disabled because of chronic back, knee and neck pain, for which he took pain medication. Ex. 4 at 254, 271-272, 491-495. As of 2002, he could not lift more than 15 pounds or bend, crawl, climb, push or pull due to his back injury. Ex. 4 at 271-272. From 2001 to present, Howard also regularly sought treatment for diabetes, GERD, anxiety, high blood pressure and hyperlipidemia. Ex. 4 at 1-7, 8-40, 47-115, 123-130, 305-490, Ex. 5 at 47-56. The first mention of any respiratory complaints or to COPD was in March 2014, but there is no mention of coal workers' pneumoconiosis and no doctor attributed Howard's COPD to coal dust exposure. Ex. 4 at 1-7, 44-46, Ex. 5 at 87.

Dr. Ajjarapu, board-certified in family medicine and employee of Stone Mountain Health Services with ten years of experience, examined Howard on March 5, 2015. Dx. 14-31, Dx. 43. Howard's carboxyhemogloblin measured 12%, correlating to a smoking habit of two or more packages daily. Dx. 14-20; Ex. 24 (Tr. at 27). Dr. Ajjarapu diagnosed clinical pneumoconiosis based on a single positive x-ray reading, and legal pneumoconiosis (chronic bronchitis) based on Howard's exposure to coal mine dust, cigarette smoking and non-specific respiratory symptoms, which could have been caused by either toxin. Dx. 14-29, 14-31, Dx. 43-2. She stated:

> In regards to industrial bronchitis caused by coal dust, it is a direct irritation of airway lining cells by dust inhalation that causes the associated cough and sputum production and even if coal dust's irritant effect is no longer occurring because coal dust exposure has ceased, it's [sic] latent effects can still be experienced by the miner in the form of cough and sputum production. Coal dust particles that are deposited and are not cleared by natural mechanisms are embedded in the parenchyma of airway tissues, which continue to exert and cause mucous production even after the exposure ceases."

Dx. 43-3. Dr. Ajjarapu found Howard's disability "multi-factorial" due to both extensive smoking and coal dust exposure. Dx. 14-30.

Dr. McSharry, a board-certified pulmonologist with thirty-years of experience, examined Howard in November 2016, and reviewed the evidence in the record. Ex. 3 at 1, 46. Howard's carboxyhemoglobin again was elevated (11.8%). *Id.* at 9; Ex. 24 (Tr. at 27). Dr. McSharry ruled out clinical pneumoconiosis based on the consensus of x-ray readings and negative CT scan. Ex. 3 at 2, 41, 43-44. He attributed Howard's disabling obstruction to his long history of cigarette smoking. Ex. 3 at 2, 41, 44-45. He found it "extremely unlikely … that this severe degree of pulmonary function abnormalities would be seen as a result of coal workers' pneumoconiosis without any radiographic evidence of that disease, whereas cigarette-related lung disease of this degree is frequently associated with no radiographic changes." *Id.* at 2.

Dr. Rosenberg, a board-certified pulmonologist and occupational disease specialist, professor of pulmonary medicine, former Director of Occupational Medicine at University Hospital Systems with a Master's degree in public health and occupational medicine and advanced training in epidemiology and biostatistics, reviewed the evidence and was deposed. Dx. 18; Ex. 6, Ex. 9, Ex. 24 (Tr. at 5-10). He considered and applied the Guidelines of the Office of Science and Technology in using science and research by a government agency in its decision-making. Ex. 24 (Tr. at 13-15); 67 Fed. Reg. 8,452-8460. Science used by an agency, no less than a physician rendering a differential diagnosis, must be validated by peer-reviewed research, which is reproducible and directly relevant to the matter. *Id.* & Ex. 24 (Tr. at 15). Dr. Rosenberg outlined his evidence-based methodology for diagnosing Howard's impairment and determining its etiology. He considered Howard's reported exposures and risks, medical history, peer-reviewed medical literature and

medical data over time to understand the nature and progression of the disease process. *Id.* at 11-12, 15-21.

First, Dr. Rosenberg explained that Howard was totally disabled from any work in 1996/1997 by his back, neck and knee injuries. *Id.* at 25-26. He ruled out clinical pneumoconiosis based on the consensus of x-ray readings, the presence of linear changes and ground-glass changes without micronodularity on CT scan, preserved gas exchange and the pertinent medical literature which supported his opinion. Ex. 24 (Tr. at 51-53); Dx. 18-2, Ex. 6 at 4, 7, Ex. 9-2.

Then, Dr. Rosenberg explained why Howard's disabling impairment is due to his long and heavy smoking habit, not any latent or progressive onset of legal pneumoconiosis. Ex. 24 (Tr. at 15-21). Applying his evidence-based approach above to Howard's case, Dr. Rosenberg ruled out legal pneumoconiosis based on the following: (1) the severely elevated carboxyhemglobin levels indicating a two package per day smoking habit in 2016; (2) the worsening of pulmonary function while Howard continued to smoke; (3) the scientific literature regarding the dose response relationship of coal mine dust and smoking; (4) the prevalence of smoking induced disease versus coal mine dust induced disease as reported in the peer-reviewed literature; (5) the severe reduction of the FEV1/FVC ratio;[7] (6) the presence of a bronchodilator response; (7) the presence of ground glass opacifications on CT scans which are consistent with smoking related respiratory bronchiolitis; (8) the severely reduced diffusing capacity confirming the presence of widespread emphysema, a manifestation of smoking related disease as explained in the scientific literature; (9) the lack of any respiratory symptoms or diagnosis until 2014 and (10) the lack of any peer-reviewed scientific literature supporting a

---

[7] Dr. Rosenberg also explained at length why his reliance on the FEV1/FVC ratio is not contrary to the science in the preamble. Ex. 24 (Tr. at 44-46).

conclusion that legal pneumoconiosis is latent and progressive. *Id.* at 19, 27, 30-31,35-38, 40-41, 43-48; *see also* Ex. 6 at 4, 7-16, Ex. 9 at 2-3,

Lastly, Dr. Rosenberg explained that the scientific literature does not support Dr. Ajjarapu's opinion that legal pneumoconiosis in any form—or chronic bronchitis—is latent and progressive decades after exposure ceases. Ex. 24 (Tr. at 31). No medical literature, including the literature in the preamble, shows that inhaled coal mine dust will worsen pulmonary function years, let alone decades after exposure ends, particularly as here when the miner had no respiratory symptoms for at least twenty years. *Id.* at 31-32, 34-35. No medical literature supports Dr. Ajjarapu's theory that inhaled coal dust will cause chronic bronchitis years after exposure: chronic bronchitis is caused by direct irritation of the airway lining cells and once that irritation is removed, chronic bronchitis dissipates. *Id.* at 47-48. Howard's chronic bronchitis was caused by his on-going exposure to cigarette smoking, irritating his airways causing continued cough and sputum production. *Id.* at 48. There was no peer-reviewed scientific literature that suggests that coal dust embedded in the lungs will suddenly start causing inflammation, irritation and symptoms decades after the last exposure. *Id.* at 50-51.

## ARGUMENT
## I. THE EVIDENCE FAILS TO ESTABLISH ENTITLEMENT
### A. The Evidence Proves the Absence of Clinical Pneumoconiosis

Clinical pneumoconiosis may be established by x-ray, biopsy or autopsy, or reasoned and documented medical opinions. 20 C.F.R. § 718.202(a). All evidence, like and unlike, must be weighed together. *Dixie Fuel Co. LLC v. Director, OWCP [Hensley]*, 700 F.3d 878, 881 (6th Cir. 2012)("ALJ must weigh all of the evidence-for and against a finding of pneumoconiosis—before granting benefits"). The ALJ must resolve the conflict in the readings of each individual x-ray presented as to the absence or presence of disease. *Mullins Coal Co. v. Dir., OWCP*, 484 U.S. 135,

148-149 (1988); *Woodward v. Dir., OWCP*, 991 F.2d 314 (6th Cir. 1993) ("consideration of merely quantitative differences, without an attendant qualitative evaluation of the x-rays and their readers, is legal error."). When resolving conflicts, an ALJ must consider the number of x-ray interpretations along with the doctors' qualifications, the dates and quality of the films, and the actual readings. *See Stowers v. Arch of West Virginia*, 24 BLR 1-80 (2008); *Staton v. Norfolk & Western Ry. Co.*, 65 F.3d 55, 59 (6th Cir. 1995); *Adkins v. Director, OWCP*, 958 F.2d 49, 52 (4th Cir. 1992). Opinions by dually-qualified doctors with prestigious appointments are entitled to the most weight. *See Melnick v. Dir., OWCP*, 16 BLR 1-31, 1-35 (1991).

The x-ray evidence here conflicts. Each positive x-ray reading is rebutted by at least one negative reading by an equally or better-qualified expert. Drs. Meyer and Seaman's readings of the May 9, 2013, May 4, 2013 and the April 26, 2016 x-rays should be given greater weight given their superior credentials as professors of radiology. *See Melnick*, 16 BLR at 1-35. The most recent x-ray in November 2016 was uniformly read as negative for disease. These negative readings are bolstered by chest x-rays from 2007 to 2017 in the treatment notes and the November 2016 CT scan, none of which disclosed any opacities of clinical pneumoconiosis. Ex. 1; Ex. 4 at 285, Ex. 5 at 18, 74.

The medical opinions also do not establish clinical pneumoconiosis. Dr. Ajjarapu's opinion rests on the positive reading of a single x-ray without considering the negative readings of that and other x-rays and CT scan in the record, reducing the opinion's probative value. *See Eastover Mining Co. v. Williams*, 338 F.3d 501 (6th Cir. 2003)(a medical opinion is only as persuasive as the x-rays on which it depends); *Sahara Coal Co. v. Fitts*, 39 F.3d 781 (7th Cir. 1994). Even if credited, Dr. Ajjarapu's opinion is outweighed by the better-reasoned and documented opinions of Drs. Rosenberg and McSharry, who considered all the x-ray readings and CT scan and explained that the consensus of the x-ray evidence did not show clinical

pneumoconiosis particularly with Howard's preserved gas exchange. Ex. 3 at 2, 41, 43-44, Ex. 24 (Tr. at 51-53). The totality of the evidence proves the absence of clinical pneumoconiosis.

### B. The Proof Establishes the Absence of Legal Pneumoconiosis

"Legal" pneumoconiosis is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," and "includes but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2).[8] The term "arising out of coal mine employment" means "any chronic pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.*, § 718.201(b). Legal pneumoconiosis is diagnosed by reasoned and documented medical opinions. *Id.* § 718.202(a)(4). When evaluating the evidence, the ALJ should consider the experts' qualifications, the validity of their reasoning, their reliance on objectively determinable symptoms and established science, the detail of analysis, and their freedom from irrelevant distractions and prejudices.[9] *Greene v.*

---

[8] If 20 C.F.R. § 718.201(a), (c), means that all respiratory impairments are caused in part by coal mine dust inhalation, or that all forms of CWP are latent and progressive absent further dust exposure, the regulation is invalid as arbitrary, capricious and an abuse of discretion because it is not supported by any science, objective proof and is contrary to DOL's concession that the most common forms of pneumoconiosis are not latent. *National Mining Ass'n v. Dep't of Labor*, 292 F.3d 849 (D.C. Cir. 2002). Absent that concession, the Court would have struck down the regulation. *Id.* 292 F.3d. at 863. Dr. Rosenberg testified, without contradiction, that no scientific literature including what is cited in the preamble supports either of these interpretations of the regulations. Ex. 24 (Tr. at 19-21).

[9] The preamble should not be among these considerations unless and until Arch obtains discovery into its medical foundations. Arch renews its objection to the ALJ's decision to grant the Director' Motion for a Protective Order for the reasons set forth in its opposition to that motion. The right to challenge the regulations and preamble in a specific case was set forth in *National Mining*, 292 F.3d 849 and *Central Ohio Coal Co. v. Director, OWCP [Sterling]*, 762 F.3d 483 (6th Cir. 2014). To do that, an employer must develop a record before the ALJ. *See id.*; *Little David Coal Co. v. Director, OWCP [Collins]*, 2012 WL 3002609 (6th Cir. July 23, 2012); *Blue Mountain v. Director, OWCP [Gunderson]*, 805 F.3d 1262 (10th Cir. 2015). Under these circumstances, reliance on the preamble or any case law that is based on preamble findings to discredit experts would violate an employer's right to due process. *See North Am. Coal Co. v. Miller*, 870 F.2d 948 (3d Cir. 1989); *Gilliam v.*

*King James Coal Mining, Inc*. 575 F.3d 628, 635 (6th Cir. 2009)*; Underwood v. Elkay Mining, Inc*., 105 F.3d 946, 951 (4th Cir. 1997).

Dr. Ajjarapu alone diagnosed legal pneumoconiosis. Her opinion is not credible for four reasons. First, she relied on Howard's history of coal dust exposure and non-specific respiratory symptoms. The risk of developing a disease is not a valid basis for attributing a respiratory impairment to it unless such causation has been established with 100% certainty. *See Sahara Coal Co. v. Fitts*, 39 F.3d 781, 783 (7th Cir. 1994)("Occupational exposure is not evidence of pneumoconiosis, however, but merely a reason to expect that evidence might be found."); *see West Va. CWP Fund v. Mullins*, 623 Fed. Appx. 59 (4th Cir. Sept. 10, 2015)(a diagnosis of legal pneumoconiosis based entirely on the claimant's history of coal mine employment and nonspecific symptoms, *i.e.,* the possibility of causation, is insufficient to support entitlement); *U.S. Steel Mining Co., Inc. v. Dir., OWCP [Jarrell]*, 187 F.3d 384, 389-90 (4th Cir. 1999)(the possibility of causation is not proof of actual causation). General causation (*i.e.*, that coal dust can cause an impairment) is not proof of specific causation (*i.e.*, that Howard's coal dust exposure caused his respiratory impairment). *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670-71 (6th Cir. 2010)("that manganese *could cause* Parkinson's Disease in someone like Tamraz does not show that manganese *did cause* Tamraz's Parkinson's Disease.").[10] Dr. Rosenberg explained while "risk is an important consideration,

*Reedy Coal*, No. 2014-BLA-05277, April 10, 2019 Order at 3 (the Director's refusal to respond to preamble discovery "open[s] the door to trial by surprise in derogation of Employer/Carrier's due process rights [and] the applicable procedural rules.")(citing 29 C.F.R. §§ 18.50-18.65). As the Seventh Circuit admonished, "[m]ine operators must put up or shut up on this issue." *Old Ben Coal Co. v. Scott*, 144 F.3d 1045, 1048 (7th Cir. 1998). The ALJ has deprived Arch Coal of that ability.
[10]     The epidemiology that may have supported the decision to redefine legal pneumoconiosis does not and cannot establish causation in an individual claim as a matter of science or law. Epidemiology focuses on general causation (*i.e.*, is an agent capable of causing disease) rather than specific causation (*i.e.*, did it cause disease in a particular individual). "[A]n association is not equivalent to causation." M. Green, *et al*., "Reference Guide on Epidemiology," REFERENCE MANUAL ON SCIENTIFIC

you have to use the risk model combined with the objective testing and other information that's provided" to prove individual causation. Ex. 24 (Tr. at 17-18). Dr. Ajjarapu relied solely on risk, an insufficient basis to establish causation. *See Tamraz*, 620 F.3d at 673 ("The ability to diagnose medical conditions is not remotely the same ... as the ability to deduce ... in a scientifically reliable manner, the causes of those medical conditions" and "the reliability of one does not guarantee the reliability of the other."); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 678-81 (6th Cir. 2011) (rejecting reliance on the mere existence of exposure to establish causation in the absence of any scientifically reliable methodology).

Dr. Ajjarapu's unsupported opinion does not constitute the type of reliable, probative and substantial evidence required by the APA. 5 U.S.C. § 556(d); *Jarrell*, 187 F.3d 388-89 ("the agency process…requires that the ALJ perform a gate keeping function while assessing evidence to decide the merits of a claim"); *Peabody Coal Co. v. McCandless*, 255 F.3d 465 (7th Cir. 2001) (same). *See also Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Niam v. Ashcroft*, 354 F.3d 652, 660 (7th Cir. 2004)("the spirit of *Daubert* ... does apply to administrative proceedings.... 'Junk science' has no more place in administrative proceedings than in judicial ones."). Here, Dr. Ajjarapu provided no scientifically support, methodology or peer reviewed epidemiology for her conclusions. Dr. Rosenberg's uncontradicted testimony establishes that Dr. Ajjarapu's conclusion that all lung disease in a miner is caused, in part by exposure is not supported by any peer reviewed medical research, in the preamble or elsewhere. Ex. 24 (Tr. at 16-19). If not stricken from the record, the ALJ should give it no weight.

EVIDENCE 549, 552 (3d ed. 2011). *See also Myers v. Ill. Central R. Co.*, 629 F.3d 639, 641-42 (7th Cir. 2010)(recognizing the dichotomy between general and individual or specific causation); *City of Philadelphia Fire Dep't v. Workers' Comp. Appeal Bd.*, J56-2017 (Sept. 12, 2017)(epidemiology identifies general causal relationships but does not establish that it caused a specific claimant's disease).

Third, Dr. Ajjarapu's finding of legal pneumoconiosis not only cites no reliable methodology, but does not refer to any objective testing. That too renders her opinion unreasoned. *Greene*, 575 F.3d at 635; *Lango v. Dir.*, OWCP, 104 F.3d 573 (3d Cir. 1997)("the mere statement of a conclusion by a physician, without any explanation of the basis for that statement, does not take the place of the required reasoning."); *Zeigler Coal Co. v. Director, OWCP* [*Villain*], 312 F.3d 332 (7th Cir. 2002) (same); *Collins v. J&L Steel*, 21 BLR 1-82 (1999)(a documented opinion sets forth the clinical findings, observations and data on which the diagnosis is based; a reasoned opinion sets forth how the underlying documentation supports the physician's conclusion).

Lastly, Dr. Ajjarapu's opinion should be discounted given that she is employed by Stone Mountain Health Services, a black lung advocacy group that is representing Howard. This appearance of a conflict of interest casts doubt on the reliability of her opinion.

Even if credited, the opinions of Drs. Rosenberg and McSharry outweigh Dr. Ajjarapu's. As board-certified pulmonologists and professors of medicine with decades of experience in pulmonary disease, they are better qualified than Dr. Ajjarapu. They reviewed a more comprehensive record rooted in both medical data and scientific literature. And, instead of offering conclusory opinions, they explained why Howard's impairment was due to his cigarette smoking habit not his remote coal mine dust exposure based on the actual record. These opinions are well-reasoned and well-documented and should be credited. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 536 (4th Cir. 1998)(when resolving conflicts in medical opinions, ALJs should compare the doctors' expertise, the comprehensiveness and sophistication of their explanations and their underlying support); *Peabody Coal Co. v. Helms*, 901 F.2d 571 (7th Cir. 1990)(finding no basis for crediting a doctor's cursory and unsupported opinion over a better qualified expert who reviewed more

evidence and explained his opinion). All Dr. Ajjarapu offered was an unsupported conclusory statement, without citation to evidence or data.

## C.    Howard's Total Disability Is Not Compensable

Even if Howard has pneumoconiosis, it did not prevent him from working as a coal miner as defined in the BLBA. 30 U.S.C. § 902(f)(1)(A).[11]    Proof of pneumoconiosis does not establish total disability due to it. *Arch on the Green v. Groves*, 761 F.3d 594, 599 (6th Cir. 2014). Where, as here, another disability takes a claimant out of the work force, he is not entitled to benefits. *See Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728 (6th Cir. 1985) (disability due to old age is not compensable under the BLBA); *Meyer v. Zeigler Coal Co.*, 894 F.2d 902 (7th Cir. 1990)(same); *Dehue Coal Co. v. Ballard*, 65 F.3d 1189 (4th Cir. 1995) (disability due to cancer is not compensable under the BLBA); *Peabody Coal Co. v. Vigna*, 22 F.3d 1388 (7th Cir. 1994)(claimant not entitled to benefits when he was first totally disabled by a stroke); *Freeman United Coal Mining Co. v. Foster*, 30 F.3d 834 (7th Cir. 1994) (disabling back injury is not compensable); *Gulley v. Sahara Coal Trust*, 397 F.3d 535 (7th Cir. 2005)(disability due to blindness is not compensable). *But see Y & O Coal Co. v. McAngues,* 996 F.2d 130 (6th Cir. 1993)(a claimant's disability due to a car accident did not foreclose later entitlement). The uncontradicted opinion of Dr. Rosenberg establishes that Howard first was unable to work due to his disabling back, neck and knee injury. Ex. 24 (Tr. at 25-26). The treatment records confirmed that as of 2002, he could not lift more than 15 pounds and

---

[11]    If the fifteen-year presumption is invoked, Arch objects to the "rule out" standard for rebuttal.  Doctors can only rule out causes to a reasonable degree of medical certainty as Drs. Rosenberg and McSharry explained.  Ex. 24 (Tr. at 35), Ex. 3.  If section 718.305(d) requires a higher degree of medical certainty than science permits, it is invalid because it precludes the employer from ever establishing rebuttal. As the attached rulemaking record demonstrates (Ex. 18), there is no medical support for the rule out standard and the regulation is therefore, arbitrary, capricious and an abuse of discretion.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.* 463, U.S. 29 (1983).

could not bend, crawl, climb, push or pull due to his back injury. Ex. 4 at 271-272. The uncontradicted evidence shows that Howard could not work as a shearer operator due to his back, neck and knee injuries, which are not compensable under the BLBA. *Eifler v. OWCP*, 926 F.2d 663, 666 (7th Cir. 1991) (a miner cannot become more totally disabled; "totality like perfection does not admit of degrees.").

## II. If Benefit are Due, The Trust Fund Must Assume Liability

### A. No Evidence Establishes Arch Coal's Coverage for this Claim

DOL has failed to meet its initial burden of proving that Arch Coal self-insures this claim. *See* 20 C.F.R. §§ 725.407, 725.495(b), (d). DOL has not provided (or cited) an insurance policy or self-insurance agreement which establishes Arch Coal's liability, despite the fact that such documents are within its control as the regulator of self-insurers. *See* Dx. 22, Dx. 27, Dx. 44. At no time has DOL explained why it did not pursue Patriot Coal or utilize DOL's share of Patriot's substantial assets to make whatever payments may be owed. The decision to include, no less than to exclude, a potential party requires explanation. *See Trosper v. Roncat Mining*, 2011 BLA-05053, Order (July 27, 2015) at 7 n.5 (Director's decision to exclude a potential responsible party requires a valid factual basis); *see also England v. Island Creek Coal Co.* 17 BLR 1-141 (1993); *Ramey v. Robert Coal Co.*, Case No. 13-BLA-0070 (11/25/14)(unpub.)(dismissing employer where DOL failed to substantiate insolvency of another potential responsible operator). Here, DOL has abused the regulatory process, providing no explanation much less a reasoned one for failing to name Patriot Coal, the entity it approved as a self-insurer of Apogee's liability beginning in 2011, and initially named as the responsible insurer for this claim. *Trosper,* slip op at 7 ("A government agency abuses its discretion when it fails to offer a reasoned explanation for its decision, or it distorts or disregards an

important aspect of a party's claim."). Without evidence that Arch Coal has an obligation to insure Apogee's liability, Arch Coal must be dismissed.

In similar cases, to obfuscate the fact that it has not produced any documentation to support Arch Coal's liability, the Director has argued that there is no evidence to show that Arch Coal's sale of Apogee in 2005, released it from liability or that Patriot Coal's authorization to self-insure was exclusive. The Director makes these unsubstantiated assertions after it has refused to engage in the very discovery which would prove or disprove these assertions and has sought to prevent Arch Coal from introducing any liability evidence proving that DOL released it of any responsibility for this. DOL cannot be allowed to use its refusal to engage in discovery as both a shield and sword in this proceeding in violation of *Acosta's* guarantee of meaningful participation in the administrative proceedings and the due process guarantees of a fair hearing and adjudication. *Acosta,* 888 F.3d at 502; *North Am. Coal Co. v. Miller*, 870 F.2d at 951. DOL's refusal to engage in discovery suggests that discovery would disprove its unsupported assertions. *See Consolidation Coal Co. v. Williams*, 453 F.3d 609, 613-14 (4th Cir. 2006)(adverse inference drawn from expert's failure to comply with discovery); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 105 (2d Cir. 2002) (failure to provide discovery or being "purposely sluggish" permits an adverse inference).

B.    Arch Coal Cannot Be Named or Treated as a Responsible Operator

In other similar cases, DOL tries to get around its failure to submit proof regarding insurance by either claiming that Arch Coal is also an operator or treating them as one even though DOL did not identify Arch Coal as the potential responsible operator in the notice of claim or the proposed decision and order. Dx. 22, Dx. 44. Arch Coal cannot now be named or treated as the responsible operator. First, it does not satisfy the regulatory definition of "operator;" Apogee not Arch Coal employed Howard and controlled the mine where he worked. *See* 20 C.F.R. §§ 725.491(a),

725.101(a)(23), 725.494. Second, Bulletin 16-01 confirms DOL's decision not to name Arch Coal as the responsible operator. Bulletin 16-01 at 3 (¶ 3c.). Third, section 725.407(d) prohibits DOL from naming (or treating) Arch Coal as Howard's employer or the responsible operator now that the case is pending before the ALJ. *See also Clark v. Barnwell Coal Co.*, 22 BLR at 1-284; *Crabtree v. Bethlehem Steel Corp.*, 7 BLR 1-354 (1984); 20 C.F.R. § 725.418(d)(the PDO "*must* reflect the district director's final designation of the responsible operator…no operator may be finally designated as the responsible operator unless it has received notification of its potential liability pursuant to §725.407… the district director *must* dismiss…all other potentially liable operators….").

Lastly, there is no evidence to justify DOL's attempts to pierce Arch Coal's corporate veil. 20 C.F.R. §§ 725.491(e), 725.493(b)(2)(DOL "may" name a parent corporation for its subsidiary's liability as an operator in certain circumstances). *See Wilton Corp. v. Ashland*, 188 F.3d 670, 674 (6th Cir. 1999)(It is a "fundamental rule of corporate law" that parents and subsidiaries are regarded as distinct except in rare instances); *accord Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307, 322 (1939); *see also Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 64 (4th Cir. 1989) ("decisions to pierce the corporate veil…must be taken reluctantly and cautiously"); *see e.g, McCall Stock Farms, Inc. v United States*, 14 F.3d 1562, 1567-69 (Fed. Cir. 1993)(In all other administrative contexts, the agency must make an evidentiary showing to pierce the corporate veil); *Pel-Star Energy, Inc. v. U.S. Dep't of Energy,* 890 F.Supp. 532 (W.D. La. 1995); s*ee, also., Kutty v. Dep't of Labor*, 764 F.3d 540, 552-53 (6th Cir. 2014) (affirming veil-piercing where agency offered evidence of "wrongs" to justify this remedy). The failure to produce evidence including the self-insurance agreement allegedly establishing liability to justify veil piercing and to prevent Arch Coal from obtaining and submitting evidence that the corporate veil should remain intact violates due process. *See, e.g., Katzir's Floor & Home Design v. M-MLS.com,*

394 F.3d 1143, 1149 (9th Cir. 2004) (finding a violation of a party's due process where district court veil-pierced without providing an opportunity to contest the evidence establishing alter-ego liability); *In re Moore*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007) (cautioning against "trampling on due process rights" by imposing alter-ego liability upon "those not before the court").

C.    DOL's Actions Violate Arch Coal's Due Process Rights

Administrative proceedings under the BLBA must conform to the due process requirements of the Fifth Amendment and the APA. *Richardson v. Perales*, 402 U.S. 389 (1971); 5 U.S.C. § 556(d).  The right to a fair hearing in 20 C.F.R. § 725.455(c) embraces the right to present affirmative and rebuttal evidence for a "full and true disclosure of the facts." *See Morgan v. United States*, 304 U.S. 1 (1938); 5 U.S.C. § 556(d).  An "opportunity to meet and rebut evidence utilized by an administrative agency has long been regarded as a primary requisite of due process." *Ralpho v. Bell*, 569 F.2d 607, 629 (D.C. Cir. 1977).  Due process requires the opportunity to present a defense in a meaningful way and in a meaningful time. *North Am. Coal Co. v. Miller,* 870 F.2d at 951 ("the judge is obliged, above all to ensure that all parties have the opportunity to fully present their case by way of argument, proof and cross-examination of the witness."), *quoting* Ramsey and Haberman, *The Federal Black Lung Program – the View from the Top*, 87 W.Va. L. Rev. 575, 586-88 (1985)); *NAACP v. Wilmington Med. Ctr., Inc*., 453 F. Supp. 330, 336 (D. Del. 1978)(regulations that disregard due process protections are void as arbitrary and capricious).

DOL's actions in this litigation reflect a deliberate change in the regulations to impose liability on self-insurers that could not otherwise be done through the current regulatory scheme,[12] making promises to the D.C. Circuit that they did not

---

[12]    DOL's current regulations do not provide that a parent company is liable for its subsidiaries for all time.  In fact, DOL recently tried—and failed—to change the

intend to honor[13] and then changing their interpretation of the evidence limiting regulations to ensure that none of its employees would be deposed, that no written discovery would be allowed and that Arch Coal would not be able to introduce affirmative evidence to rebut DOL's unsupported assertions of coverage. DOL's scheme and the ALJ's rulings adopting this scheme do not comport with due process: Arch has been deprived of an opportunity to present a defense in a meaningful way and at a meaningful time. Not only is DOL issuing new rules of liability under the guise of a "Bulletin" without following the APA's notice and comment requirements, it is changing its longstanding interpretation of regulations through litigation, which is not permitted. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359 (1998).

1.   <u>DOL has retroactively changed its self-insurer regulations</u>.

DOL now imposes liability on a self-insurer based on the miner's last day of work, rather than on the company who was responsible for the liability on the date the claim was filed. This new retroactive rule change is concocted to address Patriot's bankruptcy. DOL has never tried this before and has not in this or any other case cited any jurisprudence to support its position. Neither does any provision in the BLBA authorize DOL's attempt here. Such a structure is unknown to insurance law and in fact, is not insurable.

---

law to require a mine operator as a condition of being authorized to self-insure black lung liabilities to have its parent company, if any, forever guarantee the payment of black lung benefits to miners who worked during any period for a self-insured subsidiary. *See* DOL's "Proposed Collection of Information; Comment Request" at 82 Fed. Reg. 50166 (Oct. 30, 2017). *See also* 84 Fed. Reg. 10839 (March 22, 2019).
[13]      *See* DOL's Supplemental Letter Brief, *Arch Coal v. Acosta*, No. 17-5074, at *3 (D.C. Cir. Jan. 16, 2018)("Arch can seek discovery from the Department on issues related to its liability, including on its claims that Patriot Coal ought to be held liable instead of Arch Coal"); *Arch Coal v. Acosta*, 888 F.3d 493, 502 (D.C. Cir. 2018). (citing 20 C.F.R. §§ 725.410; 725.411-17; 725.450-458)(assuring the Court that Arch Coal would be able to "raise its claims through the Black Lung Act's statutory review scheme" and "introduce evidence relevant to its liability in the BLBA proceedings.")

DOL's changed interpretation is evident in how it imposed liability in this case as well as several claims before Bulletin 16-01 was enacted. *See* Dx. 21, Dx. 26. *See also Massey v. Apogee Coal*, 2019-BLA-05144, Dx. 1-24, 2-41, 3-9, 3-72 (where DOL named Patriot Coal as the responsible self-insurer in claims filed in 2012, and 2014)(attached); *Creech v. Apogee Coal*, xxx-xx-6408 (after miner's claim was filed on October 27, 2007, DOL named Magnum Coal as the responsible party) (attached); *Allen v. Hobet Mining*, 2019-BLA-06231, Dx. 2 at 96-102 (attached). In *Allen*, DOL stated that Magnum Coal assumed all liability because Arch Coal had sold its subsidiary as of December 31, 2005. *Id.* DOL did not name Arch Coal as secondarily liable or suggest that it had any contingent liability. These cases clearly establish that DOL changed its interpretation of its self-insurance regulations without going through notice and comment rulemaking.

Even if DOL could change its rules, its newfound interpretation of its regulations is not rational. It applies principles of commercial insurance to a self-insurance arrangement, which has no support in either jurisprudential history or the BLBA. Such an interpretation eliminates the distinction between commercial and self-insurance set forth in the regulations as well as the case law. The regulations set forth two distinct regulatory systems. *Compare* Part 726, Subpart B (Authorization of Self-Insurers, 726.101-726.115) *with* Subpart C (Insurance Contracts, 726.201-726.213). Commercial insurers cover liability for claims arising during a contractually-agreed-to period of time. *See Vesta Ins. Co. v. Amoco Prod. Co.*, 986 F.2d 981, 985-86 (5th Cir. 1993)(insurance is a "contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils" for a specified period of time). Liability is imposed on a commercial insurer if it provided insurance coverage on the date of the miner's last day of employment in the mines. *See* 20 C.F.R. § 726.203(a)(the federal endorsement that is a part of all workers' compensation commercial insurance

policies covering the federal black lung risk provides that "a commercial carrier is responsible for benefits only if the insurance agreement was in effect on the date of last exposure."). No such requirement exists in the self-insurance regulations. This is so because self-insurance is different. *See Home Indem. Co. v. Bethlehem Steel Corp.*, No. 91-G-0922-S (N.D. Ala. Nov. 24, 1993).

DOL cannot convert self-insurance into commercial insurance any more than it can ignore the insurance obligations memorialized in a self-insurance agreement that it approved in accordance with Part 726, Subpart B. Arch Coal's self-insurance obligation ended on December 31, 2005, and with it Arch Coal's responsibility to cover this claim ended. *See* Ex. 17 (Briscoe Tr.) at 56-57; *id*. at 50 (DOL never applied principles of successor liability to hold past self-insurers liable for entities sold to others); *id*. at 62; *see also Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606 (7th Cir. 1993)("ordinarily, when a contract expires, it – expires. It is at an end. The parties have no more rights or duties under it."). DOL approved Arch Coal's agreement not to insure Apogee's liabilities after December 31, 2005. *See* Ex. 16 (Declaration of Tim Mullarkey) at 1-2, Ex. 12 to Ex. 17, Ex. 19-Ex. 20. This is consistent with 20 C.F.R. § 726.102(b)(3), which requires a self-insurer to identify which mines are to be covered by its self-insurance. Here, the self-insurance agreement in effect at the time the claim was filed (*i.e.* Patriot's) is liable based on principles of insurance and contract law as well as DOL's prior interpretation of its regulations. DOL's attempt to impose liability on Arch Coal in these circumstances is not adherence to law but an an abuse of agency authority.

2. DOL's new interpretation of the evidence limiting regulations violates the APA and the Longshore Act

According to DOL, even though these regulations by their express terms only apply to responsible operators, they now also require Arch Coal, as the alleged self-insurer, to identify its witnesses, and request and submit liability discovery to the district director in response to the schedule. This has never been the case before[14] and Arch Coal was not aware of DOL's new position until it was too late here. The Director insists that all proceedings regarding Arch Coal's liability must take place before the district director even though he is bound to follow Bulletin 16-01 and name Arch Coal as the responsible self-insurer. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss at 15 n.7, *Arch v. Acosta*, 888 F.3d 493 (district directors are bound by the Bulletin but ALJs are not). The only exception to this evidentiary scheme is if the ALJ finds "extraordinary circumstances." DOL's refusal to engage in discovery given concrete evidence that they have changed their interpretation of the self-insurance regulations is in bad faith establishing extraordinary circumstances to allow discovery in this case. *See Hickey v. Chadick*, 2009 WL 4681993 * 2 (S.D. Ohio, 2009)("discovery outside the administrative record is only appropriate in three circumstances: 1) when an 'agency deliberately or negligently excludes certain documents, 2) when the court needs certain 'background information' in order to determine whether the agency considered all of the relevant factors," and 3) when there is a 'strong showing' of bad faith."); *Kubacki v. U.S. Dep't Agriculture*, 2013 WL 4052916, *5 ( E.D. Mic. 2013)(same). All three conditions are met here. No ALJ has yet to find extraordinary circumstances.

---

[14] Commercial insurers have developed and submitted evidence regarding coverage before ALJs when it was not done before the district director. *See e.g. Elkins v. Alfred & Creed Coal Co.*, Case No. 2014-BLA-05285; *Deel v. Deel Bros. Coal Co.*, Case Nos. 2017-BLA-05262, 2017-BLA-05877; *Looney v. Empire Mining,* Case No. 2017-BLA-05250; *Sluss v. Hosanna*, 2015-BLA-05627.

DOL's new interpretation also fails to address the statutory provisions from the Longshore Act incorporated into the BLBA which divest the district director of all discovery and litigation management functions. 33 U.S.C. § 919(d); *Dir., OWCP v. Greenwich Collieries,* 512 U.S. 267, 271 (1994)(DOL has no authority by regulation or otherwise to vary the terms or requirements of the APA as incorporated or to enlarge or diminish the rights of any party that are conferred by the APA.). Under this new scheme, complex discovery regarding insurance coverage must be managed by the district director, a civil service appointed claims examiner, who almost certainly is not a lawyer, with little or no training in managing discovery, and who has no authority to administer oaths or compel witnesses to testify. *See* 20 C.F.R. § 725.351(a)(3)(district director may compel the production of documents by the issuance of a subpoena); *but see* 20 C.F.R. § 725.351(a)(2)(3)(ALJs are authorized to administer oath and compel the productions of documents and appearance of witnesses by the issuance of subpoenas). The district director does not have the power to force DOL to respond to a party's discovery. It only has the power to order the claimant to comply with requests by DOL and employers. *Id.*, § 725.414(a)(3)(i) (authorizing the district director to deny a claim as abandoned if a claimant refuses to provide a medical history and access to medical records and/or to attend testing or an evaluation); *but see, id.* at § 725.351(a)(3)(the district director may "[c]ompel the production of documents by the issuance of a subpoena").[15]

DOL's rules cannot divest the ALJ of jurisdiction over receiving evidence on contested issues and deciding them without violating 33 U.S.C. § 919 (d), *incorp. by ref. into* 30 U.S.C. § 932(a). DOL's new approach adopted entirely in secret since

---

[15]    Counsel has never seen the district director issue a subpoena. No forms for subpoenas exist on the district director's website. In any event, this regulation, if valid, does not permit the issuance of subpoenas by the district director to the Director. The district director is subordinate to the Director and cannot order him to do anything. https://www.dol.gov/owcp/owcpchrt.htm (last viewed December 19, 2019).

no such interpretation was argued by DOL until very recently destroys the APA's promise of a *de novo* adjudication and deprives parties of the benefit of developing complex evidence before a person who is trained in conducting the process. *Greenwich Collieries*, 512 U.S. at 271-77; 20 C.F.R. § 725.450 (a party to a claim "shall have a right to a hearing concerning any contested issue of fact or law"); *id.* at § 725.455(a)("The administrative law judge shall at the hearing inquire fully into all matters at issue…."); *see also Dingess v. Dir., OWCP*, 12 BLR at 1-143 ("any party aggrieved by the deputy commissioner's findings may appeal this case to the Office of Administrative Law Judges for a de novo review of any contested issues."). *Greenwich Collieries* is dispositive in invalidating DOL's new interpretation of its regulations.[16]

Even assuming that DOL's new scheme were somehow proper, DOL has shown no intention of providing Arch Coal a meaningful opportunity to be heard and to present its evidence even if it complies with this new discovery and evidentiary scheme.[17] The Director refuses to voluntarily provide anything, and the

---

[16] As argued in Arch Coal's Motion to Reconsider the Denial of Subpoenas, the ALJ's reading of section 725.456(b)(1) makes the district director the final arbiter on coverage without the official being properly appointed under *Lucia, supra*. *Bandimere v. SEC*, 844 F.3d 1168, 1179-80 (10th Cir. 2016)(inferior officers have the power to shape the administrative record, receive evidence and decide issues); *Buckley v. Valeo*, 424 U.S. 1, 139 (1976); *Freytag v. Comm'r*, 510 U.S. 868, 881-82, 881-82 (1991); *Lucia*, 138 S.Ct. 2044)(an "inferior officer" is a person who exercises "significant authority" when it comes to "the administration and enforcement of the public law."); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492-493 (2010); *Myers v. United States*, 272 U.S. 52, 117, 164 (1926).

[17] *See, e.g., Sturgill v. Apogee Coal Co.*, Case ID: 2B85Z-2018086 (failing to provide discovery concerning Arch's party status within 30 days of Arch's request); *Deskins v. Hobet*, Case ID: BJJTW-2018096 (same); *Ison v. Arch of KY*, Case ID: BGXMS-2017062 (same); *Chapman v. Apogee Coal*, Case ID: 2BS5B-2018187 (affirmatively refusing to provide discovery). In five cases, the Solicitor refused to provide any witness to testify before the district director, even though they were properly and timely identified. *See e.g., Ward v. Catenary Coal Co. LLC*, Case ID: 2B2LD-2016090; OWCP No. CH xxx-xx-2731; *Cash v. Arch of Ky/Apogee Coal Co., et al.*, Case ID: 2BRC9-2017235; OWCP No. MS xxx-xx-5853; *Allen v. Hobet Min. Inc.*, Case ID: BRLD5-2017268; OWCP No. JO xxx-xx-0721; *Massey v. Catenary Coal Co.*, Case ID: 2BLMJ-2017193; OWCP No. CH xxx-xx-5282;

district director cannot order the Director to provide documents or witnesses. And when Arch Coal requested assistance from ALJ Henley to resolve the discovery impasse with the district director in several cases, he took no action, apparently because he believed that he did not have jurisdiction to issue subpoenas when the matters were still pending before the district director even though case law does provide such authority. *See, e.g.*, Letter dated March 4, 2019, from ALJ Colwell to W. William Prochot and Patricia C. Karppi (attached); *Maine v. Brady-Hamilton Stevedore Co.*, 18 BRBS 129 (Ben. Rev. Bd. 1986); *Armani v. Global Linguist Solutions*, 46 BRBS 63 (Ben Rev. Bd. 2012). DOL's reading of the evidence-limiting regulations is an assertion of absolute immunity from complying with a valid subpoena or discovery request–something that is not even available to the senior level aides of the President. *See Comm't on the Jud. v. McGahn,* 19-CV2379, slip. op. at 94 (Nov. 25, 2019)("In short, this Court finds that the *Miers* court rightly determined not only that the principle of absolute testimonial immunity for senior-level presidential aides has no foundation in law, but also that such a proposition conflicts with key tenets of our constitutional order."); *id.* at 32-33 ("By contrast, it is relatively rare for the law to recognize an "immunity" to compulsory legal process—i.e., the right of the recipient of a valid subpoena to decline to produce *any* documents or provide *any* testimony."). DOL is forcing the final resolution of these coverage issues into a setting in which it cannot lose regardless of its illegality and the opposing party has no fair opportunity to prove anything or even introduce evidence. This cannot constitute due process. *Miller*, 870 F.2d at 950.

*McClure v. Catenary Coal Co.*, Case ID: 2BRZ3-2017236; OWCP No. PA xxx-xx-64. In two cases, the district director refused to comply with timely served documentary discovery. *See e.g., Williamson v. Hobet Mining, Inc.,* Case ID: 2BJ7M-2019066; *Burton v. Arch of Alabama, Inc.*, Case ID: BV2J7-2017044.

3.  Application of the policy reflected in Bulletin 16-01 imposes a new rule of liability that violates the APA and the BLBA

DOL did not publish Bulletin 16-01 for notice and comment rulemaking.  It instead argued that it is a mere "guidance document" that clarifies or reaffirms existing principles of successor liability.  *See* 5 U.S.C. § 551(4); 30 U.S.C. § 936(a). That is irrelevant.  The Bulletin, whatever it is called, reflects a policy change that impermissibly imposes a new obligation on Arch Coal that was not, and could not, have been anticipated.  The Bulletin rewrites both the BLBA and the Longshore Act to impose a perpetual contingent liability regime unknown to either.  *See* Ex. 17 (Briscoe Tr. at 59-60)(such a perpetual liability regime for insurers would be unworkable and "the polar opposite of" past practices and finality).  Applying the Bulletin to impose liability on Arch Coal makes it far more than a guidance document—it is a *de facto* legislative rule.  *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)(a new, direct, and unequivocal consequence is the hallmark of a binding legislative rule); *Appalachian Power v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000) ("If an agency…bases enforcement actions on the policies or interpretations formulated in the document…then the agency's document is for all practical purposes 'binding'") 5 U.S.C. § 551(4) (defining a rule as exactly what DOL is doing here).  Rules that dispense with APA procedures are invalid *ab initio* no matter what label the agency tries to apply.  "Agencies have never been able to avoid notice and comment simply by mislabeling their substantive pronouncements.  On the contrary, courts have long looked to the *contents* of the agency's action, not the agency's self-serving *label*, when deciding whether statutory notice and comment demands apply."  *Azar v. Allina Health Servs.*, 587 U.S. ____ , 129 S. Ct. 1804, 1812 (2019); *Gen. Electric v. EPA*, 290 F.3d 377, 382-83 (D.C. Cir. 2002) ("if a document expresses a change in substantive law or policy (that is not an interpretation)…[the agency] must observe the APA's legislative rulemaking procedures."); 5 U.S.C. § 553(b); *Cement Kiln v. EPA*, 493 F.3d at 226 (a legislative rule promulgated without

notice and comment "should be vacated" for "violation of the APA"). Irrespective of its label, the Bulletin imposes perpetual liability on a self-insured that is not otherwise permitted in the regulations.

Additionally, on its face, the Bulletin mandate and the agency decision it reflects impermissibly imposes liability retroactively. Were the ALJ to hold Arch Coal responsible for this claim, such an action would upset contractual expectations memorialized in 2005, robbing Arch Coal of the benefit of the bargain it made when it sold Apogee's assets—and liabilities—at a discount. These retroactive effects contravene the Constitution, the APA, and the BLBA, rendering the Bulletin policy invalid as applied. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994) (a rule is impermissibly retroactive if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed"); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998) ("retroactivity is not favored in the law"); *Klingerv. Missouri*, 80 U.S. 257, 261 (1871)(*post facto* laws are "repugnant: in the law); *Nat'l Mining Ass'n*, 292 F.3d at 859-60 ("an agency may not promulgate retroactive rules").

## CONCLUSION

The record shows that Howard's totally disabling respiratory impairment is due to his long and heavy smoking habit. It also establishes that Arch Coal is not a proper party. DOL and this ALJ have deprived Arch Coal of an opportunity for a fair adjudication by engaging in secret and unauthorized rule changes and manipulating these proceedings. Depriving a party of any right to defend itself or put on its case is the denial of due process. Liability must be transferred to the Trust Fund for this reason. *See e.g., Consolidation Coal Co. v. Borda*, 171 F.3d 175 (4th Cir. 1999) (employer dismissed when delay compromised its defense); *Lane Hollow Coal Co. v. Dir., OWCP*, 137 F.3d 799, 807-09 (4th Cir. 1998)(same);

*Island Creek Coal Co. v. Holdman*, 202 F.3d 873 (6th Cir. 2000)(loss of record precluded a fair hearing and required an employer's dismissal); *see also* 26 U.S.C. § 9501(d) (in the absence of an appropriate responsible operator, liability must rest with the Trust Fund).

Respectfully submitted,

Patricia C. Karppi, Esq.
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 331-3100/fax (202) 261-0170
karppip@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, the foregoing Closing Brief was
served upon the following people by first-class mail, postage prepaid:

> Christopher Smith, Esq.
> Office of the Regional Solicitor
> U.S. Department of Labor
> 618 Church Street,
> Suite 230
> Nashville, TN  37219-2456
>
> Robin Napier, Lay Representative
> Stone Mountain Health Services
> Post Office Drawer S
> St. Charles, VA  24282

*Patricia C. Karppi*

Patricia C. Karppi

**U.S. Department of Labor**

Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

(856) 486-3800
(856) 486-3806 (FAX)



**Issue Date: 25 February 2020**

Case No.:    2017-BLA-05163

In the Matter of:

**DAVID M. HOWARD**
              Claimant

        v.

**APOGEE COAL COMPANY**
              Employer

        and

**ARCH COAL, INC.**
              Carrier

        and

**DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS**
              Party-in-Interest


Appearances:    Diane Jenkins            Patricia Karppi, Esq.
                For the Claimant         For the Employer

                Christopher Smith, Esq.
                For the Director

Before:        LAUREN C. BOUCHER
               Administrative Law Judge


## <u>DECISION AND ORDER AWARDING BENEFITS</u>

This proceeding arises from a claim for benefits filed with the U.S. Department of Labor ("Department") by David M. Howard ("Claimant") against Apogee Coal Company ("Apogee"), as insured by Arch Coal, Inc. ( "Arch"),[1] under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (2018) ("Act"). The Act and its implementing regulations, 20 C.F.R Parts 718 and 725 (2018), award benefits to coal miners who are totally disabled as a result of pneumoconiosis or to the surviving dependents of coal miners who died as a result of pneumoconiosis. 30 U.S.C.

---

[1] Apogee and Arch will be referred to collectively as "Employer."

§ 901; 20 C.F.R. §§ 718.3, 718.204(a), 718.205(a). Pneumoconiosis, commonly known as "black lung," is a chronic dust disease of the lungs that arises out of coal mine employment. 30 U.S.C. § 902(b); 20 C.F.R. § 718.201.

At Employer's request, this matter was referred to the Office of Administrative Law Judges ("OALJ") for a hearing. Accordingly, an administrative law judge ("ALJ") was assigned to hold a hearing and issue a decision. 20 C.F.R. §§ 725.421, 725.450-452.

## I.    Procedural History

On November 19, 2014, Claimant filed a claim for benefits under the Act. (DX 2.)[2] On September 26, 2016, the district director of the Office of Workers' Compensation Programs ("district director") issued a Proposed Decision and Order awarding benefits to Claimant. (DX 44.) On October 5, 2016, Claimant appealed. (DX 45.) On November 18, 2016, the district director referred this claim to OALJ. (DX 49.)

On July 17, 2019, I held a telephonic hearing in this matter. Claimant testified at the hearing. Claimant's lay representative and Employer's counsel participated in the hearing. Counsel for the Director of the Office of Workers' Compensation Programs ("Director") also participated in the hearing. Following a series of motions, I set December 20, 2019, as the deadline for post-hearing briefs. Employer and the Director each timely submitted closing briefs. Claimant did not submit a closing brief.

On January 15, 2020, Employer filed a Motion to Strike. Employer argues that the Director improperly attached to its closing brief two exhibits relating to liability. Employer seeks to strike those exhibits and any argument based thereon. On January 28, 2020, the Director submitted an amended post-hearing brief that does not contain the two exhibits or any reference thereto. Thus, it appears the Director has complied with the relief sought by Employer, and the motion is now moot. I will consider the Director's amended brief, not the Director's initial brief.

## II.    Evidence

At the hearing, I admitted DX 1-51, CX 1, 4-7, and EX 1-9, 26 without objection. (Tr. 7, 9, 15.) I also conditionally admitted CX 2 and EX 24-25, contingent upon submission of those exhibits within the deadlines set forth below. (Tr. 15, 50.) Claimant testified at the hearing regarding his employment history and his health history. I have reviewed and considered the entire record in this matter.

With the agreement of the parties, I held the record open for forty-five days to permit Employer to submit Dr. Rosenberg's supplemental medical report (EX 25) and to permit Claimant to submit Dr. DePonte's rebuttal interpretation of Claimant's November 30, 2016, chest x-ray (CX 2). (Tr. 50.) I also held the record open until November 5, 2019, for Employer's submission of Dr. Rosenberg's deposition transcript (EX 24). (Tr. 50.) On October 29, 2019, Employer submitted the deposition transcript of Dr. Rosenberg (EX 24) and simultaneously

---

[2] This Decision uses the following abbreviations: "DX" refers to Director's Exhibits; "CX" refers to Claimant's Exhibits; "EX" refers to Employer's Exhibits; and "Tr." refers to the transcript of the hearing, held on July 17, 2019.

J.A. 110

withdrew Dr. Rosenberg's supplemental medical report (EX 25). Claimant did not submit Dr. DePonte's rebuttal interpretation of Claimant's November 30, 2016, chest x-ray (CX 2).

On March 4, 2015, Dr. Esther Ajjarapu conducted the complete pulmonary evaluation of Claimant required under 20 C.F.R. § 725.406. (DX 14.) Dr. Ajjarapu's evaluation included a chest x-ray (interpreted by Dr. DePonte), a pulmonary function test, an arterial blood gas study, an EKG, and a completed Form CM-988 ("Medical History and Examination for Coal Mine Workers' Pneumoconiosis"). At the request of the Department's claims examiner, Dr. Ajjarapu also wrote a supplemental report dated September 15, 2016. (DX 43.)

Pursuant to his evidence summary form, Claimant relies on the following evidence in support of his affirmative case: Dr. Michael Alexander's interpretation of Claimant's May 9, 2013, chest x-ray (DX 15); Dr. Kathleen DePonte's interpretation of Claimant's April 26, 2016, chest x-ray (CX 1); Pulmonary function tests administered by Dr. Esther Ajjarapu on April 26, 2016, and December 12, 2017 (DX 17; CX 4); Dr. David Rosenberg's medical report dated May 10, 2015 (DX 18); Claimant's hospitalization and treatment records with Dr. Cynthia Dean dated June 2016 to December 2018 (CX 5); Claimant's hospitalization and treatment records with Dr. Nagabhushanam Bollavaram dated October to December 2016 (CX 6); and Claimant's hospitalization and treatment records from Harlan ARH dated August 9, 2016 (CX 7). To rebut the Department-sponsored chest x-ray, Claimant relies on Dr. Michael Alexander's interpretation of Claimant's March 4, 2015, chest x-ray (DX 17.)

Pursuant to its evidence summary form, Employer relies on the following evidence in support of its affirmative case: Dr. Cristopher Meyer's interpretation of Claimant's March 4, 2015, chest x-ray (DX 19); Dr. Cristopher Meyer's interpretation of Claimant' November 30, 2016, chest x-ray (EX 1); a pulmonary function test administered by Dr. Roger McSharry on November 29, 2016 (EX 2); a pulmonary function test administered by Dr. Esther Ajjarapu on April 13, 2017 (EX 26); an arterial blood gas study administered by Dr. Roger McSharry on November 29, 2016 (EX 2); Dr. David Rosenberg's medical reports dated May 10, 2016, April 13, 2017, November 2, 2017, and June 17, 2019 (DX 18; EX 6; EX 9); Dr. David Rosenberg's deposition testimony dated October 22, 2019 (EX 24); Dr. Roger McSharry's medical reports dated January 19, 2017, March 16, 2017, and May 30, 2019 (EX 3); Dr. Cristopher Meyer's interpretation of Claimant's November 29, 2016, CT scan (EX 1); Claimant's hospitalization and treatment records from Clover Fork Clinic dated November 2013 to November 2016 (EX 4); and Claimant's hospitalization and treatment records from ARH Daniel Boone dated July 1999 to February 2017 (EX 5).

To rebut Claimant's affirmative case, Employer relies on Dr. Cristopher Meyer's interpretation of Claimant's May 9, 2013, chest x-ray (DX 19) and Dr. Danielle Seaman's interpretation of Claimant's April 26, 2016, chest x-ray (EX 8). To rebut the Department-sponsored chest x-ray, Employer relies on Dr. Danielle Seaman's interpretation of Claimant's March 4, 2015, chest x-ray (DX 19).

## III.    Issues & Applicable Standard

To demonstrate entitlement to benefits under the Act, Claimant must establish that: (1) he

3

suffers from pneumoconiosis; (2) his pneumoconiosis arose out of coal mine employment; (3) he is totally disabled; and (4) his total disability is caused by pneumoconiosis. §§ 718.202, 718.203, 718.204. Claimant bears the burden to establish each element of entitlement by a preponderance of the evidence. §725.103; *see also Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267 (1994). Failure to establish any one elements precludes entitlement to benefits.

At the hearing, Employer withdrew the following issues: timeliness, status as a miner, and post-1969 employment. (Tr. 47.) In its post-hearing brief, Employer conceded that Claimant is totally disabled, explaining that Claimant "has established … that he is totally disabled based on the medical opinions and qualifying pulmonary function tests."[3] (Empl. Brief at 6.)

Additionally, Employer indicated that Claimant "has established at least fifteen years of coal mining."[4] (Empl. Brief at 6.) Though Employer did not characterize Claimant's coal mine employment as qualifying, Employer acknowledged that "the only issue to be decided is whether the evidence rebuts the presumption that [Claimant]'s totally disabling respiratory impairment is due to pneumoconiosis under 20 C.F.R. § 718.305." (Empl. Brief at 6.) Moreover, I find that Claimant engaged in at least fifteen years of qualifying coal mine employment based on his testimony that all of his coal mine employment was underground. (Tr. 24.)

Accordingly, the following issues remain for adjudication:[5]

1. Does Claimant suffer from pneumoconiosis?
2. Is Claimant's total disability due to pneumoconiosis?
3. Did his pneumoconiosis, if any, arise from coal mine employment?
4. Is Employer the responsible operator?
5. Has the named employer secured the payment of benefits?

## IV.   Findings of Fact

Claimant was born in May 1958. (DX 2.) He has one dependent, his wife, to whom he has been married since September 2001. (DX 2; DX 9; Tr. 28, 47.) Claimant worked in coal mines from approximately 1977 to 1997. (DX 3; DX 7; DX 8; Tr. 25.) Claimant last worked for Employer as a shearer operator.[6] (DX 3; DX 4; Tr. 21-24.) For the reasons set forth below, I find that Claimant smoked for thirty-five pack years.

*Smoking History*

---

[3] Upon review of the evidence, the record supports a finding of total disability based on the five qualifying pulmonary function tests and the physician opinions of Dr. Ajjarapu, Dr. Rosenberg, and Dr. McSharry, each of whom opined that Claimant is totally disabled.

[4] The record likewise supports a finding of at least fifteen years of coal mine employment.

[5] Employer also preserved various issues for purposes of appeal. (Tr. 5-6, 47-49.)

[6] Claimant last worked as a miner in Kentucky. (Tr. 42; DX 3.) Therefore, the law of the U.S. Court of Appeals for the Sixth Circuit applies. *Shupe v. Dir., Office of Workers' Comp. Programs*, 12 B.L.R. 1-200, 1-202 (1989) (en banc).

4

There are several sources of information concerning the length and severity of Claimant's smoking history. At his deposition in June 2017, Claimant testified that he started smoking prior to 1990, but he did not provide an exact year. (EX 7 at 45-46.) Claimant testified that he was still smoking one-half pack per day as of 2015 and was smoking "less than half a pack" per day as of the date of his deposition in 2017. (EX 7 at 46.)

At the hearing in July 2019, Claimant testified that he quit smoking three or four years prior. (Tr. 44.) Claimant stated that he had "no idea" when he started smoking but admitted to smoking one pack per day. (Tr. 44.)

The physicians' opinions also provide details about the length and severity of Claimant's smoking history. In her March 2015 medical report, Dr. Ajjarapu noted that Claimant has been smoking one pack per day since 1990. (DX 14.) Following his examination of Claimant in December 2016, Dr. McSharry wrote that Claimant had been smoking one-half to one pack of cigarettes per day for twenty to thirty years. (EX 3 at 4.) Based on his review of the record, Dr. Rosenberg estimated a thirty to fifty pack-year smoking history. (EX 24 at 27-28.) Based on Claimant's carboxyhemoglobin level measurements in the record from 2015 and 2016, Dr. Rosenberg estimated that Claimant was smoking over two packs per day at that time. (EX 24 at 27.)

Claimant's hospitalization and treatment records also contain references to the length and severity of Claimant's smoking habit. These records generally reflect that Claimant was smoking for approximately thirty years at a rate ranging from one-half to two packs per day. (CX 5; CX 6; CX 7; EX 4; EX 5.)

Based on the foregoing evidence, I find that Claimant has a thirty-five pack-year smoking history. At the latest, Claimant started smoking in 1990. At his deposition in June 2017, Claimant testified that he was still smoking. Because the record shows that Claimant smoked as much as two packs per day and as little as one-half pack per day, I find that Claimant smoked an average of one and one-quarter packs per day over the course of his smoking history. Therefore, because Claimant smoked an average of one and one-quarter packs per day from 1990 through 2017, I find that Claimant has a thirty-five pack year smoking history.

## V.     Rebuttal of the Presumption of Total Disability Due To Pneumoconiosis

A miner who can establish at least fifteen years of qualifying coal mine employment and a totally disabling respiratory or pulmonary impairment is entitled to invoke the § 718.305 presumption of total disability due to pneumoconiosis. As set forth above, the record in this matter reflects that Claimant engaged in at least fifteen years of qualifying coal mine employment and that Claimant has established the element of total disability. Thus, Claimant is entitled to invoke the rebuttable presumption of total disability due to pneumoconiosis. 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b). Accordingly, the presence of pneumoconiosis and total disability due to pneumoconiosis are presumed. 20 C.F.R. § 718.305(c).

Once invoked, the burden shifts to Employer to rebut the presumption. § 718.305(d); *see also Mitchell v. Dir., Office of Workers' Comp. Program*, 25 F.3d 500, 505-06 (7th Cir. 1994); *Bosco v. Twin Pines Coal Co.*, 892 F.2d 1473, 1480 (10th Cir. 1989); *Rose v. Clinchfield Coal*

5

Co., 614 F.2d 936, 939 (4th Cir. 1980); *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486-87 (6th Cir. 2014) (citing *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 479 (6th Cir. 2011)). Employer may rebut the presumption by either: (1) establishing that the miner does not have legal pneumoconiosis <u>and</u> does not have clinical pneumoconiosis; or (2) "[e]stablishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." § 718.305(d)(1)(i), (ii); *see also Minich v. Keystone Coal Mining Corp.*, 25 B.L.R. 1-149, 1-155-56 (2015) (explaining that the "very high burden" of proving that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis" is warranted because "Congress determined that miners with fifteen or more years of qualifying coal mine employment should bear a lesser burden to obtain benefits"). In other words, the regulation "allows employer to establish rebuttal of the presumption by either disproving the elements of disease and disease causation at Section 718.305(d)(1)(i), or disproving disability causation at Section 718.305(d)(1)(ii)." *Minich*, 25 B.L.R. at 1-155.

Employer must establish one of these two elements by a preponderance of the evidence to successfully rebut the presumption. *E.g.*, *Ashley v. Westmoreland Coal Co.*, BRB Nos. 15-0262 BLA and 15-0263 BLA (Mar. 30, 2016) (unpub.); *Vandyke v. Vandyke Brothers Coal Co., Inc.*, BRB No. 13-0339 BLA (Apr. 21, 2014) (unpub.). "The presumption must not be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary condition of unknown origin." § 718.305(d)(3).

## A. Disproving the Existence of Pneumoconiosis

The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a). Pneumoconiosis is further divided into clinical and legal pneumoconiosis. Employer must disprove the existence of <u>both</u> clinical and legal pneumoconiosis by a preponderance of the evidence. § 718.305(d)(1)(i). The Board has observed that, to rebut the presumption pursuant to § 718.305(d)(1)(i), the "employer must affirmatively disprove the existence of pneumoconiosis." *Minich*, 25 B.L.R. at 1-155, n.8.

### i. Clinical Pneumoconiosis

Clinical pneumoconiosis consists of those diseases recognized by the medical community as having been caused by the presence of dust deposits in the lungs. § 718.201(a)(1). The record contains x-ray evidence, CT scan evidence, physician opinion evidence, and hospitalization and treatment records relevant to disproving the existence of clinical pneumoconiosis. *Cf.* § 718.202(a) (setting forth the means of establishing the existence of pneumoconiosis); § 725.414(a)(4).

### a. X-ray Evidence

Section 718.202(a)(1) states that a chest x-ray conducted and classified in accordance with § 718.102, using the classification system of the International Labor Organization (ILO),

J.A. 114

may form the basis for a finding of the existence of pneumoconiosis.[7] ILO Classifications 1, 2, 3, A, B, or C shall establish the existence of pneumoconiosis; Category 0, including subcategories 0/0 and 0/1, does not establish pneumoconiosis. Category 1/0 is ILO Classification 1 and therefore can support a finding of pneumoconiosis. An x-ray interpretation that is not classified in accordance with the ILO/UICC system does not constitute evidence of pneumoconiosis under § 718.202(a)(1)." *M.F.A. v. Peerless Eagle*, BRB Nos. 07-0585 BLA (Apr. 30, 2008) (unpub.) (citing § 718.102(b) (2014); *Harris v. Old Ben Coal Co.*, 23 B.L.R. 1-98 (2006) (en banc)).

The record contains the following ILO x-ray evidence:

| Date of x-ray/ Exh. No. | Date Read | Physician/ Credentials[8] | Film Qual. | ILO Classification |
|---|---|---|---|---|
| 05/09/2013 DX 15 at 2 | 06/12/2013 | Dr. Alexander B; BCR | 1 | ILO: p/p small opacities across all lung zones with 1/2 profusion. <br><br> Additional abnormalities noted on ILO form: bulla(e), emphysema, and plate atelectasis. <br><br> Other comments: Healed fracture of posterior left 9th rib. |
| 05/09/2013 DX 19 at 24 | 04/23/2016 | Dr. Meyer B; BCR | 2 (poor contrast) | ILO: No parenchymal abnormalities consistent with pneumoconiosis. <br><br> Additional abnormalities noted on ILO form: None. <br><br> Other comments: The lungs are clear. There are no fine nodular opacities or large opacities. The mediastinum, cardiac silhouette, bones and soft tissue are normal. |

---

[7] "There are twelve levels of profusion classification for the radiographic interpretation of simple pneumoconiosis." *Lisa Lee Mines v. Dir., Office of Workers' Comp. Programs*, 86 F.3d 1358, 1359 n.1 (4th Cir. 1996) (en banc) (quoting N. LeRoy Lapp, *A Lawyer's Medical Guide to Black Lung Litigation*, 83 W. VA. L. REV. 721, 729–31 (1981)). The Board has held that reliance on "narrative x-ray interpretations that mentioned opacities consistent with pneumoconiosis as evidence of pneumoconiosis pursuant to § 718.202(a)(1) is not in accordance with applicable law. Under §718.102(b), an x-ray interpretation that is not classified in accordance with the ILO/UICC system does not constitute evidence of pneumoconiosis under § 718.202(a)(1)." *M.F.A. v. Peerless Eagle*, BRB Nos. 07-0585 BLA (Apr. 30, 2008) (unpub.) (citing § 718.102(b) (2014); *Harris v. Old Ben Coal Co.*, 23 B.L.R. 1-98 (2006) (en banc)).

[8] A "B reader" is a physician who has demonstrated proficiency in assessing and classifying x-ray evidence of pneumoconiosis by successful completion of an examination conducted by the National Institute for Occupational Safety and Health (NIOSH). *See generally* 42 C.F.R. § 37.51; Centers for Disease Control and Prevention, *The NIOSH B Reader Program*, https://www.cdc.gov/niosh/topics/chestradiography/breader.html (last visited Aug. 15, 2018). A physician who is a Board-certified radiologist ("BCR") has received certification in radiology of diagnostic roentgenology by the American Board of Radiology, Inc., or the American Osteopathic Board of Radiology. *See generally* American College of Radiology, *What is a Radiologist?*, https://www.acr.org/Quality-Safety/Radiology-Safety/Patient-Resources/About-Radiology (last visited Aug. 15, 2018); *The American Board of Radiology*, https://www.theabr.org/ (last visited Aug. 15, 2018).

| Date of x-ray/ Exh. No. | Date Read | Physician/ Credentials[8] | Film Qual. | ILO Classification |
|---|---|---|---|---|
| 03/04/2015 DX 14 at 5 | 03/07/2015 | Dr. DePonte B; BCR | 1 | ILO: s/t small opacities across all lung zones with 1/1 profusion.<br><br>Additional abnormalities noted on ILO form: Emphysema<br><br>Other comments: None. |
| 03/04/2015 DX 17 at 2 | 12/23/2015 | Dr. Alexander B; BCR | 1 | ILO: p/p small opacities across all lung zones with 1/1 profusion.<br><br>Additional abnormalities noted on ILO form: None.<br><br>Other comments: 9 x 5 mm nodule in medial right lower zone – recommend further evaluation. |
| 03/04/2015 DX 19 at 25 | 04/13/2016 | Dr. Seaman B; BCR | 1 | ILO: No parenchymal abnormalities consistent with pneumoconiosis.<br><br>Additional abnormalities noted on ILO form: None.<br><br>Other comments: There are no small rounded or irregular opacities to suggest coal workers' pneumoconiosis. The heart, mediastinum, lungs, pleural spaces, bones and soft tissues are within normal limits. |
| 03/04/2015 DX 19 at 3 | 04/23/2016 | Dr. Meyer B; BCR | 1 | ILO: No parenchymal abnormalities consistent with pneumoconiosis.<br><br>Additional abnormalities noted on ILO form: None.<br><br>Other comments: The lungs are well-expanded without small round, small irregular or large opacities. The mediastinum and cardiac silhouette are unremarkable. The bones and soft tissues are within normal limits. |
| 04/26/2016 CX 1 | 05/31/2016 | Dr. DePonte B; BCR | 2 (underexposed) | ILO: s/t small opacities across all lung zones with 1/1 profusion.<br><br>Additional abnormalities noted on ILO form: Emphysema.<br><br>Other comments: None. |

8

| Date of x-ray/ Exh. No. | Date Read | Physician/ Credentials[8] | Film Qual. | ILO Classification |
|---|---|---|---|---|
| 04/26/2016 EX 8 | 10/25/2017 | Dr. Seaman B; BCR | 1 | ILO: No parenchymal abnormalities consistent with pneumoconiosis.<br><br>Additional abnormalities noted on ILO form: atherosclerotic aorta.<br><br>Other comments: There are no small rounded or irregular opacities to suggest coal worker's pneumoconiosis. The heart size is normal. There are atherosclerotic aortic calcifications. There are multiple surgical clips in the left upper quadrant. |
| 11/30/2016 EX 1 | 01/14/2017 | Dr. Meyer B; BCR | 2 (mottle) | ILO: No parenchymal abnormalities consistent with pneumoconiosis.<br><br>Additional abnormalities noted on ILO form: atherosclerotic aorta,<br><br>Other comments: The lungs are hyperinflated. There are no small rounded, small irregular or large opacities. There is atherosclerotic calcification in the thoracic aorta. The cardiac silhouette is not enlarged. There are surgical clips in the left upper quadrant of the abdomen. |

Where two or more x-ray reports conflict, consideration shall be given to the radiological credentials of the physicians interpreting the x-rays. § 718.202(a)(1). It is well established that an adjudicator may give additional weight to the interpretation of a dually certified radiologist.[9] *E.g., Aimone v. Morrison Knudson Co.,* 8 B.L.R. 1-32, 1-34 (1985); *Scheckler v. Clinchfield Coal Co.*, 7 B.L.R. 1-128, 1-131 (1984). A finder of fact is not required to accord greater weight to the most recent x-ray evidence of record; rather, the length of time between the x-ray studies and the qualifications of the interpreting physicians are factors to consider. *McMath v. Dir., Office of Workers' Comp. Programs*, 12 B.L.R. 1-6, 1-8 (1988); *Pruitt v. Dir., Office of Workers' Comp. Programs*, 7 B.L.R. 1-544, 1-546 (1984). An ALJ may consider numerical superiority in resolving conflicts in x-ray evidence. *Edmiston v. F & R Coal Co.*, 14 B.L.R. 1-65, 1-68 (1990).

As listed above, the record contains nine interpretations of four chest x-rays. Each physician who offered an interpretation is dually certified. Therefore, each x-ray interpretation is entitled to equal weight based on equivalent radiological credentials of the physicians.

The record contains two interpretations of Claimant's May 9, 2013, chest x-ray. Dr. Alexander interpreted this x-ray as positive for clinical pneumoconiosis, whereas Dr. Meyer interpreted this x-ray as negative for clinical pneumoconiosis. Therefore, the overall weight of this chest x-ray stands in equipoise.

---

[9] A dually certified radiologist is a Board-certified radiologist who also is a NIOSH-certified B reader.

J.A. 117

The record contains four interpretations of Claimant's March 4, 2015, chest x-ray. Dr. DePonte and Dr. Meyer interpreted this chest x-ray as positive for clinical pneumoconiosis, whereas Dr. Seaman and Dr. Meyer interpreted this chest x-ray as negative for clinical pneumoconiosis. Therefore, the overall weight of this chest x-ray stands in equipoise.

The record contains two interpretations of Claimant's April 26, 2016, chest x-ray. Dr. DePonte interpreted this chest x-ray as positive for clinical pneumoconiosis, whereas Dr. Seaman interpreted this chest x-ray as negative for clinical pneumoconiosis. Therefore, the overall weight of this chest x-ray stands in equipoise.

The record contains one interpretation of Claimant's November 30, 2016, chest x-ray. Dr. Meyer interpreted this chest x-ray as negative for clinical pneumoconiosis. Therefore, the overall weight of this chest x-ray is negative for clinical pneumoconiosis.

Based on the foregoing summary, the May 9, 2013, March 4, 2015, and April 26, 2016, chest x-rays each stand in equipoise for clinical pneumoconiosis, and the November 30, 2016, chest x-ray is negative for clinical pneumoconiosis. Therefore, I conclude the overall weight of the x-ray evidence is preponderantly negative, and, considered alone, supports a finding that Claimant does not suffer from clinical pneumoconiosis.

b. Other Medical Evidence: CT Scans

The regulations also permit parties to submit "other medical evidence," which § 718.107 defines as: "any medically acceptable test or procedure reported by a physician . . . which tends to demonstrate the presence or absence of pneumoconiosis, the sequelae of pneumoconiosis or a respiratory or pulmonary impairment." § 718.107(a). An ALJ must give "appropriate consideration" to evidence submitted as "other medical evidence." *Id*. The party proffering evidence under § 718.107 must also present evidence "that the test or procedure is medically acceptable and relevant to establishing or refuting a claimant's entitlement to benefits." § 718.107(b).

CT scans are admissible as "other medical evidence" under § 718.107. *E.g., Webber v. Peabody Coal Co.*, 23 B.L.R. 1-123 (2006) (en banc). The Board has recognized the general relevance of CT scan evidence in benefits cases under the Act, and CT scans may be used to diagnose pneumoconiosis and other pulmonary diseases. *See Melnick v. Consol. Coal Co.*, 16 B.L.R. 1-31 (1991). CT scan evidence should be weighed separately from chest x-rays. *Id.*

In support of its burden to prove that Claimant does not suffer from clinical pneumoconiosis, Employer submitted Dr. Meyer's interpretation of Claimant's November 29, 2016, CT scan. Dr. Meyer is a Board certified radiologist and B-reader. Dr. Meyer explained: "Chest CT scan is more sensitive than chest x-ray for detection and characterization of pulmonary parenchymal abnormalities. CT may be useful in confirming or refuting the presence of simple coal worker's pneumoconiosis…" (EX 1 at 4.) Dr. Meyer also indicated that Claimant's CT scan "is of good quality, the interpretation of which is sufficient for evaluating the presence or absence of coal worker's pneumoconiosis." (EX 1 at 4.) Employer has thus established that "the test or procedure is medically acceptable and relevant to establishing or

10

refuting a claimant's entitlement to benefits." § 718.107(b); *Lykins v. Consolidation Coal Co.*, BRB No. 07-0127 BLA, slip op. at 6 (Oct. 31, 2007) (unpub.).

Upon review of Claimant's CT scan, Dr. Meyer wrote:

There is mild apical predominant centrilobular emphysema. Ill-defined ground-glass opacity with an upper zone predominance is also present. There are no centrilobular or perilymphatic nodules. There are no large opacities.

There is no mediastinal or hilar lymphadenopathy. Mild atherosclerotic calcification is seen in the thoracic aorta. Coronary artery calcification is present. Surgical clips are seen in the left upper quadrant of the abdomen.

(EX 1 at 3.) Dr. Meyer concluded that there are no findings of clinical pneumoconiosis and the "centrilobular ground-glass opacity in association with emphysema is most consistent with respiratory bronchiolitis secondary to smoking." (EX 1 at 3.) Because Dr. Meyer determined that Claimant's November 29, 2016, CT scan is negative for clinical pneumoconiosis, the weight of the CT scan evidence is preponderantly negative for clinical pneumoconiosis and, considered alone, supports a finding that Claimant does not suffer from clinical pneumoconiosis.

### c. Physician Opinion Evidence

Employer may also rebut the presumption of pneumoconiosis through a physician's reasoned medical judgment. A medical opinion should be both well documented and well reasoned. *See Fields v. Island Creek Coal Co.*, 10 B.L.R. 1-19 (1987). Any report lacking these qualities may be assigned less probative weight. *Clark v. Karst-Robbins Coal Co.*, 12 B.L.R. 1-149 (1989); *see also Duke v. Dir., Office of Workers' Comp. Programs*, 6 B.L.R. 1-673 (1983). Each physician who provided a report in this case is sufficiently well qualified to opine on the presence or absence of clinical pneumoconiosis.

The Sixth Circuit holds that the ALJ is tasked with making credibility determinations concerning physician opinions, including whether those opinions are sufficiently documented and reasoned. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1072 (6th Cir. 2013). An ALJ is not bound to accept the opinion or theory of any medical expert; rather, credibility decisions are expressly reserved for the factfinder. *Id.*

The physician opinions of record are summarized more fully below in Part V.A.ii.a. In sum, Dr. Ajjarapu diagnosed Claimant with clinical pneumoconiosis, whereas Dr. Rosenberg and Dr. McSharry did not diagnose clinical pneumoconiosis. The basis for Dr. Ajjarapu's diagnosis was a single positive chest x-ray interpretation. Because Dr. Ajjarapu did not have the opportunity to review additional radiographic evidence, and because her opinion contradicts the preponderance of the chest x-ray and CT scan evidence of record, I conclude Dr. Ajjarapu's opinion merits reduced probative weight on the issue of clinical pneumoconiosis.

Alternatively, Dr. Rosenberg and Dr. McSharry based their opinions on substantial radiographic evidence. Because their conclusions are well documented and are supported by the

11

chest x-ray and CT scan evidence of record discussed above, I conclude their opinions merit normal probative weight. Because the opinions of Dr. Rosenberg and Dr. McSharry outweigh that of Dr. Ajjarapu on the issue of clinical pneumoconiosis, I conclude the preponderance of the physician opinion evidence, considered alone, supports a finding that Claimant does not suffer from clinical pneumoconiosis.

### d. Hospitalization and Treatment Records

The regulations allow parties to submit "any record of a miner's hospitalization for a respiratory or pulmonary or related disease." § 725.414(a)(4). Medical treatment records may be relevant to the issue of whether a miner has pneumoconiosis or a disabling pulmonary impairment. *Hill v. Lone Mountain Processing,* BRB N. 13-0327 BLA, slip op. at 6 n. 7 (unpub.) (Apr. 17, 2014). I have briefly summarized these records below.

St. Charles Breathing Center (CX 5)

The record contains Claimant's treatment records from St. Charles Breathing Center from June 2016 through December 2018. These records generally reflect that Claimant has a past medical history of and/or has been diagnosed with the following conditions: dyspnea, wheezing, coughing, mucus production, respiratory infection, coal workers' pneumoconiosis, COPD, and chronic bronchitis. Pulmonary function test results in December 2018 reflect severe restriction. (CX 5 at 23.)

Harlan ARH (CX 6; CX 7; EX 5)

Claimant's progress notes from Harlan ARH span from July 1999 to February 2017. These records generally reflect that Claimant has a past medical history of and/or has been diagnosed with diabetes, back and neck pain, arthritis, shortness of breath, hypoxemia, wheezing, sputum production, chest tightness, COPD (for which he used an inhaler), GI disorder, and black lung/CWP. Chest x-ray interpretations in these records were negative for clinical pneumoconiosis. Claimant underwent a polysomnography test, which revealed that Claimant does not have sleep apnea. Pulmonary function test results from November 2016 reflect a moderate obstructive and restrictive lung defect. (EX 5 at 27.)

Clover Fork Clinical (EX 4)

Claimant's treatment records from the Clover Fork Clinic span from November 2013 to November 2016. These records generally reflect that Claimant has a past medical history of and/or has been diagnosed with ailments including diabetes, GERD/BARRETS, hypertension, hyperlipidemia, hypothyroidism, COPD, chronic bronchitis, back and neck pain, and benign prostatic hyperplasia. Chest x-ray interpretations in these records were almost entirely negative for clinical pneumoconiosis, except for an October 1997 chest x-ray, which revealed q/q small opacities with 1/1 profusion. (EX 4 at 494.)

J.A. 120

*Discussion of Hospitalization and Treatment Records*

These records generally reflect that Claimant suffers from respiratory/pulmonary impairments including pneumoconiosis and COPD, as well as other health problems, including back and neck pain. Though some of these records indicate Claimant suffers from pneumoconiosis, the basis for such a diagnosis is unclear, so these records are not sufficiently well documented or well reasoned to independently establish the presence of clinical pneumoconiosis.

On the other hand, most of the radiographic evidence contained in these records does not report pneumoconiosis. Thus, these records generally support an inference of the absence of clinical pneumoconiosis. Because it is uncertain whether each interpreting physician specifically considered the presence of pneumoconiosis, though, and because much of the radiographic evidence is non-ILO-compliant, I conclude that these records are insufficient to independently establish the absence of clinical pneumoconiosis.

Overall, I conclude these records are insufficient to affirmatively establish either the presence or the absence of clinical pneumoconiosis. Without additional explanation from treating and/or interpreting physicians—in this situation where it appears some records may weigh in favor of a finding of pneumoconiosis, and others weigh against such a funding—I find these records, considered alone, merit little probative weight on the issue of clinical pneumoconiosis.

e. <u>Conclusion: Clinical Pneumoconiosis</u>

The burden is on Employer to affirmatively demonstrate that Claimant does not suffer from clinical pneumoconiosis. § 718.305(d)(1)(i)(B). As set forth above, the x-ray evidence, CT scan evidence, and physician opinion evidence are each preponderantly negative for clinical pneumoconiosis. Though the treatment records overall are insufficient to establish the presence or absence of clinical pneumoconiosis, the radiographic reports contained therein generally support a finding that Claimant does not suffer from clinical pneumoconiosis. Therefore, I conclude the weight of the medical evidence supports a finding that Employer has met its burden under section 718.305(d)(1)(i)(B) to establish, by a preponderance of the evidence, that Claimant does not have clinical pneumoconiosis.

ii. <u>Legal Pneumoconiosis</u>

Legal pneumoconiosis is any chronic lung disease or impairment that arises from coal mine employment. § 718.201(a)(2). "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." § 718.201(b). The physician opinion evidence is the evidence in the record most relevant to disproving the existence of legal pneumoconiosis. *Cf.* § 718.202(a) (setting forth the means of establishing the existence of pneumoconiosis). The record also contains relevant hospitalization and treatment

13

records, which are summarized above.

a. Physician Opinion Evidence

As set forth above, a medical opinion should be both well documented and well reasoned. *See Fields v. Island Creek Coal Co.*, 10 B.L.R. 1-19 (1987). Any report lacking these qualities may be assigned less probative weight. *Clark v. Karst-Robbins Coal Co.*, 12 B.L.R. 1-149 (1989); *see also Duke v. Dir., Office of Workers' Comp. Programs*, 6 B.L.R. 1-673 (1983). The record contains the following physician opinion evidence.[10]

Dr. Esther Ajjarapu (DX 14 at 23; DX 43)

Dr. Ajjarapu performed Claimant's Department-sponsored pulmonary examination in accordance with § 725.406 on March 4, 2015. (DX 14.) Dr. Ajjarapu is Board certified in family medicine. Regarding Claimant's coal mine employment history, Dr. Ajjarapu referred to Claimant's Form CM-911a, which documents a coal mine employment history beginning in May 1977 and ending in February 1997. Dr. Ajjarapu noted that Claimant started smoking in 1990 and continued to smoke one pack per day at the time of her exam.

Claimant's past medical history includes attacks of wheezing since 2005, arthritis since 1995, diabetes since 2010, and high blood pressure since 2011. Claimant presented with complaints of daily sputum production, daily wheezing, dyspnea upon exertion, coughing, chest pain upon exertion, three-pillow orthopnea, and paroxysmal nocturnal dyspnea. Dr. Ajjarapu also detailed Claimant's medications.

On auscultation of Claimant's lungs, Dr. Dr. Ajjarapu observed clear breath sounds. Dr. Ajjarapu administered a chest x-ray (which Dr. DePonte interpreted as positive for clinical pneumoconiosis), a pulmonary function test (which showed "severe pulmonary impairment"), an arterial blood gas study (which showed "mild hypoxemia"), and an EKG (which showed "normal sinus rhythm, no acute changes").

Dr. Ajjarapu diagnosed Claimant with clinical pneumoconiosis and chronic bronchitis. The diagnosis of clinical pneumoconiosis was based on Dr. DePonte's x-ray interpretation. The diagnosis of chronic bronchitis was based on "the presence of symptoms of daily cough with sputum production."

Dr. Ajjarapu attributed Claimant's clinical pneumoconiosis to his coal mine work because "inhaled coal dust eventually causes macules and nodules to form in the lung tissue and these can be seen as opacities." Dr. Ajjarapu attributed Claimant's chronic bronchitis to both his coal mine dust exposure and his smoking history. She explained: "Both tobacco smoke and coal dust cause airway inflammation leading to bronchospasm and cause excessive airway secretions and bronchitic symptoms."

Dr. Ajjarapu concluded that Claimant is totally disabled. She based this on Claimant's

---

[10] For ease of discussion, the summaries of the physician opinion evidence include the physicians' opinions on all relevant elements of entitlement and have not been limited to their opinions concerning pneumoconiosis.

spirometry (which "shows severe pulmonary impairment"), his arterial blood gas study (which shows "mild pre and post arterial hypoxemia"), and Claimant's positive chest x-ray. Dr. Ajjarapu determined the cause of Claimant's total disability is "multifactorial and it is due to both causes of extensive smoking and inhalation of coal dust."

Dr. Ajjarapu wrote a supplemental medical report dated September 15, 2016. (DX 43.) Dr. Ajjarapu specified that Claimant suffers from legal pneumoconiosis in the form of chronic bronchitis. She reiterated that her diagnosis is based on Claimant's respiratory symptoms, including complaints of sputum production, dyspnea on ambulation, and shortness of breath. She again attributed Claimant's chronic bronchitis to both his smoking and coal mine dust exposures. She explained that coal dust inhalation directly irritates the airways, which causes cough and sputum production. She also explained that these effects can still occur, even after a miner's exposure to coal mine dust has ceased, because dust particles are "embedded in the parenchyma of airway tissues."

Dr. Ajjarapu also reiterated that Claimant suffers from clinical pneumoconiosis. Dr. Ajjarapu acknowledged the existence of negative x-ray interpretations but explained that "a negative chest x-ray does not necessarily mean that the miner is not suffering from" pneumoconiosis, and "the x-ray was read as positive" on the day of her exam, so she believes that Claimant suffers from clinical pneumoconiosis.

Dr. Ajjarpu agrees with Dr. Rosenberg (whose opinion is summarized below) that Claimant is totally disabled would be unable to perform his previous coal mine employment. Regarding the cause of Claimant's total disability, Dr. Ajjarapu wrote: "This miner is totally and completely disabled due in part to his work in the coal mines from pulmonary perspective."

<u>Dr. David Rosenberg (DX 18; EX 6; EX 9; EX 24)</u>

Dr. Rosenberg has authored four reports, and he has been deposed since the filing of this claim. Dr. Rosenberg is Board certified in internal medicine, pulmonary disease, and occupational medicine. He has reviewed substantial medical evidence, including radiographic evidence, pulmonary function test results, arterial blood gas studies, hospitalization and treatment records, and medical reports.

Dr. Rosenberg's first report is dated May 10, 2016. (DX 18 at 1.)[11] Based on his review of the evidence, Dr. Rosenberg observed that Claimant worked in the coal mines from 1978 to 1996 and last worked as a shearer operator. Dr. Rosenberg noted a smoking history of one pack per day from 1990 to the time of his exam.

Dr. Rosenberg concluded that Claimant does not have clinical pneumoconiosis. He based this on various factors including Claimant's lungs being clear on auscultation and the preservation of his gas exchange in association with exercise, which "indicates the alveolar capillary bed within his lungs is intact." Dr. Rosenberg explained: "If one had parenchymal

---

[11] DX 18 contains two reports from Dr. Rosenberg dated May 10, 2016. (DX 18 at 1; DX 18 at 6.) Although the conclusions reached in both reports are identical, I have summarized the report at page 1 because it appears to be based on a review of more evidence than the report at page 6.

changes that were causing restriction, one would expect a falling $pO_2$ in association with exercise."

Dr. Rosenberg determined that Claimant is totally disabled from a pulmonary perspective. He observed that Claimant has "severe airflow obstruction with a degree of bronchodilator response," and "his spirometric measurements are qualifying." Therefore, Dr. Rosenberg concluded that Claimant "would be considered disabled from performing his previous coal mine job or similarly arduous types of labor."

Dr. Rosenberg described Claimant's pattern of impairment as "a pattern seen in association with legal CWP." He explained that Claimant "does have a reduction of his $FEV_1$, but it is associated with only a mild reduction of his $FEV_1/FVC$ ratio … in association with bronchodilators." Dr. Rosenberg concluded that, despite Claimant's significant smoking history, "the pattern of impairment supports a component of legal CWP contributing to his disabling impairment."

The second medical report authored by Dr. Rosenberg is dated April 13, 2017. (EX 6.) Upon review of additional medical evidence, Dr. Rosenberg noted that Claimant has a coal mine employment history totaling "a little under 20 years," overall there is no evidence of micronodularity, and Claimant's qualifying pulmonary function test results reflect "restriction with an obstructive component."

Dr. Rosenberg reiterated his opinions that Claimant is totally disabled but does not have clinical pneumoconiosis. Because Claimant's $FEV_1$ is reduced, "but only with a milder reduction of the $FEV_1/FVC$ ratio," Dr. Rosenberg again concluded that "one cannot rule out a component of legal CWP." However, referencing Claimant's nineteen years of coal mine employment and a smoking history as high as fifty pack-years, Dr. Rosenberg explained that "when considering dose response relationships in the development of disease, smoking has played a much more significant role as a cause for his respiratory impairment compared to coal dust exposure."

Dr. Rosenberg's third medical report is dated November 2, 2017. (EX 9.) Upon review of additional medical evidence, Dr. Rosenberg again concluded that the radiographic evidence fails to establish that Claimant suffers from clinical pneumoconiosis. Additionally, Dr. Rosenberg continued to believe that the physiologic pattern of Claimant's disabling impairment is "consistent with a component of legal CWP," though he concluded that "smoking clearly has played a much more significant role as a cause for his respiratory impairment compared to coal mine dust exposure."

Dr. Rosenberg's most recent report is dated June 17, 2019. (EX 6.) Though Dr. Rosenberg summarized several pieces of medical evidence at the outset of this report, it appears Dr. Rosenberg had already reviewed most of the evidence he summarized. For instance, Dr. Rosenberg had already reviewed Dr. McSharry's January 19, 2017, report (and associated test results) in writing his report of April 13, 2017. (EX 6.) Likewise, Dr. Rosenberg had already reviewed Claimant's April 13, 2017, pulmonary function test results in writing his report of November 2, 2017. (EX 9.)

In any case, in writing this report, Dr. Rosenberg determined that Claimant has twenty-one and one-half years of coal mine employment, and Claimant smoked for approximately twenty to thirty years at a rate of one-half to one-pack per day. (EX 6.) Dr. Rosenberg concluded that Claimant does not have clinical pneumoconiosis because he "does not have micronodularity related to past coal mine dust exposure." Rather, Dr. Rosenberg concluded that Claimant has "centrilobular ground-glass opacities in association with the emphysema consistent with respiratory bronchiolitis interstitial lung disease (RBILD)." Dr. Rosenberg indicated that this disease was caused by smoking and "is responsible for any restriction observed," and (along with emphysema) is also responsible for Claimant's reduced diffusing capacity. Dr. Rosenberg also noted that Claimant "has smoking-related chronic obstructive lung disease (COPD)."

Dr. Rosenberg again concluded that Claimant suffers from a totally disabling pulmonary impairment. Dr. Rosenberg indicated this conclusion was based on Claimant's severe airflow obstruction, his "marked reduction" of $FEV_1$, and his "severely reduced $FEV_1$ in relationship to the FVC." Dr. Rosenberg also noted that Claimant is "disabled as a whole person" based on his other health conditions.

For several reasons, Dr. Rosenberg determined that Claimant's COPD/emphysema is not etiologically related to his past coal mine dust exposure. First, citing to various medical studies, Dr. Rosenberg explained that, when providing a differential diagnosis, it is possible to distinguish between the effects of cigarette smoking and coal dust exposures by examining the magnitude in the reduction of the $FEV_1$ in comparison to the reduction in the FVC. Specifically, Dr. Rosenberg explained that smoking reduces the $FEV_1$ farther than the FVC, whereas coal dust reduces the $FEV_1$ and FVC in equal measure. In Claimant's case, his $FEV_1$ in relationship to his FVC is reduced to around 60%. Based on a predictive equation for how dust exposure reduces the $FEV_1$ in relationship to the FVC, Dr. Rosenberg opined that Claimant's $FEV_1$ in relationship to his FVC has "fallen to a much greater extent" (approximately ten percent greater) than would be expected given his twenty-one and one-half years of coal mine employment.

Similarly, Dr. Rosenberg cited to medical studies to demonstrate that the effects of cigarette smoking are far greater than the effects of coal dust in terms of a loss of $FEV_1$. Dr. Rosenberg concluded that, when considering the dose-response relationships of coal dust exposure and smoking, as well the magnitude in the decrement of $FEV_1$ compared to other values, Claimant "does not have obstruction related to coal dust exposure." Instead, Dr. Rosenberg determined Claimant's reduction of $FEV_1$ is related to his smoking history. Dr. Rosenberg specified that the magnitude of Claimant's loss of $FEV_1$ "is not consistent with a coal mine dust etiology," and his marked reduction of $FEV_1$ in relationship to his FVC is "inconsistent with the presence of legal CWP."

Next, Dr. Rosenberg reasoned that Claimant's emphysema was caused by his coal dust exposure. He explained that both coal mine dust and cigarette smoke can cause emphysema through similar mechanisms. However, he indicated it is possible to distinguish between the effects of smoking and coal mine dust. According to Dr. Rosenberg, "emphysema related to cigarette smoking is more diffuse than emphysema due to coal dust and results in lower diffusing capacity measurements, marked air trapping, and bullae formation because the particles in cigarette smoke are smaller and more numerous than coal particles and distribute deeper

17

throughout the lungs." Dr. Rosenberg cited to medical literature to support the positions that smaller particles cause more diffuse emphysema and that coal dust exposure does not cause diffuse emphysema. Dr. Rosenberg emphasized that, whereas some animal studies demonstrate a connection between tobacco smoke and genetic controls related to emphysema, there are no animal studies demonstrating the development of diffuse emphysema related to coal dust. Based on all this information, Dr. Rosenberg concluded Claimant's emphysema is not a form of legal pneumoconiosis. Rather, Claimant's reduced diffusing capacity "indicates widespread emphysematous lung destruction related to smoking," and his "findings are not representative of coal mine induced emphysema."

Dr. Rosenberg also concluded "[t]here is no scientific basis for attributing any bronchitis in [Claimant's] case to his remote coal dust exposure." Citing to medical literature, Dr. Rosenberg asserted that "[c]hronic bronchitis dissipates within months after exposure ceases" because the associated symptoms (couth and sputum production) are caused by direct irritation of the airway cells from dust inhalation." Dr. Rosenberg noted that smoking is one of the primary causes of bronchitis, and he attributed Claimant's bronchitis to his smoking history. In part because Claimant continued to smoke after the leaving the mines in 1997, Dr. Rosenberg concluded his bronchitis "is caused by his continuing cigarette smoking habit and not his past coal mine dust exposure."

Dr. Rosenberg also referenced Claimant's response to bronchodilators as evidence that he does not suffer from legal pneumoconiosis. Specifically, Dr. Rosenberg observed that Claimant's spirometric results displayed "significant improvement in relationship to the administration of bronchodilators." According to Dr. Rosenberg: "This type of response in response to bronchodilators is not consistent with the pattern of legal CWP. The chronic scarring associated with CWP would be expected to allow luminal dilation and thus improved airflow." Dr. Rosenberg posited that the fact that Claimant's results did not return completely to normal after bronchodilators was due to airway remodeling.

Dr. Rosenberg next determined Claimant's airway disease is not a latent and progressive form of pneumoconiosis. Dr. Rosenberg explained that latent and progressive pneumoconiosis is rare. He wrote, based on scientific literature, that "developing latent and progressive simple clinical CWP after a given miner has left the coal mine industry with a negative X-ray is an uncommon phenomenon." He cited to a study that found miners display a decline in lung function in the first few years after beginning work in the mines. Therefore, "workers would not be expected in a latent and progressive fashion to experience falls in their $FEV_1$ values in relationship to legal CWP years after having left their coal mine employment." Because Claimant continued to smoke heavily for two decades after leaving the mines, Dr. Rosenberg concluded that it "is this excessive smoking consumption which has caused his RBILD as well as his emphysema."

Dr. Rosenberg's ultimate conclusion was that Claimant does not suffer from either clinical or legal pneumoconiosis. Although he agreed that Claimant is totally disabled by a respiratory impairment, Dr. Rosenberg opined that Claimant's disability is not related to coal mine dust exposure. Dr. Rosenberg's opinions remain the same "even assuming he has a degree of CWP."

18

Dr. Rosenberg testified at a deposition on October 22, 2019. (EX 24.) Dr. Rosenberg testified to the importance of relying on relevant research to reach evidence-based medical conclusions. (Tr. 14-15.) He explained that physicians generally employ the methodology of differential diagnosis to determine the cause of particular medical findings by considering the possible causes and then "hon[ing] in on what's more probable than not based on the testing that's been performed" and based on medical literature. (Tr. 15-16.) He also explained that, while risk is an important consideration in performing differential diagnosis, "it's not the only consideration. You have to use the risk model and other information that's been provided to decide what's more probable than not." (Tr. 17-18.) Dr. Rosenberg emphasized that risk alone does not establish causation. For instance, the fact of exposure to coal mine dust or to cigarette smoke does not necessarily mean that one's lung disease was caused by either of those factors. (Tr. 18-19.) Dr. Rosenberg agreed that the likelihood of a miner developing coal mine dust-related lung disease would depend on the miner's level of exposure (*i.e.*, there is a dose-response relationship), and the same is true with respect to smoking-induced lung disease. (Tr. 19.)

Based on his review of the entire record, Dr. Rosenberg estimated a smoking history of thirty to fifty pack-years. (EX 24 at 27-28.) Dr. Rosenberg indicated that, based on his pulmonary function test results, Claimant has a totally disabling obstructive respiratory impairment. (EX 24 at 28-29.) Dr. Rosenberg again explained that Claimant "has on obstructive pattern where the $FEV_1$ is reduced to a greater extent than the FVC," as well as "a degree of restriction." (EX 24 at 30.) Dr. Rosenberg emphasized the magnitude of Claimant's loss of $FEV_1$ as compared to FVC: "Initially it looked like it was only mildly reduced. But based on the totality of the information, it becomes more severely reduced, the ratio has been down as low as 54 percent." (EX 24 at 30.) Dr. Rosenberg also observed that "there's been worsening of his obstruction over time." (EX 24 at 31.)

Dr. Rosenberg opined that the decline seen on Claimant's pulmonary function test is due to smoking. (EX 24 at 31.) Dr. Rosenberg emphasized that Claimant's treatment records from around the time he left mines do not show any respiratory complaints or diagnosis/treatment for any respiratory condition. (EX 24 at 32.) He stated that this is "very supportive information" that Claimant's impairment is not related to coal mine dust because symptoms "would have been manifest in close proximity to when he worked in the mines." (EX 24 at 32.) He added: "You're not going to get, as I mentioned, those kinds of manifestations and clinical correlates years and decades after one leaves the mine." (EX 24 at 32.) Dr. Rosenberg's conclusion is that Claimant's disabling obstruction and emphysema were caused by his smoking habit. (EX 24 at 35.)

Asked to explain why he initially found that Claimant's pattern of impairment seen on pulmonary function testing was consistent with legal pneumoconiosis, Dr. Rosenberg stated:

> At that point in time, I had the spirometric values and I was looking at the reduction of the ratio. It was only mildly reduced. Then over time I've had more information to look at. And as I mentioned prior in this deposition, there are times when his $FEV_1/FVC$ ratio has been very significantly reduced. He also at time times has demonstrated a bronchodilator response. You wouldn't expect a bronchodilator response in relationship to a coal dust related impairment.

19

(EX 24 at 36.) Dr. Rosenberg explained that a broncho-responsive impairment is not consistent with legal pneumoconiosis because chronic scarring of the airways caused by legal pneumoconiosis "is not going to allow that airway to dilate in response to bronchodilators." (EX 24 at 36.) Dr. Rosenberg also explained that the worsening of Claimant's lung function over time is inconsistent with legal pneumoconiosis. (EX 24 at 37.)

Instead, based in part on Claimant's CT scan which showed ground glass opacities, Dr. Rosenberg diagnosed Claimant with respiratory smoking-related bronchiolitis, which can lead to both restriction and obstruction. (EX 24 at 37.) He explained: "Respiratory bronchiolitis is inflammation around the airways, and in the interstitium of the lung that is generally related to cigarette smoking. The cigarette smoke causes this fluffy type of appearance on the CAT scan and that refers to ground glass changes." (EX 24 at 38-39.) Along with Claimant's emphysema, "these kinds of findings are classic for a smoking related form of airway disease and inflammation in the lungs." (EX 24 at 39.) Dr. Rosenberg again described how the small particles in cigarette smoke are more likely than coal dust to cause a diffuse pattern of emphysema. (EX 24 at 41-42.)

In sum, the factors on which Dr. Rosenberg relied to rule out coal dust as a cause of Claimant's impairment include the dose response relationships of smoking and coal mine dust, the prevalence of smoking-induced disease versus coal mine dust-induced disease, the reduction in Claimant's $FEV_1$ compared to his FVC, the bronchodilator response seen during pulmonary function testing, Claimant's CT scan (which revealed ground glass opacities), Claimant's reduced diffusion capacity, and the latency and progressivity of Claimant's symptoms. (EX 24 at 43-44.) Dr. Rosenberg explained that his opinion (that the *magnitude* of reduction in the FEV1/FVC ratio can be used to distinguish between the effects of coal dust and smoking) is not contrary to the science underlying the regulations. (EX 24 at 45-46.)

Dr. Rosenberg disagreed with Dr. Ajjarapu's attribution of Claimant's chronic bronchitis to both his smoking and coal mine dust exposures. (EX 24 at 46-48.) He explained that "there's not scientific literature that chronic bronchitis will develop in coal miners years after they left their employment." (EX 24 at 46-47.) Dr. Rosenberg attributed Claimant's chronic bronchitis to his smoking, and he explained "that's what's irritating his airways causing his continued cough and sputum production." (EX 24 at 48.) Dr. Rosenberg specified that he considered Claimant's underground coal mine employment in reaching his diagnosis, and he considered the possibility that coal mine dust exposure could have aggravated a smoking-induced lung condition. (EX 24 at 49-50.)

Dr. Rosenberg concluded that Claimant does not suffer from clinical pneumoconiosis. (EX 24 at 51.) He cited the "overwhelming majority" of negative B readings, the negative CT scan evidence, and the preservation of Claimant's gas exchange with exercise. (EX 24 at 51-53.) Dr. Rosenberg also agreed that Claimant's totally disabling obstructive impairment was caused by his long smoking habit, and coal mine dust exposure could be ruled out as a causative factor to a reasonable degree of medical certainty. (EX 24 at 54-55.)

20

Dr. Roger McSharry (EX 3)

Dr. McSharry examined Claimant on December 1, 2016, and reviewed substantial medical evidence, including radiographic evidence, pulmonary function tests, arterial blood gas studies, hospitalization and treatment records, and medical reports. He has written three reports since the filing of this claim. (EX 3.) Dr. McSharry is Board certified in internal medicine and pulmonary disease.

In the report of his physical examination, Dr. McSharry noted that Claimant worked in coal mines for 21 years, last worked as a shearer operator, and smoked for twenty to thirty years at a rate of one-half to one pack per day. Dr. McSharry noted Claimant's history of dyspnea on exertion, daily productive cough, daily wheezing, chest pain, orthopnea, hypertension, diabetes, and orthopedic issues. Dr. McSharry also detailed Claimant's medications. On auscultation of Claimant's lungs, Dr. McSharry observed slight wheezing and good air movement.

Dr. McSharry's first narrative report is dated is January 19, 2017. (EX 3 at 1.) As part of his examination, Dr. McSharry administered a pulmonary function test, which "indicated severe airflow limitation as well as moderate restrictive abnormalities and reduced diffusion capacity," though Dr. McSharry noted that the test "did not meet reproducibility standards and may underestimate [Claimant's] best lung function." Dr. McSharry also administered an arterial blood gas study, which showed "mild hypoxemia for age, and a significantly elevated carboxyhemoglobin level indicating current smoking." Additionally, Claimant underwent a chest x-ray and CT scan, which were interpreted by Dr. Meyer and Dr. McSharry as negative for pneumoconiosis.

Dr. McSharry concluded that Claimant does not suffer from clinical pneumoconiosis. The basis for this opinion was the negative x-ray and CT scan. Dr. McSharry reasoned: "The fact that no lesions were seen on this CT study strongly rebuts any contention that radiographic pneumoconiosis is present."

Dr. McSharry also concluded that Claimant does not suffer from legal pneumoconiosis. Though he acknowledged that Claimant does have chronic lung disease, Dr. McSharry emphasized Claimant's long smoking history and concluded that Claimant's "essentially irreversible" obstructive lung disease, with some restrictive changes and diffusion abnormalities, "is almost certainly the result of long-term tobacco use and for this reason does not indicate the presence of legal pneumoconiosis."

Dr. McSharry recognized that pneumoconiosis can cause a combination of restrictive and obstructive lung disease. However, he explained that such a condition "is almost universally associated with severe radiographic changes of pneumoconiosis," which are not present in Claimant's case. Dr. McSharry also explained that such a pattern of restrictive and obstructive lung disease with diffusion abnormalities can be caused by cigarette smoking alone.

Dr. McSharry concluded that "it is extremely unlikely to me that that this severe degree of pulmonary function abnormalities would be seen as a result of coal workers' pneumoconiosis

21

without any radiographic evidence of that disease, whereas cigarette-related lung disease of this degree is frequently associated with no radiographic changes." Dr. McSharry added: "The possibility that a very small portion of the abnormality seen on pulmonary function testing in this patient is due to coal dust exposure cannot be completely excluded," though he noted there is no "compelling support" for that assertion.

Dr. McSharry concluded that Claimant suffers from a totally disabling respiratory impairment and would be unable to perform his previous coal mine employment. He described Claimant's pulmonary function test as "severely abnormal" and indicated that it meets the Department's standard for disability. He attributed Claimant's disability to his long smoking history.

Dr. McSharry wrote a second report dated March 16, 2017. (EX 3 at 39.) Upon review of additional medical records, Dr. McSharry wrote that his opinions from his previous report remain unchanged. That is, Claimant suffers from neither clinical pneumoconiosis nor legal pneumoconiosis, but he is totally disabled by a respiratory impairment caused by his long smoking history.

Dr. McSharry's most recent report is dated May 30, 2019. (EX 3 at 42.) After reviewing additional medical records, Dr. McSharry again concluded that Claimant does not suffer from clinical pneumoconiosis. He recognized that the chest x-ray evidence he reviewed contains both positive and negative interpretations and specifically referenced his own review of Claimant's November 29, 2016, chest x-ray. Dr. McSharry also relied on Dr. Meyer's interpretation of Claimant's November 29, 2016, CT scan, which was negative for clinical pneumoconiosis.

On the issue of legal pneumoconiosis, Dr. McSharry wrote: "I feel it is unlikely, although not impossible, that legal coal workers' pneumoconiosis is present." He again commented that in his experience, when a person has "significant abnormalities in lung function" like Claimant does, "it is almost always associated with clear-cut radiographic evidence of high profusion CWP or PMF." In contrast, the radiographic evidence in Claimant's case are "the typical radiographic findings in long-time smokers with no industrial exposure to pulmonary hazards." Additionally, according to Dr. McSharry, the emphysematous changes seen in Claimant's pulmonary function results are "fairly uncommon in non-smoking coal miners, even when there is clear-cut radiographic evidence of pneumoconiosis." He reasoned: "These two findings suggest that coal workers' pneumoconiosis is simultaneously invisible radiographically and yet causing a PFT appearance uncommon even in non-smoking miners with strong evidence of pneumoconiosis." Dr. McSharry concluded: "The likelihood of both of these unusual circumstances occurring together is much less than the likelihood this represents simple smoking-related pneumoconiosis." However, he added: "I cannot fully exclude that any contribution from coal dust exposure exists in this claimant."

Dr. McSharry does believe that Claimant is totally disabled. Although he described Claimant's arterial blood gas studies as "minimally abnormal," Dr. McSharry noted that Claimant's "severely abnormal pulmonary function testing" meets the Department's standard for disability. He determined that "the cause for the respiratory impairment and resulting disability is smoking-related lung disease." Because there is "no compelling evidence" that coal dust

J.A. 130

exposure caused or contributed to Claimant's lung disease, Dr. McSharry concluded it is "extremely unlikely" that coal dust contributed to or aggravated Claimant's respiratory condition.

*Discussion of Physician Opinions*

In support of its burden to prove that Claimant does not have legal pneumoconiosis, Employer offered the opinions of Drs. Rosenberg and McSharry. Both Dr. Rosenberg and Dr. McSharry are Board certified in internal medicine and pulmonary disease, so they are well qualified to opine on the presence or absence of legal pneumoconiosis. Both Dr. Rosenberg and Dr. McSharry also had a reasonably accurate understanding of Miner's coal mine employment and smoking histories. Both Dr. Rosenberg and Dr. McSharry determined Claimant does not suffer from legal pneumoconiosis.

In his first three reports dated May 10, 2016 (DX 18), April 13, 2017 (EX 6), and November 2, 2017 (EX 9), Dr. Rosenberg opined that (though smoking was likely the more significant cause of Claimant's lung disease) Claimant's pattern of impairment also was consistent with legal pneumoconiosis because his $FEV_1/FVC$ ratio was only mildly reduced. However, in his final report dated June 17, 2019 (EX 6), Dr. Rosenberg determined that the pattern of Claimant's obstructive lung disease is not consistent with a coal mine dust etiology.

At his deposition (EX 24), Dr. Rosenberg attributed this change in his opinion to the fact that "over time I've had more information to look at," specifically additional spirometric results. (EX 24 at 36.) However, between the time when Dr. Rosenberg wrote his third report in November 2017 (EX 9)—and opined that Claimant's impairment was consistent with legal pneumoconiosis—and the time when he wrote his final report in June 2019 (EX 6)—and opined that Claimant's impairment was inconsistent with pneumoconiosis—it does not appear that Dr. Rosenberg reviewed any additional spirometric results.

In his final report (EX 6), Dr. Rosenberg references Dr. McSharry's November 2016 pulmonary function test, Dr. Ajjarapu's April 2017 pulmonary function test, and 2016 pulmonary function test results contained in Claimant's treatment records from St. Charles Breathing Center. It is clear from Dr. Rosenberg's other reports that he had already previously reviewed each of these results. Specifically, he reviewed Dr. McSharry's November 2016 results in writing his April 2017 report (EX 6), and he reviewed Dr. Ajjarapu's April 2017 results and the St. Charles Breathing Center treatment records in writing his November 2017 report (EX 9).

Therefore, Dr. Rosenberg's explanation that he changed his opinion based on his review of additional spirometric results does not hold up to scrutiny. Rather, I conclude Dr. Rosenberg's opinion is internally inconsistent because he reaches different conclusions based on the same test results. On this basis, I conclude Dr. Rosenberg's opinion is not well reasoned, and I do not credit it.[12] *See, e.g., Griffith v. Dir. Office of Workers' Comp. Programs*, 49 F.3d 184, 186 (6th

---

[12] By the time of his deposition, it appears Dr. Rosenberg had reviewed an additional pulmonary function test of record, namely Dr. Ajjarapu's December 2017 test (CX 4). (EX 24 at 23.) It is conceivable that this additional test result may have warranted a change in Dr. Rosenberg's opinion. Nonetheless, because Dr. Rosenberg's prior

Cir. 1995) (proper for the ALJ to assign less weight to an equivocal medical opinion); *Lively v. A & M Coal Co., Inc.*, BRB No. 18-0009 BLA (Nov. 15, 2018) (unpub.) (same); *Long v. Eastern Associated Coal Co.*, BRB No. 15-00018 BLA (Oct. 27, 2015) (unpub.) (permissible for the ALJ to afford less weight to a medical report on the basis of inconsistencies (citing *Hopton v. U.S. Steel Corp.*, 7 B.L.R. 1-12 (1984))).

Dr. McSharry also concluded that Claimant does not suffer from legal pneumoconiosis. He diagnosed Claimant with lung disease in the form of a mixed restrictive and obstructive pattern with diffusion abnormalities. He determined Claimant's impairment is "almost certainly" caused by his long smoking history. Dr. McSharry opined: "I feel it is unlikely, although not impossible, that legal coal workers' pneumoconiosis is present."

Dr. McSharry reasoned that, in his experience, when a person has "significant abnormalities in lung function" like Claimant does, "it is almost always associated with clear-cut radiographic evidence of high profusion CWP or PMF." In contrast, the radiographic evidence in Claimant's case represents "the typical radiographic findings in long-time smokers with no industrial exposure to pulmonary hazards." Additionally, according to Dr. McSharry, the emphysematous changes seen in Claimant's pulmonary function results are "fairly uncommon in non-smoking coal miners, even when there is clear-cut radiographic evidence of pneumoconiosis." Dr. McSharry also wrote: "The possibility that a very small portion of the abnormality seen on pulmonary function testing in this patient is due to coal dust exposure cannot be completely excluded," though he noted there is no "compelling support" for that assertion.

Dr. McSharry based his opinion on the medical records he reviewed, as well as his own examination of Claimant. Upon consideration of the relevant risk factors (namely, smoking and coal mine dust exposure), Dr. McSharry determined that the characteristics of Claimant's pulmonary condition are consistent with smoking-induced lung disease. Accordingly, Dr. McSharry's opinion is sufficiently well reasoned and well documented to establish that Claimant suffers from a smoking-induced pulmonary impairment. However, I find Dr. McSharry's opinion is insufficient to affirmatively establish that Claimant's impairment is not also "significantly related to, or substantially aggravated by, dust exposure." § 718.201(b).

First, one of Dr. McSharry's primary reasons for attributing Claimant's lung disease to smoking and not to coal mine dust is that the radiographic evidence is typical of a smoking-induced impairment, but not of a coal mine dust-induced impairment characterized by significant abnormalities in lung function. However, the regulations do not require that a finding of legal pneumoconiosis be accompanied by radiographic evidence of clinical pneumoconiosis. *See* § 718.201(a)(2); *Obush v. Helen Mining Co.*, BRB No. 08-0671 BLA (June 24, 2009). A diagnosis of legal pneumoconiosis simply is not dependent on radiographic evidence of pneumoconiosis. *See Cumberland River Coal Co. v. Dir., Office of Workers' Comp. Programs*, 690 F.3d 477, 487 (6th Cir. 2012) (finding the ALJ properly concluded that the regulations provide legal pneumoconiosis may exist even in the absence of clinical pneumoconiosis, *i.e.* negative x-rays and CT scans). Rather, legal pneumoconiosis is specifically defined separate and

---

opinions in this case are internally inconsistent and not credible, as described above, I also decline to credit Dr. Rosenberg's deposition opinion.

apart from clinical pneumoconiosis, which is usually diagnosed by radiographic evidence. *See* § 718.201.

Likewise, a finding of legal pneumoconiosis is not precluded by a finding that Claimant's pulmonary function test abnormalities are consistent with smoking-induced lung disease. The presence of one causal factor (smoking) is not evidence of the absence of another causal factor (coal mine dust exposure). Even if Dr. McSharry is correct that Claimant's smoking habit is the primary cause of his pulmonary condition, his reasoning does not disprove that coal mine dust also substantially contributed to or aggravated Claimant's lung disease, especially considering "the prevailing view of the medical community that the risks of smoking and coal mine dust exposure are additive." *Pennington v. Bates Contracting and Constr., Inc.*, BRB No. 13-0287 BLA, slip op. at 6 (Feb. 25, 2014) (unpub.); *see also* 65 Fed. Reg. 79,940, 79,941 (Dec. 20, 2000) ("Smokers who mine have additive risk for developing significant obstruction").[13]

Finally, considering Dr. McSharry's express recognition that the presence of legal pneumoconiosis is "unlikely, although not impossible," I find Dr. McSharry did not sufficiently explain why Claimant could not be suffering from *both* tobacco-related and coal mine dust-related lung disease, or why Claimant's coal dust exposure did not substantially exacerbate any tobacco related lung disease. Therefore, I conclude his opinion does not establish, by a preponderance, that Claimant's impairment is not "significantly related to, or substantially aggravated by, dust exposure."[14] *See* § 718.201(b). For these reasons, Dr. McSharry's opinion has not persuaded me that Claimant does not suffer from legal pneumoconiosis.

Based on the foregoing analysis, I conclude Dr. Rosenberg's and Dr. McSharry's opinions on the issue of legal pneumoconiosis are insufficient (alone or together) to satisfy Employer's burden to disprove the existence of legal pneumoconiosis, as required by § 718.305(d)(1)(i)(A). Therefore, the physician opinion evidence does not preponderantly establish that Claimant is not suffering from legal pneumoconiosis.[15]

### b. Hospitalization and Treatment Records

The hospitalization and treatment records do not aid Employer in rebutting the presumption of legal pneumoconiosis. These records show that Claimant has been diagnosed and treated for pulmonary and respiratory impairments, including COPD. However, because these records are devoid of any discussion as to the cause of these impairments, they are not determinative on the issue of legal pneumoconiosis. Therefore, I conclude that the hospitalization

---

[13] The Board has held that the Preamble "comprises an authoritative statement of medical principles accepted by the Department of Labor." *Tackett v. H.J. Mining Co., Inc.*, BRB No. 13-0502 BLA, at 9 (Jul. 10, 2014) (unpub.).

[14] Dr. McSharry also concluded Claimant does not suffer from legal pneumoconiosis because he found "no compelling evidence to suggest coal dust exposure is causing or contributing to this claimant's lung disease." (EX 3 at 45.) From this language, it appears that Dr. McSharry would find legal pneumoconiosis only if the evidence of a coal dust-induced lung disease were "compelling." The burden of proof in a black lung proceeding is "preponderance of the evidence," so a claimant is never required to establish the existence of pneumoconiosis by "compelling evidence." *See* § 725.202(d); *see also Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267 (1994).

[15] Dr. Ajjarapu diagnosed Claimant with legal pneumoconiosis. Therefore, her opinion cannot assist Employer in rebutting the presumption of legal pneumoconiosis.

J.A. 133

and treatment records, taken alone, neither establish nor refute the presence of legal pneumoconiosis and merit little weight on the issue.

### c. Conclusion: Legal Pneumoconiosis

The physician opinion evidence does not establish, preponderantly, that Claimant does not have legal pneumoconiosis. The hospitalization and treatment records are insufficient to establish the presence or absence of legal pneumoconiosis. Accordingly, weighed together, I find that the evidence as a whole does not establish that Claimant is not suffering from legal pneumoconiosis. Therefore, Employer has failed carry its burden to rebut the presumption of legal pneumoconiosis as required by § 718.305(d)(1)(i)(A).

Because Employer failed to establish that Claimant does not suffer from both clinical and legal pneumoconiosis, Employer has failed to rebut the presumption of pneumoconiosis in accordance with § 718.305(d)(1)(i).

## B. Disproving Disability Causation

The final method available to Employer to rebut the § 718.305 presumption is to establish that pneumoconiosis caused "no part" of Claimant's respiratory total disability. § 718.305(d)(1)(ii). In other words, Employer must "'rule out' any connection between pneumoconiosis and the miner's total disability." *Dalman v. Consol. Coal Co.*, BRB No. 15-0022 BLA (Oct. 30, 2015) (unpub.); *see also W. Va. CWP Fund v. Bender*, 782 F.3d 129, 144 (4th Cir. 2015) (explaining that the presumption is rebutted only by showing that the miner's disability is "attributable exclusively to a cause or causes other than pneumoconiosis"); *Minich v. Keystone Coal Mining Corp.*, 25 B.L.R. 1-149, 1-159 (2015); *Hall v. Paramount Coal Co. of Va.*, BRB No. 16-0610 BLA (Jul. 31, 2017) (unpub.). The Board has also distinguished between proving that *pneumoconiosis* caused no part of Claimant's total disability and proving that *coal dust exposure* caused no part of Claimant's total disability; the Board clarified that it is the former that is required to rebut the presumption. *Minich*, 25 B.L.R. at, 1-158.

Employer has failed to carry its burden to rebut the presumption of legal pneumoconiosis as required by § 718.305(d)(1)(i)(A). Dr. Rosenberg and Dr. McSharry opined that Claimant did not have legal pneumoconiosis. As discussed above, I found that their opinions failed to rebut the presumption of legal pneumoconiosis. "Long-standing precedent establishes that a medical opinion premised on an erroneous finding that a claimant does not suffer from pneumoconiosis is 'not worthy of much, if any weight,' particularly with respect to whether a claimant's disability was caused by that disease." *Hobert Mining v. Epling*, 783 F.3d 498, 505 (4th Cir. 2015) (quoting *Grigg v. Dir., Office of Workers' Comp. Programs*, 28 F.3d 416, 419 (4th Cir. 1994)), cited in *Carter v. Island Creek Coal Co.*, BRB Nos. 16-0423 BLA and 16-0423 BLA-A (May 22, 2017) (unpub.).

Here, neither Dr. Rosenberg nor Dr. McSharry credibly disproved the existence of legal pneumoconiosis. Their opinions on disability causation are inseparably linked to their dubious conclusions on the issue of legal pneumoconiosis and are thus inadequate to establish that no part of Claimant's disability was caused by pneumoconiosis. *See, e.g., Terry v. Newton Energy, Inc.*,

BRB No. 17-0087 BLA (Nov. 28, 2017) (unpub.); *Sturgill v. Double M Coal Co.*, BRB No. 15-0294 BLA (Nov. 28, 2016) (unpub.); *Gamble v. Charalais Corp.*, BRB Nos. 15-0357 BLA and 15-0380 BLA (Apr. 28, 2016) (unpub.).

Because Employer has also failed to establish that Claimant does not have pneumoconiosis, Employer has failed to rebut the § 718.305 presumption that Claimant is totally disabled due to pneumoconiosis. Accordingly, Claimant has established, through the operation of the presumption at § 718.305, that he is totally disabled due to pneumoconiosis.

## VI.   Pneumoconiosis Causation

If an administrative law judge finds the existence of legal pneumoconiosis, it is not necessary to separately determine the etiology of the disease under § 718.203, because the findings at § 718.202(a)(4), regarding causation, necessarily subsume that inquiry. *See Kiser v. L&J Equipment Co.*, 23 B.L.R. 1-256, 1-259 n.18 (2006). Here, Claimant has established legal pneumoconiosis via operation of the § 718.305 presumption (and Employer's failure to rebut the presumption). Thus, Claimant has established pneumoconiosis arising out of coal mine employment.

Based on the foregoing analysis, Claimant has established all elements of entitlement: (1) he suffers from pneumoconiosis; (2) his pneumoconiosis arose out of coal mine employment; (3) he is totally disabled; and (4) his total disability is caused by pneumoconiosis.

## VII.   Responsible Operator/Insurance

Employer contends that Arch, the named self-insurance carrier, is not liable for this claim. The crux of Employer's argument is that, at the time this claim was filed, Patriot Coal Corporation ("Patriot") provided self-insurance for Apogee (Claimant's last coal mine employer), so Patriot is the self-insurer liable for this claim. Because Patriot is now insolvent, Employer asserts that liability must fall to the Black Lung Disability Trust Fund ("Trust Fund").

According to Employer, Arch sold Apogee and its federal black lung liabilities in 2005 and, in subsequent years, adjusted its Department-approved self-insurance applications to exclude Apogee. Patriot ultimately acquired Apogee's assets and liabilities in 2008, and Patriot included Apogee's liabilities in its Department-approved self-insurance agreement in 2011.[16] In 2015, Patriot was dissolved. In 2015, the Department issued Bulletin 16-01, which, according to Employer, effectively imposed liability on Arch for certain claims, including this one. Employer's legal challenge to the Bulletin was dismissed by a federal district court for lack of jurisdiction, and the dismissal was affirmed by the D.C. Circuit.

Employer argues that there is no evidence in the record (such as a self-insurance agreement) to establish that Arch was Apogee's self-insurer or that Arch is liable for this claim. Employer contends that the Department has not explained its decision to name Arch as the self-insurer for this claim instead of Patriot. Employer emphasizes that the Department approved Patriot as the self-insurer of Apogee's liabilities.

---

[16] In making these assertions, Employer relies on exhibits not admitted to the record.

J.A. 135

Employer asserts the Department has refused to engage in discovery on the issue of whether the Department released Arch from liability (which, according to Employer, suggests that discovery would disprove the Department's assertion that there is no evidence that it released Arch from liability). Employer emphasizes that the Department also has prevented it from introducing relevant liability evidence and thus concludes the Department has deprived Arch of the right to participate meaningfully in a fair hearing.

Employer asserts Arch is not a responsible operator and cannot be treated as one because: (1) Arch does not meet the regulatory definition of operator; (2) Bulletin 16-01 directs that Apogee should be named the responsible operator and Arch should be named the responsible self-insurer; (3) § 725.407(d) prohibits the Department from now naming or treating Arch as a responsible operator; and (4) the Department improperly pierced the corporate veil when it treated Arch as the responsible operator under § 725.493(b)(2). Employer argues that the Department has provided no evidence or legal justification for treating Arch, the parent company—and not Apogee, the subsidiary—as the responsible operator and thus illegally attempts to impose perpetual liability on parent companies.

Employer challenges the Department's interpretation of the self-insurance regulations to impose liability on a self-insurer based on a miner's last day of work rather than on the entity who was responsible for the liability at the time the claim was filed. Employer contends this is an improper rule change that eliminates the clear regulatory distinction between commercial insurers and self-insurers. Employer thus argues the Department cannot treat self-insurance as commercial insurance.

Employer asserts that Arch's self-insurance and its liability for this claim ended in 2005. Employer emphasizes that, consistent with the Part 126 regulations, the Department approved Arch's self-insurance agreements, which did not include Apogee's liabilities after 2005.[17] Employer argues that Patriot's self-insurance agreement was in effect at the time this claim was filed, so it is Patriot that is the liable self-insurer. Because Patriot is insolvent, Employer concludes the Trust Fund is liable for this claim.

Employer argues that the Department's actions and its interpretation of the applicable regulations constitutes improper rulemaking through litigation in violation of Arch's due process rights and the Administrative Procedure Act. Employer likewise challenges, as a violation of due process and the APA: the application of Bulletin 16-01, the Department's interpretation of the regulatory evidentiary limitations, and the denial of discovery and exclusion of Employer's liability evidence in this matter.

The Director asserts that a straightforward application of the Act and its implementing regulations leaves no doubt that Apogee, as self-insured by Arch, is liable in this claim. The Director explains that, at the time Claimant was employed by Apogee, Apogee was an Arch subsidiary, and Arch was Apogee's self-insurer; thus, Apogee, as self-insured by Arch, is liable. The Director emphasizes that Claimant never worked for Patriot or a Patriot-owned subsidiary.

---

[17] Again, in making this argument, Employer relies on exhibits not admitted to the record.

J.A. 136

The Director contends that Apogee meets all the requirements of a potentially liable operator under § 725.494, so Apogee is the responsible operator under § 725.495 because Apogee most recently employed Claimant as a miner. The Director argues Apogee is capable of paying benefits because, at the time Claimant was employed by Apogee, it was self-insured by Arch, and Arch still qualifies as a self-insurer. The Director emphasizes that it is Employer's burden to prove that it does not possess sufficient assets to pay benefits under § 725.495(c), and Employer has presented no such evidence.

The Director asserts that neither Arch nor Apogee was ever released from liability for claims by miners who last worked for Apogee when it was owned by Arch. The Director contends that any contractual arrangement that purported to release Arch from liability for such claims could not and did not relieve Arch of its liability under the Act. The Director argues that, though Patriot was retroactively authorized to self-insure its black lung liabilities, Arch was not released from liability for claims of miners who worked for its subsidiaries if Patriot's self-insurance failed. Rather, according to the Director, Arch remains liable for claims of miners who worked for its subsidiaries and never worked for Patriot subsidiaries.

## A. Potentially Liable Operator

Liability for payment of benefits under the Act to eligible miners and their survivors rests with the "responsible operator." § 725.490(b). To be designated the responsible operator, a coal mine operator must first be identified as a "potentially liable operator." § 725.494.

The five regulatory requirements necessary to be considered a potentially liable operator are as follows:

> (1) the miner's disability arose at least in part out of employment in or around a mine or other facility during a period when the mine or facility was operated by such operator;[18]
> (2) the potentially liable operator operated a coal mine after June 30, 1973;
> (3) the potentially liable operator employed the miner for a cumulative period of not less than one year;
> (4) the miner's employment with the potentially liable operator included at least one working day after December 31, 1969; and
> (5) the potential liable operator is financially capable of paying benefits.

§ 725.494(a)-(e). A potentially liable operator is deemed financially capable if: the operator had insurance for the time period covering the miner's employment, the operator qualifies as a self-insurer, or the operator possesses sufficient assets to secure the payment of benefits. § 725.494(e)(1)-(3).

At the outset of a claim, the district director identifies all potentially liable operators and notifies each such operator of the existence of the claim. § 725.407(b). After developing evidence and receiving responses from the parties, the district director issues a Schedule for the Submission of Additional Evidence ("SSAE") in which she names a potentially liable operator as

---

[18] There is a rebuttable presumption that a miner's disability arose in whole or in part out of his work with the potentially liable operator. § 725.494(a).

the "designated responsible operator." § 725.410(a)(3). The designated responsible operator is the "potentially liable operator" who last employed the miner. § 725.495(a)(1).

In adjudicating the identity of the responsible operator, the district director bears the burden to establish that the responsible operator is a potentially liable operator in accordance with §725.494, except that "[i]t shall be presumed, in the absence of evidence to the contrary, that the designated responsible operator is capable of assuming liability for the payment of benefits in accordance with §725.494(e)." § 725.495(b). To escape liability, the designated responsible operator bears the burden to show that either (1) it does not possess sufficient assets to secure payment of benefits, or (2) it is not the potentially liable operator that most recently employed the miner. § 725.495(c).

In this case, the district director notified Apogee, as self-insured by Arch, that it was a potentially liable operator on December 8, 2015. (DX 22.) The district director issued the SSAE and designated Apogee, as self-insured by Arch, as the potentially liable operator responsible for payment of benefits on March 17, 2016. (DX 27.)

The evidence in the record reflects that Apogee, as owned and self-insured by Arch, meets the five regulatory requirements of a potentially liable operator. First, Employer has not rebutted the presumption that Claimant's disability, at least in part, arose out of his work for Apogee. *See* § 725.494(a). Next, the record reflects that Claimant worked as a miner for the same company, which ultimately became Apogee, from 1984 to 1997. (Tr. 21, 25, 33; DX 3; DX 7; DX 8.) The evidence thus shows that Apogee operated a coal mine after June 30, 1973; Claimant worked for Apogee for at least one cumulative year; and Claimant worked for Apogee for at least one day after December 31, 1973. *See* § 725.494(b)-(d).

Finally, absent evidence to the contrary, Apogee is presumed to be financially capable of paying benefits in accordance with §725.494(e). § 725.495(b). Financial capability may be based on an operator's authorized self-insurance. § 725.494(e)(2). Employer has presented no evidence that Apogee is incapable of paying benefits, particularly through its self-insurance with Arch.[19] It does not appear from the record that Employer disputes that Apogee's liabilities were self-insured by Arch during Claimant's employment with Apogee. Instead, Employer complains that the Department has not affirmatively established a self-insurance relationship between Arch and Apogee after 2005 (when Arch purportedly sold Apogee's assets and liabilities).

Employer's argument misconstrues the burdens of the parties involved in this case. As plainly set forth in the regulations, it is presumed that Apogee is capable of assuming liability for the payment of benefits. § 725.495(b). Because Employer did not submit any evidence that Apogee, as self-insured by Arch, is incapable of assuming liability for the payment of benefits, Employer did not defeat the § 725.495(b) presumption, and the Director is not required to prove the fact of Apogee's self-insurance through Arch; the ability of Apogee (as self-insured by Arch) to assume financial liability is presumed under the regulations.

---

[19] Any such evidence would now be inadmissible (absent extraordinary circumstances) because it was not submitted to the district director. § 725.456(b)(1); § 725.414(d). In my June 17, 2019, Order Granting Motion to Reconsider and Denying Request for Subpoenas, I determined extraordinary circumstances are not present here.

Instead, to defeat liability, Employer must establish either that Apogee was not the last potentially liable operator to employ Claimant, or that Apogee is financially capable of paying benefits. § 725.495(c)(1)-(2); *see also Gilbert v. Williamson Coal Co.*, 7 BLR 1-289, 1-294 (1984); *Borders v. A.G.P. Coal Co.*, 9 BLR 1-32, 1-34 (1986). Employer does not dispute that Apogee was Claimant's last coal mine employer, and the record does not reflect that Claimant worked for any coal mine operator subsequent to his employment with Apogee. (DX 8; Tr. 33-34.) Therefore, Employer has not established that it is not liable under § 725.495(c)(2).

The only remaining avenue by which Employer can avoid liability is to prove that Apogee does not possess sufficient assets to pay benefits. Employer has not made such an argument. Though Apogee's assets were apparently sold several times (ultimately to Patriot), there is no evidence that Apogee, as self-insured by Arch, is now unable to assume liability in the event Claimant is found to be eligible for benefits.[20] Employer, thus, has not established that Apogee is not financially capable of paying benefits. The fact that Apogee is no longer in operation does not affect this analysis. An operator may still be liable for payment of benefits as long as the operator meets the conditions set forth in § 725.494. *See* 30 U.S.C. § 932(i); 20 C.F.R. § 725.492(d).[21] Therefore, Employer has not shown that it is not liable under § 725.495(c)(1).

For these reasons, I conclude that Apogee, as self-insured by Arch, was properly identified as a potentially liable operator and was properly designated as the responsible operator in this claim.

## B. Arch as Responsible Operator

Employer next argues that the Department erred in treating Arch as the responsible operator. Employer contends: (1) Arch does not meet the regulatory definition of operator; (2) Bulletin 16-01 directs that Apogee should be named the responsible operator and Arch should be named the responsible self-insurer; and (3) § 725.407(d) prohibits the Department from now naming or treating Arch as a responsible operator.

These arguments are unavailing. As set forth above, the district director properly named Apogee, not Arch, as a potentially liable operator and as the responsible operator in this claim. (DX 22; DX 27.) Therefore, whether Arch meets the regulatory definition of operator at § 725.491 is irrelevant. Likewise, the district director's compliance with Bulletin 16-01 is

---

[20] Employer's argument that there is no self-insurance agreement between Apogee and Arch in the record does not amount to affirmative evidence that Apogee is unable to pay benefits.

[21] The section governing the liability of successor operators (those who acquire substantially all assets from a prior operator) provides: "This section **shall not be construed to relieve a prior operator of any liability if such prior operator meets the conditions set forth in §725.494**." § 725.492(d). The regulation goes on to explain the parameters of successor liability "[i]f the prior operator does not meet the conditions set forth in §725.494." *Id.* Thus, it is *only if the prior operator no longer qualifies as a potentially liable operator*, that a successor operator is held liable for the payment of benefits. Hence, the relevant question here is whether Apogee, as self-insured by Arch, qualifies as a potentially liable operator. I determined above that Apogee, as self-insured by Arch, does qualify as a potentially liable operator. Therefore, it is Apogee, as self-insured by Arch, that remains primarily liable for Claimant's claim.

J.A. 139

immaterial,[22] and the district director did not name Arch a responsible operator in violation of § 725.407(d).

Employer's primary argument is that the Department abused its discretion and improperly pierced the corporate veil when it treated Arch as the responsible operator under § 725.493(b)(2). The regulation provides:

> In any case in which the operator which directed, controlled or supervised the miner is no longer in business and such operator was a subsidiary of a parent company, a member of a joint venture, a partner in a partnership, or was substantially owned or controlled by another business entity, such parent entity or other member of a joint venture or partner or controlling business entity **may** be considered the employer of any employees of such operator.

§ 725.493(b)(2) (emphasis added). Employer contends that the Department has provided no evidence or legal justification for treating Arch, the parent company—and not Apogee, the subsidiary—as the responsible operator. Employer emphasizes that, under general principles of corporate law, parent and subsidiary companies are viewed as distinct, and there must be some evidentiary basis for piercing the corporate veil to impose liability on a parent for a claim directed at a subsidiary. Employer thus asserts that the Department was required (and failed) to make some evidentiary showing to justify imposing liability on Arch.

First, it does not appear that the district director relied on this regulation. The record does not reflect that the district director found an employment relationship between Claimant and Arch (though this regulation apparently would permit such a finding). Again, the record reflects that the district director named *Apogee*, not Arch, as the responsible operator in this claim. Arch bears liability for this claim *as Apogee's self-insurer*, not as the responsible operator.

Second, as explained in detail in my June 17, 2019, Order Granting Motion to Reconsider and Denying Request for Subpoenas, and my July 10, 2019, Order Denying Employer's Motion to Transfer Liability, Arch was properly notified of its liability in this claim as Apogee's self-insurer and yet failed to timely offer or seek through discovery any evidence that it is not liable. As a result, Employer is now prohibited from presenting liability evidence during this proceeding, §§ 725.414(d), 725.456(b)(1), and as set forth above, Apogee's capability of assuming liability for the payment of benefits is now presumed under the regulations. § 725.495(b). Contrary to Employer's arguments, it did have the opportunity to prove that Arch was not liable for this claim as Apogee's self-insurer; it simply failed to avail itself of that opportunity.

### C. Self-Insurance

Employer challenges the Department's interpretation of the self-insurance regulations and its imposition of "liability on a self-insurer based on the miner's last day of work, rather than on the company who was responsible for the liability on the date the claim was filed." (Empl.

---

[22] I must evaluate the instant claim and the arguments made by the parties according to the applicable regulations, not according to the Department's internal policy bulletins.

Brief at 21.) Employer contends this is a new, retroactive, and unsupported interpretation that constitutes a rule change. Employer argues this interpretation eliminates the clear regulatory distinction between commercial insurers and self-insurers.

Employer explains that, whereas commercial insurance serves to cover liability for claims arising during a specific contractual time period, self-insurance does not. Instead, self-insurance simply enables an entity to identify the level of risk and liability it is willing to assume. Employer, citing § 726.203(a), contends that commercial insurance contracts only impose liability on an insurance carrier if the insurance agreement was in effect on the claimant's date of last exposure. Employer indicates there is no similar requirement in the regulations governing self-insurance. Employer asserts the Department cannot treat self-insurance as commercial insurance, and, based on principles of insurance law and contract law, Patriot is the liable self-insurer.

I recognize that Part 726 of the regulations separates self-insurance from commercial insurance. There is some appeal to Employer's argument that the Department cannot treat self-insurance the same as commercial insurance without risking the elimination of the regulatory distinction between the two. I also appreciate Employer's argument that self-insurance is more akin to the absence of insurance than to commercial insurance.

However, I see no basis in the regulations to relieve Arch of liability under the circumstances of this claim. As set forth above, Apogee (as self-insured by Arch) was properly identified as the responsible operator in this claim. As explained in my June 17, 2019, Order Granting Motion to Reconsider and Denying Request for Subpoenas, and my July 10, 2019, Order Denying Motion to Transfer Liability, Employer was properly notified of its liability in this claim but failed to timely seek or offer evidence that it is not liable.

Employer assumes that the self-insurance regulations do not impose liability based on the date of a miner's last employment. However, the self-insurance regulations simply do not govern the imposition of liability. Section 726 of the regulations governs only *how* an operator must secure its existing liability; it does not *create* liability. Whether an operator complies with the insurance requirements of section 726 (or whether the Department properly administers these requirements) does not initiate or terminate liability.[23] Rather, it is the Act itself and the substantive requirements of section 725 (particularly subpart G) that impose liability.

I find no regulatory basis to refute the Director's arguments that Arch is liable here because it provided Apogee's self-insurance while Claimant was employed by Apogee, and Apogee, as owned and self-insured by Arch, meets the requirements of a potentially liable operator. Even if Employer's assertions about general principles of corporate and insurance law are correct, black lung liabilities are very specifically regulated, and I am bound to apply those regulations. Overall, I conclude Employer's arguments do not offer a sufficient legal basis to transfer liability for this claim to the Trust Fund.[24]

---

[23] Likewise, any argument that the Department released Arch from liability also fails because, though an operator choosing to self-insure is required to receive authorization from the Department, it is not the Department's actions that create liability.

[24] I decline to address Employer's due process arguments and the arguments related to my interpretation of the

33

## VIII.  Onset Date

The only remaining question is the date on which benefit payments should begin. Benefits are payable from the date the medical evidence first establishes that the miner became totally disabled due to pneumoconiosis; or, if such a date cannot be determined from the record, benefits are payable from the month and year in which the miner filed the present claim. § 725.503; *Carney v. Dir., Office of Workers' Comp. Programs*, 11 B.L.R. 1-32 (1987); *Owens v. Jewell Smokeless Coal Corp.*, 14 B.L.R. 1-47 (1990).

Here, the evidence of record does not disclose when Claimant first became totally disabled due to pneumoconiosis. Thus, benefits are awarded as of the date the current claim was filed and are payable dating back to November 2014.

## IX.   Representative Fees

Non-attorney representative fees may be awarded in cases in which a claimant is awarded benefits. Sixty days is hereby allowed for Claimant's representative to submit a fee application. A service sheet showing that service has been made upon all parties, including Claimant, must accompany the application. The Act prohibits charging a fee in the absence of an approved application. Claimant is responsible for the payment of any fees awarded to the non-attorney representative. *See* §§ 725.365, 725.366; *Harrison v. Liberty Mut. Ins. Co.*, 3 B.L.R. 1-596, 1-597 (1981) ("[T]here is no authority in either the Act or the implementing regulations for [a lay representative's fee] to be assessed against an employer, the Black Lung Disability Trust Fund or as a lien against claimant's benefits.").

## X.   Order

Based upon applicable law and a review of all the evidence, Claimant has established his entitlement to benefits under the Act. Therefore, Claimant's claim for benefits under the Act is **AWARDED**.

**SO ORDERED**.


                                    **LAUREN C. BOUCHER**
                                    Administrative Law Judge


Cherry Hill, New Jersey

---

evidentiary limitations and exclusion of Employer's liability evidence, which I have already addressed in detail in my prior orders. Employer has preserved its arguments for appeal.

**NOTICE OF APPEAL RIGHTS**: If you are dissatisfied with the Administrative Law Judge's decision, you may file an appeal with the Benefits Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days from the date on which the administrative law judge's decision is filed with the district director's office. *See* 20 C.F.R. §§ 725.478 and 725.479.

The address of the Board is: Benefits Review Board, U.S. Department of Labor, PO Box 37601, Washington, DC 20013-7601, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

An e-Filer must register as a user, by filing an online registration form. To register, the e-Filer must have a valid e-mail address. The Board must validate the e-Filer before he or she may file any e-Filed document. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in a more traditional manner. e-Filers will also have access to electronic service (eService), which is simply a way to receive documents, issued by the Board, through the Internet instead of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as a step by step user guide and FAQs can be found at: https://dol-appeals.entellitrak.com. If you have any questions or comments, please contact: Boards-EFSR-Help@dol.gov

Your appeal is considered filed on the date it is received in the Office of the Clerk of the Board, unless the appeal is sent by mail and the Board determines that the U.S. Postal Service postmark, or other reliable evidence establishing the mailing date, may be used. *See* 20 C.F.R. § 802.207. Once an appeal is filed, all inquiries and correspondence should be directed to the Board. After receipt of an appeal, the Board will issue a notice to all parties acknowledging receipt of the appeal and advising them as to any further action needed. At the time you file an appeal with the Board, you must also send a copy of the appeal letter to Associate Solicitor, Black Lung and Longshore Legal Services, U.S. Department of Labor, 200 Constitution Ave., NW, Room N-2117, Washington, DC 20210. *See* 20 C.F.R. § 725.481. If an appeal is not timely filed with the Board, the Administrative Law Judge's decision becomes the final order of the Secretary of Labor pursuant to 20 C.F.R. § 725.479(a).

J.A. 143

UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD
Washington, D.C.

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| **DAVID M. HOWARD** | ) | |
| P.O. Box 135 | ) | |
| Baxter, KY 40806 | ) | |
| | ) | |
| Claimant, | ) | BRB No. _____ |
| | ) | |
| v. | ) | Case No.   2017-BLA-05163 |
| | ) | |
| **APOGEE COAL COMPANY** | ) | OWCP No. xxx-xx-6902 |
| c/o Healthsmart CCS | ) | |
| P.O. Box 3389 | ) | |
| Charleston, WV  25333 | ) | |
| | ) | |
| Employer, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ARCH COAL, INC.** | ) | |
| c/o Healthsmart CCS | ) | |
| P.O. Box 3389 | ) | |
| Charleston, WV  25333 | ) | |
| | ) | |
| Carrier, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DIRECTOR, OFFICE OF WORKERS'** | ) | |
| **COMPENSATION PROGRAMS, UNITED** | ) | |
| **STATES DEPARTMENT OF LABOR,** | ) | |
| | ) | |
| Party-in-Interest. | ) | |

NOTICE OF APPEAL

Pursuant to 20 C.F.R. Part 802, Apogee Coal Company and Arch Coal,

Inc., through its undersigned attorneys, herewith appeal from the February 25,

2020 Decision and Order Awarding Benefits issued by Administrative Law Judge Lauren C. Boucher.

No motion for reconsideration has been served upon counsel for employer.

Respectfully submitted,

/s/ Laura Metcoff Klaus
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C.  20037
(202) 533-2362
klausl@gtlaw.com
Counsel for Employer

/s/ Mark E. Solomons
Mark E. Solomons
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C.  20037
(202) 533-2361
solomonsm@gtlaw.com
Counsel for Employer

Dated:  March 20, 2020

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2020, copies of the foregoing Notice of Appeal were served upon the Benefits Review Board by the DOL Appeals electronic filing system and by first class mail, postage prepaid on the following:

Michael A. Chance
Director, Division of Coal Mine
    Workers' Compensation
United States Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, FPB
Washington, DC 20210

Kevin Lyskowski, Esq.
Deputy Associate Solicitor, Division of Black Lung
    and Longshore Legal Services
United States Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, FPB
Washington, D.C. 20210

Diane Jenkins, Lay Representative
Stone Mountain Health Services
P. O. Box Drawer S
St. Charles, VA 24282

<u>/s/ Laura Metcoff Klaus</u>
Laura Metcoff Klaus

DAVID M. HOWARD,                    )
                                    )
                Claimant,           )
                                    )
        v.                          )
                                    )          BRB No.    2020-0229 BLA
APOGEE COAL CO.,                    )
                                    )
                Employer-Carrier,   )          OWCP No.  xxx-xx-6902
                                    )
        And                         )
                                    )
DIRECTOR, OFFICE OF WORKERS'        )
COMPENSATION PROGRAMS,              )
                                    )
                Party-in-Interest.  )
                                    )

## PETITION FOR REVIEW

Pursuant to 20 C.F.R. § 802.211, Arch Coal, by undersigned counsel, petitions for review of Administrative Law Judge Lauren Boucher's February 25, 2020 Decision and Order awarding benefits because it is not supported by substantial evidence, is irrational, and is not in accordance with the law.

Respectfully submitted,

s/ Laura Metcoff Klaus
Laura Metcoff Klaus
   Klausl@gtlaw.com
Michael Pusateri
   Pusaterim@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2354

UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD
Washington, D.C.

DAVID M. HOWARD,                   )
                                   )
                  Claimant,        )
     v.                            )
                                   )     BRB No.    2020-0229 BLA
APOGEE COAL CO.,                   )
                                   )     OWCP No.  xxx-xx-6902
                  Employer-Carrier,)
                                   )
     and                           )
                                   )
DIRECTOR, OFFICE OF WORKERS'       )
COMPENSATION PROGRAMS,             )
                                   )
                  Party-in-Interest.)

## BRIEF IN SUPPORT OF PETITION FOR REVIEW

Arch Coal (now Arch Resources) appeals from an award of benefits issued by Administrative Law Judge ("ALJ") Lauren Boucher on February 25, 2020. Its appeal is timely, giving the Board jurisdiction under 33 U.S.C. § 921(b), *incorporated by reference into* 30 U.S.C. § 932(a). As set forth more fully below, the constitutionality of ALJ's tenure has not been established, but even if she was authorized to adjudicate this claim, the ALJ's decision must be vacated because her findings are irrational and ignore uncontroverted evidence and authority. She also refused to permit discovery and admit evidence relating to Arch's challenge to BLBA Bulletin 16-01, ignoring the mandate from the D.C. Circuit that Arch had the right to challenge the Bulletin during the administrative proceedings here. Each of these errors provides its own independent basis for reversal.

## STATEMENT OF THE CASE

A. <u>The Proceedings Below</u>

Howard filed for benefits on November 19, 2014. Dx. 2. He identified his last employer (ending in February 1997) as Apogee Coal Company. Dx. 3. On

December 31, 2005, Arch Coal sold Apogee and its federal black lung liabilities to Magnum Coal. It promptly informed the Department of Labor ("DOL") of the sale and renewed and adjusted its self-insurance applications to exclude Apogee in 2006, 2012 and 2015. Dx. 24, Ex. 12-Ex. 17, Ex. 19-Ex. 20. DOL approved those applications, none of which provided insurance coverage for any employee of Apogee no matter when they worked. Through a series of transactions, Patriot ultimately acquired Apogee's assets and liabilities in 2008. In 2011, DOL approved Patriot's application for self-insurance which included coverage of Apogee's past, present and future liabilities. Ex. 16, Ex. 19, Ex. 20. DOL did not require Arch Coal to include any Apogee claim in its self-insurance program. *See* Ex. 17 at 51-56. It did not inform Arch Coal that it retained potential contingent liability for Apogee. And, DOL never notified Apogee–or Arch Coal–of any alleged violations of 20 C.F.R. § 726.300. *Id.* at 54-55. As a self-insurer, pursuant to 20 C.F.R. § 726.102(b)(3), Arch Coal thus rid itself of liability for this claim. *See* Ex. 17 at 62 (renewed applications excluding Apogee establish that Arch Coal "provided no coverage for any of the Magnum claims"); 20 C.F.R. § 725.495(a)(4).

Thus, after Howard filed this claim, the district director named Apogee as the responsible operator and Patriot Coal as the responsible insurer. Dx. 2, Dx. 21. Patriot Coal responded to the notice of claim and agreed that it was a proper party. Dx. 23. Similarly, in the schedule issued in August 2015, the district director again named Patriot Coal as the insurer for this claim. Dx. 26. In October 2015, Patriot's insurance assets were ceded to DOL and Patriot was dissolved. *See In re: Patriot Coal*, No. 15-32450 (Bankr. E.D. Va. 2015). In November 2015, DOL issued Bulletin 16-01 imposing liability on Arch Coal as the responsible self-insurer in cases involving its sold subsidiaries where the last day of the miner's work was before December 31, 2005. On December 8, 2015, the district director issued a

second Notice of Claim that, for the first time, named Arch Coal as the insurer for this claim. Dx. 22.

On September 26, 2016, the district director proposed an award of benefits in Howard's case and named Apogee—not Arch Coal—as the responsible operator and Patriot Coal—not Arch Coal—as the insurer. Dx. 44 at 11. To avoid the entry of a default judgment, Arch Coal, through its attorney, responded to the proposed decision, and again agreed that Patriot Coal, not Arch Coal, was the proper self-insurer. Dx. 45. At no time did the district director address Arch's arguments or provide (or even cite) any insurance policy or self-insurance agreement that showed that Arch Coal still insured this claim. *Id.* The claim proceeded to the Office of Administrative Law Judges for a hearing, which occurred on October 30, 2017 before ALJ Scott Morris. Before a decision on the merits, the case then was reassigned to this ALJ for *de novo* proceedings pursuant to *Raymond J. Lucia Cos. v. Securities & Exchange Comm'n*, 585 U.S. __, 138 S. Ct. 2044 (2018).

Because the district director did not properly name and serve Arch Coal, Arch Coal filed a Motion to Transfer Liability to the Trust Fund arguing that these failures violated due process. But the ALJ concluded that the reference to Patriot was a "typographical error" and any failure to name or serve Arch Coal did not constitute a due process violation. Order of July 10, 2019 at 3.

Prior to the *de novo* hearing, Arch Coal propounded written discovery to DOL regarding support for certain statements in DOL's preamble. In an order dated July 31, 2019, this ALJ prohibited this discovery stating that Arch Coal can challenge the ALJ's reliance on the preamble by an appeal or through expert witness testimony. Arch Coal also requested that the ALJ issue subpoenas to two DOL employees (Michael Chance and Kim Kasmeier) to testify regarding Arch Coal's party-status, Patriot Coal's self-insurance program, the allocation of Patriot Coal's assets to cover certain black lung claims, and the Bulletin's promulgation and rationale. Arch Coal

also served written discovery on DOL regarding its liability. *See* Ex. 21. In a May 28, 2019 order, the ALJ denied the subpoenas because Arch had not identified these "liability" witnesses at the district director level and extraordinary circumstances did not exist. In a June 17, 2019 order, the ALJ denied the requests because Arch Coal had not identified these "liability" witnesses or served discovery at the district director level and extraordinary circumstances did not exist. Arch moved for reconsideration, emphasizing its *Acosta*-granted right to support its challenge to the Bulletin through discovery.

At a hearing on July 18, 2019, the ALJ admitted Dx. 1-Dx. 51,[1] Cx. 1, Cx. 4-7 and Ex. 1-Ex. 9, Ex. 24-26.[2] Tr. 5, 8, 15. The ALJ excluded Arch's evidence refuting its liability and challenging the Bulletin, finding the effort untimely. Tr. 11-17. Arch preserved its objections to these orders as well as other legal issues including the ALJ's authority under *Lucia*, the constitutionality of the fifteen-year presumption at 20 C.F.R. § 718.305, and the validity of certain regulations (20 C.F.R. § 718.201(a) (c), § 718.305(d)) and asked that its evidence be preserved for appeal. Tr. 47-49; *see also* Prehearing Statement (June 25, 2019). Arch conceded Howard's total pulmonary disability and that he worked as a miner for more than 15 years, but contested both disease and disability causation. Br. at 6.

B. The *Acosta* Proceedings

Arch originally challenged Bulletin 16-01 by filing a four-count complaint in district court. In Count I, Arch charged that the Bulletin was a *de facto* legislative rule that required notice-and-comment rulemaking. Complaint at ¶¶ 60-72. Separately, irrespective of the Bulletin's status as a rule, Arch sought invalidation of

---

[1] Arch Coal preserved its objection to Dx. 43 (the rebuttal report of Dr. Ajjarapu obtained pursuant to DOL's pilot program) as its admission the pilot program violates Arch Coal's due process and regulatory rights. *See* Tr. 5-6.

[2] Ex. 23 and Cx. 3 were withdrawn at the hearing. Tr. at 7, 9, 11.

the Bulletin because it imposes "a new regime of joint and several liability" on companies "that transferred all such liability to successor corporations." *Id*. Arch alleged that based on past practice, it "could not have anticipated" that irrational change and relied on the prior agency practice to its detriment. *Id.* at ¶ 62; *see also id.* at ¶ 65 ("Liability for Hobet, Apogee and Catenary was no longer included within the coverage approved by the Department of Labor for Arch Coal's applicable self-insurance authorizations after the sale of those entities to Magnum."); *id.* at ¶ 71 ("Arch Coal has relied upon the Department of Labor's practices and procedures for the identification of a responsible party" which "have not included joint and several liability for prior owners or attempts to disrupt closed contracts for the purchase and sale of mining properties.").

In Count II, Arch alleged that the Bulletin was impermissibly retroactive, imposing "new liability on long closed transactions." *Id*. at ¶¶ 72-79; *see also id.* at ¶ 29 ("Arch Coal sold 100% of the stock of its wholly owned subsidiaries…for $15 million and Magnum's assumption of…its liabilities under the BLBA.").

In Count III, Arch charged that the Bulletin was arbitrary and capricious, irrational, and inconsistent with the BLBA's treatment of successor owners and the agency's past practice. *See id.* at ¶¶ 80-86. It noted that the Act, itself, does not impose "liability on an original or intermediate owner of the same mine" because such pass-through owners "transfer[ ] all BLBA liabilities" to subsequent owners who cannot retroactively insure those liabilities. *See id.* (citing 30 U.S.C. § 931(i)(1)-(3)).

Finally, Count IV challenged the Bulletin because it absolves the Department from the consequences of its failure to monitor and apply Patriot Coal's self-insurance assets. Arch also challenged the agency's failure to demand appropriate self-insurance from Patriot in the first place, rendering the Bulletin's excuse of those actions irrational and arbitrary and capricious. *See id.* at ¶¶ 87-97.

The government moved to dismiss on two bases. First, it argued that Arch's challenge to the Bulletin was the type of challenge committed to the administrative process rather than the federal district court. *See* Motion to Dismiss at 1. Separately, the government argued that the bulletin was not final agency action.

The district court dismissed for want of subject matter jurisdiction. *See Arch Coal v. Hugler*, 242 F. Supp. 3d 13, 15 (D.D.C. 2017). Regarding the substance of Arch's challenges, it stated that "Arch Coal's challenge here to the Bulletin is neither 'wholly collateral to the statute's review' provisions' nor 'outside the agency's expertise….Arch Coal's challenge, then, goes to the core of the issue that the administrative review process is designed to determine." *Id*. at 20-21. Regarding the Bulletin's allegedly "impermissibly retroactive effect" and "imposition of new and unanticipated liabilities on Arch Coal," the Court added: "there is no reason why that claim cannot be first heard by the Department…[this challenge] is precisely the type of claim the administrative review process was designed to handle." *Id*. at 23. And "[a]lthough the hearing procedures do not envision discovery of the type that occurs in the district court, parties may take depositions or interrogatories." *Id*. It thus concluded that "there is no reason why Arch Coal could not receive meaningful relief….through the Department's administrative process." *Id*. at 24.

The government defended that ruling on appeal, reiterating that "Arch may raise all of its challenges to the bulletin in any adjudication" and "there is no reason why Arch cannot obtain meaningful review of its challenge through the statutory review process." *See* Answering Brief for Federal Defendants, *Arch Coal v. Acosta*, No. 17-5074, at *25. The D.C. Circuit agreed, noting "[t]he simple point here is that Arch's challenges to the Bulletin are the exact sort of claims" falling within the agency's authority and expertise and that Arch "will be able to raise its objections to the Bulletin and any enforcement actions taken against it during the course of the administrative process." *See Arch Coal v. Acosta*, 888 F.3d 493, 501 (D.C. Cir.

2018).  The Court characterized Arch's concern that "the Department will not afford it adequate discovery to develop its claims during the administrative proceedings" as "premature," taking comfort in ALJs' ability to "compel the production of documents and appearance of witnesses by the issuance of subpoenas" subject to Board oversight and the government's assurance of the same.[3]  *Id*. (citing 20 C.F.R. §§ 725.351 and 802.301(a)).  Admitting to a lack of subject matter jurisdiction, the Court nonetheless observed in *dicta* that the Bulletin is "not a final agency action" that would require the formality of notice-and-comment rulemaking.  *Id*. at 503.

Arch Coal thus sought the "meaningful review" promised by both the D.C. Circuit and agency by offering evidence of the Bulletin's change, irrationality, and retroactivity and by seeking testimony and documents from two Department of Labor employees with first-hand knowledge of the Bulletin's enactment, impact, and rationale.  The agency opposed that effort and the ALJ sustained the objection.  *See* Orders of May 28, 2019 and June 17, 2019.

C. The ALJ's Decision and Order

As noted, the ALJ issued a decision awarding benefits.  She held that Arch Coal rebutted the presumed existence of clinical coal workers' pneumoconiosis ("CWP").  *See* slip op. at 13.  With respect to legal CWP, though, she discredited entirely the opinions of Drs. Rosenberg and McSharry, both of whom determined Howard does not suffer from legal pneumoconiosis.  *Id*. at 23.

---

[3] *See* Letter Brief of Jan. 16, 2018 ("There are no statutes or regulations that generally prohibit Arch from receiving discovery or specifically prohibit Arch from receiving discovery on particular arguments that it may raise.  If a district director wrongfully denies Arch discovery, an administrative law judge (ALJ) can order that such discovery be provided, and the ALJ's decision can be reviewed by the Benefits Review Board and by the court of appeals.").  Regarding "[d]iscovery in Ongoing Administrative Proceedings Concerning the Department's Bulletin," the government guaranteed that "Arch can seek discovery from the Department on issues related to its liability, including on its claims that Patriot Coal ought to be held liable instead of Arch (or if Patriot is incapable of assuming liability, that the Black Lung Disability Trust Fund should pay benefits.").  *Id*. at 4.

Regarding Dr. McSharry's conclusions, the ALJ stated:

> [O]ne of Dr. McSharry's primary reasons for attributing Claimant's lung disease to smoking and not to coal mine dust is that the radiographic evidence is typically of a smoking-induced impairment, but not of a coal mine dust-induced impairment characterized by significant abnormalities in lung function. However, the regulations do not require that a finding of legal pneumoconiosis be accompanied by radiographic evidence of clinical pneumoconiosis. *See* 718.201(a)(2); *Obush v. Helen Mining Co.*, BRB No. 08-0671 BLA (June 24, 2009). A diagnosis of legal pneumoconiosis simply is not dependent on radiographic evidence of pneumoconiosis. *See Cumberland River Coal Co. v. Dir., Office of Workers' Comp. Programs*, 690 F.3d 477, 487 (6th Cir. 2012) (finding the ALJ properly concluded that the regulations provide legal pneumoconiosis may exist even in the absence of clinical pneumoconiosis, i.e. negative x-rays and CT scans). Rather, legal pneumoconiosis is specifically defined separate and apart from clinical pneumoconiosis, which is usually diagnosed by radiographic evidence. *See* §718.201.

*Id*. at 24. She faulted Dr. McSharry (twice) for failing to "disprove that coal mine dust also substantially contributed to or aggravated Claimant's lung disease." *Id.; see also id.* (concluding that Dr. McSharry failed to explain "why Claimant's coal dust exposure did not substantially exacerbate any tobacco related lung disease."). Finally, she discredited Dr. McSharry's opinion as contrary to the "prevailing view of the medical community that the risks of smoking and coal mine dust exposure are additive." *Id*. at 25 (citing the preamble as the "authoritative statement of medical principles accepted by the Department of Labor."); *but see* Order of July 31, 2019 (denying preamble discovery because Arch can "make its argument that I should not rely on the Preamble in deciding causation in this case and to present evidence on the reliability of the conclusions included in the Preamble"); Ex. 24 at 31-35 (wherein Dr. Rosenberg embraced the literature cited in the preamble to support Dr. McSharry's conclusions and to attribute Howard's condition to smoking, alone).

The ALJ cited a solitary explanation for her rejection of Dr. Rosenberg's opinion. Specifically, she characterized it as "internally inconsistent and not credible" because his view as to the presence or absence of legal pneumoconiosis evolved as he received and reviewed more proof. The ALJ noted:

In his first three reports, Dr. Rosenberg opined that (though smoking was likely the more significant cause of Claimant's lung disease) Claimant's pattern of impairment also was consistent with legal pneumoconiosis because his FEV1/FVC ratio was only mildly reduced. However, in his final report dated June 17, 2019 (EX 6) Dr. Rosenberg determined that the pattern of Claimant's obstructive lung disease is not consistent with a coal mine dust etiology. At his deposition, Dr. Rosenberg attributed this change in his opinion to the fact that 'over time I've had more information to look at," specifically additional spirometric results. However, between the time when Dr. Rosenberg wrote his third report in November 2017 (EX 9)…and the time when he wrote his final report…it does not appear that Dr. Rosenberg reviewed any additional spirometric results…By the time of his deposition it appears Dr. Rosenberg had reviewed an additional pulmonary function test of record…[i]t is conceivable that this additional test result may have warranted a change in Dr. Rosenberg's opinion.

*Id*. at 23.

Deciding that "neither Dr. Rosenberg nor Dr. McSharry credibly disproved the existence of legal pneumoconiosis" and that their "opinions on disability causation are inseparably linked to their dubious conclusions on the issue of legal pneumoconiosis," the ALJ held those doctors' opinions are "inadequate to establish that no part of Claimant's disability was caused by pneumoconiosis." *Id*. at 26.

The ALJ also found Arch responsible for the claim. She ignored Arch's challenge to the Bulletin and new interpretations of the regulations entirely, stating only that "to defeat liability, Employer must establish either that Apogee was not the last potentially liable operator to employ Claimant, or that Apogee is not financially capable of paying benefits." Slip op. at 31. She noted that "[t]he fact that Apogee is no longer in operation does not affect this analysis" because "[a]n operator may still be liable for payment of benefits as long as the operator meets the conditions set forth in 725.494" and "whether Arch meets the regulatory definition of operator at 725.491 is irrelevant." *Id*. at 31-32. She cited regulations governing the admission of evidence by operators, but not self-insurers or carriers, for support. *Id*. at 30 n.19; *but see id*. at 33 ("Arch bears liability for this claim as Apogee's self-insurer, not as the responsible operator.") She concluded that "the self-insurance regulations

simply do not govern the imposition of liability" and "[e]ven if Employer's assertions about general principles of corporate and insurance law are correct, black lung liabilities are very specifically regulated, and I am bound to apply those regulations." *Id*. at 33.

This timely appeal followed.

## STATEMENT OF FACTS

Howard was 61 years old at the time of the hearing. Dx. 2, Tr. 21, 42. He worked underground from 1978 to February 27, 1997, all in Kentucky, and was credited with seventeen years of coal mine employment. Tr. 23-25, 34, Dx. 3, Ex. 7 (Howard Tr. at 30-31); Dx. 44. Howard last worked for one year at Arch of Ky./Apogee Coal as a shearer operator, which required standing all day and lifting 75 pounds once daily. Dx. 7 at 2, Hearing Tr. at 21-22; *id*. at 40-41, Ex. 7 at 31; *see* Dx. 4 at 2 (stand for 8 hours, carry 70 pounds 600 feet one time per day); Ex. 7 at 32-33.

Howard injured his back, neck and knees in work-related accidents in 1996 and 1997. Tr. 24, 30-31, Ex. 7 (Howard Tr. at 31, 33-35). Despite rehabilitation, he was not able to return to any work. *Id*. at 28, 42-43. He must use a cane and has taken pain medications continuously. *Id*. at 30-31, 43-44. He received Social Security disability benefits for these injuries. *Id*. at 32, Ex. 7 (Howard Tr. at 36).

After leaving the mines in 1997, Howard continued to smoke, at least one package daily, until 2014 or 2015 or 2017. Tr. 44;. Ex. 7 (Howard Tr. at 45-46)(started smoking cigarettes in 1990, and quit in 2017). Carboxyhemoglobin tests conducted in November 2016, were consistent with a current habit of smoking one to two packages of cigarettes daily, a habit confirmed by other evidence. Ex. 1; Dx. 14-24 (one package per day from 1990 to 2015); Ex. 4 at 72, 372, 390, 398, 410, 426, 436 (one package daily from 2001 to 2015); Ex. 4 at 361, 376, 380 (more than one package per day); Ex. 5 at 204 (smoking one and one-half packages per day in

1999), Ex. 5 at 87, 92-96 (smoked two packages per day for 25 years). The record thus establishes between twenty-five to fifty pack/years of smoking.

Treatment records confirm that as of 1997, Howard was disabled because of chronic back, knee and neck pain, for which he took pain medication. Ex. 4 at 254, 271-272, 491-495. As of 2002, he could not lift more than 15 pounds or bend, crawl, climb, push or pull due to his back injury. Ex. 4 at 271-272. From 2001 to present, Howard also regularly sought treatment for diabetes, GERD, anxiety, high blood pressure and hyperlipidemia. Ex. 4 at 1-7, 8-40, 47-115, 123-130, 305-490, Ex. 5 at 47-56. The first mention of any respiratory complaint or COPD was in March 2014, but there is no mention of coal workers' pneumoconiosis and no doctor attributed Howard's COPD to coal dust exposure. Ex. 4 at 1-7, 44-46, Ex. 5 at 87.

The record contains conflicting readings of four x-rays taken between May 9, 2013 and November 30, 2016. Although the readings of the early films conflicted, *compare* Dx. 15 (positive reading by Dr. Alexander) *with* Dx. 19 (negative reading by Dr. Meyer); *compare* Dx. 14-5, Dx. 17 (positive readings by Drs. DePonte and Alexander) *with* Dx. 19 at 3, 25 (negative readings by Drs. Seaman and Meyer); *compare* Cx. 1 (positive reading by Dr. DePonte) *with* Ex. 8 (negative reading by Dr. Seaman), the most recent x-ray and CT scan, dated November 30, 2016, were read without contradiction as negative. Ex. 1. The CT scan showed centrilobular ground-glass opacities with emphysema, findings of respiratory bronchiolitis secondary to smoking.[4] Ex. 1 at 3. The x-rays for treatment, dated August 15, 2007, January 8, 2008 and February 3, 2017, also revealed clear lung fields, with no pneumoconiosis. *See* Ex. 4 at 285, Ex. 5 at 18, 74.

---

[4] Dr. Meyer explained that chest CT scans are more sensitive than x-rays in confirming or refusing the presence of pneumoconiosis. Ex. 1 at 4.

Dr. Ajjarapu, board-certified in family medicine with ten years of experience and employed by the organization representing Howard, examined Howard on March 5, 2015. Dx. 14 at 31, Dx. 43. Howard's carboxyhemoglobin measured 12%, which correlated to a smoking habit of two or more packages daily. Dx. 14 at 20; Ex. 24 at 27. Dr. Ajjarapu diagnosed clinical pneumoconiosis based on a single positive x-ray reading, and legal pneumoconiosis (chronic bronchitis) based on Howard's exposure to coal mine dust, cigarette smoking and non-specific respiratory symptoms. Dx. 14 at 29, 14 at 31, Dx. 43 at 2. She stated:

> In regards to industrial bronchitis caused by coal dust, it is a direct irritation of airway lining cells by dust inhalation that causes the associated cough and sputum production and even if coal dust's irritant effect is no longer occurring because coal dust exposure has ceased, it's [sic] latent effects can still be experienced by the miner in the form of cough and sputum production. Coal dust particles that are deposited and are not cleared by natural mechanisms are embedded in the parenchyma of airway tissues, which continue to exert and cause mucous production even after the exposure ceases."

Dx. 43-3. Dr. Ajjarapu found Howard's disability "multi-factorial" due to both extensive smoking and coal dust exposure. Dx. 14 at 30. She omitted reference to the disabling effects, if any, of Howard's chronic knee, back, and neck pain.

Dr. McSharry, a board-certified pulmonologist with thirty years' experience, examined Howard in November 2016, and reviewed the evidence in the record. Ex. 3 at 1, 46. Howard's carboxyhemoglobin again was elevated (11.8%). *Id.* at 9; Ex. 24 at 27. Dr. McSharry ruled out clinical pneumoconiosis based on the consensus of x-ray readings and negative CT scan. Ex. 3 at 2, 41, 43-44. Analyzing the radiographic proof and objective testing, he attributed Howard's disabling obstruction to his long history of cigarette smoking. The doctor noted:

> While it is possible for an individual to have progressive pulmonary function test abnormalities from coal workers' pneumoconiosis with little radiographic abnormality on plain chest radiograph, it is extremely unlikely to me that this severe degree of pulmonary function abnormalities would be seen as a result of coal workers' pneumoconiosis without any radiographic evidence of that disease,

whereas cigarette-related lung disease of this degree is frequently associated with no radiographic changes.

Ex. 3 at 2, 41, 44-45.

Dr. Rosenberg, a board-certified pulmonologist and occupational disease specialist, professor of pulmonary medicine, former Director of Occupational Medicine at University Hospital Systems with a Master's degree in public health and occupational medicine and advanced training in epidemiology and biostatistics, reviewed the evidence and was deposed. Dx. 18; Ex. 6, Ex. 9, Ex. 24 at 5-10. He considered and applied the Guidelines of the Office of Science and Technology in using science and research by a government agency in its decision-making. Ex. 24 at 13-15; 67 Fed. Reg. 8,452-8460. Science used by an agency, no less than a physician rendering a differential diagnosis, must be validated by peer-reviewed research, which is reproducible and directly relevant to the matter. *Id.;* Ex. 24 at 15. Dr. Rosenberg outlined his evidence-based methodology for diagnosing Howard's impairment and determining its etiology. He considered Howard's reported exposures and risks, medical history, peer-reviewed medical literature and medical data over time to understand the nature and progression of the disease process. *Id.* at 11-12, 15-21.

First, Dr. Rosenberg explained that Howard was totally disabled from any work in 1996/1997, by his back, neck, and knee injuries. *Id.* at 25-26. He ruled out clinical pneumoconiosis based on the consensus of x-ray readings, the presence of linear changes and ground-glass changes without micronodularity on CT scan, preserved gas exchange and the pertinent medical literature which supported his opinion. Ex. 24 at 51-53; Dx. 18-2, Ex. 6 at 4, 7, Ex. 9-2.

Initially, Dr. Rosenberg could not rule out legal CWP as possibly contributing to Howard's obstructive breathing impairment. *See* Ex. 9 at 3 (report of November 2, 2017). In the context of the entire file, however, including additional pulmonary function testing dated December 12, 2017 (Cx. 4) and December 13, 2018 (Cx. 5),

showing "an obstructive pattern where the FEV$_1$ is reduced to a greater extent than the FVC," Dr. Rosenberg ruled out legal CWP. He explained the significance of the new data in his analysis:

> One thing one looks at is the magnitude of reduction of the FEV1 divided by the FVC. Initially it looked like it was only mildly reduced. But based on the totality of the information, it becomes more severely reduced, the ratio has been down as low as 54 percent. That would indicate, you know, very significant obstruction. And in addition, there's been worsening of his obstruction over time. When you look at the natural history of his FEV1 values, for example, from 2014 and '15 up until 2018, his FEV1 has generally continued to deteriorate over time...there's no medical literature...that outlines that decades after one leaves the mines one will develop worsening airflow obstruction in relationship to past coal dust exposure.

Ex. 24 at 29-32. The data confirmed Howard's disabling impairment is due to his long, heavy, and continuing smoking habit, not any latent or progressive onset of legal pneumoconiosis. Ex. 24 at 15-21. Applying his evidence-based approach above to Howard's case, Dr. Rosenberg found no legal pneumoconiosis based on: (1) the severely elevated carboxyhemglobin levels indicating a two package per day smoking habit in 2016; (2) Howard's worsening pulmonary function while he continued to smoke; (3) the scientific literature regarding the dose response relationship of coal mine dust and smoking; (4) the prevalence of smoking-induced disease versus coal mine dust induced disease as reported in the peer-reviewed literature; (5) the severe reduction of the FEV$_1$/FVC ratio;[5] (6) the presence of a bronchodilator response; (7) the presence of ground glass opacifications on CT scans which are consistent with smoking related respiratory bronchiolitis; (8) the severely reduced diffusing capacity confirming the presence of widespread emphysema, a manifestation of smoking related disease as explained in the scientific literature; (9) the lack of any respiratory symptoms or diagnosis until 2014; and (10) the lack of

---

[5] Dr. Rosenberg also explained at length why his reliance on the FEV$_1$/FVC ratio is not contrary to the science in the preamble. Ex. 24 at 44-46.

any peer-reviewed scientific literature supporting a conclusion that legal pneumoconiosis is latent and progressive. *Id.* at 19, 27, 30-31,35-38, 40-41, 43-48; *see also* Ex. 6 at 4, 7-16, Ex. 9 at 2-3.

Lastly, Dr. Rosenberg explained that the scientific literature does not support Dr. Ajjarapu's opinion that legal pneumoconiosis in any form—or chronic bronchitis—is latent and progressive decades after exposure ceases. Ex. 24 at 31. No medical literature, including the literature in the preamble, shows that inhaled coal mine dust will worsen pulmonary function years, let alone decades, after exposure ends, particularly as here when the miner had no respiratory symptoms for at least twenty years. *Id.* at 31-32, 34-35. No medical literature supports Dr. Ajjarapu's theory that inhaled coal dust will cause chronic bronchitis years after exposure ends: chronic bronchitis is caused by direct irritation of the airway lining cells and once that irritation is removed, chronic bronchitis dissipates. *Id.* at 47-48. Howard's chronic bronchitis was caused by his on-going exposure to cigarette smoking, irritating his airways causing continued cough and sputum production. *Id.* at 48. There was no peer-reviewed scientific literature that suggests that coal dust embedded in the lungs will suddenly start causing inflammation, irritation and symptoms decades after the last exposure. *Id.* at 50-51.

Neither Howard nor Dr. Ajjarapu undertook any effort to rehabilitate her opinion in response to Dr. Rosenberg's testimony.

## ISSUES PRESENTED

A. Is remand required where the constitutionality of the ALJ's appointment and removal is not established?

B. Did the ALJ err in identifying Arch as a responsible party where the agency failed to name and serve Arch in violation of 20 C.F.R. § 725.407 and related Due Process guarantees, the Department submitted no support that suggested Arch is the proper self-insurer for Apogee as required by 20 C.F.R. § 725.495, and the ALJ denied discovery to Arch so it could challenge the Bulletin as guaranteed in *Acosta*?

C. Did the ALJ err in invoking the rebuttable presumption where Howard's back problems left him totally disabled before respiratory complaints began and in finding that Arch failed to rebut the presumption by misreading the experts' opinions and imposing an improper burden of proof?

## ARGUMENT

### A.    Remand Is Necessary Because the ALJ Lacked Authority to Decide this Case

As Arch Coal argued throughout the proceedings, the removal protections the ALJ enjoys do not comply with Article II, section 2, clause 2, of the Constitution. *See* Response to Reassignment of Oct. 16, 2018. There is no longer any dispute that DOL's ALJs's appointments must comply with the Appointments Clause; DOL has conceded this point. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 745 (6th Cir. 2019). Nor can there be any doubt that the removal provisions must also comply with the Appointments Clause. *See Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492-493 (2010) (quoting *Myers v. United States*, 272 U.S. 52, 117, 164 (1926)); *Seila Law LLC,* 591 U.S.\_\_\_ (June 29, 2020), slip op. at 25, 27 ("[T]he President's removal power stems from Article II's vesting of the "executive Power" in the President…. [T]ext, first principles, the First Congress's decision in 1789, *Myers*, and *Free Enterprise Fund* all establish that the President's removal power is the rule, not the exception."); *see also Lucia v. Securities & Exchange Comm'n*, 585 U.S. \_, 134 S. Ct. 2044, 2060 (2018)(Breyer, concurring). ALJ Boucher rejected that challenge because "Employer's conclusion—that the appointment of any ALJ prior to issuance of the Executive Order necessarily violates the Appointments Clause because that ALJ remains in the competitive service— does not logically follow from the Executive Order itself, the *Lucia* decision, or the Constitution," noting also that she "lack[s] the authority to decide constitutional issues." *See* Order of Jan. 10, 2019 at 3.

As the Supreme Court has explained:

The roots of the separation-of-powers concept embedded in the Appointments Clause are structural and political. Our separation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch.…The Appointments Clause not only guards against this encroachment but also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power.

*Freytag v. Commissioner,* 501 U.S. at 878; *see also Edmond v. United States*, 520 U.S. 651, 659, 663 (1997) ("The requirements of the Appointments Clause are "among the significant structural safeguards of the constitutional scheme" and are "designed to preserve political accountability relative to important Government assignments.").

Even if the Secretary appointed ALJ Boucher properly, an Appointment Clause defect remains as long limitations on her removal remain. Those removal provisions violate separation of powers. Because "Article II confers on the President 'the general administrative control of those executing the laws, the President therefore must have some 'power of removing those for whom he cannot continue to be responsible.'" *Free Enter. Fund*, 561 U.S. at 492-493 (quoting *Myers*, 272 U.S. at 117, 164); *accord Seila Law LLC, supra*, slip op. at 25, 27.

In *Free Enterprise Fund*, the Court invalidated a statutory scheme that insulated members of the PCAOB from the presidential removal authority set forth in the Appointments Clause. Those members could be removed by Commissioners only for limited reasons (*see* 15 U.S.C. § 7217(d)(3)), and Commissioners could themselves be removed only for "inefficiency, neglect of duty, or malfeasance in office," 561 U.S. at 487 (citation omitted). This allowed the PCAOB to exercise authority without any meaningful presidential oversight and caused an impermissible "diffusion of accountability." *Id.* at 497; *see id.* at 495-508; 1 Annals of Congress 387 (1789) (wherein James Madison wrote "it is absolutely necessary that the President should have the power of removing from office" because if he

"neglects to superintend their conduct" it could subject the president to impeachment, himself).

The Solicitor General, himself, observed that presidential removal of ALJs faces at least two layers of insulation and thus violates the Constitution. "Such multilevel protection from removal is contrary to Article II's vesting of the executive power in the president." *Free Enterprise Fund*, 561 U.S. at 483. ALJ Boucher is insulated from removal by the president by 5 U.S.C. § 7521, which permits removal "only for good cause established and determined by the Merit Systems Protection Board," 5 U.S.C. § 7521(a), and members of MSPB in turn "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d). [6] Under *Free Enterprise Fund* and *Seila Law,* this statutory restriction on the removal of an ALJ violates separation-of-powers principles. *See* Brief for the Respondent at 20, *Lucia*, *supra*. As Justice Breyer stated, by incorporating sections 7521 and 1202 into the Administrative Procedure Act, "Congress seems to have provided administrative law judges with two levels of protection from removal without cause—just what *Free Enterprise Fund* interpreted the Constitution to forbid in the case of the Board members." *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring). Justice Breyer commented that the solution offered by the Solicitor General to diminish the violation was not sufficient. The High Court has since expanded upon this analysis:

---

[6] Recently, the MSPB experienced a year-long period without a quorum, rendering it powerless to enforce civil service merit principles and carry out removals. *See MSPB Has Never Been Without a Quorum for This Long*, available at https://federalnewsnetwork.com/workforce-rightsgovernance/2018/01/mspb-has-never-been-without-a-quorum-for-this-long/ (last accessed August 4, 2020); *see also U.S. Merit Systems Protection Board: Frequently Asked Questions about the Lack of Board Quorum and Lack of Board Members Updated March 1, 2019*, available at https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_March_1_2019.pdf (last accessed August 4, 2020) ("because there are no Board members, the Board is unable to issue final decisions on petitions for review.").

> Today, as then, Congress's "plenary control over the salary, duties, and even existence of executive offices" makes "Presidential oversight" more critical—not less—as the "[o]nly" tool to "counter [Congress's] influence." *Id.*, at 500 (opinion of the Court). Today, as then, the various "bureaucratic minutiae" a President might use to corral agency personnel is no substitute for at will removal. *Ibid.*

*Seila Law LLC*, 591 U.S.___, slip op. at 29. And at least one court of appeals has agreed. *Arthrex v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1338-40 (Fed. Cir. 2019) (partially invalidating statutory removal protections afforded to the Patent Trial and Appeal Board's administrative patent judges as "unconstitutional"), *petition for cert. filed*, No. 19-1434 *Vide* 19-1452, 19-1458, 19-1459 (U.S. June 29, 2020).

The issuance of Executive Order 13843 and its implementation by DOL in Secretary's Order 07-2018, 83 Fed. 44307 (Aug. 31, 2018), does not cure the defect for ALJ Boucher. The Secretary's Order recognizes that sitting ALJs are "appointed Federal officers" but the procedures it establishes apply only to future appointments (*i.e.*, "the selection and appointment of ALJs after the date of this Order"). That does not include ALJ Boucher. *Lucia* requires remand for the development of a new record and the reassignment of this case to a new Officer, one whose appointment and removal protections conform to the constitution. *See Jones Bros., Inc. v. Sec'y of Labor*, 998 F.3d 669 (6th Cir. 2018).

## B. The ALJ's Responsible Party Designation Was Error

### 1. The Agency's Decision to Hold Arch Responsible Without Complying With the Regulations and Due Process Guarantees Was Constitutionally Infirm

The district director's failure to properly notify and serve Arch Coal as a responsible party violated 20 C.F.R. §§ 725.407 and 725.418(d).

Pursuant to 20 C.F.R. § 725.360(a)(4), the insurer of a named operator "shall be" a party. DOL's procedural manual makes clear that both the responsible

operator and its insurer must be identified and notified in order to impose liability on them. It states:

> The DD must also properly identify and notify the correct parties liable for payment of benefits while the claim is pending before the DD. Failure to notify the correct parties prior to a claim being forwarded for a hearing may result in liability being assigned to the Trust Fund.

DCMWC PROCEDURE MANUAL BLBA Tr. 17-01 (Jan. 2017) (available at https://www.dol.gov/owcp/dcmwc/blba/part2/2-100MajorConcepts.pdf). Bulletin 16-01 also makes clear that the district director must serve both the former Arch subsidiary (*i.e.*, Apogee Coal) as the responsible operator and Arch Coal as the self-insurer and that service should be made on Arch's third-party administrator, HealthSmart. *See* Bulletin 16-01 at page 3. Although 20 C.F.R. § 725.407(b) allows the district director to identify—and issue a notice of claim to—more than one potentially liable operator that meets the criteria of 20 C.F.R.§ 725.495, the proposed decision and order "must reflect the final designation of the responsible operator liable for the payment of benefits" and "must dismiss, as parties to the claim," all other potentially liable operators who had not previously been dismissed. 20 C.F.R. § 725.418(d).

In this case, Arch was not named as the responsible party in the PDO and thus cannot be held liable for this claim. The ALJ's Order Denying Arch's Motion to Transfer Liability, opining that the PDO's failure to name Arch Coal was a "typographical error" and "does not rise to the level of a due process violation" is unsupported by the relevant authority. Order of July 10, 2019 at 3. Case law confirms that an insurer must be given separate notice of a claim, even if the coal mine operator has been notified. *Tazco Inc. v. Director, OWCP*, 895 F.2d 949, 950 (4th Cir. 1990); *Warner Coal Co. v. Director, OWCP*, 804 F.2d 346, 347 (6th Cir. 1986). Failure to give notice to an interested party "violates the most rudimentary demands of due process of law." *Tazco,* 895 F.2d at 950 (internal quotations

omitted).  A judgment entered without notice or service is "constitutionally infirm" and cannot stand.  *See Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 84 (1988).  The court in *Tazco* was clear that notice provided to the operator may not be "imputed" to the carrier.  *Tazco*, 895 F.2d at 951.  Whether an insurer may be notified through other means does not "displace the due process obligation of the government to notify private parties of public proceedings which will subject them to liability under the law."  *Id.*

There is also no dispute that DOL did not properly name Arch Coal in the proposed decision and order.  Dx. 44. There is no evidence of how or even whether Arch Coal was served with the PDO.  Notice of the proposed decision and order, alone, imposes liability on a potentially responsible operator and insurer—that document contains the district director's "final designation" of the responsible parties.  20 C.F.R. § 725.418(d).  That Arch Coal was served with the Notice of Claim or the Schedule is insufficient; the district director does and can issue multiple notices of claim but the proposed decision and order is the pleading that notifies the party of its liability for a particular claim.  *See id.*, 20 C.F.R. § 725.407(b). When Arch was not named as the responsible party in the proposed decision and order, by all outward appearances, it appeared that the district director had agreed that Arch Coal was not liable for any benefits due in this case.  Once the case transferred to the Office of Administrative Law Judges for hearing, the district director was estopped from naming Arch as responsible;[7] any liability for this claim must be assumed by the Trust Fund.  *Clark v. Barnwell Coal Co.*, 22 BLR 1-275, 1-284 (2000); *Crabtree v. Bethlehem Steel Corp.*, 7 BLR 1-354 (1984).

---

[7] The Director accepted liability in three other cases with very similar facts.  *See Chitwood v. Arch of Ky*, 2017-BLA-05096, *Browning v. Arch of Ky*, 2017-BLA-05005, and *Grimmett v. Arch of West Virginia*, 2017-BLA-06184 (Arch Coal was not named as either the responsible operator or the insurer nor had it been served with the notice of claim, the schedule or the PDO).

## 2. No Evidence Establishes Arch's Coverage for this Claim

Even if she were authorized to adjudicate this claim, the ALJ erred in finding that DOL carried its burden of proving that Arch self-insures this claim. *See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 269 (1994) (agency maintains burden of persuasion); *see also* 20 C.F.R. §§ 725.407, 725.495(b), (d). It is not enough for the agency to argue that Apogee (which ceased to exist in 2005) satisfied section 725.495(a)'s criteria and declare its work done. Merely identifying a potentially responsible operator is only half the Department of Labor's task; it must also prove coverage for that operator's liabilities, either by commercial or self-insurance. *See* 20 C.F.R. § 725.495(d). It failed to do so.

DOL failed to cite, let alone provide, an insurance policy or self-insurance agreement which establishes Arch's liability, despite the fact that such documents are within its control as the regulator of its self-insurance program. *See* Dx. 44; 20 C.F.R. § 726.101 *et seq*.; *but see* slip op. at 33 ("Arch is liable here because it provided Apogee's self-insurance while claimant was employed by Apogee."). When asked to produce this evidence, DOL objected. *See* Objections of July 3, 2019 at 8 (objecting to producing "the self-insurance agreement that allegedly makes Arch Coal liable for this claim" on the grounds of timeliness, relevance, and burden). At no time did DOL explain why it did not pursue Patriot or utilize DOL's share of Patriot's substantial assets to make whatever payments may be owed. Especially where the Notice of Claim named Patriot, which agreed it "should be a party in interest," *see* Dx. 21, Dx. 23, the ALJ's decision holding Arch responsible was error. *See Trosper v. Roncat Mining*, 2011 BLA-05053, Order (July 27, 2015) at 7 n.5 (Director's decision to exclude a potential responsible party requires a valid factual basis); *see also England v. Island Creek Coal Co*. 17 BLR 1-141 (1993); *Ramey v. Robert Coal Co.*, Case No. 13-BLA-0070 (11/25/14) (unpub.)(dismissing employer where DOL failed to substantiate insolvency of another potential responsible

operator). DOL failed to show that Arch is liable for the liability of Apogee—a defunct company whose self-insurance agreement is absent from this record. *Cf.* 20 C.F.R. § 725.495(d).

In similar cases, to obfuscate the fact that it has not produced any documentation to support Arch's liability, the Director has argued that there is no evidence to show that Arch's sale of Apogee in 2005 released it from liability or that Patriot Coal's authorization to self-insure, was "exclusive." The Director makes these unsubstantiated assertions after refusing to engage in the very discovery which would prove or disprove these assertions. *Compare* Request for Production 2 (requesting documents relating to "Patriot's federal black lung self-insurance program") *with* Objections of July 3, 2019 at 8-9. DOL cannot be allowed to use its refusal to engage in discovery as both a shield and sword in this proceeding in violation of *Acosta's* guarantee of meaningful participation and discovery before the agency as well as the due process guarantees of a fair hearing. *Acosta,* 888 F.3d at 502; *North Am. Coal Co. v. Miller*, 870 F.2d 948, 951 (3d Cir. 1989). DOL's refusal to engage in discovery suggests that discovery would disprove its unsupported assertions. *See Consolidation Coal Co. v. Williams*, 453 F.3d 609, 613-14 (4th Cir. 2006)(adverse inference drawn from expert's failure to comply with discovery); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 105 (2d Cir. 2002) (failure to provide discovery or being "purposely sluggish" permits an adverse inference).

In other cases, DOL also tries to excuse its failure to submit proof by claiming that Arch is an operator or treating it as one even though DOL did not identify Arch as the potential responsible operator in the notice of claim or the PDO. Dx. 21 (naming Apogee "Self-insured thru Patriot Coal Company"); Dx. 22 (naming Apogee "Self-insured thru Arch Coal Inc."); Dx. 44 ("Apogee Coal Comany Llc is the coal mine operator designated as responsible for payment of benefits due").

Once the matter proceeded to the ALJ, it was too late for Arch to be named or treated as the responsible operator.

First, Arch does not satisfy the regulatory definition of "operator"; Apogee, not Arch, employed Howard and controlled the mine where he worked. *See* 20 C.F.R. §§ 725.491(a), 725.101(a)(23), 725.494. Second, Bulletin 16-01 confirms DOL's decision not to name Arch as the responsible operator. Bulletin 16-01 at 3 (¶ 3c.) (instructing that Apogee be identified as the operator and Arch as a potential self-insurer, only); *see also* slip op. at 33 ("Apogee...was properly identified as the responsible operator in this claim"). Third, section 725.407(d) prohibits DOL from naming (or treating) Arch as Howard's employer or the responsible operator now that the case is pending before the ALJ. *See Clark v. Barnwell Coal Co*., 22 BLR at 1-284; *Crabtree v. Bethlehem Steel Corp*., 7 BLR 1-354 (1984); 20 C.F.R. § 725.418(d) (the PDO "*must* reflect the district director's final designation of the responsible operator...no operator may be finally designated as the responsible operator unless it has received notification of its potential liability pursuant to 725.407...the district director *must* dismiss...all other potentially liable operators....") (emphasis added).

Finally, DOL offered no evidence to justify its effort to pierce Arch's corporate veil and hold it responsible for its former subsidiary, and offered no proof that it ever decided to treat Arch as Howard's employer or a responsible operator. 20 C.F.R. §§ 725.491(e), 725.493(b)(2)(though DOL "may" name a parent corporation for its subsidiary's liability as an operator in certain circumstances, it did not do so in the PDO). *See Wilton Corp. v. Ashland*, 188 F.3d 670, 674 (6th Cir. 1999)(It is a "fundamental rule of corporate law" that parents and subsidiaries are regarded as distinct except in rare instances); *accord Taylor v. Standard Gas & Elec. Co*., 306 U.S. 307, 322 (1939); *see also Keffer v. H.K. Porter Co., Inc*., 872 F.2d 60, 64 (4th Cir. 1989) ("decisions to pierce the corporate veil...must be taken reluctantly

and cautiously"); *see also McCall Stock Farms, Inc. v United States*, 14 F.3d 1562, 1567-69 (Fed. Cir. 1993)(agency must make an evidentiary showing to pierce the corporate veil); *Pel-Star Energy, Inc. v. U.S. Dep't of Energy,* 890 F.Supp. 532 (W.D. La. 1995); *cf. Kutty v. Dep't of Labor*, 764 F.3d 540, 552-53 (6th Cir. 2014) (affirming veil-piercing where agency offered evidence of "wrongs" to justify this remedy). The ALJ's reading of the regulations, affording the agency the right to do so absent an evidentiary showing, *see* slip op. at 31-32, rendered them arbitrary and capricious. *See id.*; *see also Katzir's Floor & Home Design v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2014) (finding a violation of a party's due process where district court veil-pierced without providing an opportunity to contest the evidence establishing alter-ego liability); *In re Moore*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007) (cautioning against "trampling on due process rights" by imposing alter-ego liability upon "those not before the court").

3.  Arch Was Entitled to Discovery to Establish that the Bulletin's Changed Policy Is Arbitrary and Capricious

Parties may challenge agency actions as arbitrary and capricious whether those actions are by formal rule, or through a changed policy or interpretation. *See, e.g., Chevron, U.S.A. v. NRDC*, 467 U.S. 837 (1984) (agency interpretations subject to judicial review and must be set aside wherever they are arbitrary and capricious); *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. ___ (2019) slip op. at 5 (parties may challenge agency action in the form of formal rules as well as informal guidance); *id.* at 6 (a party "may argue that the agency's interpretation is wrong" because "the Administrative Procedure Act creates a basic presumption of judicial review for one suffering legal wrong because of agency action") (Kavanaugh, J., concurring); *Salazar v. King*, 822 F.3d 61, 80-81 (2d Cir. 2016) (agency regulations and guidance are both subject to arbitrary-and-capricious

review, especially where agency action evinces an "irrational departure" from past practice); *UnitedHealthcare Ins. Co v. Azar*, 330 F. Supp. 3d 173, 187 (D.D.C. 2018) ("an agency must provide a legitimate reason for departing from or rejecting a previous rule….[t]his principle also applies to changes in an agency's policy") (*citing Nat'l Cable & Telecomms. Ass'n. v. Brand X*, 545 U.S. 967 (2005)); *cf. F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (reviewing challenge to agency guidance regarding obscenity); *American Iron and Steel Inst. v. EPA*, 115 F.3d 979 (D.C. Cir. 1997) (accepting as justiciable plaintiff's APA challenge to agency's water quality guidance). This includes the right to discovery proving a change in policy, even where the agency denies the change entirely. *See Olivares v. Transport. Sec. Admin.,* 819 F.3d 454, 464 (D.C. Cir. 2016) (allowing discovery showing that agency "changed the way that it conducts background investigations"); *Carllson v. United States Citizenship and Immigration Servs*. No. 12-cv-7983, 2015 WL 1467174 at *14 (C.D. Cal. March 23, 2015) (unpub.) (ordering depositions and document discovery including internal guidance and training manuals "directed at the alleged policy changes that form the basis of plaintiff's retroactivity claims").

As alleged in *Acosta*, before Bulletin 16-01 was enacted, DOL imposed liability on self-insured parent companies based on which parent had assumed the liability when the claim was filed, not based on the miner's last day of work. The Court ordered that any challenge to DOL's change in policy be raised in the context of each individual claim. *Acosta*, 888 F.3d at 501. Even without the discovery owed to Arch, this policy is readily available from the public record. *See e.g., Massey v. Apogee Coal*, 2019-BLA-05144, Dx. 1-24, 2-41, 3-9, 3-72 (where DOL named Patriot Coal as the responsible self-insurer in claims filed in 2012, and 2014)(attached); *Creech v. Apogee Coal*, xxx-xx-6408 (after miner's claim was filed on October 27, 2007, DOL named Magnum Coal as the responsible party) (attached); *Allen v. Hobet Mining*, 2019-BLA-06231, Dx. 2 at 96-102

(attached)(DOL stated that Magnum Coal assumed all liability because Arch had sold its subsidiary as of December 31, 2005). In none of these cases did DOL name Arch as secondarily liable or suggest that it had any contingent liability.[8] Arch's requested discovery aimed to develop additional proof outside the public record. *See, e.g.*, Request for Production 5 (seeking documents "addressing how DOL allocated black lung liability in cases filed before BLBA Bulletin No. 16-01 was issued involving the parental liability of a self-insured mine operator for a subsidiary or affiliated company that later became insolvent"). It was rejected.

To foreclose any challenge to its actions, DOL asserted that *Acosta* decided the merits of Arch's challenges. *See* Objections to Discovery of July 3, 2019 at 3; *id.* at 4-5; *id.* at 6; *id.* at 7; *id.* at 14-15 (because the D.C. Circuit "held" that the Bulletin is not "a substantive rule… Arch may not conduct discovery now on an issue that it has already litigated and lost in federal court"). ALJ Boucher accepted DOL's position. *See* Hearing Tr. at 15-16.

The ALJ erred. *Acosta* only decided which forum had jurisdiction to consider Arch's challenges. It decided that the dispute had to be adjudicated initially in individual claims before the administrative agency rather than in federal district court, and nothing more. *See Acosta*, 888 F.3d at 501; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and

---

[8] In fact, DOL recently tried—and failed—to change the law to require a mine operator as a condition of being authorized to self-insure black lung liabilities to have its parent company, if any, forever guarantee the payment of black lung benefits to miners who worked during any period for a self-insured subsidiary. *See* DOL's "Proposed Collection of Information; Comment Request" at 82 Fed. Reg. 50166 (Oct. 30, 2017). *See also* 84 Fed. Reg. 10839 (March 22, 2019). Arch's discovery requests sought to investigate this point. *See* Request for Production 7 (seeking documents relating to the Proposed Collection).

dismissing the cause."). And even if the Court definitively held that the Bulletin is not a final rule, that does not affect Arch's remaining challenges to the document, which were committed to this tribunal's expertise. *But see* Order of May 24, 2019 (characterizing Arch's production requests seeking to prove, *inter alia*, the Bulletin's irrationality, as "liability" discovery governed by 20 C.F.R. § 725.456).

As in any other civil suit, Arch was entitled to discovery supporting its well-pled claims. Administrative proceedings under the BLBA must conform to the due process requirements of the Fifth Amendment and the APA. *Richardson v. Perales*, 402 U.S. 389 (1971); 5 U.S.C. § 556(d). The right to a fair hearing in 20 C.F.R. § 725.455(c) embraces the right to present affirmative and rebuttal evidence for a "full and true disclosure of the facts." *See Morgan v. United States*, 304 U.S. 1 (1938); 5 U.S.C. § 556(d). An "opportunity to meet and rebut evidence utilized by an administrative agency has long been regarded as a primary requisite of due process." *Ralpho v. Bell*, 569 F.2d 607, 629 (D.C. Cir. 1977); *see also North Am. Coal Co. v. Miller,* 870 F.2d at 951 ("the judge is obliged, above all to ensure that all parties have the opportunity to fully present their case by way of argument, proof and cross-examination of the witness."), *quoting* Ramsey and Haberman, *The Federal Black Lung Program – the View from the Top*, 87 W.Va. L. Rev. 575, 586-88 (1985)); *NAACP v. Wilmington Med. Ctr., Inc.*, 453 F. Supp. 330, 336 (D. Del. 1978)(regulations that disregard due process protections are void as arbitrary and capricious).

Fulsome discovery is especially important where a party challenges agency action in order to establish a complete record for purposes of judicial review. *See Dep't of Homeland Sec. v. Regents*, 591 U.S. _ (June 18, 2020)("DACA decision") slip op. at 13 (a "foundational principle of administrative law" is that "judicial review of agency action is limited to 'the grounds that the agency invoked when it took the agency action.'"); *Olivares*, 819 F.3d at 464 (allowing discovery showing

that agency "changed the way that it conducts background investigations"); *Carllson*, No. 12-cv-7983, 2015 WL 1467174 at *14 (ordering depositions and document discovery including internal guidance and training manuals "directed at the alleged policy changes that form the basis of plaintiff's retroactivity claims"); *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("The agency must examine relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts and the choices made); *see West Virginia CWP Fund v. Bell*, Case No. 18-1317, slip. op. at 26 (Aug. 6, 2019)(unpub.)("The record in an agency-review case must show that the agency actually did follow a reasonable path in making its decision.").

Without a complete record to assess the agency's action, the Board must remand this claim for additional amplification of the record. *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982)(where the administrative record is insufficient to assess the agency's action and thus "frustrate[s] effective judicial review…the preferred procedure is to remand to the agency for [the record's] amplification.") (*quoting Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curium)); *see also Fox v. United States*, 88 M.S.P.R. 381, 387 (2001) (ordering remand for agency to respond to request for agency records including "discussions" and "documents relevant to the agency's change of its policy" regarding merit adjustments).

*Carllson* is instructive. There, a group of investors sued the Department of Homeland Security after they were denied conditional residency in the United States. *See* 2015 WL 1467174, at *1. The plaintiffs expected to gain lawful permanent residence based on the Immigration and Nationality Act of 1990, which afforded residency to international investors making a $500,000 investment projected to create at least ten new jobs in a domestic "targeted employment area." *Id*. The investment projected job creation for 249 workers, but the agency denied or revoked the residency applications, citing insufficient proof of the requisite job

creation and employing methodologies challenging the plaintiffs' projections. *Id.* Plaintiffs alleged that (1) the agency "retroactively applied new rules, policies, and criteria" to their residency applications; (2) the denials were arbitrary and capricious; (3) the government's new policy exceeded agency authority; and (4) the plaintiffs were denied due process by the retroactive application of new policies and denial of a meaningful opportunity to respond to the agency. *Id.* at 3. DHS moved for summary judgment, arguing that the denials were "based on the plain language of the relevant statute" and did not represent a new policy. *Id.* at 4. Plaintiffs thereafter sought discovery to support their allegation that the agency "abruptly abandoned" its job projection methodology and retroactively applied a new one to deny their applications. *Id.* at 9. They requested materials and testimony "necessary to determine what adjudicatory practices [the agency] employed when plaintiffs invested…and filed their petitions" as well as prior "agency guidance," "training manuals," "petitions filed in other" investment projects, "deposition testimony of agency adjudicators and policy makers regarding changes to [the agency's] adjudicatory practices on job creation" and "responses to interrogatories and requests for admission regarding the 'nature and timing of Defendants' shift away from" its prior policy. *Id.*

Not only did the district court compel that discovery, it took the extraordinary step of reopening the administrative record, agreeing that "retroactivity analysis is necessarily case-by-case." *Id*. at 9. The court did so without regard to the agency's arguments disavowing a change; it was enough that the plaintiffs "set out with reasonable specificity the facts they hope to obtain through discovery and how those facts would help them advance their claims." *Id*. at 12. The court cited precedent where plaintiffs were able to support their claims of changed agency policy through "multiple depositions and thousands of pages of document discovery." *See id.* at 12 (analyzing *Chang v. United States*, 327 F.3d 911, 916 (9th Cir. 2003)).

As in *Carllson*, Arch was entitled to discovery to support its four challenges to DOL's actions, including the reasons for such action and that it reflected a change. [9] *See also DACA decision*, slip. op. at 16 ("Considering only contemporaneous explanations for agency action also instills confidence that the reasons given are not simply 'convenient litigating position[s].'"); *id.* at 17 ("The basic rule here is clear:  An agency must defend its actions based on the reasons it gave when it acted").  If an agency changes course, "it must 'be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.  It would be arbitrary and capricious to ignore such matters.'"  *Id.* at 23-24 (citations omitted).  The ALJ's failure to compel that discovery by

[9] The ALJ's assertion that Arch's attempt to develop evidence bearing upon the Bulletin was untimely, *see* Hearing Tr. at 14-17, Order of June 17, 2019 (denying subpoenas requesting testimony and exhibits from Michael Chance and Kim Kasmeier as untimely), is especially problematic. Contrary to the ALJ's holding, the discovery did not merely relate to liability or to the identity of the responsible operator.  *But see id.*  What is more, DOL cannot divest the ALJ of her "powers, duties, and responsibilities" including accepting and overseeing disputes concerning evidence.  *See* 33 U.S.C. § 919(d), *incorp. by ref. into* 30 U.S.C. § 932(a); *see also Greenwich Collieries*, 512 U.S. at 271-77; 20 C.F.R. § 725.450 (a party to a claim "shall have a right to a hearing concerning any contested issue of fact or law"); *id.* at § 725.455(a)("The administrative law judge shall at the hearing inquire fully into all matters at issue…."); *Dingess v. Dir., OWCP*, 12 BLR 1-143 ("any party aggrieved by the deputy commissioner's findings may appeal this case to the Office of Administrative Law Judges for a de novo review of any contested issues."). It also renders the district director an inferior officer in violation of *Lucia*.  DOL has shown no intention of providing Arch a meaningful opportunity to be heard and to present its evidence even if it complies with the agency's newly-created deadlines. *See, e.g., Sturgill v. Apogee Coal Co.*, Case ID: 2B85Z-2018086 (failing to provide discovery concerning Arch's party status within 30 days of Arch's request); *Deskins v. Hobet*, Case ID: BJJTW-2018096 (same); *Ison v. Arch of KY*, Case ID: BGXMS-2017062 (same); *Chapman v. Apogee Coal*, Case ID: 2BS5B-2018187 (affirmatively refusing to provide discovery).  In five cases, the Solicitor refused to provide any witness to testify before the district director, even though they were properly and timely identified.  *See e.g., Ward v. Catenary Coal Co. LLC*, Case ID: 2B2LD-2016090; OWCP No. CH xxx-xx-2731; *Allen v. Hobet Min. Inc.*, Case ID: BRLD5-2017268; OWCP No. JO xxx-xx-0721; *Massey v. Catenary Coal Co.*, Case ID: 2BLMJ-2017193; OWCP No. CH xxx-xx-5282; *McClure v. Catenary Coal Co.*, Case ID: 2BRZ3-2017236; OWCP No. PA xxx-xx-64.  In two cases, the district director refused to comply with timely served documentary discovery.  *See e.g., Williamson v. Hobet Mining, Inc.*, Case ID:  2BJ7M-2019066; *Burton v. Arch of Alabama, Inc.*, Case ID:  BV2J7-2017044.

assuming, incorrectly, that it solely concerned "liability evidence," *see* Order of June 17, 2019, warrants either remand or Arch's dismissal. *Acosta*, 888 F.3d at 502;[10] *see also Hugler*, 242 F. Supp. 3d at 23-24 (Arch can challenge the Bulletin's designation of it as "arbitrary and capricious or contrary to existing department regulations" through "depositions or interrogatories" and "should the record in the administrative proceeding prove inadequate to the court of appeals…that court 'always has the option' of 'remanding to the agency'").

Even without this discovery, mandated by both the federal rules of procedure and *Acosta*, Arch's allegations are convincing. DOL's newfound policy and corresponding change in its interpretation of its regulations is irrational, inconsistent with the BLBA and the APA, and violates fundamental principles of corporate and insurance law. First, DOL applies principles of commercial insurance to a self-insurance arrangement, which has no support in either jurisprudential history or the BLBA. Such an interpretation eliminates the distinction between commercial and self-insurance set forth in the regulations as well as the case law. The regulations set forth two distinct regulatory systems with distinct triggers for coverage. *Compare* Part 726, Subpart B (Authorization of Self-Insurers, 726.101-726.115) *with* Subpart C (Insurance Contracts, 726.201-726.213); slip op. at 33 ("there is some appeal to Employer's argument that the Department cannot treat self-insurance the same as commercial insurance without risking the elimination of the regulatory distinction between the two…however, I see no basis in the regulations to relieve Arch of liability under the circumstances of this claim."); *but see id.* ("the self-

---

[10] *See* DOL's Supplemental Letter Brief, *Arch Coal v. Acosta*, No. 17-5074, at *3 (D.C. Cir. Jan. 16, 2018)("Arch can seek discovery from the Department on issues related to its liability, including on its claims that Patriot Coal ought to be held liable instead of Arch Coal"); *Arch Coal v. Acosta*, 888 F.3d at 502 (citing 20 C.F.R. §§ 725.410; 725.411-17; 725.450-458)(assuring the Court that Arch would be able to "raise its claims through the Black Lung Act's statutory review scheme" and "introduce evidence relevant to its liability in the BLBA proceedings.

insurance regulations simply do not govern the imposition of liability"). Commercial insurers cover liability for claims arising during a contractually-agreed-to period of time. *See Vesta Ins. Co. v. Amoco Prod. Co*., 986 F.2d 981, 985-86 (5th Cir. 1993)(insurance is a "contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils" for a specified period of time). Liability is triggered for a commercial insurer if it provided insurance coverage on the date of the miner's last day of employment in the mines. *See* 20 C.F.R. § 726.203(a)(the federal endorsement that is a part of all workers' compensation commercial insurance policies covering the federal black lung risk provides that "a commercial carrier is responsible for benefits only if the insurance agreement was in effect on the date of last exposure."). Self-insurance is different. *See Home Indem. Co. v. Bethlehem Steel Corp.*, No. 91-G-0922-S (N.D. Ala. Nov. 24, 1993). No such requirement exists in the self-insurance regulations.

DOL cannot convert self-insurance into commercial insurance any more than it can ignore the insurance obligations memorialized in a self-insurance agreement that it approved in accordance with Part 726, Subpart B. Arch's self-insurance obligation ended on December 31, 2005, and with it Arch's responsibility to cover this claim ended. *See* Ex. 17 at 56-57; *id*. at 50 (DOL never applied principles of successor liability to hold past self-insurers liable for entities sold to others); *id*. at 62; *see also Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606 (7th Cir. 1993)("ordinarily, when a contract expires, it expires. It is at an end. The parties have no more rights or duties under it."). DOL approved Arch's agreement not to insure Apogee's liabilities after December 31, 2005. *See* Ex. 17 (Declaration of Tim Mullarkey) at 1-2, Ex. 13 to Ex. 16. This is consistent with 20 C.F.R. § 726.102(b)(3), which requires a self-insurer to identify which mines are to be covered by its self-insurance. Here, the self-insurance agreement in effect at the time the claim was filed (*i.e*. Patriot's) is liable based on principles of insurance and

contract law as well as DOL's prior interpretation of its regulations. DOL's attempt to impose liability on Arch in these circumstances is not adherence to law but an abuse of agency authority.

Second, application of the policy reflected in Bulletin 16-01 imposes a new scheme of liability that violates the APA and the BLBA. As Arch alleged in *Acosta*, the Bulletin reflects a policy change that impermissibly imposes a new obligation on Arch that was not, and could not, have been anticipated. *See Acosta* Complaint at 73-79. The Bulletin rewrites both the BLBA and the Longshore Act to impose a perpetual contingent liability regime unknown to either. *See* Ex. 17 at 59-60 (such a perpetual liability regime for insurers would be unworkable and "the polar opposite of" past practices and finality). And it does so at the expense of principles of corporate form and veil-piercing. *See supra* at 24-25. Because past practices engendered serious reliance interests, this change is subject to heightened scrutiny. *See Perez v. Mortgage. Bankers Ass'n*, 575 U.S. 92, 106 (2015).

Additionally, on its face, the Bulletin and the new policy it reflects "retroactively imposes new liability on long closed transactions and retroactively alters the terms of the applicable self-insurance regulations that do not contemplate retroactive liability." *See Acosta* Complaint at 74. The ALJ's decision that Arch is responsible for this claim upsets contractual expectations memorialized in 2005, robbing Arch of the benefit of the bargain it made when it sold Apogee's former assets—and liabilities—at a discount. These retroactive effects contravene the Constitution, the APA, and the BLBA, rendering the Bulletin policy invalid as applied. *See Landgraf v. USI Film Prods*., 511 U.S. 244, 280 (1994) (agency action is impermissibly retroactive if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed"); *see also Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204, 208 (1998) ("retroactivity is not favored in the law"); *Klinger v.*

*Missouri*, 80 U.S. 257, 261 (1871)(*ex post facto* laws are "repugnant in the law"); *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 859-60 (D.C. Cir. 2002)("an agency may not promulgate retroactive rules").  Its interpretation of the regulations cannot be invoked to hold Arch responsible.

### D.    The ALJ's Medical Conclusions Reflect Error

####     1.    The ALJ's Analysis of Howard's Condition was Incomplete

The ALJ's failure to consider Arch's proof that Howard's totally-disabling back, neck, and knee injuries took him out of the BLBA's compensation scheme rendered her decision incomplete in violation of the APA.

Arch offered Dr. Rosenberg's uncontradicted opinion that Howard's injuries rendered him totally and permanently disabled.  *See* Ex. 24 at 25-26.  Both testimony and treatment records—which confirmed that as of 2002, Howard could not lift more than 15 pounds and could not bend, crawl, climb, push, or pull due to his back— supported that opinion.  Ex. 4 at 271-72; *see also* Dx. 7-2 (Howard's shearer operator job required standing all day and lifting 75 pounds daily), Tr. 21-22; *id*. at 40-41, Ex. 7 at 31; *see* Dx. 4-2 (stand for 8 hours, carry 70 pounds 600 feet one time per day); Ex. 7 at 32-33; Ex. 7 at 31, 33-35; 43-44 (Howard now uses a cane and uses pain medication continuously).    This condition—for which Howard received Social Security disability benefits and which prevented him from returning to work in 1997, despite rehabilitation and predating any subjective complaints of breathlessness —is not compensable under the BLBA.  *See* Ex. 7 at 31, 33-35; 43-44 (Howard now uses a cane and uses pain medication continuously); Ex. 4 at 1-7, 44-46 (first recording respiratory complaints in 2014).  The ALJ's failure to consider it was error.  *See Eifler v. OWCP*, 926 F.2d 663, 667 (7th Cir. 1991) ("totality like perfection does not admit of degrees."); *Peabody Coal Co. v. Vigna*, 22 F.3d 1388 (7th Cir. 1994) (disability due to a stroke precludes entitlement under the BLBA); *Freeman United Coal Mining Co. v. Foster*, 30 F.3d 834 (7th Cir. 1994) (disability due to a back injury

which required surgery precludes entitlement under the BLBA); *Gulley v. Sahara Coal Trust*, 397 F.3d 535 (7th Cir. 2005) (disability due to blindness precludes entitlement); *see also Dehue Coal Co. v. Ballard*, 65 F.3d 1189 (4th Cir. 1995) (where a claimant was disabled by the removal of a lung due to lung cancer, unrelated to his coal dust exposure, he was not entitled to benefits under the Act); *cf. Youghiogheny v. McAngues*, 996 F.2d 130, 132 (6th Cir. 1993), *cert. denied*, 510 U.S. 1040 (1994).[11]

Although in its revised regulations, DOL stated that its revisions to section 718.204 were meant to codify its disagreement with the Seventh Circuit's decision in *Vigna*, at that time, the section 411(c)(4) presumption had not been revived. *See* 65 Fed. Reg. 79946 (Dec. 20, 2000). DOL therefore did not address the vitality of these cases with respect to rebuttal of any presumption. As the D.C. Circuit's discussed:

> The new regulation thus changes the legal landscape by precluding adjudicators from considering unrelated medical disabilities, reversing the rule in the Seventh Circuit, and precluding any other circuit from adopting the Seventh Circuit's interpretation. It cannot be said to be merely "procedural," because it has a direct effect on the determination of liability....

> [T]he effect of our ruling is to leave the state of the law on this question exactly as it was prior to the regulations' promulgation for cases that had already been filed when the regulations were promulgated.

---

[11] In *McAngues*, a miner ceased working when he was involved in an automobile accident. Unlike Howard, however, McAngues's respiratory complaints apparently predated his accident by over a decade. *See* 996 F.2d at 132. Howard offered no proof that he had any disabling chronic respiratory ailment when he retired in 1997; records show no respiratory complaints until 2014. Ex. 4 at 1-7, 44-46, Ex. 5 at 87. Second, unlike Howard, McAngues was entitled to the benefit of a presumption of disability due to coal-related pneumoconiosis under 20 C.F.R. § 727.203(b)(3), having established the existence of pneumoconiosis by x-ray. The burden then shifted to the employer to rebut that presumption. Here, in contrast, Howard had to prove his totally disabling respiratory impairment by a preponderance of the evidence. The court's decision that an independent, totally disabling condition that predated the claimant's pulmonary disability could not establish rebuttal under section 727.203(b)(3) has little bearing on this case.

*National Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 865 (D.C. Cir. 2002). Here, when Congress revived the fifteen-year presumption, it arguably revived the case law interpreting that presumption. Thus *Ballard*, *Foster*, *Gulley* and *Vigna* should control the disposition of this case.

To the extent that revised section 718.204 precludes such a conclusion, it is invalid because it cannot be reconciled with the BLBA which states unambiguously that in order to obtain benefits, pneumoconiosis, not some other condition, must prevent the claimant from working. 30 U.S.C. § 902(f)(1)(A)("[I]n the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time[.]"). Here, there is no dispute that pneumoconiosis did not prevent Howard from working in 1997; his disabling back injury, for which he already receives benefits, did. He is thus not entitled to benefits.

2. Even if Properly Invoked, the ALJ's Rebuttal Analysis Discarded Medical Opinions and Objective Proof Without any Rational Basis

To rebut the fifteen-year presumption, the evidence must show either the absence of clinical and legal pneumoconiosis, or that neither contributed to Howard's respiratory disability. 20 C.F.R. § 718.305(d). The ALJ's finding that rebuttal was not established under either prong overlooked relevant evidence.

In rejecting Dr. McSharry's opinion coal dust did not contribute to Howard's impairment, the ALJ cited the preamble's statement that the effects of cigarette smoking and coal dust are "additive." Slip op. at 25. Neither the statute nor the regulation contains such a finding and no expert described such an effect.[12] Even if

---

[12] In this regard, the ALJ overread the statements in the preamble to preclude any possibility of a defense. DOL's regulations do not contain the word "additive" and the

the ALJ could look to the preamble, which was not subject to notice-and-comment rulemaking,[13] for guidance, it is not evidence. *A&E Coal Co. v. Adams*, 694 F.3d 798 (6th Cir. 2012) (the preamble is not evidence); *Peabody Coal Co. v. Oyler*, BRB No. 2014-0390 BLA, slip op. at 6 (Feb. 26, 2014) (same); *see also Christensen v. Harris County*, 529 U.S. 576, 588 (2000) ("To defer to the agency's position would be to permit the agency under the guise of interpreting a regulation to write a de facto new regulation"). It cannot provide an explanation that is missing from the record. *Penrod v. Peabody Coal Co.*, Case No. 08-0609 BLA (June 26, 2009); *Bentley v. Kentucky Elkhorn Coal Co.*, BRB Nos. 09-635 BLA, 10-0452 BLA and 10-0453 BLA (March 29, 2011). And it certainly does not empower an ALJ to substitute her own judgment for that of the experts. *See Compton v. Inland*, 933 F.2d 477, 482-83 (7th Cir. 1991) (an ALJ may not substitute her legal interpretation for expert medical opinions). But that is what the ALJ did in discrediting Dr. McSharry. This mistake was especially egregious because Dr. Rosenberg explained why Dr. McSharry's

preamble does not define the term. Nor did DOL conclude that coal dust and cigarette smoking are always additive; DOL did not and could not conclude that a patient who is susceptible to one risk factor is necessarily susceptible to the other. Nor does the fact that damage is caused by similar mechanisms mean that the effects of smoking and coal dust exposure are indistinguishable. The Surgeon General concluded that "[c]igarette smoking and coal dust exposure appear to have an independent and additive effect on the prevalence of chronic cough and phlegm," that "[i]ncreasing coal dust exposure is associated with a form of emphysema known as focal dust emphysema, but there is no definite evidence that extensive centrilobular emphysema occurs in the absence of cigarette smoking." *Id.* at 313. *See also* Andrew Churg and Francis H.Y. Green, PATHOLOGY OF OCCUPATIONAL LUNG DISEASE 141 (Igaku-Shoin 1988) ("It appears that smoking and coal mine dust have independent additive effects and that in some miners up to 50% of the airway obstruction can be attributed to dust exposure. … The pattern of functional changes induced by dust were slightly different to those produced by smoking …."). And the Criteria document, discussed in the preamble, acknowledges the different pattern. *See* NIOSH, CRITERIA FOR A RECOMMENDED STANDARD: OCCUPATIONAL EXPOSURE TO RESPIRABLE COAL MINE DUST § 4.2.2.3.2 (1995); 65 Fed. Reg. 79,943 (cols. b, c).
[13] As such, it cannot be considered to even assist with resolution of this matter. *See Wyeth v. Levine*, 555 U.S. 555 (2009) (precluding an agency's reliance on materials or interpretations in a regulatory preamble that was not also published for notice and comment in accordance with 5 U.S.C. § 553).

conclusions were consistent with peer-reviewed science, including articles cited in the preamble. *See* Ex. 24 at 31.

In denying Arch's request for discovery into the document's foundations, the ALJ explicitly promised Arch the right to challenge the preamble through expert opinion like Dr. Rosenberg's. *See* Order of July 31, 2019 (denying Arch's request for discovery into the preamble's foundations while promising Arch the right to challenge reliance on the preamble through its expert witnesses). She rejected that opinion, and that of Dr. McSharry, without any evidentiary basis, thus committing error. *See Adams*, 694 F.3d 798; *Milburn Collieries v. Hicks*, 138 F.3d 524 (4th Cir. 1998); *Penrod*, *supra* (vacating an ALJ's decision where she relied on the preamble rather than a doctor's explanation); *see also Little David Coal Co. v. Director, OWCP* [*Collins*], 2012 WL 3002609 (6th Cir. July 23, 2012) (employers are entitled to challenge the preamble's bases in the context of particular claims).

The ALJ also discredited Dr. McSharry because his conclusion that Howard's impairment developed from cigarette smoking relied, in part, on an evaluation of the radiographic evidence. *See* slip op. at 23. Her stated rationale, that "the regulations do not require that a finding of legal pneumoconiosis be accompanied by radiographic evidence," confused the regulations' statement that legal pneumoconiosis may be diagnosed even absent radiographic proof with a prohibition against the use of such proof in rendering a diagnosis. Plainly, radiographic evidence can assist in diagnosing legal pneumoconiosis. For instance, Dr. Rosenberg cited radiographic evidence of ground-glass in Howard's lungs to diagnose a cigarette smoke-induced process. Ex. 24 at 51-53; Dx. 18-2, Ex. 6 at 4, 7, Ex. 9-2.[14] Because

---

[14] Interestingly, the ALJ did not levy a similar criticism against Dr. Rosenberg.

the regulations do not prohibit such a methodology, the ALJ's credibility determination was error.

In rejecting Dr. Rosenberg's opinion, which traced the progression of six pulmonary function tests to attribute Howard's breathing impairment to cigarette smoking alone, the ALJ stated:

> Dr. Rosenberg's explanation that he changed his opinion based on his review of additional spirometric results does not hold up to scrutiny. Rather, I conclude Dr. Rosenberg's opinion is internally inconsistent because he reaches different conclusions based on the same test results. On this basis, I conclude Dr. Rosenberg's opinion is not well reasoned, and I do not credit it."

Slip op. at 23. She acknowledged that "it appears Dr. Rosenberg had reviewed an additional pulmonary function test….it is conceivable that this result may have warranted a change in Dr. Rosenberg's opinion." *See id.* at 23 n. 12. Still, she held firm that his opinions are "internally inconsistent and not credible, as described above." *Id*.

That conclusion evinces a mistake of fact. While the initial evidence he reviewed did not allow Dr. Rosenberg to opine definitively on the presence or absence of legal pneumoconiosis, both the December, 2017 and December 2018 pulmonary function tests led him to a definitive conclusion that "Mr. Howard does not have clinical or legal CWP. While he has a disability, his respiratory impairment does not relate to past coal mine dust exposure." Ex. 6 at 12; *accord* Ex. 24 at 29-32. Plainly, his opinion evolved as it became better-informed through additional evidence; his conclusions must be reviewed in their entirety in light of that evolution. *See Cornett v. Benham Coal, Inc*., 227 F.3d 569, 577 (6th Cir. 2000) (an ALJ must "completely analyze" a doctor's opinion "before casting it off"); *U.S. Steel. v. Director, OWCP [Jarrell]*, 187 F.3d 384, 394 (4th Cir. 1999) (remand necessary where ALJ misstated the proof to resolve conflicts in the record); *see also Addison*, 831 F.3d at 253-53; *Gillen v. Peabody Coal Co.,* 16 BLR 1-22 (1991) (remand

required when ALJ mischaracterizes medical evidence); *Cf. Hopton v. United States Steel Corp.*, 7 BLR 1-12 (1984) (adjudicator properly discredited medical opinion where expert failed to explain the change in his conclusions in light of the record proof). The ALJ's error is especially salient in the context of Dr. Rosenberg's deposition testimony, in which he analyzed the entirety of the file, including treatment records and pulmonary function tests supporting a cigarette smoke-induced pulmonary process. *See* Ex. 24 at 29-32; *id*. at 19, 27, 30-31,35-38, 40-41, 43-48 (offering at least ten scientifically-supported rationales for his differential diagnosis in light of Howard's specific case).

Finally, the ALJ's rejection of Drs. Rosenberg's and McSharry's opinions because they did not establish that legal pneumoconiosis played "no part" in Howard's disability was error. *See* slip op. at 26-27. That standard is not consistent with the statute, which states that rebuttal is accomplished so long as the proof establishes that a claimant's "respiratory or pulmonary impairment did not arise out of, or in connection with employment in a coal mine." 30 U.S.C. § 921(c)(4). Though admittedly difficult, rebuttal should not be impossible. A causal connection between disability and pneumoconiosis can be "ruled out" if evidence demonstrates that any impairment is solely due to sources other than coal dust. *Lane Hollow v. Director, OWCP*, 138 F.3d 799, 804-05 (4th Cir. 1998); *see also Dehue Coal Co. v. Ballard*, 65 F.3d 1189 (pneumonectomy occasioned by smoking-induced lung cancer was self-sufficient cause of total disability that precluded entitlement under Part 718). Here, Drs. Rosenberg and McSharry provided that evidence. Ex. 3 at 42; Ex. 24 at 29-32. The ALJ's rejection of those opinions' ability to "rule out" coal dust as a possible contributor imposed an impossible standard falling short of the APA's guarantee of reasoned decision-making. *See Island Creek v. Young*, 947 F.3d 399, 407 (6th Cir. 2020) (rebuttal established "by showing that coal-dust exposure had no more than a *de minimis* impact on the miner's lung impairment"); *Old Ben Coal Co. v. Director,*

*OWCP*, 62 F.3d 1003, 1008 (7th Cir. 1995) (rebuttal does not require ruling out the possibility of disease or disability causation).

## CONCLUSION

For the foregoing reasons, the ALJ's decision should be vacated, the matter should be returned to a constitutionally-proper adjudicator and Arch Coal should be dismissed as a responsible operator. At a minimum, the administrative record must be reopened for a fulsome consideration of evidence supporting Arch Coal's challenge to BLBA 16-01.

Respectfully Submitted,

s/ Laura Metcoff Klaus
Laura Metcoff Klaus
Michael A. Pusateri
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 533-2354/(202) 261-0106
klausl@gtlaw.com
pusaterim@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, the undersigned served the foregoing

Petition for Review and Brief in Support on the following parties by electronic mail:

Kevin Lyskowski, Esq.
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave., NW, Suite N-2117
Washington, D.C. 20210
BRB-BLLLS@dol.gov

Ms. Robin Napier
Lay Representative
Stone Mountain Health Services
PO Box Drawer S
St. Charles, VA 24282
Robin@stonemtn.org

s/Michael Pusateri
Michael Pusateri

| | | |
|---|---|---|
| DAVID M. HOWARD | ) | |
| | ) | |
| Claimant/Respondent | ) | |
| | ) | BRB No.   20-0229 BLA |
| v. | ) | |
| | ) | Case No.   17-BLA-05163 |
| APOGEE COAL COMPANY | ) | |
| | ) | OWCP No.  xxx-xx-6902 |
| and | ) | |
| | ) | |
| ARCH COAL, INC. | ) | |
| | ) | |
| Employer/Carrier/Petitioner | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS, UNITED | ) | |
| STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Party-in-Interest/Respondent | ) | |

## DIRECTOR'S RESPONSE TO
## EMPLOYER'S PETITION FOR REVIEW AND BRIEF

The Director, Office of Workers' Compensation Programs, United States Department of Labor (Director), by counsel, responds to the Petition for Review and Brief filed by Apogee Coal Company (Apogee), self-insured through Arch Coal, Inc. (Arch Coal) (collectively, Employer). The Director respectfully requests that the Benefits Review Board (Board) affirm Administrative Law Judge (ALJ) Lauren Boucher's finding in her February 25, 2020 Decision and Order Awarding Benefits that Employer is liable for benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901-44. The Board should also reject Employer's arguments that the ALJ improperly denied its requests for discovery related to Bulletin No. 16-01; the ALJ lacked the constitutional

authority to adjudicate the claim; Mr. Howard's back injury precludes an award; and 20 C.F.R. § 718.204 is invalid if it does not. The Director will not otherwise address Employer's arguments regarding the ALJ's weighing of the medical evidence.

## **INTRODUCTION**

The ALJ properly determined that Employer is liable for benefits in this claim. David Howard last worked for Apogee in 1997, when it was self-insured through Arch Coal. Director's Exhibit (DX) 2, 3, 7, 8. After Mr. Howard's employment with Apogee ended, Arch Coal sold Apogee to Magnum Coal, and Magnum Coal later sold Apogee to Patriot Coal Corporation (Patriot). Although Patriot's self-insurance authorization made it retroactively liable for the claims of miners who worked for Apogee, Patriot later went bankrupt and can no longer provide for those benefits. Neither Patriot's self-insurance authorization nor any other arrangement, however, relieved Arch Coal of liability for paying benefits to miners last employed by Apogee when Arch Coal owned and provided self-insurance to that company. Given these facts, the ALJ correctly found Employer liable for the payment of benefits here.

Although it does not contest the ALJ's finding that Apogee meets the requirements of a potentially liable operator or that it was the miner's most recent coal mine employer of a year's duration, Employer attempts to resist the logical outcome of those facts: that it must pay benefits. The ALJ properly determined that Apogee, self-insured through Arch Coal, is liable. The Board should affirm the ALJ's liability finding.

The Board should also affirm the ALJ's denial of Employer's discovery requests, hold that the ALJ had authority to adjudicate this claim, and reject Employer's argument that Mr. Howard's back injury precludes a finding of entitlement.

## STATEMENT OF THE CASE

The miner last worked in coal mine employment in 1997. DX 2, 3, 7-8. There is no dispute that Apogee was Mr. Howard's last coal mine employer of at least one year's duration, or that Apogee was self-insured through Arch Coal at that time.

### A.  Proceeding before the District Director

David Howard filed his claim for benefits under the BLBA on November 19, 2014. DX 2. On December 8, 2015, the district director issued a Notice of Claim designating Apogee Coal as the responsible operator, self-insured through Arch Coal. DX 22.[1] Employer filed a timely controversion. DX 24. Arch Coal moved to be dismissed on January 5, 2016. DX 25. On March 17, 2016, the district director issued a Schedule for the Submission of Additional Evidence (SSAE) to Apogee, self-insured through Arch Coal. DX 27. Employer timely responded, contesting liability and entitlement. DX 29.

The district director issued the Proposed Decision and Order (PDO) on September 26, 2016, awarding benefits to Mr. Howard and holding Employer liable. DX 44. The PDO noted that Employer failed to submit evidence regarding liability or to request additional time in which to do so. DX 44. The district director served the PDO on, *inter alia*, Apogee, Arch Coal, and Arch's attorney. After Employer requested a formal hearing, the Black Lung Disability Trust Fund (Trust Fund) began paying interim benefits. DX 45, 47.

---

[1] The district director had previously issued a Notice of Claim on December 9, 2014, designating Apogee, self-insured through Patriot, as the potentially liable operator. DX 21. Apogee/Patriot filed a timely controversion. DX 23. Given Patriot's subsequent bankruptcy, the district director then notified Apogee/Arch Coal of the claim.

### B. Proceedings before the ALJ

The May 23, 2017 Notice of Hearing and Pre-Hearing Order informed parties that documentary liability evidence not submitted to the district director, and liability witnesses not identified to the district director, would not be admitted or heard absent exceptional circumstances.

On June 13, 2017, Employer filed a notice of deposition to an unnamed Department of Labor employee regarding the scientific bases for a regulatory preamble. On August 9, 2017, Employer filed a motion to bifurcate the hearing or hold the case in abeyance, and to extend the deadline for submitting liability evidence. On August 17, 2017, Administrative Law Judge Scott Morris denied Employer's motion to hold the case in abeyance or bifurcate the proceedings, denied Employer's motion to extend the deadline for filing liability evidence, and granted the Director's motion for a protective order against Employer's effort to depose Department of Labor employees regarding the drafting of a regulatory preamble. Employer appealed to the Board, which dismissed the appeal as interlocutory. *Howard v. Apogee Coal Co., LLC*, BRB No. 17-0615 BLA (Sep. 15, 2017) (Order) (unpub.), *mot. for recon denied* (Apr. 30, 2018) (en banc) (unpub.).

On October 19, 2017, counsel for Employer filed a document entitled "special appearance," which stated that attorneys for Arch were appearing only to contest jurisdiction, and argued the ALJ must cease activity in the case due to lack of jurisdiction. On October 26, 2017, ALJ Morris ordered the Director to appear at the hearing and participate in oral argument on the subject of Employer's filing.

On October 30, 2017, Employer filed a letter stating its counsel would not attend the hearing, and asked ALJ Morris to stay the proceedings and recuse himself for bias against Arch Coal. On November 6, 2017, ALJ Morris issued an Order to Show Cause, requesting that Employer show cause for its failure to attend the hearing and why the evidentiary record should not close;

the order also provided the Director a deadline to respond to Employer's request that the ALJ recuse himself. Employer filed a response to the Order to Show Cause on November 15. The Director filed a response to Employer's request for recusal on December 5, 2017, arguing that Employer failed to show any evidence of personal bias or prejudice, and its recusal request should be denied. On December 15, 2017, ALJ Morris issued an Order finding no good cause for Employer's failure to attend the hearing, keeping the evidentiary record closed, denying Employer's motion for recusal, and setting briefing deadlines.

On June 8, 2018, Employer asked ALJ Morris to reopen the record for further evidentiary development regarding both Mr. Howard's entitlement to benefits and its own liability for those benefits. On June 27, 2018, Employer filed a motion to remand to the district director for further discovery and evidentiary development regarding both entitlement and liability, and reassignment to a new ALJ based on the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).

On September 18, 2018, the case was reassigned to ALJ Boucher pursuant to *Lucia*. Employer objected, arguing that ALJ Boucher's appointment was constitutionally infirm and requesting abeyance or dismissal. *See* Employer's Objection, Oct. 16, 2018. On January 10, 2019, the ALJ issued an order rejecting Employer's requests.

On March 6, 2019, ALJ Boucher issued a Notice of Assignment, Notice of Hearing, and Pre-Hearing Order; the order stated in pertinent part that documentary liability evidence not submitted to the district director, and testimony by liability witnesses not identified to the district director, would not be admitted absent exceptional circumstances. On April 29, 2019, Employer requested subpoenas for DOL employees Michael Chance and Kim Kasmeier. The Director objected to the request on May 16, 2019, and sought a protective order on June 3, 2019. On May 28, 2019, the ALJ issued an Order Denying Request for Subpoenas, finding that Employer had

failed to identify the two Department of Labor employees as liability witnesses before the district director, and had failed to establish extraordinary circumstances for this failure. On June 17, 2019, in response to Employer's motion for reconsideration, the ALJ granted reconsideration but again denied the request for subpoenas.

On June 19, 2019, Employer moved to transfer liability to the Trust Fund, arguing it had not received proper notice of the claim and should not be liable. On July 3, 2019, the Director opposed this motion. The ALJ denied the motion on July 10, 2019, finding that the PDO had provided adequate notice to Arch Coal, and the PDO's one reference to Patriot Coal as the liable self-insurer was merely a typographical error.

At the July 17, 2019 hearing, the ALJ excluded Employer's Exhibits 12-17 and 19-21 as untimely submitted liability evidence. TR at 15-16. On July 31, 2019, the ALJ granted the Director's motion for a protective order against Employer's request for discovery regarding the scientific bases for a regulatory preamble.[2] On January 15, 2020, Employer moved to strike portions of the Director's post-hearing brief, due to the attachment of two exhibits not previously submitted. In response, the Director submitted an amended post-hearing brief without those attachments or any reference to them.

The ALJ issued her decision and order awarding benefits against Employer on February 25, 2020. Employer filed a timely appeal, followed by its petition for review. The Director now responds. 20 C.F.R. § 802.212.

---

[2] Employer served discovery requests concerning the preamble on April 29, 2019, and the Director moved for a protective order on July 3, 2019.

# THE ALJ'S DECISION AND ORDER

In the Decision and Order, the ALJ found that Apogee, self-insured through Arch Coal, satisfied the criteria for designation as the responsible operator pursuant to 20 C.F.R. §725. 494(a)-(e). ALJ at 30. She noted that it was presumed that Apogee is capable of paying benefits through its self-insurance with Arch Coal, and Employer presented no evidence to the contrary. ALJ at 30. Relatedly, she found that it was not the Director's burden to prove that Apogee was self-insured through Arch Coal. ALJ at 30.

The ALJ also rejected Employer's argument that the Director had impermissibly treated Arch Coal like a responsible operator. She found that the Director had designated Apogee, not Arch Coal, as the responsible operator, and thus determined that whether Arch Coal meets the definition of operator at 20 C.F.R. § 725.491 was immaterial. ALJ at 31. She found Department of Labor Bulletin 16-01 irrelevant, given that she found Apogee, self-insured through Arch Coal, liable based on the black lung regulations and not on the guidance provided in the Bulletin. ALJ at 31-32.

The ALJ further rejected Employer's argument that the Director had improperly pierced the corporate veil by treating Arch Coal as the responsible operator because the determination to hold Arch Coal liable was based on the self-insurance coverage it provided Apogee, not on a parent-subsidiary relationship between Apogee and Arch Coal. ALJ at 32.

The ALJ rejected Employer's argument that the Director had wrongly based Arch Coal's liability on Mr. Howard's last day of coal mine employment rather than the date he filed his claim, allegedly ignoring a regulatory distinction between commercial insurers and self-insurers. ALJ at 33. She found

no regulatory basis to refute the Director's arguments that Arch is liable here because it provided Apogee's self-insurance while Claimant was employed by Apogee, and Apogee, as owned and self-insured by Arch, meets the requirements of a potentially liable operator. Even if Employer's assertions about general principles of corporate and insurance law are correct, black lung liabilities are very specifically regulated, and I am bound to apply those regulations.

She thus determined Apogee, self-insured through Arch Coal, is liable and declined to transfer liability to the Trust Fund.

## ISSUES

1. Whether the ALJ had the constitutional authority to adjudicate this claim under *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).

2. Whether the ALJ's finding that Apogee, self-insured through Arch Coal, is the responsible operator liable for benefits is supported by substantial evidence and in accordance with law.

3. Whether the ALJ properly denied Employer's discovery requests.

3. Whether Howard's disabling back injury precludes entitlement.

## ARGUMENT

### I

### REMOVAL PROVISIONS FOR ALJs DO NOT DEPRIVE THE ALJ OF AUTHORITY TO ADJUDICATE THIS CLAIM.

Employer argues that remand is required because removal protections applicable to the ALJ violate the constitution.[3] This argument is without merit.

Employer asserts that the statute governing the removal of ALJs, 5 U.S.C. § 7521, is unconstitutional because it violates the separation-of-powers doctrine. Pet. Bf. at 16-19. According to Employer, the statute unconstitutionally limits the Secretary of Labor's power to remove ALJs.

---

[3] Employer does not directly challenge the Secretary's appointment of ALJ Boucher. Accordingly, it has waived any such argument.

As support, Employer cites *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), *Seila Law, LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020), Justice Breyer's concurring and dissenting opinion in *Lucia*, and the Solicitor General's brief in that case, none of which actually supports Employer's position. This is insufficient to meet Employer's burden of showing that there is no reasonable way to interpret section 7521 such that it passes constitutional muster. *See Faine v. Buck Branch Rebuild & Manufacturing*, BRB No. 19-0072, slip op. at 5-6 (Feb. 6, 2020) (unpub.) ("Employer has not explained how [*Free Enterprise Fund*] . . . undermines the administrative law judge's authority to hear and decide this case"). Thus, there is no viable challenge to the statute before the Board and the Board should summarily reject Employer's argument.

Congressional enactments are presumed to be constitutional and will not be lightly overturned. *U.S. v. Morrison*, 529 U.S. 598, 607 (2000) ("Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds."). To that end, the Supreme Court has long recognized that "'[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Const. Trades Council*, 485 U.S. 568, 575 (1988), quoting *Hooper v. California*, 155 U.S. 648, 657 (1895). Here, Employer does not even attempt to show that section 7521 cannot be reasonably construed in a constitutionally sound manner.

When challenging section 7521, Employer merely notes that in *Free Enterprise Fund*, the Supreme Court held that the two levels of "for cause" removal protection enjoyed by the Public Company Accounting Oversight Board was constitutionally infirm. Employer then observes that

the removal scheme for ALJs also has two layers of for cause protection and implies that ALJ protections must therefore fail under *Free Enterprise Fund*. But the Court in *Free Enterprise Fund*—which involved more stringent removal criteria than those imposed by section 7521—expressly noted that its holding did not address ALJs. 561 U.S. at 507 n.10. Employer thus cannot simply cite to *Free Enterprise Fund* to support its argument that section 7521 is unconstitutional.

Attempting to bolster its position, Employer points the Board to Justice Breyer's opinion in *Lucia* and to the Solicitor General's briefs in that case. Pet. Bf. at 18. Employer suggests that both Justice Breyer and the Solicitor General contend that section 7521 must be deemed invalid based on *Free Enterprise Fund*. But neither Justice Breyer nor the Solicitor General said any such thing. In discussing *Free Enterprise Fund*, Justice Breyer pointedly noted that "*Free Enterprise Fund*'s holding may not invalidate the removal protections applicable to [ALJs] even if the judges are inferior officers of the United States for purposes of the Appointments Clause." *Lucia*, 138 S.Ct. at 2060 (Breyer, J., concurring and dissenting) (internal quotations omitted). Thus, rather than suggesting that *Free Enterprise Fund*'s holding also dooms ALJ removal protections, Justice Breyer's opinion instead casts doubt on that decision's ramifications. And even if Justice Breyer's remarks could somehow be interpreted as suggesting section 7521 was constitutionally infirm, Justice Breyer did not speak for the Court in *Lucia*. The *Lucia* majority expressly declined to reach the question of removal at all. 138 S.Ct. at 2050, n.1. Consequently, Employer finds no support in any aspect of the *Lucia* decision.

Nor can Employer gain support from the Solicitor General's views. As Employer concedes, the Solicitor General argued in *Lucia* that section 7521 *is constitutional* if properly construed, and

offered a construction of the statute that would pass constitutional muster.[4] *See* Brief for Respondent Supporting Petitioners, 2018 WL 1251862, **45-55; Reply Brief for Respondent Supporting Petitioners, 2018 WL 1806836, *17. Although Employer acknowledges the Solicitor General's construction of the statute, it does not meaningfully address it, much less demonstrate that his construction is constitutionally flawed and that no other constitutional construction would be permissible. Instead, Employer merely suggests that Justice Breyer found the Solicitor General's construction insufficient. Pet. Bf. at 18. But the ambiguous statements quoted by Employer cannot be fairly interpreted as indicating that Justice Breyer found the Solicitor General's construction was wholly untenable. And as noted above, at no time did Justice Breyer declare that section 7521 must be found unconstitutional under *Free Enterprise*. Thus, Employer simply cannot rely on Justice Breyer's opinion either to challenge the Solicitor General's construction of section 7521 or to support its bald assertion that the provision is unconstitutional.[5]

---

[4] In *Lucia*, the Solicitor General argued that Section 7521 is best interpreted to permit an agency to remove an ALJ for personal misconduct or for failure to follow lawful agency directives or to perform his duties adequately. This construction of the statute safeguards the power of the president and the heads of departments to control and supervise the executive branch, while at the same time respecting the independence of ALJs. *See* Brief for Respondent Supporting Petitioners, 2018 WL 1251862, **45-46, 50.

[5] Employer relatedly asserts that the Federal Circuit in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), agreed with Justice Breyer. But this contention makes little sense because the court in that case held that section 7521 was inapplicable. *Id*. at 1333, n.4.

In short, Employer has offered absolutely no valid legal basis for the Board to question the validity of section 7521.[6] The Board should reject the argument.[7]

## II

THE ALJ'S DETERMINATION THAT EMPLOYER IS THE RESPONSIBLE OPERATOR LIABLE FOR BENEFITS IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW.

The Board should affirm the ALJ's finding that Employer is liable for benefits in this claim because the ALJ's finding is supported by substantial evidence and in accordance with law. Employer is liable under a straightforward application of the black lung regulations. None of its many arguments against liability is viable.[8]

---

[6] Furthermore, *Seila Law*, cited by Employer, does not support its argument. *Seila Law* addresses the status of a principal (senate-confirmed) officer and does not relate to DOL ALJs (who are inferior officers) and whose removal is addressed under an entirely distinct statutory provision. In *Seila Law*, the Supreme Court held that the removal restrictions for the Director of the Consumer Financial Protection Bureau outlined in the statute that created the Bureau violated the Constitution's separation of powers. The statutory provision at issue in *Seila Law* limited the Director's removal to "inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 5491(c)(3). In doing so, the Court did not expand upon *Free Enterprise Fund*'s holding that two layers of for-cause removal protection are not permissible in certain circumstances. *See* 561 U.S. at 492 (invalidating removal restrictions for members of the Public Company Accounting Oversight Board, who could only be removed by Securities and Exchange Commissioners in specific limited situations, who in turn could only be removed by the President for inefficiency, neglect of duty or malfeasance). More significantly, nothing in *Seila Law* modifies the Court's statement in *Free Enterprise* that "our holding also does not address" ALJs. *Id.* at 507 & n.10. Accordingly, *Seila Law* does not help Employer.

[7] Employer also confusingly argues that the issuance of Executive Order 13843 does not cure the removal defect. Pet. Bf. at 19. But as noted above, there is no defect to cure; the ALJ removal provisions are constitutional and Employer has not proven otherwise.

[8] Because the miner's coal mine employment with Employer was in Kentucky, the law of the United States Court of Appeals for the Sixth Circuit applies. DX 3, 7, 8; *Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989) (en banc).

The ALJ properly found Employer liable because the miner's last coal mine employment was with Apogee while it was self-insured by Arch Coal. ALJ at 30. Employer failed to develop any evidence or credible argument that it should be dismissed. *Id.* Employer qualifies as a potentially liable operator under 20 C.F.R. § 725.494 because (1) the miner's disability arose at least in part from employment in a mine while it was operated by Employer; (2) Employer operated a coal mine after June 30, 1973; (3) Employer employed the miner for at least one year; (4) that employment included at least one working day after December 31, 1969; and (5) Employer is capable of assuming liability for the payment of benefits through Arch Coal's self-insurance coverage. Employer does not dispute that Arch Coal provided self-insurance coverage to Apogee on Mr. Howard's last date of employment. Further, it is Employer's burden to prove it is unable to pay benefits, 20 C.F.R. § 725.495(c)(1), and Employer does not even argue that it is financially incapable of paying benefits in this claim. In short, Apogee, self-insured through Arch Coal, was the last potentially liable operator to employ the miner and failed to prove that it is unable to pay his benefits. The ALJ thus properly concluded that Employer is the responsible operator. 20 C.F.R. §§ 725.494, 725.495(a)(l); ALJ at 27-33.

In its brief on appeal, Employer does not dispute these facts. Instead, Employer argues that the ALJ wrongly held it liable because (1) Arch Coal never received proper notice of the claim; (2) the Director did not prove that Arch Coal's self-insurance covered Apogee for this claim; and (3) Arch Coal was wrongly prohibited from obtaining evidence about the Department's Bulletin No. 16-01. Employer's arguments lack merit, and should be rejected.

## A. The district director properly identified Arch Coal as Apogee's self-insurer.

Arch Coal received proper notice of this claim and participated in the proceeding before the district director. However, Employer argues that the district director failed to properly notify

and serve Arch Coal as a responsible party in the Proposed Decision and Order. Pet. Bf. at 19-21. As a result, Arch Coal asserts, the Department was estopped from holding Arch Coal liable and the Trust Fund must bear responsibility for the claim. *Id*, at 21. Arch further argues the ALJ erred in finding the PDO's single reference to Patriot was a "typographical error." *Id*, at 20. Arch Coal is simply wrong.

Employer completely ignores the PDO's multiple references to Arch Coal as Apogee's self-insurer, and the fact that Arch Coal and its attorney were listed on the certificate of service. *See* DX 44 at 5 (listing Apogee, Arch Coal, and William Prochot of Greenberg Traurig as entities served by certified mail); 7 (identifying Apogee's insurance carrier as "Self-insured through Arch Coal Inc."); 14 (providing certified receipt numbers for Apogee, Arch Coal, and William Prochot); 15 (including Arch Coal as the self-insurer on the Certificate of First Payment of Benefits). The PDO attached certified mail receipts for Apogee, Arch Coal, and Arch Coal's attorney, indicating actual receipt. DX 44 at 19, 21, 23. [9] Indeed, nine days after the district director issued the PDO, Employer's counsel acknowledged Arch Coal's receipt of the PDO, disagreed with its findings, and requested a formal hearing. DX 45.

Employer rests its argument of improper notice and service entirely on the following sentence in the PDO: "A Notice of Claim was received by the potentially liable operator/carrier, Self-insured thru [*sic*] Patriot Coal Company, on December 11, 2014." DX 44 at 11. [10] In this

---

[9] Even if the district director had failed to serve the PDO by certified mail, actual notice and receipt have been established. *See Dominion Coal Corp. v. Honaker*, 33 F.3d 401, 404 (4th Cir. 1994) ("When the record establishes actual notice, the purpose of the statutory certified mail requirement has been met").

[10] That is the only mention of Patriot Coal in the PDO.

statement, the PDO was referencing the first Notice of Claim issued in the case, which was directed to Patriot, instead of the most recent Notice of Claim issued to Arch Coal. DX 21, DX 22. The ALJ reasonably found "the lone reference to Patriot in the analysis section was a typographical error." July 10, 2019 Order at 3. Finding that the PDO named Arch Coal as the self-insurer and Arch Coal was properly served with the PDO, the ALJ properly determined "any defect in the PDO does not rise to the level of a due process violation." *Id.*[11] Indeed, the PDO's reference to Patriot was nothing more than a scrivener's error and gave rise to nothing of legal consequence. *See U.S. v. Hython*, 443 F.3d 480, 488 (6th Cir. 2006) ("the failure to amend the affidavit was nothing more than 'a scrivener's error'" and thus of no legal consequence). The Board should reject Arch Coal's claim that it was not properly designated as Apogee's self-insurer or served with the PDO.

### B. The district director properly found that Apogee, self-insured through Arch Coal, is the responsible operator, and Arch Coal failed to carry its burden to prove otherwise.

Employer next argues that the Director had a burden to prove that Arch Coal's self-insurance covered this claim, and the Director failed to meet that burden. Pet. Bf. at 22-25. Employer is wrong. The Director met her burden to "prov[e] that the responsible operator initially found liable for the payment of benefits pursuant to § 725.410 (the "designated responsible operator") is a potentially liable operator." 20 C.F.R. § 725.495(b). As discussed above, Apogee, self-insured through Arch Coal, meets the criteria for a potentially liable operator as set forth in 20 C.F.R. § 725.494. It is presumed that the responsible operator is financially capable of paying

---

[11] Arch claims the Trust Fund accepted liability in three cases with "very similar facts," but acknowledges in those cases Arch Coal was not properly named or served with the notice of claim, SSAE, or PDO. Pet. Bf. at 21 n.7. Those are not the facts here, where Arch was named in and served with all three. DX 22, 27, 44.

benefits. 20 C.F.R. § 725.495(b). And it is Employer's burden to prove that it is not financially able to pay benefits or that it is not the most recent potentially liable operator to employ the miner. 20 C.F.R. § 725.495(c). Employer failed to carry this burden and does not even argue that it is unable to pay or that it did not most recently employ the miner.[12]

In fact, Employer admits in its opening brief that Arch Coal's self-insurance covered Apogee's liabilities when the miner last worked for it in 1997: "On December 31, 2005, Arch Coal sold Apogee and its federal black lung liabilities to Magnum Coal. It promptly informed the Department of Labor ("DOL") of the sale and renewed and adjusted its self-insurance applications to exclude Apogee in 2006, 2012 and 2015." Pet. Bf. at 1-2. Thus, Arch Coal concedes that it was Apogee's self-insurer before 2005, when the miner last worked for it.

Employer further argues that Patriot Coal should have been liable and agreed it should be a party to the claim. Pet. Bf. at 22. According to Employer, Patriot should be liable because Arch Coal sold Apogee's federal black lung liabilities to Magnum, which in turn sold them to Patriot Coal. Pet. Bf. at 2. But while an operator can arrange for other companies to pay the operator's federal black lung liabilities on the operator's behalf, such private contracts do not release the operator from liability imposed by the BLBA. *See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 718 (1990) (provisions of a contract between private parties are invalid if they conflict with black

---

[12] Employer further argues that the Department must "prove coverage for [the designated] operator's liabilities, either by commercial or self-insurance," and cites to 20 C.F.R. § 725.495(d). Pet. Bf. at 22. But section 725.495(d) says no such thing; rather, that regulation states that if the district director did not designate the miner's most recent coal mine employer due to lack of commercial insurance or self-insurance, the district director must state that OWCP searched and found no evidence of insurance coverage. This situation does not apply here, where the named responsible operator, Apogee, was Mr. Howard's last coal mine employer, and Apogee had self-insurance through Arch Coal.

lung regulations); *see also Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 223-24 (1986) ("Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them.") (quoting *Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 307-308 (1935)); *Lovilia Coal Co. v. Williams*, 143 F.3d 317 (7th Cir. 1998) (holding that insurance contract could not be construed to limit an insurer's liability under the Black Lung Benefits Act); *Curry v. Eagle Energy, Inc.*, Case No. 2013-BLA-05263, slip op. at 7 (July 28, 2016) (where regulations clearly impose liability on an employer, contractual provisions to the contrary do not control).

Significantly, Patriot Coal never employed the miner and did not even exist until years after the miner stopped working. In 2011, Patriot was authorized to self-insure, and that authorization made it retroactively liable for the claims of miners who had worked for Apogee.[13] But Patriot later went bankrupt and can no longer provide for those benefits. Further, Patriot's self-insurance authorization did not make Patriot exclusively liable for Apogee's claims. On the contrary, neither that authorization nor any other arrangement relieved Arch Coal of liability for paying benefits to miners last employed by Apogee when Arch Coal owned and provided self-insurance to that company.[14]

---

[13] Employer argues that the Department has refused to provide discovery about Patriot's self-insurance, and that refusal "suggests that discovery would disprove [the Department's] unsupported assertions." However, to the extent the Department refused such liability-related discovery, it was because Employer never requested it before the district director and therefore could not timely submit it pursuant to 20 C.F.R. § 725.456(b)(1). There is also no basis for Employer's suggestion that Patriot-related discovery would disprove the Department's statements.

[14] Employer claims that the Department "approved Arch's agreement not to insure Apogee's liabilities after December 31, 2005." Pet. Br. at 33. But the Department never formed an agreement with Arch Coal or otherwise released it from liability for claims of miners who last worked for its subsidiaries when Arch Coal owned and self-insured them. Thus, despite Employer's citations to documents not admitted into the record, no evidence of such an agreement exists. *Id.*

Employer also complains that the Director wrongly pierced Arch Coal's "corporate veil" to hold it liable for Apogee's claims, thereby treating Arch Coal as the responsible operator. Pet. Bf. at 24-25.[15] Employer references 20 C.F.R. § 725.493(b)(2), which provides that if the company that employed the miner is no longer operating, its parent company may be considered the employer. But the district director did not hold Arch Coal liable by piercing the corporate veil or finding that Arch Coal should be considered Mr. Howard's employer. Instead, the district director held Arch Coal liable because it provided Apogee's self-insurance coverage at the time the miner last worked there. Thus, the ALJ properly dismissed Employer's arguments:

> First, it does not appear that the district director relied on this regulation [20 C.F.R. § 725.493(b)(2)]. The record does not reflect that the district director found an employment relationship between Claimant and Arch (though this regulation apparently would permit such a finding). Again, the record reflects that the district director named Apogee, not Arch, as the responsible operator in this claim. Arch bears liability for this claim as Apogee's self-insurer, not as the responsible operator.

> Second, as explained in detail in my June 17, 2019, Order Granting Motion to Reconsider and Denying Request for Subpoenas, and my July 10, 2019, Order Denying Employer's Motion to Transfer Liability, Arch was properly notified of its liability in this claim as Apogee's self-insurer and yet failed to timely offer or seek through discovery any evidence that it is not liable. As a result, Employer is now prohibited from presenting liability evidence during this proceeding, §§ 725.414(d), 725.456(b)(1), and as set forth above, Apogee's capability of assuming liability for the payment of benefits is now presumed under the regulations. § 725.495(b). Contrary to Employer's arguments, it did have the opportunity to prove that Arch was not liable for this claim as Apogee's self-insurer; it simply failed to avail itself of that opportunity.

> ALJ at 32. The Board should likewise reject Employer's arguments.

---

[15] Employer also argues that the Department wrongly treated Arch Coal as a responsible operator rather than the insurance provider. Pet. Bf. at 23-24. This is not true. The district director and ALJ consistently designated Apogee as the responsible operator and Arch Coal the self-insurance provider.

## C. The ALJ properly denied Employer's discovery attempts.

The ALJ properly rejected Employer's attempt to obtain discovery about the Department's Bulletin No. 16-01 (the Bulletin). An ALJ's evidentiary rulings will only be overturned for abuse of discretion. *McClanahan v. Brem Coal Co.*, 25 BLR 1-171, 1-175 (2016). Employer has not shown such a result is warranted here.

The Bulletin was issued after Patriot Coal's bankruptcy to provide guidance to claims examiners on how to process claims related to Arch Coal's and Peabody Energy's former subsidiaries.[16] Employer argues that the Bulletin marked a change in policy, and the ALJ erred in denying discovery into it. Pet. Bf. at 25-34. Specifically, Employer argues that "before Bulletin 16-01 was enacted, DOL imposed liability on self-insured parent companies based on which parent had assumed the liability when the claim was filed, not based on the miner's last day of work." Pet. Bf. at 26. Employer continues that the ALJ erred in denying discovery because *Arch Coal v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018), "ordered that any challenge to DOL's change in policy be raised in the context of each individual claim." *Id.*[17]

Contrary to Employer's arguments, its Bulletin-related discovery was properly denied because (1) Employer failed to timely request it; (2) the discovery is not relevant to Arch Coal's liability for this claim, which is based on the black lung regulations; and (3) the Bulletin does not mark a departure from the regulations or a change in policy.

---

[16] Available at https://www.dol.gov/agencies/owcp/dcmwc/blba/indexes/bulletins (last accessed Nov. 27, 2020).

[17] In *Acosta*, the D.C. Circuit rejected Arch Coal's argument that the Bulletin is "a substantive 'rule.'" 888 F.3d at 501 (citing 5 U.S.C. § 551(4)). The court recognized that the Bulletin is, instead, "an enforcement policy," which "only requires District Directors to initiate proceedings concerning Arch's potential responsibility for [certain] claims" under the BLBA. *Id.*

The ALJ properly denied discovery into the Bulletin because it was liability-related discovery that Employer had not requested or submitted before the district director. *See* ALJ Order Granting Motion to Reconsider and Denying Request for Subpoenas at 6 (June 17, 2019) ("because Employer did not submit its documentary liability evidence to the district director (or even seek to obtain it at that stage in the proceedings), and extraordinary circumstances do not exist to excuse that failure, the documents Employer now seeks would be inadmissible in these proceedings.").[18] Employer argues that *Acosta* permitted discovery into the Bulletin in claims like this, Pet. Bf. at 31-32, but ignores *Acosta*'s direction that parties must follow the black lung regulations regarding the development of liability evidence. *Acosta*, 888 F.3d at 502 ("Arch is entitled to *reasonable discovery* before the Department to the full extent *allowed by the BLBA and its implementing regulations*.") (emphasis added)). Here, Employer did not attempt to obtain liability discovery until the case was before the ALJ, even though the black lung regulations require that documentary liability evidence be submitted and liability witnesses be identified to the district director by the deadlines set in the Schedule for the Submission of Additional Evidence. *See* 20 C.F.R. §§ 725.414(c), 725.456(b)(1).[19] Employer's discovery effort thus came too late and was properly rejected for this reason.[20]

---

[18] Employer's statement that discovery into the Bulletin is not related to its liability cannot be squared with its assertion that the Bulletin marks a policy change as to liability, and that as a result, Arch Coal has been wrongly held liable and should be dismissed. Pet. Bf. at 31-32.

[19] Employer claims that the Department would not have provided discovery even if Employer had timely requested it, pointing to other claims in which it did not obtain the discovery it wanted. Pet. Br. at 31 n.9. But as the ALJ determined, "Employer did not seek discovery of any liability-related documents *in this claim*," and "[t]he Director's actions in separate claims . . . have no bearing on how the regulations apply to the evidence in this claim." ALJ Order (June 17, 2019) at 6.

[20] Employer asserts that these evidentiary regulations divest the ALJ of her power to oversee discovery disputes, and render the district director an inferior officer improperly appointed under

In addition, discovery into the Bulletin is not relevant to Arch Coal's liability for this claim, which is based on the black lung regulations. As explained above, Arch Coal is liable because Apogee, self-insured through Arch Coal, was the last potentially liable operator that employed the miner. The ALJ agreed, noting that "black lung liabilities are very specifically regulated, and I am bound to apply those regulations;" doing so, she found "no regulatory basis to refute the Director's arguments that Arch is liable here because it provided Apogee's self-insurance while Claimant was employed by Apogee, and Apogee, as owned and self-insured by Arch, meets the requirements of a potentially liable operator." ALJ at 33. The Board affirmed a similar finding by an ALJ in a case with the same issues at play, involving Peabody Energy instead of Arch Coal as the self-insurer for subsidiaries later sold to Patriot. *Gregory v. Heritage Coal Co.,* BRB Nos. 19-0337 BLA, 19-0338 BLA, slip op. at 8-9 (Sept. 30, 2020) (unpub.) (mot. for recon. pending). In *Gregory*, the Board determined the ALJ permissibly found Peabody Energy liable for benefits, given that "Employer meets all the requirements of a potentially liable operator," and "Employer did not submit any evidence establishing it is not the operator that most recently employed the Miner or that it is unable to assume liability for the payment of benefits." *Id.* Therefore, the Bulletin is not relevant to the analysis of Employer's liability under the black lung regulations.

*Lucia.* Pet. Br. at 31 n.9. Neither complaint has merit. Although liability evidence must be timely submitted to a district director, an ALJ may admit untimely evidence if she finds extraordinary circumstances warrant it. 20 C.F.R. § 725.456(b)(1). Further, while district directors may compile evidence, the "official" or final record is not created until the formal hearing before the ALJ, and usually does not include all medical evidence. 20 C.F.R. § 725.421(b) (specifying documents that must be transmitted to OALJ after request for hearing, and noting they "shall be placed in the record at the hearing, subject to objection by any party."); Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79,920, 79,991 (Dec. 20, 2000) ("[T]he Department expects that parties generally will not undertake the development of medical evidence until the case is pending before the administrative law judge."). And the district director (unlike an ALJ) cannot make rulings on the admissibility of evidence. *See* 20 C.F.R. § 725.455(b).

Moreover, the Bulletin did not mark a departure from the black lung regulations or a change in Department policy. Employer claims, however, that the Bulletin departs from a previous policy that "imposed liability on self-insured parent companies based on which parent had assumed the liability when the claim was filed, not based on the miner's last day of work." *See* Pet. Br. at 26. As support, Employer cites three cases in which the Department designated Patriot or Magnum Coal as the responsible self-insurer in claims by miners who worked for Arch Coal subsidiaries before Patriot or Magnum owned those subsidiaries. *Id.* (citing *Massey v. Apogee Coal*, 2019-BLA-05144; *Creech v. Apogee Coal*, xxx-xx-6408; and *Allen v. Hobet Mining*, 2019-BLA-06231). But those cases do not evidence a change in policy; rather, they evidence a change in the facts. In these cases, Patriot and Magnum were held liable when they owned the subsidiaries and were capable of assuming liability. The Director has acknowledged throughout the proceedings in this matter that Patriot was authorized to self-insure Arch Coal's former subsidiaries for claims by miners who worked for them before Patriot owned them. But following its bankruptcy, Patriot was no longer capable of assuming liability. As Arch Coal was never released from liability for claims by miners who worked for its subsidiaries while Arch Coal owned and self-insured them, Arch Coal is the responsible self-insurer. Thus, the change from the three cited cases was not a change in policy; instead, the change was that post-bankruptcy, Patriot became incapable of assuming liability. The responsible operator, Apogee, is presumed capable of paying benefits, and can do so through Arch Coal's self-insurance. 20 C.F.R. § 725.495(b).[21] Employer has not argued otherwise.

---

[21] Employer baselessly asserts that only the regulations for commercial insurance, not self-insurance, allow liability for claims based on coverage during the miner's employment. Pet. Br. at 32-33. But Employer cites to no self-insurance regulations that preclude its liability. As the ALJ found, there is "no basis in the regulations to relieve Arch of liability under the circumstances of this claim." ALJ at 33. "Apogee (as self-insured by Arch) was properly identified as the responsible operator." *Id.*

Employer also alleges the Department "tried – and failed – to change the law" to require a parental guaranty of liability, through the Department's Proposed Collection of Information; Comment Request, 82 Fed. Reg. 50,166 (Oct. 30, 2017) (seeking comments on proposed Application for Self-Insurance Under the Black Lung Benefits Act, 1240-0NEW (CM-2017; CM-2017a; CM-2017b)). Pet. Br. at 27 n.8. Employer mischaracterizes the Department's action and its effect.[22] Rather than propose a change to the regulations, the Department merely requested comments on new forms that would be used to collect information from companies seeking self-insurance authorization. In the proposed collection of information, the Department indicated it was considering requiring an explicit parental guaranty as part of the self-insurance application process. That language was later withdrawn. *See* Self-Insurance Supporting Statement at 6, ICR Ref. No. 201901-1240-008 (Jan. 2019).[23] Employer insinuates that the Department proposed the parental guaranty language because the regulations did not otherwise hold self-insuring parent companies liable. To the contrary, the proposed (although withdrawn) guaranty language would have been consistent with the way in which the black lung regulations allocate liability. Under the black lung regulations, parent companies can be held responsible for their subsidiaries' liabilities in multiple ways, including after they have sold those subsidiaries. *See, e.g.*, 20 C.F.R. §§ 725.491(e) ("any parent entity or other controlling business entity may be considered an operator for purposes of this part"); 725.492(a), (d) (providing liability for successor operators, which are entities that

---

[22] Because there has been no change in regulations or policy, there is no merit to Employer's unsupported statement that Arch Coal's liability has been retroactively imposed in contravention of the Constitution, BLBA, and APA. Pet. Br. at 34.

[23] Available at https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=201901-1240-008.

"acquired a mine or mines, or substantially all of the assets thereof, from a prior operator," and providing that this regulation "shall not be construed to relieve a prior operator of any liability"); 725.493(b)(2) (providing that a parent entity may be considered the "employer"). In this case, however, all this is beside the point. As the ALJ found, Employer is liable for this claim under a straightforward reading of the regulations: the miner last worked for at least one year in coal mine employment for Apogee when it was self-insured through Arch Coal. 20 C.F.R. §§ 725.493-725.495; ALJ at 27-33.

Finally, Employer's due process arguments must be rejected. Pet. Br. at 28-32. Employer claims that the ALJ's denial of its request for Bulletin-related discovery resulted in a lack of due process that warrants remand or Arch Coal's dismissal. *Id,* at 32. Yet, Employer's Bulletin-related discovery was denied based on Employer's own failure to comply with the black lung evidentiary regulations. ALJ Order (June 17, 2019) at 6. As the Board has held, "[d]ue process requires only that a party be given the opportunity to mount a meaningful defense against a claim." *Webb v. Peabody Coal Co.,* BRB No. 19-0122 BLA, slip op. at 13 (May 29, 2020) (unpub.) (mot. for recon. pending). Just as in *Webb*, Employer here "had the opportunity to develop and submit all of its liability evidence relevant to the responsible carrier issue while the case was before the district director but it failed to do so. Employer therefore has not demonstrated a due process violation." *Id.* Accordingly, Employer's due process argument must be rejected

III

MR. HOWARD'S DISABLING BACK INJURY DOES NOT
PRECLUDE HIS ENTITLEMENT TO BENEFITS.

Employer argues that because Mr. Howard suffered disabling back, neck, and knee injuries prior to developing disabling pneumoconiosis, he cannot be awarded benefits. Pet. Bf. at 35-37.

Employer's argument rests largely on a decision issued by the U.S. Court of Appeals for the Seventh Circuit interpreting pre-revision 20 C.F.R. § 718.204, *Peabody Coal Co. v. Vigna*, 22 F.3d 1388 (7th Cir. 1994).

The Department explicitly rejected the premise that a non-pulmonary disability precludes entitlement when promulgating the 2000 regulations. 20 C.F.R. § 718.204(a) ("any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to pneumoconiosis"); 65 Fed. Reg. 79946 (Dec. 20, 2000) ("This change emphasized the Department's disagreement with [*Vigna*]"). Moreover, the regulation was held valid in *National Min. Ass'n v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002), so long as it applied to claims filed outside the Seventh Circuit, or in the Seventh Circuit after the effective date of the regulation. *Id*, 292 F.3d at 864-65. Significantly, the Sixth Circuit, in whose jurisdiction this case arises, has never followed *Vigna*. Employer's argument must be rejected, along with Employer's contention that section 718.204 is invalid if not interpreted in accordance with its wishes. Pet. Bf. at 37.

## CONCLUSION

The ALJ properly found that Apogee, self-insured through Arch Coal, is liable for this claim. In addition, Employer's arguments that the ALJ improperly denied its discovery requests, that the ALJ was not authorized to adjudicate this claim, and that Mr. Howard's non-pulmonary injuries preclude entitlement, are meritless. The Board should reject these arguments and affirm the ALJ's liability determination.

Respectfully submitted,

KATE S. O'SCANNLAIN
Solicitor of Labor

BARRY H. JOYNER
Associate Solicitor

JENNIFER L. FELDMAN
Deputy Associate Solicitor

MICHAEL J. RUTLEDGE
Counsel for Administrative Litigation and Legal Advice

/s/ Jeffrey S. Goldberg
JEFFREY S. GOLDBERG
Attorney
U.S. Department of Labor
Office of the Solicitor
Suite N-2119
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693-5650
Goldberg.Jeffrey@dol.gov

Attorneys for the Director, Office
of Workers' Compensation Programs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 30, 2020, a copy of the foregoing document was served

by email, with permission, on the following:

Laura Metcoff Klaus, Esq.
klausl@gtlaw.com
BRB.service@gtlaw.com

Robin Napier
rnapier@stonemtn.org

/s/ Jeffrey S. Goldberg
JEFFREY S. GOLDBERG
Attorney
U.S. Department of Labor

UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD
Washington, D.C.

| | |
|---|---|
| DAVID M. HOWARD,<br><br>               Claimant,<br><br>   v.<br><br>APOGEE COAL CO., *et al.*,<br><br>               Employer-Carrier,<br><br>   and<br><br>DIRECTOR, OFFICE OF WORKERS'<br>COMPENSATION PROGRAMS,<br><br>               Party-in-Interest. | BRB No.   2020-0229 BLA<br>OWCP No.  xxx-xx-6902 |

## REPLY BRIEF

Apogee Coal Company and Arch Coal, Inc. (collectively "Apogee") appealed from a decision and order awarding benefits to the claimant, David Howard, and finding Arch Coal liable as Apogee's self-insurer notwithstanding that Arch Coal had sold Apogee's assets and liabilities and, following that sale, DOL had approved Arch Coal's self-insurance program without coverage for Apogee. The Director has filed a limited response that offers no valid reason to ignore the plain text of the BLBA in interpreting its regulations or statute with respect to self-insurance and entitlement on the merits and provides no valid reason to ignore the requirements of the Appointments Clause. As set forth more fully below, and in the Petition for Review, Arch Coal must be dismissed as a party. Otherwise, this matter must be remanded to a constitutionally-secure adjudicator.

## ARGUMENT

### I.    The Appointments Clause Has Not Been Satisfied

In defending the ALJ's authority to adjudicate this claim notwithstanding that the removal protections in 5 U.S.C. § 7521 insulate him from termination by the

president as required by the Constitution, the Director argues first, that Apogee failed to provide a sufficient explanation for its objection for the Board to consider the argument. Resp. at 9. Even the Director does not seriously press that point because it is not accurate. The argument is sufficiently presented with reference to the statute, the Constitution and the Supreme Court cases that explain why section 7521 is incompatible with the Appointments Clause in this situation.

The Director also argues that the position advocated by the Solicitor General to the Supreme Court preserved the validity of ALJs' removal and saves the ALJ's appointment from unconstitutionality, noting that Congressional enactments should be presumed to be constitutional. *See* Resp. at 9-11. The Director denies that Justice Breyer rejected that construction, but the Justice's words speak for themselves:

> On the Solicitor General's account, for the administrative law judges' removal protections to be constitutional, the Commission itself must have the power to remove administrative law judges "for failure to follow lawful instructions or perform adequately." *Id.*, at 48. The Merit Systems Protection Board would then review only the Commission's factfinding, and not whether the facts (as found) count as "good cause" for removal. *Id.*, at 52-53. This technical-sounding standard would seem to weaken the administrative law judges' "for cause" removal protections considerably, by permitting the Commission to remove an administrative law judge with whose judgments it disagrees—say, because the judge did not find a securities law violation where the Commission thought there was one, or vice versa. In such cases, the law allows the Commission to overrule an administrative law judge's findings, for the decision is ultimately the Commission's. *See* 15 U.S.C. § 78d-1(b). But it does not allow the Commission to fire the administrative law judge. *See* 5 U.S.C. § 7521.

> And now it should be clear why the application of *Free Enterprise Fund* to administrative law judges is important. If that decision does not limit or forbid Congress' statutory "for cause" protections, then a holding that the administrative law judges are "inferior Officers" does not conflict with Congress' intent as revealed in the statute. But, if the holding is to the contrary, and more particularly if a holding that administrative law judges are "inferior Officers" brings with its application of *Free Enterprise Fund*'s limitation on "for cause" protections from removal, then a determination that administrative law judges are, constitutionally speaking, "inferior Officers" would directly conflict with Congress' intent, as revealed in the statute.

*Id.* at 2061-62.

As noted, the Supreme Court recently reaffirmed that the power to remove an officer in the Executive Branch also stems from the Appointments Clause and must be unfettered in order to comply with the Constitution. *See Seila Law LLC v. Consumer Finance Protection Bureau*, 591 U.S. __, 140 S.Ct. 2183, 2205-06 (2020) ("[T]he President's removal power stems from Article II's vesting of the "executive Power" in the President.... [T]ext, first principles, the First Congress's decision in 1789, *Myers*, and *Free Enterprise Fund* all establish that the President's removal power is the rule, not the exception.")(citing *Free Enter. Fund*, 561 U.S. 477, and *Myers v. United States*, 272 U.S. 52 (1926)). The High Court explained why unfettered removal authority must be vested in the President and rejected any exception to the President's removal authority, reaffirming its prior decision in *Free Enterprise Fund*:

> Today, as then, Congress's "plenary control over the salary, duties, and even existence of executive offices" makes "Presidential oversight" more critical—not less—as the "[o]nly" tool to "counter [Congress's] influence." *Id.*, at 500 (opinion of the Court). Today, as then, the various "bureaucratic minutiae" a President might use to corral agency personnel is no substitute for at will removal. *Ibid.*

*Seila Law*, 140 S.Ct. at 2207. *Seila Law* further supports Arch Coal's argument that the removal protections enjoyed by DOL ALJs violate the Appointments Clause and separation of powers principles. *See also Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1338-40 (Fed. Cir. 2019) (partially invalidating statutory removal protections afforded to the Patent Trial and Appeal Board's administrative patent judges as "unconstitutional"), *reh'g denied*, 953 F.3d 760 (Fed. Cir. 2020), *petition for cert. granted sub nom.*, *United States v. Arthrex, Inc.*, No. 19-1434 Vide 19-1452, 19-1458, 19-1459 (Oct. 13, 2020). The Director's effort to distinguish DOL's structure from the CFPB's, *see* Resp. at 12 n.6, does not diminish the impact of the

decision. And the Director's tired argument that *Free Enterprise Fund* "d[id] not address" ALJs, *see id.*, has an obvious response: at the time of that decision, the status of ALJs remained in dispute. *Lucia*, of course, resolved that uncertainty, holding that ALJs are, indeed, inferior officers whose tenure must comport with the Appointments Clause. The Director cannot dispute that the appointment—and removal—of principal no less than inferior officers must comply with the Appointments Clause and separation of powers doctrine.

On remand, the case should be assigned to an ALJ whose appointment is constitutionally-secure for re-adjudication from start to finish.

## II.  DOL Did Not Follow Its Regulations, Requiring Arch Coal's Dismissal

On appeal, Arch Coal challenged its designation as a self-insurer for Apogee's liability because the district director did not provide proper notice to Arch Coal and did not prove that Arch Coal's self-insurance program included Apogee's liability. Arch also argued that the ALJ erroneously deprived Arch Coal of discovery on its challenge to the bulletin. In response, the Director insists that the proposed decision and order, which identified Patriot as the responsible self-insurer, was not defective but, rather reflected a mere "typographical error."

The argument suffers two fundamental infirmities. First, it demands that the Board read into the regulations a "typo exception" that is nowhere in their plain text. *See* Resp. at 14-15. The Board may not do that. *See, e.g., Switzer v. Carroll*, 358 F.2d 424, 429 (6th Cir. 1966) ("the Court will not read into the statute language which is not there") (internal quotation and citation omitted). In addition, the Director's response itself proves that this was no "typo." The Director concedes that "Patriot's self-insurance authorization made it retroactively liable for the claims of miners who worked for Apogee." Resp. at 2. If DOL failed to require sufficient

security from Patriot to cover its liability, responsibility for that mistake falls to the Trust Fund, not to Arch Coal.

Second, the Director invites the Board to go beyond the record, as the ALJ did. If the agency wanted to prove the "scrivener's error" it now alleges, it had ample opportunity to present an affidavit from the claim's examiner proving as much. It never did. Characterizing this as an inconsequential mistake years later does not relieve the agency of fulfilling the due process-related obligations guaranteed to parties by both the APA and the Courts of Appeals. *See Tazco Inc. v. Director, OWCP*, 895 F.2d 949, 950 (4th Cir. 1990) (failure to give notice to an interested party "violates the most rudimentary demands of due process of law."); *id*. at 951 (notice provided to an operator may not be "imputed" to the carrier). *Warner Coal Co. v. Director, OWCP*, 804 F.2d 346, 347 (6th Cir. 1986)(same). Given the Director's rigid stance on the evidentiary limitations described below (misguided though it may be), the Director's request that the Board search beyond this record and regulations to rationalize and excuse the agency's defective notice is hypocritical. That position should be rejected.

## III. Arch Coal's Responsibility Has Not Been Established

The Director's argument that Arch is responsible for Howard's benefits presents three related points: (1) the regulations somehow provide that self-insurers are perpetually liable for claims brought against a one-time subsidiary like Apogee no matter when the claims accrue; (2) business transactions approved by the agency may never transfer this liability; and (3) Patriot's self-insurance was "non-exclusive." *See* Resp. at 16-17, 21. Each presumes a scheme found nowhere in the Act, regulations, or historical practice. Rather, that scheme appears, the first time, in BLBA Bulletin 16-01.

*First*, the Director argues that "[t]he ALJ properly found Employer liable because the miner's last coal mine employment was with Apogee while it was self-insured by Arch Coal." Resp. at 13. But treating self-insurance as though it were commercial insurance finds no support in the regulations.

The regulations set forth two distinct regulatory systems with distinct triggers for coverage. *Compare* Part 726, Subpart B (Authorization of Self-Insurers, 726.101-726.115) *with* Subpart C (Insurance Contracts, 726.201-726.213). Commercial insurers cover liability for claims arising during a contractually-agreed-to period of time. *See Vesta Ins. Co. v. Amoco Prod. Co.*, 986 F.2d 981, 985-86 (5th Cir. 1993)(insurance is a "contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils" for a specified period of time). Liability is triggered for a commercial insurer if it provided insurance coverage on the date of the miner's last day of employment in the mines. *See* 20 C.F.R. § 726.203(a)(the federal endorsement that is a part of all workers' compensation commercial insurance policies covering the federal black lung risk provides that "a commercial carrier is responsible for benefits only if the insurance agreement was in effect on the date of last exposure.").

Self-insurance is different. *See Home Indem. Co. v. Bethlehem Steel Corp.*, No. 91-G-0922-S (N.D. Ala. Nov. 24, 1993). The authorization to self-insure must be initially approved by DOL, and subsequently DOL must reauthorize that approval. An approved self-insurer must sign and "Agreement and Undertaking" form (OMB No. 1240-0039) agreeing to deposit whatever security DOL requires of it either initially or in subsequent authorizations, to comply with DOL's regulations for self-insurers, and, if required, to obtain and maintain excess or catastrophic insurance. In its application and in subsequent authorization, the entity providing the self-insurance must identify which companies are covered by its program and

DOL must approve the self-insurance plan. Unlike commercial insurance, the trigger date for identifying coverage under a self-insurance agreement is the date the application is filed. *See* Government Accountability Office, Black Lung Benefits Program: Improved Oversight of Coal Mine Operator Insurance Is Needed (GAO-2021, Feb. 2020) at 9 ("A self-insured coal mine operator assumes the financial responsibility for providing black lung benefits to its eligible employees by paying claims as they are incurred.").

Nowhere is an obligation of perpetual liability imposed on a prior owner. Where, as here, DOL approves a self-insurance program with inadequate security, the responsibility for any unfunded claim falls on the Trust Fund. *See id.* at 14 (faulting the Department of Labor for setting Patriot's self-insurance amount too low, which "did not account for future claims and the effect of those claims on the Trust Fund."). Thus, unlike an insurance contract or policy that must include a provision that insolvency or bankruptcy of an operator does not release the insurer from its obligation to pay benefits, when a self-insurer files for bankruptcy, unless its benefits liabilities are assumed by a reorganized company or by a purchaser, liability transfers to the Trust Fund. *Id.* at 12-14 ("Three self-insured coal mine operator bankruptcies affected the Trust Fund, specifically the bankruptcies of Alpha Natural Resources (Alpha), James river Coal (James River), and Patriot Coal (Patriot)…Three other self-insured coal mine operators we identified did not affect the Trust Fund, specifically Arch Coal…but DOL officials said that their federal black lung benefits liabilities were assumed by a reorganized company or by a purchaser").

The agency cannot treat self-insurance as commercial insurance any more than it can ignore the insurance obligations memorialized in a self-insurance agreement that it approved in accordance with Part 726, Subpart B. Apogee fulfilled

its obligation to insure and keep insured its potential liability. When its assets and liabilities were sold to Magnum in 2005, Magnum purchased insurance to cover Apogee's liabilities, past, present and future. And, when Magnum sold Apogee's assets to Patriot, DOL ultimately authorized Patriot to self-insure Apogee's liabilities, past, present and future. The Director concedes as much. Resp. at 2. Thus, Arch Coal's self-insurance obligation ended on December 31, 2005, and with it Arch Coal's responsibility to cover this claim ended. *See* Ex. 17 (Briscoe Tr.) at 56-57; *id*. at 50 (DOL never applied principles of successor liability to hold past self-insurers liable for entities sold to others); *id*. at 62; *see also Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606 (7th Cir. 1993)("ordinarily, when a contract expires, it expires. It is at an end. The parties have no more rights or duties under it.").

*Next*, the agency mischaracterizes Arch's 2005 sale to Magnum as a toothless "private contract," which does "not release the operator from liability imposed on the BLBA." *See* Resp. at 16-17. But the Department of Labor approved that sale and, with it, Magnum was required to insure or self-insure any liability for Apogee. DOL was required to approve any adjustments to Arch Coal's self-insurance to reflect the exchange of liabilities. 20 C.F.R. § 726.105 ("[t]he amount of security which shall be required [to self-insure liabilities] may be increased or decreased when experience or changed conditions so warrant"); *id*. at § 726.109 (the agency must increase or reduce the amount of self-insurance when the "facts warrant a reduction"); *id*. at § 726.303 (DOL must notify operators whose self-insurance is inadequate). In sum, the regulations' insurance requirements contemplate and endorse the sale of assets and liabilities.

As such, the authority cited by the Director, Resp. at 16-17, is inapposite. In *Triplett*, the Supreme Court addressed the constitutionality of an agreement between a claimant for benefits under the BLBA and an attorney he hired to represent him.

*U.S. Dep't of Labor v. Triplett*, 494 U.S. 715 (1990). The BLBA authorizes fee-shifting when claimants prevail, but prohibits an attorney from receiving a fee—whether from the employer, insurer, Trust Fund, or claimant—unless approved by the appropriate agency or court. DOL's regulations invalidate all contractual agreements for fees. *See* 20 C.F.R. §§ 725.365, 802.203(f) (1989). Mr. Triplett, however, entered into such a contractual arrangement. The West Virginia Supreme Court refused to enforce a sanctions order against Triplett and the Supreme Court reversed. The parties are left to guess how that case supports the Director's argument concerning the 2005 Arch-Magnum purchase agreement here, especially where that agreement fully complied with the BLBA's insurance requirements.

Similarly, in *Connolly*, the Supreme Court held that the retroactive application of withdrawal of liability provisions of the Multiemployer Pension Plan Amendments Act of 1980 did not constitute an unlawful taking under the Fifth Amendment. *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211 (1986). It rejected a party's effort to contract out of its statutory obligations. Here too, the case is inapposite because Apogee's sale fully complied with the obligations imposed by the BLBA.

Under the BLBA, a company is responsible for insuring and keeping insured its black lung liability. 30 U.S.C. § 933(a). As noted, Apogee did just that, both when its assets and liabilities were sold to Magnum and again, when Magnum sold its assets and liabilities to Patriot.

*Finally*, the Director argues that "Patriot's self-insurance authorization did not make Patriot exclusively liable for Apogee's claims." *See* Resp. at 17. DOL's regulations provide that when DOL has not requested adequate security under an approved self-insurance program like Patriot's, it cannot look to a prior employer for benefits. Nor can it look to a prior insurer. *See* 20 C.F.R. § 725.495(a)(4); 65

Fed. Reg. 79920, 80008 (Dec. 20, 2000). DOL did not require Arch Coal to guarantee Apogee's liabilities—let alone Patriot's—when it authorized Arch Coal to self-insure its own liabilities long after Arch Coal sold Apogee to others, or when Arch Coal's self-insurance authorization covering its own employees—not Apogee's—was re-authorized in 2012. Neither did DOL inform the Patriot Bankruptcy Court or Arch Coal of its intention to hold Arch Coal as a "insurance carrier" or even a self-insurer for Apogee, thus depriving both the bankruptcy court and Arch Coal of the need to address the matter in Patriot's bankruptcy proceedings. Finally, if the Director is right, and the regulations allow for prior owners to be held responsible but do not distinguish commercial insurers from self-insurers, the agency's failure to seek payment from Brickstreet, which commercially insured Magnum's liabilities from 2006-2008, is unexplained. *But see Trosper v. Roncat Mining*, 2011 BLA-05053, Order (July 27, 2015) at 7 n.5 (Director's decision to exclude a potential responsible party requires a valid factual basis); *see also England v. Island Creek Coal Co*. 17 BLR 1-141 (1993).

### IV. The Bulletin's Changed Policy Is Evident from The Record; Arch Coal Was Entitled to Challenge it Through Discovery

The Director also argues that "the Bulletin does not mark a departure from the regulations or a change in policy." Resp. at 19. That is not accurate. Prior to Patriot's bankruptcy, DOL would name Patriot, not Arch Coal, as the self-insurer for claims filed by claimants who last worked for Apogee. It did so here. *Compare* Dx. 23 *and* Dx. 26 (naming Patriot, which agreed it was a proper party) *with* Dx. 22 (naming Arch Coal after Patriot's bankruptcy). The law did not change; only DOL's policy did. And it did so retroactively and impermissibly. The ALJ's decision that Arch is responsible as Apogee's self-insurer was thus error. *See Trosper v. Roncat Mining*, 2011 BLA-05053, Order (July 27, 2015) at 7 n.5

(Director's decision to exclude a potential responsible party requires a valid factual basis); *see also England v. Island Creek Coal Co.* 17 BLR 1-141 (1993).

Contrary to the directive in the Bulletin, DOL's regulations suggest that when DOL has approved a self-insurance program that is inadequate to cover its liabilities, it may not name a prior entity. Rather, the Trust Fund must be held responsible. *See* 20 C.F.R. § 725.495(a)(4); 65 Fed. Reg. 79920, 80008 (Dec. 20, 2000). Here, to avoid the consequences of its own rule, DOL has thrown the APA and corporate law (which prohibits veil-piercing except upon an evidentiary showing) out the window. It made up a new rule of perpetual parental liability that it could not have adopted in the traditional rulemaking required by the APA and BLBA and that is not remotely authorized by the BLBA or LHWCA. Even if DOL can change its interpretation, it cannot make the change applicable retroactively. *See Perez v. Mortgage Bankers' Ass'n*, 575 U.S. 92 (2015); *National Mining Ass'n v. Dep't of Labor*, 292 F.3d 849 (D.C. Cir. 2002). The Bulletin's policy is impermissibly retroactive because it effectively reopens closed financial transactions that were legal and binding on DOL as well as the parties to the transactions to reassign a portion of Patriot's black lung liabilities to other companies, including Arch Coal. That conduct defines impermissible, retroactive action. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994) (agency action is impermissibly retroactive if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed"); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998) ("retroactivity is not favored in the law"); *Klinger v. Missouri*, 80 U.S. 257, 261 (1871)(*ex post facto* laws are "repugnant in the law"); *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d at 859-60 ("an agency may not promulgate retroactive rules").

Nor does the Department write on a clean slate. The D.C. Circuit already guaranteed Arch Coal the right to develop evidence proving that the Bulletin is retroactive, was developed for the improper purpose of exonerating the agency for its failure to monitor Patriot's assets, engendered serious reliance interests triggering heightened scrutiny, and is arbitrary and capricious in its rejection of self-insurance principles. *Arch Coal v. Acosta*, 888 F.3d 493, 501 (D.C. Cir. 2018). It observed these "challenges to the Bulletin are the exact sort of claims" to be considered by the agency, and guaranteed Arch Coal the right to "raise its objections to the Bulletin and any enforcement actions taken against it during the course of the administrative process." *Id.* When the government agreed that fulsome discovery would be available to assist with that challenge, it never suggested it would contort a narrowly-defined regulation concerning an operator's ability to pay claims to estop that effort. *Compare* Letter Brief of Jan. 16, 2018 ("There are no statutes or regulations that generally prohibit Arch from receiving discovery or specifically prohibit Arch from receiving discovery on particular arguments that it may raise. If a district director wrongfully denies Arch discovery, an administrative law judge (ALJ) can order that such discovery be provided, and the ALJ's decision can be reviewed by the Benefits Review Board and by the court of appeals.") *with* Resp. at 19-21 (arguing the discovery was denied properly as untimely). Though establishing the Bulletin's retroactivity and arbitrary and capricious nature would invalidate the Bulletin and would have the collateral consequence of proving that "Arch Coal has been wrongly held liable and should be dismissed,"[1] Resp. at 20 n.18, these issues are plainly outside section 725.408's five discrete "liability-related" inquiries. *See* 20 C.F.R.

---

[1] *See Landgraf*, 511 U.S. at 280 (agency action is impermissibly retroactive if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed").

725.408 (soliciting evidence to be presented to the district director concerning an operator's status after June 30, 1973, the miner's last date of employment and dust exposure, and the operator's financial status, only). *But see* Resp. at 19-20 (citing 20 C.F.R. §§ 725.414 and 725.456, which concern "liability" evidence).[2] The agency's argument to the contrary, *see* Resp. at 19-20, ignores the regulation's plain text and common sense.

## V.     The Act Is Not Indifferent to Pre-Existing, Non-Respiratory Disabilities

Finally, the Director responds to one argument on the merits of the Howard's claim—the impact of Howard's pre-existing and totally disabling back injury. Like Dr. Rosenberg and Howard, himself, the Director acknowledges that Howard's back problems were disabling before any respiratory complaints began. *See* Resp. at 24. He nonetheless cites the regulations to argue that "Mr. Howard's disabling back injury does not preclude his entitlement to benefits." *Id*. But that construction cannot be reconciled with the statute, itself.

The "starting point in every case involving construction of a statute is the language itself." *Watt v. Alaska*, 451 U.S. 259, 265 (1981). The Supreme Court explained more recently:

> This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment. After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add

---

[2] The agency's view that any argument having the collateral consequence of dismissal is "liability-related" stretches that concept beyond its regulatory meaning. Named parties can seek their dismissal for a slew of reasons, many of them unrelated to "liability." Taken to its conclusion, the agency's position is that dismissal due to a lost file's prejudice, *see Island Creek Coal v. Holdman*, 202 F.3d 873 (6th Cir. 2000) a lack of timely notification, *Sterling Smokeless v. Akers*, 131 F.3d 438 (4th Cir. 1997), or a compromised defense on the merits, *see Brickstreet Mut. Ins. Co. v. Dir. OWCP*, 767 Fed. App'x. 491 (4th Cir. Apr. 24, 219), are all "liability-related" arguments. They are not. Neither is one based upon a policy's retroactive effect or arbitrary and capricious nature.

to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives.

*Bostock v. Clayton County*, 590 U.S. ___, 140 S.Ct. 1731, 1738 (2020).

According to the Director, the BLBA is indifferent to unrelated disabilities like Howard's. Resp. at 24-25. Neither the BLBA nor Congress said any such thing in any of its expressions of intent. The BLBA imposes liability on a mine operator where the claimant's employment with the operator causes pneumoconiosis, which in turn prevents continued work:

(f)(1)The term "total disability" has the meaning given it by regulations of the Secretary of Health and Human Services, which were in effect on November 2, 2002, for claims under part B of this subchapter, and by regulations of the Secretary of Labor for claims under part C of this subchapter, subject to the relevant provisions of subsections (b) and (d) of section 923 of this title, except that—

(A) in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis *prevents him or her from engaging in gainful employment* requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time;

30 U.S.C. § 902(f)(1)(A) (emphasis added).

In this case, pneumoconiosis did not prevent Howard from working; Howard was "prevented" from doing his job because of documented back problems; he admitted as much and an expert agreed. "[I]t is linguistically impossible to say that such a person is totally disabled by pneumoconiosis." *See Freeman United Coal Mining Co v. Foster*, 30 F.3d 834, 838-39 (7th Cir. 1994). Whatever pneumoconiosis he had, whether contracted before, during or after, had no apparent relevance to whether Howard was working or able to work. The Director's response, that a non-pulmonary disability does not preclude entitlement, cannot rewrite the statute that fails to support it. *See Dearth v. Lynch*, 791 F.3d 32 (D.C. Cir. 2015)

("regulations cannot trump statutes"); *cf. Wolter Const. Co. v. C.I.R.*, 634 F.2d 1029, 1035 (6th Cir. 1980) (regulations that are plainly inconsistent with statutes cannot stand); 30 U.S.C. § 902(f)(1)(A). If Congress intended the BLBA to insure miners or former miners generally, it would have said so. Because it did not, the Director's arguments should be rejected. *See Foster*, 30 F.3d at 838 (the BLBA exists "to identify and compensate 'total disability due to pneumoconiosis' while remitting to other statutes…disability attributable to other causes."); *Shelton v. Dir., OWCP*, 899 F.2d 690, 693 (7th Cir. 1990) (awarding black lung benefits to a miner disabled by "some other activity or condition" would "confer a pure windfall"); *Robinson v. Pickands*, 914 F.2d 35, 38 (4th Cir. 1990) (coal mining must be a necessary condition of a miner's disability). Even DOL's regulations make it clear that pneumoconiosis must be a material factor in the claimant's inability to work. *See* 20 C.F.R. § 718.204(c). This is especially so where, as here, the miner's pneumoconiosis was neither necessary nor sufficient to his disability. That is, he does not suffer from the condition but suffers a totally-disabling non-respiratory and non-pulmonary condition. *Cf. Midland Coal Co. v. Dir., OWCP* [*Shores*], 358 F.3d 486, 495-96 (7 Cir. 2004).

## VI.    The ALJ's Erroneous Medical Conclusions Cannot Stand

Finally, Howard's disabling back problem does not estop his pursuit of benefits, additional, unanswered infirmities in the ALJ's remaining medical conclusions compel remand or dismissal.

Even the Director does not dispute Arch's position that the ALJ erred in finding that rebuttal was not established. Nor could he. Instead, it is plain that the ALJ erred by:

- Misconstruing the preamble and using it to supply proof missing from the record to preclude any possibility of a viable defense, (Petition at 37-39);

- Discrediting Dr. McSharry through the use of an imagined prohibition against the use of radiographic evidence in analyzing legal pneumoconiosis, (*id*. at 39-40);

- Discrediting Dr. Rosenberg for his "internally inconsistent and not credible" opinion where, in reality, the "inconsistency" the ALJ perceived was an opinion that evolved and became better-informed as additional evidence was developed, (*id*. at 40-41); and

- Applying a "no part" standard of rebuttal inconsistent with the statute.

Without these errors, rebuttal was established and benefits should have been denied. *See* Petition for Review at 37-44.

## CONCLUSION

For the foregoing reasons, the ALJ's decision should be vacated, the matter should be returned to a constitutionally-proper adjudicator and Arch Coal should be dismissed as a responsible operator. At a minimum, the administrative record must be reopened for a fulsome consideration of evidence supporting Arch Coal's challenge to BLBA 16-01.

Respectfully Submitted,

s/Michael A. Pusateri
Michael A. Pusateri
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 533-2354/(202) 261-0106
pusaterim@gtlaw.com
klausl@gtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, the undersigned served the foregoing

Petition for Review and Brief in Support on the following parties by electronic mail:

Jeffrey S. Goldberg, Esq.
Office of the Solicitor
U.S. Department of Labor
BRB-BLLLS@dol.gov; Goldberg.jeffrey@dol.gov

Ms. Robin Napier
Lay Representative
Stone Mountain Health Services
Rnapier@stonemtn.org

Michael A. Pusateri



BRB No. 20-0229 BLA

| | |
|---|---|
| DAVID M. HOWARD | ) |
| | ) |
| Claimant-Respondent | ) |
| | ) |
| v. | ) |
| | ) |
| APOGEE COAL COMPANY | ) |
| | ) **PUBLISHED** |
| and | ) |
| | ) |
| ARCH COAL, INCORPORATED | ) |
| | ) DATE ISSUED: 10/18/2022 |
| Employer/Carrier-Petitioners | ) |
| | ) |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR | ) |
| | ) |
| Party-in-Interest | ) DECISION and ORDER |

Appeal of the Decision and Order Awarding Benefits of Lauren C. Boucher, Administrative Law Judge, United States Department of Labor.

Laura Metcoff Klaus and Michael A. Pusateri (Greenberg Traurig, LLP), Washington, D.C., for Employer and its Carrier.

Jeffrey S. Goldberg (Seema Nanda, Solicitor of Labor; Barry H. Joyner, Associate Solicitor), Washington, D.C., for the Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: BOGGS, Chief Administrative Appeals Judge, GRESH and JONES, Administrative Appeals Judges.

PER CURIAM:

Employer and its Carrier (Employer) appeal Administrative Law Judge (ALJ) Lauren C. Boucher's Decision and Order Awarding Benefits (2017-BLA-05163) rendered on a claim filed on November 19, 2014, pursuant to the Black Lung Benefits Act, as amended, 30 U.S.C. §§901-944 (2018) (Act).

The ALJ found Apogee Coal Company (Apogee) is the responsible operator and Arch Coal, Inc. (Arch) is the responsible carrier because it self-insured Apogee on the last day of Claimant's coal mine employment with Apogee. She determined Claimant established at least fifteen years of underground coal mine employment and a totally disabling respiratory or pulmonary impairment. 20 C.F.R. §718.204(b)(2). Thus, she concluded Claimant invoked the presumption of total disability due to pneumoconiosis at Section 411(c)(4) of the Act, 30 U.S.C. §921(c)(4) (2018).[1] Further, she found Employer did not rebut the presumption and awarded benefits.

On appeal, Employer argues the ALJ lacked the authority to hear and decide the case because the removal provisions applicable to ALJs violate the Appointments Clause of the Constitution, Art. II § 2, cl. 2.[2] It also argues the ALJ erred in finding Arch is the liable insurance carrier. On the merits, it contends she erred in finding Claimant established total disability and thus invoked the Section 411(c)(4) presumption. Finally, it

---

[1] Section 411(c)(4) of the Act provides a rebuttable presumption that a miner is totally disabled due to pneumoconiosis if he establishes at least fifteen years of underground or substantially similar surface coal mine employment and a totally disabling respiratory or pulmonary impairment. 30 U.S.C. §921(c)(4) (2018); *see* 20 C.F.R. §718.305.

[2] Article II, Section 2, Clause 2, sets forth the appointing powers:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

J.A. 236

argues she erred in determining it did not rebut the presumption.[3]  Claimant has not filed a response brief.

The Director, Office of Workers' Compensation Programs (the Director), has filed a response, urging the Benefits Review Board to reject Employer's constitutional challenge.  Further, the Director urges the Board to affirm the ALJ's determination that Apogee is the responsible operator and Arch is liable for the payment of benefits.  Finally, the Director contends Employer's argument on the merits with respect to the issue of total disability is not persuasive.  Employer has filed a reply brief reiterating its arguments.

The Board's scope of review is defined by statute.  We must affirm the ALJ's Decision and Order if it is rational, supported by substantial evidence, and in accordance with applicable law.[4]  33 U.S.C. §921(b)(3), as incorporated by 30 U.S.C. §932(a); *O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. 359 (1965).

## Removal Provisions

Employer challenges the constitutionality of the removal protections afforded ALJs. Employer's Brief at 16-19.  It generally argues the removal provisions for ALJs contained in the Administrative Procedure Act (APA), 5 U.S.C. §7521, are unconstitutional, citing Justice Breyer's separate opinion and the Solicitor General's argument in *Lucia v. SEC*, 585 U.S.    , 138 S. Ct. 2044 (2018).[5]  Employer's Brief at 16-19.  In addition, it relies on the United States Supreme Court's holdings in *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), and *Seila Law v. CFPB*, 591 U.S.    , 140 S. Ct. 2183 (2020), and the opinion of the United States Court of Appeals for the Federal Circuit in

---

[3] We affirm, as unchallenged on appeal, the ALJ's finding that Claimant established at least fifteen years of underground coal mine employment.  *See Skrack v. Island Creek Coal Co.*, 6 BLR 1-710, 1-711 (1983); Decision and Order at 4.

[4] This case arises within the jurisdiction of the United States Court of Appeals for the Sixth Circuit because Claimant performed his coal mine employment in Kentucky.  *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989) (en banc); Director's Exhibit 3; Hearing Transcript at 21, 42.

[5] *Lucia* involved an Appointments Clause challenge to the appointment of an ALJ at the Securities and Exchange Commission (SEC).  The United States Supreme Court held, similar to Special Trial Judges at the United States Tax Court, SEC ALJs are "inferior officers" subject to the Appointments Clause.  *Lucia v. SEC*, 585 U.S.    , 138 S. Ct. 2044, 2055 (2018) (citing *Freytag v. Comm'r*, 501 U.S. 868 (1991)).

J.A. 237

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), *vacated*, 594 U.S.    , 141 S. Ct. 1970 (2021).  Employer's Brief at 16-19.

Employer's arguments are not persuasive, as the only circuit court to squarely address this precise issue with regard to Department of Labor (DOL) ALJs has upheld the statute's constitutionality.  *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137-38 (9th Cir. 2021) (5 U.S.C. §7521 is constitutional as applied to DOL ALJs).

Further, in rejecting a similar argument raised regarding the removal provisions applicable to Federal Deposit Insurance Corporation (FDIC) ALJs, the United States Court of Appeals for the Sixth Circuit noted that in *Free Enterprise Fund*[6] the Supreme Court "took care to omit ALJs from the scope of its holding."  *Calcutt v. FDIC*, 37 F.4th 293, 319 (6th Cir. 2022) (citing *Free Enter. Fund*, 561 U.S. at 507 n.10).  The Sixth Circuit further explained that a party challenging the constitutionality of removal provisions must set forth how the protections in question "specifically caused an agency action in order to be entitled to judicial invalidation of that action."  *Id.* (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021)).  Vague, generalized allegations of harm, including the "possibility" that the agency "would have taken different actions" had the ALJ not been "unconstitutionally shielded from removal," are insufficient to establish necessary harm.  *Id*. at 315-16.  Employer in this case has not alleged it suffered any harm due to the ALJ's removal protections.

Nor do *Seila Law* or *Arthrex* support Employer's argument.  In *Seila Law*, the Supreme Court held that limitations on removal of the Director of the Consumer Financial Protection Bureau (CFPB) infringed upon the President's authority to oversee the Executive Branch because the CFPB was an "independent agency led by a single Director and vested with significant executive power."[7]  140 S. Ct. at 2201.  It did not address ALJs.

_____

[6] In *Free Enterprise Fund*, the Supreme Court held dual for-cause limitations on removal of members of the Public Company Accounting Oversight Board (PCAOB) are "contrary to Article II's vesting of the executive power in the President[,]" thus infringing upon his duty to "ensure that the laws are faithfully executed, [and to] be held responsible for a Board member's breach of faith."  561 U.S. 477, 496 (2010).  The Court specifically noted, however, its holding "does not address that subset of independent agency employees who serve as [ALJs]" who, "unlike members of the [PCAOB], . . . perform adjudicative rather than enforcement or policymaking functions."  *Id*. at 507 n.10.  Further, the majority in *Lucia* declined to address the removal provisions for ALJs.  *Lucia*, 138 S. Ct. at 2050 n.1.

[7] In addition to his "vast rulemaking [and] enforcement" authorities, the Director of the Consumer Financial Protection Bureau is empowered to "unilaterally issue final

4

Finally, in *Arthrex*, the Supreme Court vacated the Federal Circuit's judgment. 141 S. Ct. at 1970. The Court explained "the *unreviewable authority* wielded by [Administrative Patent Judges] during inter partes review is incompatible with their appointment by the Secretary to *an inferior office*." *Id.* (emphasis added). In contrast, DOL ALJs' decisions are subject to further executive agency review by this Board.

Employer has not explained how or why these legal authorities should apply to DOL ALJs or otherwise undermine the ALJ's ability to hear and decide this case. Congressional enactments are presumed to be constitutional and will not be lightly overturned. *United States v. Morrison*, 529 U.S. 598, 607 (2000) ("Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds."). The Supreme Court has long recognized "[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). Here, Employer does not even attempt to show 5 U.S.C. §7521 cannot be reasonably construed in a constitutionally sound manner. *Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1392 (7th Cir. 1986) (reviewing court should not "consider far-reaching constitutional contentions presented in [an off-hand] manner"). Thus Employer has not established the removal provisions at 5 U.S.C. §7521 are unconstitutional. *Pehringer*, 8 F.4th at 1137-38.

### Responsible Insurance Carrier

Claimant last worked in coal mine employment for Apogee from 1993 to 1997.[8] Director's Exhibit 6. Apogee was self-insured through Arch when Claimant last worked for Apogee. Employer's Brief at 34; Director's Response at 2. In 2005, Arch sold Apogee to Magnum Coal (Magnum), and in 2008 Magnum was sold to Patriot Coal Corporation (Patriot). Employer's Brief at 2-3; Director's Response at 2; Director's Exhibit 49 at 31, 34. In 2015, Patriot went bankrupt. Director's Exhibit 32.

Employer does not directly challenge Apogee's designation as the responsible operator. Rather, it argues DOL violated its due process rights by failing to designate Arch as a responsible carrier in the district director's Proposed Decision and Order (PDO) and

---

decisions awarding legal and equitable relief in administrative adjudications." *Seila Law v. CFPB*, 591 U.S.    , 140 S. Ct. 2183, 2191, 2200 (2020).

[8] Claimant's Social Security Administration earnings record shows income from Apogee c/o Arch from 1993 to 1997. Director's Exhibit 7. Employer concedes Arch self-insured Apogee until December 31, 2005. Employer's Brief at 34.

then seeking to impose liability on Arch at a later time. Employer's Brief at 19-21. In addition, Employer contends DOL did not serve the PDO on Arch. *Id.*

Next, Employer argues the ALJ erred in finding Arch is the responsible carrier liable for this claim. Employer's Brief at 2-3, 22-25, 32-35. It maintains that when Arch sold Apogee in 2005 and then renewed its self-insurance authorization with DOL in 2006, it excluded Apogee as a covered entity. *Id.* at 2-3. Therefore Employer contends Arch no longer provided insurance coverage "for any employee of Apogee no matter when they worked." *Id.* at 2-3. Employer asserts the sale of Apogee to Magnum on December 31, 2005, released Arch from liability for the claims of miners who worked for Apogee, and that DOL endorsed this shift of liability. *Id.*

In addition, Employer argues DOL's issuance of the Black Lung Benefits Act (BLBA) Bulletin No. 16-01[9] reflects a change in policy wherein DOL began to retroactively impose new liability on self-insured mine operators and bypass traditional rulemaking. Employer's Brief at 32-35. Finally, Employer contends the ALJ abused her discretion in denying its request for discovery regarding BLBA Bulletin No. 16-01. *Id.* at 26-32.

The Director responds, noting the PDO lists Arch as the responsible carrier and the district director served the PDO on Arch. Director's Response at 13-15. The Director argues the ALJ did not err in finding Apogee is the responsible operator and Arch is the self-insurer for this claim. *Id.* at 15-18. Moreover, he asserts the ALJ did not abuse her discretion in denying Employer's untimely request for discovery relating to its liability. *Id.* at 19-21. Finally, the Director argues the Board should reject Employer's challenges to the BLBA Bulletin No. 16-01. *Id.* at 21-24.

**Relevant Procedural History**

Although the district director initially issued a Notice of Claim on December 9, 2014, to Apogee, self-insured through Patriot, she subsequently issued a second Notice of Claim on December 8, 2015, to Apogee, self-insured through Arch. Director's Exhibits 21, 22. The Notice gave Employer thirty days to respond and ninety days to submit liability evidence. Director's Exhibit 22. Employer timely responded through its third-party administrator, Underwriters Safety & Claims, and denied liability. Director's Exhibit 24. It asserted, in part, that Apogee had become a subsidiary of Patriot and thus Patriot was the

---

[9] The Black Lung Benefits Act (BLBA) Bulletin No. 16-01 is a memorandum the Director of the Division of Coal Mine Workers' Compensation issued on November 12, 2015 to "provide guidance for district office staff in adjudicating claims" affected by Patriot's bankruptcy.

J.A. 240

proper self-insurer, but it did not submit any evidence to the district director nor any discovery requests on the Director at that time. *Id.*

On March 17, 2016, the district director issued a Schedule for the Submission of Additional Evidence (SSAE) designating Apogee, self-insured through Arch, as the responsible operator and carrier. Director's Exhibit 27. The SSAE gave "any party that wishes to submit liability evidence or identify liability witnesses" until May 16, 2016, to do so. *Id.* Moreover, the district director advised that "[a]bsent a showing of extraordinary circumstances, no documentary evidence relevant to liability . . . may be admitted into the record once a case is referred to the Office of Administrative Law Judges [(OALJ)]." *Id.* at 2-3 (citing 20 C.F.R. §725.456(b)(1)). On April 11, 2016, Arch responded, arguing the district director had improperly named Apogee and Arch as parties to the claim. Director's Exhibit 29. It also designated Claimant as a potential hearing witness pertaining to its liability. *Id.* But again, it submitted no documentary evidence to the district director, nor any discovery requests on the Director.

The district director issued a PDO awarding benefits on September 26, 2016, listing Apogee in the caption as the responsible operator. Director's Exhibit 44 at 2. In the summary of the medical and employment evidence section of the PDO, the district director stated Apogee was "self-insured through Arch" and thus Arch is the insurance carrier. *Id.* at 7. In the liability analysis section of the PDO, the district director stated Apogee meets all the criteria of being a potentially liable operator and was the last potentially liable operator that employed Claimant. *Id.* at 11. In addition, the district director stated:

> A Notice of Claim was received by the potentially liable operator/carrier, [s]elf-insured thru Patriot Coal Company, on December 11, 2014, as evidenced by the signed return receipt from the post office. The potentially liable operator/carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence.

*Id.* The district director served the PDO by certified mail on Apogee, Arch, Arch's attorney, and Arch's third-party administrator as evidenced by certified mail numbers and return receipts. *Id.* at 5, 14, 19-23.

Employer objected to the award of benefits and requested a formal hearing before an ALJ. Director's Exhibit 45. Thereafter the case was transferred to the OALJ.[10] Director's Exhibit 47.

---

[10] This case was initially assigned to ALJ Scott R. Morris, but subsequently reassigned to ALJ Boucher.

J.A. 241

The record does not reflect, nor does Employer argue, it submitted any liability evidence to the district director or any liability-related discovery requests on the Director prior to the above-stated deadlines. Nor did it request any extensions of time while the claim was before the district director. Further, Employer did not designate any liability witnesses other than Claimant.

On April 29, 2019, Employer requested – for the first time in this claim – that the ALJ issue subpoenas compelling DOL Office of Workers' Compensation Programs employees Michael Chance and Kim Kasmeier to give deposition testimony related to Arch's liability and provide related documentary evidence. The Director objected.

The ALJ quashed the subpoenas. She first concluded the requested documents were inadmissible because the regulations mandate she exclude liability evidence not first submitted to the district director, unless extraordinary circumstances are established. *See* 20 C.F.R. §§725.414(d), 725.456(b)(1); May 28, 2019 Order Denying Request for Subpoenas (May 28, 2019 Order); June 17, 2019 Order Granting Motion to Reconsider and Denying Request for Subpoenas (June 17, 2019 Order). The ALJ also ruled Employer is precluded from deposing the two DOL employees because the regulations require it to designate liability witnesses while the claim is before the district director, which Employer failed to do with respect to Mr. Chance and Ms. Kasmeier. 20 C.F.R. §725.414(c); May 29, 2019 Order; June 17, 2019 Order. Further, the ALJ found Employer did not establish extraordinary circumstances for failing to submit liability evidence or to designate Mr. Chance and Ms. Kasmeier as liability witnesses before the district director. 20 C.F.R. §§725.414(c), 725.456(b)(1); May 29, 2019 Order; June 17, 2019 Order.

On June 19, 2019, Employer moved to transfer liability to the Black Lung Disability Trust Fund. It argued the district director did not give Arch proper notice of the claim because she designated Patriot as the responsible carrier in the PDO. Thus it argued Arch should not be held liable as a responsible carrier. The ALJ denied the motion, finding no merit in Employer's arguments. July 10, 2019 Order Denying Employer's Motion to Transfer Liability (July 10, 2019 Order) at 3.

Finally, at the hearing for this claim, Employer submitted documentary evidence related to liability, marked Employer's Exhibits 12 through 17 and 21, and deposition testimony obtained in other cases from former Division of Coal Mine Workers' Compensation employees David Benedict and Steven Breeskin, marked Employer's Exhibits 19 and 20. The ALJ excluded the documentary evidence because she found it was not submitted to the district director and Employer did not establish extraordinary circumstances for failing to do so. 20 C.F.R. §725.456(b)(1); Hearing Transcript at 13-16. In addition, the ALJ excluded the depositions of Mr. Benedict and Mr. Breeskin because Employer neither identified them as liability witnesses before the district director nor

8

established extraordinary circumstances for failing to do so. 20 C.F.R. §725.414(c); Hearing Transcript at 13-16.

In her Decision and Order, the ALJ concluded Apogee, self-insured through Arch, is the responsible operator and carrier. Decision and Order at 27-23.

**Due Process Violation**

We first address Employer's due process arguments. Due process requires only that a party be given notice and the opportunity to respond. *See Arch of Ky., Inc. v. Director, OWCP [Hatfield]*, 556 F.3d 472, 478 (6th Cir. 2009); *Island Creek Coal Co. v. Holdman*, 202 F.3d 873, 883-84 (6th Cir. 2000); *Lane Hollow Coal Co. v. Director, OWCP [Lockhart]*, 137 F.3d 799, 807 (4th Cir. 1998). Employer argues the district director failed to properly serve Arch with the PDO and thereby violated its due process rights. Employer's Brief at 19-21. It contends there "is no evidence of how or even whether [Arch] was served with the PDO."[11] *Id.* The record belies this contention.

The ALJ accurately found the PDO's "service sheet and certified mail receipts reflect [it] was served on [both] Apogee and Arch via certified mail."[12] July 10, 2019 Order at 2 (citing Director's Exhibit 44 at 5, 14, 19, 23). Moreover, as Arch timely responded to the PDO and controverted its liability, it actively participated in the claim when it was before the district director. Director's Exhibits 24, 29, 45. Thus we reject Employer's argument that the district director failed to properly serve the PDO on Arch. *Hatfield*, 556 F.3d at 478; *Holdman*, 202 F.3d at 883-84; *Dominion Coal Corp. v. Honaker*, 33 F.3d 401, 404 (4th Cir. 1994) ("When the record establishes actual notice, the purpose of the statutory certified mail requirement has been met."); 20 C.F.R. §§725.360(a)(4), 725.407(b), 725.418(d).

Employer also maintains the district director named Patriot, not Arch, as the responsible carrier in the PDO. Employer's Brief at 19-21. It contends because "Arch was

---

[11] Employer does not dispute the district director served the December 8, 2015 Notice of Claim and the SSAE on Arch, Arch's counsel, and Arch's third-party administrator. *See* Employer's Brief at 22; Director's Exhibits 22, 27.

[12] The district director stated she served Apogee, Arch, Arch's counsel, and Underwriters Safety & Claims by certified mail, and the Proposed Decision and Order (PDO) includes certified mail numbers and receipts for all four recipients. Director's Exhibit 44 at 5, 14, 19-23. The return receipt for Arch indicates the PDO was delivered to it on October 3, 2016. Director's Exhibit 44 at 19.

9

not named as the responsible [carrier] in the PDO," it "cannot be held liable" after this claim was transferred to the OALJ. *Id*. This argument has no merit.

The ALJ acknowledged the PDO references Patriot insofar as the district director stated Employer never responded to the December 9, 2014 Notice of Claim sent to Apogee, self-insured through Patriot. July 10, 2019 Order at 2-3. She correctly found, however, that the "heading of the summary of evidence [section] associated with the PDO lists Apogee as the [responsible] operator and Arch as the insurance carrier." *Id*. at 2 (citing Director's Exhibit 44 at 7). Further, she found "the 'Certificate of First Payment of Benefits' to be filed by the responsible operator or carrier lists Apogee as the operator and Arch as the insurance carrier." *Id*. (quoting Director's Exhibit 44 at 15). She recognized that on "October 5, 2016, Arch (through counsel) responded to the PDO, requested a hearing, and noted that 'DOL incorrectly named it as a party.'" *Id*. (quoting Director's Exhibit 45). The ALJ rationally found "a fair reading of the PDO and associated documents leads to the conclusion that Arch was named as the self-insurer, and the lone reference to Patriot in the analysis section was a typographical error." *See United States v. Hython*, 443 F.3d 480, 488 (6th Cir. 2006) ("failure to amend the affidavit was nothing more than 'a scrivener's error'" and thus of no legal consequence); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 712-14 (6th Cir. 2002). Thus we reject Employer's due process argument as it relates to the PDO.

### Exclusion of Evidence

Employer next contends the ALJ erred in quashing its subpoenas for testimony and documents from Mr. Chance and Ms. Kasmeier and in otherwise excluding evidence relevant to Bulletin No. 16-01. Employer's Brief at 25-32. It asserts the evidence it was seeking to obtain and have admitted into the record does not relate to its liability as an insurance carrier, but instead relates to whether the Director improperly changed DOL's policy through the issuance of Bulletin No. 16-01 and issued a rule in violation of the APA. *Id*. The Director responds the ALJ did not abuse her discretion in determining this constitutes liability evidence and finding Employer did not establish extraordinary circumstances for its failure to designate witnesses and submit documentary evidence while the case was before the district director. Director's Response at 19-21. We agree with the Director's argument.

Because an ALJ exercises broad discretion in resolving procedural and evidentiary matters, *Dempsey v. Sewell Coal Corp.*, 23 BLR 1-47, 1-63 (2004) (en banc), a party seeking to overturn an ALJ's disposition of a procedural or evidentiary issue must establish the ALJ's action represented an "abuse of . . . discretion." *V.B.* [*Blake*] *v. Elm Grove Coal Co.*, 24 BLR 1-109, 1-113 (2009).

10

The ALJ acknowledged Employer's argument that its discovery request did not pertain to the issue of liability, but rather whether DOL violated the notice and comment provisions of the APA when it issued Bulletin No. 16-01. June 17, 2019 Order at 2. Regardless of how Employer characterized its argument, however, the ALJ correctly found its defense only relevant to whether the designated responsible carrier is liable for the payment of benefits. June 17, 2019 Order at 2-6. In *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018), the United States Court of Appeals for the District of Columbia Circuit rejected Arch's argument that its challenge to Bulletin 16-01 is "wholly collateral" to the Act's statutory review scheme. *Acosta*, 888 F.3d at 502. Because Bulletin No. 16-01 is not a substantive rule that had to comply with the notice and comment provisions of the APA, the court concluded Arch's challenge to it is one that Congress intended to be reviewed within the Act's "detailed and comprehensive process for adjudicating black lung benefits claims." *Id*. at 499-505.

Thus Employer had to submit its evidence in compliance with the applicable regulations. Because the district director must identify the responsible operator or carrier before a case is referred to the OALJ, the regulations require that, absent extraordinary circumstances, liability evidence pertaining to the responsible carrier must be timely submitted to the district director; moreover, a party must identify any potential liability witnesses before the district director.[13] 20 C.F.R. §§725.414(c), 725.456(b)(1). The ALJ found "the record does not reflect Employer identified either Mr. Chance or Ms. Kasmeier as a potential witness on the issue of liability at any time while this claim was pending before the district director." June 17, 2019 Order at 4; *see also* Hearing Transcript at 13-16. She also found no indication that while the case was before the district director Employer submitted any evidence "on the issue of liability or propounded any discovery requests on the [DOL] for documents relevant to the issue of liability." *Id*. Employer does not dispute it did not submit any liability evidence or designate any liability witnesses, other than Claimant, while this claim was before the district director.[14] Thus we see no

---

[13] The ALJ correctly rejected Employer's argument that "the regulations governing the admissibility of liability evidence address the liability of an operator, not a carrier." June 17, 2019 Order at 4. A "carrier is required to discharge the statutory and regulatory duties imposed on the employer, thus stepping into its shoes." *Tazco, Inc. v. Director, OWCP [Osborne]*, 895 F.2d 949, 951 (4th Cir. 1990). The regulations therefore specifically include the insurance carrier as a party that must be given adequate notice of the claim and an opportunity to defend on the question of its direct liability to the claimant. 20 C.F.R. §§725.360(a)(4), 725.407(b); *see Osborne*, 895 F.2d at 952.

[14] Employer argues the United States Court of Appeals for the District of Columbia Circuit "guaranteed" Arch the "right to develop evidence" challenging Bulletin No. 16-01 in *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018). Employer's Reply Brief at 11-12 (unpaginated). Contrary to Employer's argument, the court explained "Arch is

11

abuse of discretion in the ALJ's finding that Employer was required to establish extraordinary circumstances to admit this evidence. *Blake*, 24 BLR at 1-113.

The ALJ addressed Employer's assertion that extraordinary circumstances exist because "the Director has not complied with Employer's discovery requests in other cases." June 17, 2019 Order at 5; *see* Employer's Brief at 32 n.9. She rationally rejected this argument because "[t]he Director's actions in separate claims . . . have no bearing on how the regulations apply to the evidence in this claim." June 17, 2019 Order at 6; *see Blake*, 24 BLR at 1-113. As Employer raises no other specific argument, we affirm the ALJ's exclusion of Employer's liability evidence.[15] *Skrack v. Island Creek Coal Co.*, 6 BLR 1-710, 1-711 (1983); June 17, 2019 Order at 4-6. Because Employer had the opportunity to submit discovery requests regarding documentary liability evidence, submit any such documentary evidence it received or possessed, and identify liability witnesses before the district director, and it failed to do so, we reject its due process arguments.[16] *Hatfield*, 556 F.3d at 478; *Holdman*, 202 F.3d at 883-84; Employer's Brief at 25-32.

---

entitled to reasonable discovery before the Department to the full extent allowed by the [Act] and its *implementing regulations*." *Acosta*, 888 F.3d at 502 (emphasis added). Employer's failure to follow the applicable regulations by submitting liability evidence or designating liability witnesses before the district director undermines its argument that its due process rights have been violated. *Arch of Ky., Inc. v. Director, OWCP* [*Hatfield*], 556 F.3d 472, 478 (6th Cir. 2009).

[15] Although the ALJ's June 17, 2019 Order pertained to the subpoenas and documents Employer sought with respect to Mr. Chance and Ms. Kasmeier, the ALJ applied the same rationale for excluding the liability evidence and deposition testimony of Mr. Benedict and Mr. Breeskin that Employer moved to have admitted at the hearing for this claim. Hearing Transcript at 13-16. Thus we affirm the ALJ's exclusion of Employer's Exhibits 12-17, 19-21.

[16] Employer states that subjecting the development of its liability evidence to the regulatory time constraints would render "the district director an inferior officer in violation of *Lucia*." Employer's Brief at 32 n.9. It also argues the regulations "divest the ALJ of her powers, duties, and responsibilities including accepting and overseeing disputes concerning evidence." *Id*. (internal quotations omitted). As Employer has offered no explanation or argument to support these assertions, we decline to address them as inadequately briefed. *See Jones Bros. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018); *Cox v. Benefits Review Bd.*, 791 F.2d 445, 446-47 (6th Cir. 1986); 20 C.F.R. §802.211(b).

12

**Arch's Liability**

Employer argues the ALJ erred in finding Arch is the responsible carrier. Employer's Brief at 22-35. The ALJ found Apogee qualifies as a potentially liable operator because it is undisputed: (1) Claimant's disability arose at least in part out of his employment with it; (2) Apogee operated a mine after June 30, 1973; (3) Apogee employed Claimant for a cumulative period of at least one year; (4) Claimant's employment included at least one working day after December 31, 1969; and (5) Apogee was self-insured through Arch on Claimant's last day of coal mine employment with Apogee and therefore is capable of assuming liability. 20 C.F.R. §725.494(a)-(e); Decision and Order at 30. Because Apogee was the last potentially liable operator to employ Claimant, the ALJ designated Apogee as the responsible operator and Arch as the responsible carrier. 20 C.F.R. §725.495(a)(1); Decision and Order at 30. She also found Employer did not present any evidence that Arch is unable to assume liability if Claimant is found eligible for benefits. 20 C.F.R. §§725.494(e), 725.495(c); Decision and Order at 30. Therefore, she found Employer met the requirements for liability under the Act. Decision and Order at 30.

Employer argues the Director did not meet his burden to establish Arch's self-insurance authorization covers this claim. Employer's Brief at 22-25. As the ALJ correctly held, Employer "misconstrues the burdens of the parties involved in this case."[17] Decision and Order at 30. The Director bears the burden of establishing the named responsible operator meets the criteria for being a potentially liable operator as set forth in 20 C.F.R. §725.494(a)-(e). *See* 20 C.F.R. §725.495(b). However, "in the absence of evidence to the contrary," the regulation presumes the designated responsible operator is capable of assuming liability for the payment of benefits.[18] *Id.* The named responsible operator may

---

[17] Employer cites 20 C.F.R. §725.495(d) to support its contention that the Director bears the burden of establishing that Arch's self-insurance authorization covers this claim. Employer's Brief at 22. Its reliance on this regulation is misplaced. If the responsible operator that the district director designates is not the operator that most recently employed the miner, the district director is required to explain the reasons for such designation. 20 C.F.R. §725.495(d). If the reasons include the most recent employer's inability to assume liability for the payment of benefits, the record must include a statement that the Office of Workers' Compensation Programs has no record of insurance coverage for that employer or of its authorization to self-insure. *Id.* In the absence of such a statement, "it shall be presumed that the most recent employer is financially capable of assuming its liability for a claim." *Id.* No operator employed Claimant after Apogee. Thus 20 C.F.R. §725.495(d) is inapplicable.

[18] An operator will be deemed capable of assuming liability for benefits if one of three conditions is met: 1) the operator is covered by a policy or contract of insurance in

13

be relieved of liability only if it shows either it is financially incapable of assuming liability or another operator that more recently employed the miner is financially capable of doing so. 20 C.F.R. §725.495(c).

Employer does not dispute Arch provided self-insurance coverage to Apogee on Claimant's last date of employment with it.[19] 20 C.F.R. §§725.494(e), 726.203(a). Rather, it argues the ALJ erred in finding that self-insurance coverage applies to this claim. Employer's Brief at 32-35; Employer's Reply Brief at 5-8 (unpaginated). It asserts self-insurance liability is triggered by the date a claim is filed, whereas commercial insurance liability is triggered by the date of a miner's last coal mine employment. *Id*. To support this argument, Employer notes the regulations "set forth two distinct regulatory systems," with self-insurance regulations found at 20 C.F.R. §§726.101-726.115 and commercial insurance regulations found at 20 C.F.R. §§726.201-726.213. Employer's Brief at 32-35. Citing 20 C.F.R. §726.203(a), Employer asserts liability for commercial insurance is triggered if a policy is in place "on the date of the miner's last day of employment in the mines." Employer's Brief at 32-35. Insofar as no similar provision is found within the regulations applicable to self-insurance, Employer contends applying 20 C.F.R. §726.203(a) to self-insurers "eliminates the distinction between commercial and self-insurance set forth in the regulations as well as the case law." *Id*.

But as the ALJ correctly found, there is no regulatory authority to support Employer's argument that self-insurance liability is triggered by the date the claim is filed

---

an amount sufficient to secure its liability; 2) the operator was authorized to self-insure during the period in which the miner was last employed by the operator, provided that the operator still qualifies as a self-insurer or the security given by the operator pursuant to 20 C.F.R. §726.104(b) is sufficient to secure the payment of benefits; or 3) the operator possesses sufficient assets to secure the payment of benefits awarded under the Act. 20 C.F.R. §725.494(e)(1)-(3). Insurance coverage for black lung benefits exists only if the insurance policy is in effect on the last day of the miner's exposure to coal dust while employed by the insured. 20 C.F.R. §726.203(a).

[19] Employer argues that in "other cases" the district director has improperly designated Arch as the responsible operator to hold it liable for claims. Employer's Brief at 23-24. It further contends the district director improperly "pierce[d] Arch's corporate veil [to] hold it responsible for" Apogee's employee, Claimant. Employer's Brief at 25 (citing 20 C.F.R. §725.493(b)(2)). But as the ALJ correctly held, the district director did not name Arch as the responsible operator in this case. Decision and Order at 31-32. Nor did she rely on 20 C.F.R. §725.493(b)(2) to determine Arch is liable. *Id*. Rather, she determined Arch "bears liability for this claim as Apogee's self-insurer, not as the responsible operator." *Id*.

14

rather than the last day of the miner's coal mine employment. Decision and Order at 33. She correctly found the regulations at 20 C.F.R. §§726.101-726.115 govern "only how an operator must secure its existing liability" and do not "create liability." *Id*. Arch does not dispute that it qualified as a self-insurer and its self-insurance coverage included Apogee when Apogee last employed Claimant.

Employer next argues that, in other cases, DOL historically has placed liability on self-insured parent companies based on the date of filing of the claim. Employer's Brief at 26-27. We agree with the Director's position that Employer has failed to show the Director changed its policy in naming Arch as the responsible carrier. Director's Response at 22. Employer cites three cases in which a district director named either Patriot or Magnum as the responsible carrier. Employer's Brief at 26-27 (citing *Massey v. Apogee Coal*, 2019-BLA-05144; *Creech v. Apogee Coal*, xxx-xx-6408 LM C; *Allen v. Hobet Mining*, 2019-BLA-06231). But in each of those cases, either Patriot or Magnum owned the subsidiary, was insured or self-insured, and was financially capable of paying benefits. Director's Response at 22. In this case, however, Patriot is no longer capable of paying benefits, reflecting a change in circumstances rather than a change in DOL's policy.

Employer further argues the Director released Arch from liability because DOL approved Arch's agreement not to insure Apogee's liabilities after December 31, 2005. Employer's Brief at 1-2, 34-35 (citing Employer's Exhibits 13-17); Employer's Reply Brief at 8-9 (unpaginated). But the ALJ permissibly excluded as untimely the only evidence Employer cites to support this argument. June 17, 2019 Order; Hearing Transcript at 13-16. Thus we reject this argument.[20]

## BLBA Bulletin No. 16-01

Employer argues DOL's issuance of BLBA Bulletin No. 16-01 constitutes a new "rule" retroactively imposing new liability on self-insured mine operators in violation of the APA. Employer's Brief at 34-35.

As the ALJ correctly found after considering the evidence properly admitted into the record, Arch's liability is established under the Act and regulations, not by BLBA

---

[20] For the same reasons, we reject Employer's argument that Patriot Coal should have been held liable for this claim. Employer's Brief at 22-23 (arguing the Director has not "explain[ed] why [he] did not pursue Patriot" as the responsible carrier). DOL's authorization for Patriot to self-insure for claims retroactive to July 1, 1973, does not release Arch from liability. 30 U.S.C. §932(a), (b); 20 C.F.R. §726.110(a)(1). Moreover, as the Director correctly notes, Claimant retired eleven years before Patriot purchased Apogee and thus never worked for Patriot. Director's Response at 16-17.

15

Bulletin No. 16-01 or any internal DOL policy; therefore Bulletin No. 16-01 "is immaterial." Decision and Order at 31-32 n.22; *see* 20 C.F.R. §§725.494-495. She found Employer meets all the requirements of a potentially liable operator: Claimant's total disability is presumed to have arisen at least in part out of his coal mine work for Apogee; Apogee was an operator after June 30, 1973; Claimant worked for Apogee for a cumulative period of not less than one year; Claimant's employment with Apogee included at least one working day after December 31, 1969; and Apogee is able to pay benefits through Arch. 20 C.F.R. §725.494; Decision and Order at 30. Further, she found Apogee is the last potentially liable operator to employ Claimant. 20 C.F.R. §725.495; Decision and Order at 30. As Employer has not challenged any of these findings, we affirm them. *Skrack*, 6 BLR at 1-711.

Moreover, the D.C. Circuit rejected Employer's argument that Bulletin No. 16-01 constitutes a substantive rule affecting Arch's rights and interests or governing its liabilities in any given case. *Acosta*, 888 F.3d at 500-01. We therefore reject Employer's challenges to its liability based on Bulletin No. 16-01.

In light of the foregoing, we affirm the ALJ's finding that Apogee, as insured by Arch, is liable for the payment of benefits. 20 C.F.R. §§725.494, 725.495; Decision and Order at 30.

### Invocation of the Section 411(c)(4) Presumption - Total Disability

A miner is totally disabled if his pulmonary or respiratory impairment, standing alone, prevents him from performing his usual coal mine work and comparable gainful work. 20 C.F.R. §718.204(b)(1). A claimant may establish total disability based on pulmonary function studies, arterial blood gas studies, evidence of pneumoconiosis and cor pulmonale with right-sided congestive heart failure, or medical opinions. 20 C.F.R. §718.204(b)(2)(i)-(iv). The ALJ must weigh the relevant evidence supporting a finding of total disability against the contrary evidence. *See Rafferty v. Jones & Laughlin Steel Corp.*, 9 BLR 1-231, 1-232 (1987); *Shedlock v. Bethlehem Mines Corp.*, 9 BLR 1-195, 1-198 (1986), *aff'd on recon.*, 9 BLR 1-236 (1987) (en banc).

The ALJ found Claimant established total disability based on the pulmonary function studies and medical opinions, and in consideration of the evidence as a whole. 20 C.F.R. §718.204(b)(2)(i), (iv); Decision and Order at 4 n.3, 5.

Employer acknowledges it "conceded" before the ALJ that Claimant is totally disabled based on the pulmonary function studies and medical opinions. Employer's Brief at 4; *see* Employer's Post-Hearing Brief at 6. Nonetheless, it now argues the ALJ failed to consider that Claimant is totally disabled from working as a coal miner due to neck, back, and knee injuries and thus is not entitled to benefits. Employer's Brief at 35-37.

16

Employer advocates applying *Peabody Coal Co. v. Vigna*, 22 F.3d 1388 (7th Cir. 1994), but that decision interpreted a prior version of 20 C.F.R. §718.204 (1999), and the Board has declined to apply *Vigna* to cases, like this one, arising in jurisdictions outside of the Seventh Circuit. *See Bateman v. E. Assoc. Coal Corp.*, 22 BLR 1-255, 1-267 (2003). Moreover, DOL explicitly rejected the premise that a non-pulmonary disability precludes entitlement when it promulgated the 2001 revised regulations. 20 C.F.R. §718.204(a) ("any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to pneumoconiosis"); 65 Fed. Reg. 79,920, 79,923, 79,946 (Dec. 20, 2000) ("This change emphasized the Department's disagreement with [*Vigna*]"). For these reasons, we reject Employer's argument.

As Employer raises no further argument regarding total disability, we affirm the ALJ's conclusion that Claimant invoked the Section 411(c)(4) presumption. 20 C.F.R. §718.305(b)(1); Decision and Order at 5.

## Rebuttal of the Section 411(c)(4) Presumption

Because Claimant invoked the Section 411(c)(4) presumption, the burden shifted to Employer to establish Claimant has neither legal nor clinical pneumoconiosis,[21] or that "no part of [his] respiratory or pulmonary total disability was caused by pneumoconiosis as defined in [20 C.F.R.] §718.201." 20 C.F.R. §718.305(d)(1)(i), (ii). The ALJ found Employer failed to establish rebuttal by either method.[22]

---

[21] "Legal pneumoconiosis" includes any "chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. §718.201(a)(2). The definition includes "any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. §718.201(b). "Clinical pneumoconiosis" consists of "those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. §718.201(a)(1).

[22] The ALJ found Employer disproved the existence of clinical pneumoconiosis. Decision and Order at 10.

17

**Legal Pneumoconiosis**

To disprove legal pneumoconiosis, Employer must establish Claimant does not have a chronic lung disease or impairment "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. §§718.201(a)(2), (b), 718.305(d)(1)(i)(A); *see Minich v. Keystone Coal Mining Corp.*, 25 BLR 1-149, 1-155 n.8 (2015). The United States Court of Appeals for the Sixth Circuit requires Employer to establish Claimant's "coal mine employment did not contribute, in part, to his alleged pneumoconiosis." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 405 (6th Cir. 2020). "An employer may prevail under the not 'in part' standard by showing that coal dust exposure had no more than a de minimis impact on the miner's lung impairment." *Id.* at 407 (citing *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 600 (6th Cir. 2014)).

Employer relies on the medical opinions of Drs. McSharry and Rosenberg to disprove legal pneumoconiosis. Director's Exhibit 18; Employer's Exhibits 3, 6, 9, 24.

Dr. McSharry diagnosed Claimant with an obstructive lung impairment and a restrictive lung impairment. Employer's Exhibit 3. He attributed the impairments to cigarette smoking and opined they are unrelated to coal mine dust exposure. *Id.* Dr. Rosenberg diagnosed Claimant with tobacco-induced chronic obstructive pulmonary disease (COPD) and emphysema. Director's Exhibit 18; Employer's Exhibits 6, 9, 24. He initially opined these conditions are significantly related to Claimant's coal mine dust exposure, Director's Exhibit 18; Employer's Exhibits 6, 9, but ultimately changed his opinion and concluded they are unrelated to coal mine dust exposure and thus Claimant does not have legal pneumoconiosis. Employer's Exhibit 24.

The ALJ found Dr. McSharry's opinion inadequately reasoned and inconsistent with the regulations. Decision and Order at 24-25. She found Dr. Rosenberg's opinion internally inconsistent and inadequately reasoned. *Id.* at 23-24.

We first reject Employer's argument that the ALJ erred in discrediting Dr. McSharry's opinion. Employer's Brief at 39-40. Dr. McSharry opined that when coal mine dust exposure causes a mixed obstructive and restrictive lung impairment, it is "almost universally associated with severe radiographic changes of pneumoconiosis," which were not present in this case. Employer's Exhibit 3 at 2. Contrary to Employer's contention, the ALJ permissibly found this reasoning unpersuasive because the regulations provide a claim shall not be denied solely on the basis of a negative chest x-ray and further recognize legal pneumoconiosis can exist in the absence of positive x-ray evidence. *See A & E Coal Co. v. Adams*, 694 F.3d 798, 802-03 (6th Cir. 2012); *Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 487-88 (6th Cir. 2012) (ALJ properly concluded the regulations provide legal pneumoconiosis may exist in the absence of clinical pneumoconiosis); 20 C.F.R. §§718.202(a)(4), 718.202(b); Decision and Order at 24-25.

18

Dr. McSharry also acknowledged it is "possible" coal mine dust exposure contributed to or aggravated Claimant's lung impairments, but he determined there is "no compelling evidence" that it did so in this case and thus it is "unlikely" Claimant has legal pneumoconiosis. Employer's Exhibit 3 at 3. The ALJ noted the preamble[23] to the 2001 revised regulations cites medical studies, which DOL found credible, concluding that the risks of smoking and coal mine dust exposure may be additive. 65 Fed. Reg. at 79,941 (risk of clinically significant airways obstruction and chronic bronchitis associated with coal mine dust exposure can be additive with cigarette smoking); Decision and Order at 25. Further, she recognized legal pneumoconiosis is presumed because Claimant invoked the Section 411(c)(4) presumption. Decision and Order at 25. The ALJ acted within her discretion in finding Dr. McSharry's opinion unpersuasive because he did not sufficiently explain why Claimant was not suffering "from both tobacco-related and coal mine dust-related lung disease, or why Claimant's coal dust exposure did not substantially exacerbate any tobacco related lung disease." *Id*.; *see Young*, 947 F.3d at 403-07; *Crockett Colleries, Inc. v. Barrett,* 478 F.3d 350, 356 (6th Cir. 2007); 20 C.F.R. §718.201(a)(2), (b).

Employer next argues the ALJ erred in discrediting Dr. Rosenberg's opinion. Employer's Brief at 40-41. We are not persuaded by this argument.

In his first three medical reports dated May 10, 2016, April 13, 2017, and November 2, 2017, Dr. Rosenberg stated he could not exclude legal pneumoconiosis because the pattern of obstruction present on Claimant's pulmonary function testing reveals a severely reduced FEV1 value but a mildly reduced FEV1/FVC ratio, indicating coal mine dust exposure contributed to Claimant's smoking-related COPD. Director's Exhibit 18; Employer's Exhibits 6 at 1-4; 9. However, in his final report dated June 17, 2019, Dr. Rosenberg opined the pattern of Claimant's obstructive impairment is inconsistent with legal pneumoconiosis. Employer's Exhibit 6 at 5-16.

---

[23] Contrary to Employer's contention, an ALJ may evaluate expert opinions in conjunction with the preamble to the 2001 revised regulations, as it sets forth studies the DOL found credible and the DOL's resolution of scientific questions relevant to the regulations. *See Cent. Ohio Coal Co. v. Director, OWCP* [*Sterling*], 762 F.3d 483, 491 (6th Cir. 2014); *A & E Coal Co. v. Adams*, 694 F.3d 798, 801-02 (6th Cir. 2012); Employer's Brief at 37-38. Although Employer contends it submitted medical evidence contrary to the medical science set forth in the preamble, it does not specifically identify what evidence it submitted. Employer's Brief at 40. Thus we reject this argument. *Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 466-67 (6th Cir. 2022); *Cox*, 791 F.2d at 446-47; 20 C.F.R. §802.211(b).

Although, in his deposition, Dr. Rosenberg explained his change of opinion by testifying "over time [he] had more information to look at," Employer's Exhibit 24 at 36, the ALJ found "it does not appear that Dr. Rosenberg reviewed any additional [pulmonary function study] results" between his November 2, 2017 report and his final June 17, 2019 report.[24]  Decision and Order at 23.  The ALJ permissibly found Dr. Rosenberg's opinion "is internally inconsistent because he reaches different conclusions based on the same test results."[25]  Decision and Order at 23; *see Napier*, 301 F.3d at 713-14; *Tenn. Consol. Coal*

---

[24] The ALJ specifically noted that, in his final June 17, 2019 report, "Dr. Rosenberg references Dr. McSharry's November 2016 pulmonary function [study], Dr. Ajjarapu's April 2017 pulmonary function [study], and 2016 pulmonary function [studies] contained in Claimant's treatment records from St. Charles Breathing Center."  Decision and Order at 23.  She further pointed out, however, that Dr. Rosenberg had referenced all these studies in his prior reports where he had diagnosed legal pneumoconiosis.  *Id.*  At his deposition, Dr. Rosenberg identified the presence of ground glass opacifications on computed tomography (CT) scan as a basis for changing his opinion.  Employer's Exhibit 24 at 37.  However, as part of his April 13, 2017 report he reviewed and discussed a CT scan interpretation which noted the presence of ground glass opacifications – although Dr. Rosenberg referred to this as a November 29, 2016 CT scan, this appears to be a scrivener's error as there is no CT scan of record with that date.  Employer's Exhibit 6 at 2.  At that time, despite having knowledge of the ground glass opacifications, Dr. Rosenberg still maintained his opinion that "one cannot rule out a component of legal [coal workers' pneumoconiosis]."  *Id.* at 4.  Similarly, Dr. Rosenberg reviewed pulmonary function studies showing a response to bronchodilators when preparing his reports prior to his June 2019 report.  *See* Director's Exhibit 18.  Although he also referenced two additional pulmonary function studies in his deposition, a December 12, 2017 study and a December 13, 2018 study that were in Claimant's treatment records, they were not mentioned as materials he reviewed in the June 2019 report where he changed his position.  Employer's Exhibit 24.  The ALJ thus permissibly determined Dr. Rosenberg changed his position as of his June 2019 report based on the same pulmonary function test results he considered in formulating his earlier opinions.  *See Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 713-14 (6th Cir. 2002); *Tenn. Consol. Coal Co. v. Crisp*, 866 F.2d 179, 185 (6th Cir. 1989).

[25] We reject Employer's argument that the ALJ mischaracterized Dr. Rosenberg's opinion.  Employer's Brief at 40-41.  She acknowledged that, at the time of Dr. Rosenberg's deposition, he "had reviewed an additional pulmonary function [study] of record, namely Dr. Ajjarapu's December 2017 study."  Decision and Order at 23 n.12 (citing Employer's Exhibit 24 at 23; Claimant's Exhibit 1).  The ALJ found, however, that this did not explain why Dr. Rosenberg changed his opinion between his third and fourth medical reports, and thus his opinion was internally inconsistent.  *Napier*, 301 F.3d at 712-14; Decision and Order at 23 n.12.

20

*Co. v. Crisp*, 866 F.2d 179, 185 (6th Cir. 1989); *Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983).

Because the ALJ permissibly discredited the opinions of Drs. McSharry and Rosenberg, the only opinions supportive of Employer's burden on rebuttal, we affirm her finding that Employer did not disprove legal pneumoconiosis. Decision and Order at 26. Employer's failure to disprove legal pneumoconiosis precludes a rebuttal finding that Claimant does not have pneumoconiosis. 20 C.F.R. §718.305(d)(1)(i).

### Disability Causation

The ALJ next considered whether Employer established "no part of [Claimant's] respiratory or pulmonary total disability was caused by pneumoconiosis as defined in [20 C.F.R.] § 718.201."[26] 20 C.F.R. §718.305(d)(1)(ii); Decision and Order at 26-27. She permissibly discredited the opinions of Drs. McSharry and Rosenberg because they did not diagnose legal pneumoconiosis, contrary to her finding Employer failed to disprove the disease. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013); *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1062 (6th Cir. 2013); Decision and Order at 26. We therefore affirm the ALJ's finding that Employer failed to prove that no part of Claimant's respiratory disability was due to legal pneumoconiosis. 20 C.F.R. §718.305(d)(1)(ii).

---

[26] We reject Employer's argument that the "no part" regulatory standard the ALJ applied to determine whether it rebutted the presumed fact of total disability causation is invalid. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013); *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1062 (6th Cir. 2013); *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 143 (4th Cir. 2015); *Antelope Coal Co./Rio Tinto Energy Am. v. Goodin,* 743 F.3d 1331, 1342 (10th Cir. 2014).

J.A. 255

Accordingly, the ALJ's Decision and Order Awarding Benefits is affirmed.


SO ORDERED.




JUDITH S. BOGGS, Chief
Administrative Appeals Judge


DANIEL T. GRESH
Administrative Appeals Judge


MELISSA LIN JONES
Administrative Appeals Judge

# CERTIFICATE OF SERVICE

2020-0229-BLA David M. Howard v. Apogee Coal Company, Arch Coal, Inc., Director, Office of Workers' Compensation Programs (Case No. 17-BLA-5163)

I certify that the parties below were served this day.

_10/18/2022_
(DATE)

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

David M. Howard
P.O. Box 135
Baxter, KY 40806
    --*Certified*

Diane Jenkins
Stone Mountain Health Services
P.O. Box Drawer S
St. Charles, VA 24282
    --*Certified*

Hon. Lauren C. Boucher
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

Jeffrey S. Goldberg, Esq.
Office of the Solicitor
U.S. Department of Labor
Suite N-2119
Washington, DC 20210

Mark Solomons
Greenberg Traurig LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
    --*Certified*

Mr. Michael Chance
District Director
U.S. Department of Labor
Suite C-3515, NDOL
Washington, DC 20210

Ms. Laura Metcoff Klaus
Greenberg Traurig LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
    --Electronic

Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Washington, DC 20001
    --Electronic

Office of the Solicitor, Division of Black Lung and Longshore Services
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210
    --Electronic

| | |
|---|---|
| DAVID M. HOWARD,<br><br>      Claimant,<br><br>    v.<br><br>APOGEE COAL CO.,<br><br>      Employer,<br><br>  and<br><br>DIRECTOR, OFFICE OF WORKERS'<br>COMPENSATION PROGRAMS,<br><br>      Party-in-Interest. | BRB No.    2020-0229 BLA<br><br>OWCP No.  xxx-xx-6902 |

## MOTION FOR RECONSIDERATION EN BANC[1]

In accepting the ALJ's refusal to entertain Arch's well-pled challenge to BLBA Bulletin 16-01 and the significant new policy it reflects, the Board held, in relevant part:

> The D.C. Circuit rejected Employer's argument that Bulletin No. 16-01 constitutes a substantive rule affecting Arch's rights and interests or governing its liabilities in any given case. Acosta, 88 F.3d at 500-01. We therefore reject Employer's challenges to its liability based on Bulletin No. 16-01. In light of the foregoing, we affirm the ALJ's finding that Apogee, as insured by Arch, is liable for the payment of benefits.

BRB slip op. at 16. That finding, central to the Board's ultimate affirmance, reflected legal error and requires reconsideration.

First, the D.C. Circuit dismissed *Acosta* for want of jurisdiction; it was necessarily unempowered to resolve any of the case's substantive questions. *See*

---

[1] Arch preserves explicitly each of the arguments raised in its Petition for Review for further appellate purposes, as necessary. *See Bartley v. L&M Mining*, 901 F.2d 1311 (6th Cir. 1990).

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *see also Capitol Services Mgmt. v. Vesta Corp.*, 933 F.3d 784 795 (D. C. Cir. 2019) ("the conclusion in a prior court's ruling is dicta because the petition was dismissed for lack of subject matter jurisdiction") (quotation omitted).

In moving to dismiss *Acosta* (then styled as *Hugler*) "the Department of Labor argue[d] that this court lacks subject matter jurisdiction because the Black Lung Benefits Act assigns exclusive jurisdiction to the Department's administrative process and then the relevant federal court of appeals." *Arch Coal v. Hugler*, 242 F. Supp. 3d 13, 18 (D.D.C. 2017). Citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015), *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012), and related authority, the District Court agreed, dismissing for want of subject matter jurisdiction because Arch's Bulletin challenge is "the type congress intended to be reviewed within [the] statutory structure." *Id*. Specifically, it observed that "Congress has undoubtedly created a special statutory review scheme for miners' claims under the Black Lung Benefits Act, and the intent that the review scheme be exclusive is 'fairly discernible.'" *Id*. It added that the Act contains a "comprehensive structure for the adjudication of the responsible operator in administrative proceedings," just as did the structures at issue in *Jarksey* and *Thunder Basin*. The Court held that "Arch Coal's challenges to the Bulletin are within the scope of this review scheme," representing a "core issue that the agency adjudicates." *Id*. at 19. And, importantly, "the fact that Arch Coal raises statutory claims—that the Bulletin violates the BLBA and the APA—does not indicate that these claims are outside of the scope of the administrative review scheme." *Id*. at 20. (*citing Louisville & Nashville RR*, 713 F.2d at 1244-45) (challenge to policy for

determining responsible operators was within exclusive jurisdiction of administrative process and appeals court"). Finally, the Court noted that, "determining whether a rule has a retroactive effect requires understanding the interaction of the new regulation with existing regulations." *Id*. Thus "although Arch Coal does argue that the Bulletin has an impermissibly retroactive effect, there is no reason why that claim cannot be first heard by the Department" which has "particular expertise" in the matter. Its cited authority made clear that, irrespective of the nature of Arch's challenge to the Bulletin (as an impermissible rule, a retroactive policy, or an APA violation), the Court lacked subject matter jurisdiction all the same. *See Thunder Basin*, 510 U.S. at 200, 207, 212; *Elgin* 132 S.Ct. at 2132 (federal employees raising constitutional challenge to their terminations were within agency's exclusive jurisdiction); Louisville & Nashville R.R., 713 F.2d at 1244-45 (challenges to policy for determining Responsible Operators was within agency's exclusive jurisdiction); *Jarkesy*, 803 F.3d at 14, 22 (relegating APA and constitutional challenges to the agency process).

In sum, the subject matter jurisdiction question was distinct from the question of the Bulletin's status as a rule. Having dismissed on the former point, the Court was unempowered to issue a holding on the latter one. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *see also Capitol Services Mgmt. v. Vesta Corp*., 933 F.3d at 795; (D. C. Cir. 2019) ("the conclusion in a prior court's ruling is dicta because the petition was dismissed for lack of subject matter jurisdiction"); *see also Wright v. Spaulding*, 939 F.3d 695, 700-01 (6th Cir. 2019) ("only holdings are binding, not dicta.…So if the court's answer to a legal question can make no difference to the parties before it, that question is not part of the case. And outside a case, an analysis

of an issue can be many things—deliberate or hasty, compelling or unpersuasive, thorough or thinly reasoned—but one thing it cannot be is an exercise of judicial power. Even when it comes packaged in a judicial opinion.) As such, the Board erred in relying on an off-hand observation of the Court that cannot have the force and effect of law because the Court had no power to make it, having denied itself the jurisdiction to do so. With no further analysis by the Board, reliance on the remark in Acosta is inappropriate and does not discharge the Board's duty of explanation.

Second, even if the Bulletin were mere guidance when it was initially issued, it is still subject to administrative formalities if it is applied in a binding manner. *See General Electric Co. v. EPA,* 290 F.3d 377, 383 (D.C. Cir. 2002). An agency pronouncement initially classified as a general statement of policy is not "immunized from subsequent judicial review for conformity with the APA if later developments show the agency to be using it as a binding policy." *See American Hospital Ass'n v. Bowen*, 834 F.2d 1034, 1057 n. 4 (D.C. Cir. 1987). The Bulletin directs and binds agency personnel; DOL conceded this. *See* Director's Supplemental Brief, *Arch v. Acosta*, at 15 n.7 888 F.3d 493 (D.C. Cir. 2018). And even though the Director represented to the federal courts that the Bulletin was a mere interpretative or guidance document, in fact its mandates have been followed consistently and without deviation in hundreds of cases. The Bulletin has become a rule and was still subject to notice-and-comment rulemaking. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980) ("DOE's contention that these documents are not 'final opinions,' absolutely binding on the auditors, misses the point. The evidence strongly supports the district court's conclusion that, in fact, these opinions were routinely used by agency staff as guidance in conducting their audits, and were retained and referred to as precedent. If this occurs, the agency has promulgated a body of secret law which it is actually applying in its dealings with the public but which it is attempting to protect behind a label. This we will not

permit the agency to do."); *Mann v. United States*, No. 21-1500 (6th Cir. Dec. 9, 2021) (whether described as "interpretive" or otherwise, where a notice involves substantive duties, it is a legislative rule subject to notice-and-comment rulemaking). For all time except when representations were made to the D.C. Circuit DOL has treated Bulletin 16-01 as a binding rule with the force of law and urged ALJ's and this Board to adhere to the policy it reflects. If the law was as DOL argues, there would be no need for the Bulletin. What is more, discovery in other cases indicates that DOL significantly changed its practices by and through the Bulletin. Thus, under *Perez* the Bulletin is not exempt from rulemaking pursuant to 30 U.S.C. §936 (a).

It bears mention also that in *Acosta* neither the district court nor the court of appeals had any evidence at all to inform them of whether, in fact, the Bulletin and its policy were retroactive and whether they changed prior law that had been relied upon by Arch. The Court of Appeals took special pains to ensure that Arch would have the opportunity before the agency to prove the case that had been pled before the Article III tribunals. In fact, *Acosta* held that it was the Department's job in the first instance to make those determinations of fact. The Board's holding here and DOL's arguments that are embraced by the Board are incompatible with the Court's fundamental premise in sending the case back for agency adjudication, which is that the agency, not the court was charged with the obligation and the duty to find the relevant facts of the case. That did not happen here.

The Board notes that DOL's promise to the DC Circuit to allow robust discovery is constrained by the admonition that discovery would be allowed "in keeping with the Act and its 'implementing regulations.'" BRB slip op. at 11-12 n.14. DOL never informed the Court that it would subsequently attempt (successfully) to eliminate discovery altogether.

Nor did the Board address Arch's argument that the evidence-limiting regulations the ALJ relied upon to deny its request for discovery are invalid for

violating the Act, stating instead "employer offered no explanation or argument to support these assertions" so "we decline to address them as inadequately briefed." BRB slip op. at 12 n.16 (citing *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018)).

That is a remarkable interpretation of the authority cited. As Arch argued in its Opening Brief:

> DOL cannot divest the ALJ of her "powers, duties, and responsibilities" including accepting and overseeing disputes concerning evidence. *See* 33 U.S.C. § 919(d), incorp. by ref. into 30 U.S.C. § 932(a); *see also Greenwich Collieries*, 512 U.S. at 271-77; 20 C.F.R. § 725.450 (a party to a claim "shall have a right to a hearing concerning any contested issue of fact or law"); *id.* at § 725.455(a)("The administrative law judge shall at the hearing inquire fully into all matters at issue…."); *see also Dingess v. Dir., OWCP*, 12 BLR 1-143 ("any party aggrieved by the deputy commissioner's findings may appeal this case to the Office of Administrative Law Judges for a de novo review of any contested issues.").

*See* Opening Br. at 31. No more was required. *See Lincoln Elec. Co. v. St. Paul Fire*, 210 F.3d 672, 685 (6th Cir. 2000) (rejecting forfeiture argument where "the parties were sufficiently thorough in proffering to the district court their concerns, differences of opinion, and preferred sources of precedent"); *Cf. Gonzalez v. Kijakazi*, No. 21-cv-800, 2022 WL 3348525 (S.D.N.Y. Aug. 12, 2022) (waiver generally limit to circumstances where "a party does not cite any authority in support and does not develop its argument").[2] Congress in 33 U.S.C. §919(d) transferred all of the litigating functions of the district directors to the ALJs, including the management of all discovery functions. The Supreme Court held in *Greenwich*

---

[2] *Jones Brothers*, cited by the Board, has nothing to say about the facts at bar. There, the Sixth Circuit faulted a party for acknowledging "a split among the Circuit Courts of appeal" but failing to advocate one of the positions in that split; "acknowledge[ing] an argument is not . . . mak[ing] an argument." *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018). Indeed, in *Jones Brothers* the Sixth Circuit was simply stating the simple proposition that when a party fails to raise an issue, that issue is forfeited. Plainly, Arch here did what Jones Brothers did not do by raising the issue and presenting authority in support of it.

*Collieries* that DOL had no authority at all to tinker with section 919(d). The regulation in question undeniably violates these statutory and controlling judicial mandates.

Additionally, the Board's decision to affirm the ALJ's conclusion that the self-insurance regulations "govern only how an operator must secure its existing liability" and do not "create liability" conflates several issues and is legally incorrect. The BLBA imposed liability on operators for federal black lung claims but it specified two distinct and separate methods by which an operator could comply with the BLBA to secure its liability for payment of these benefits. 30 U.S.C. § 933 (a). While the statute imposes liability, it does not specify how liability is to be determined – there is no discussion of the "miner's last day of employment." Instead, Congress delegated to DOL to establish commercial insurance and self-insurance programs "by regulation." *Id*. DOL's regulations set forth two distinct regulatory structures which set forth the liability triggers for the different programs in accordance with the industry standard for each time of program. *Compare* Part 726, Subpart B (Self-Insurers, 726.101-726.115) *with* Subpart C (Insurance Contracts, 726.201-726.213). For commercial insurance, an insurer pays an awarded claim if a miner's last day of exposure occurred during a policy period. 20 C.F.R. § 726.203(a); *Vesta Ins. Co. v. Amoco Prod. Co.*, 986 F.2d 981, 985-86 (5th Cir. 1993). It makes no difference when a miner files his claim.

While the commercial insurance regulations clearly set forth the language of the trigger, the self-insurance regulations suggest a different trigger – a claims-made trigger. 20 C.F.R. § 726.110(a) requires the self-insurer, once approved, to file an "agreement and undertaking" which obligates them to pay "when due" the miner's benefits. Second, 20 C.F.R. § 726.102(b)(3) require a self-insurer to identify with specificity the mines which are covered by each particular self-insurance agreement. Thus, any liability for Arch must arise from an approved self-insurance agreement

that covers Apogee after the sale. If the Board is correct that the regulations are silent as to the trigger for self-insurance, (which Arch contests), then evidence regarding how DOL interpreted and previously implemented these regulations, and whether there has been a change is necessary to affirm the agency action here. No such evidence exists in this record due to the ALJ's error and the Board's refusal to decide the issue. The Board should note also that a last exposure trigger applicable to self-insurance liability has never been the law under the program or any other self-insurance program and cannot be derived from any regulation or case decision.

Finally, an additional point deeply undermines the Board's decision, which relied, in part, on the premise that Arch was at one time the self-insurer for this claim. Arch never made such a concession, and the Board's statement that Arch was responsible for this claim is memorialized by nothing in this record. But insurance is a contractual, not a statutory relationship. The Department has not proved its case. *See* 20 C.F.R. § 725.407.

## CONCLUSION

For the foregoing reasons and those articulated in Arch's prior briefing, the Board should vacate its October 18, 2022 Decision and Order and should remand the case to a constitutionally secure ALJ for full consideration of Arch's four-count complaint in *Acosta*.

Respectfully Submitted,

Michael A. Pusateri
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 533-2354/(202) 261-0106
pusaterim@gtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2022, the undersigned served the foregoing Motion for Reconsideration on the following parties by electronic mail:

Jeffrey S. Goldberg, Esq.
BRB-BLLLS@dol.gov; mailto:liao.cynthia@dol.gov

Diane Jenkins, Lay Representative
djenkins@stonemtn.org

Michael A. Pusateri

November 28, 2022

Honorable Judith S. Boggs
Chief Administrative Appeals Judge and Chair
Benefits Review Board
U.S. Department of Labor
200 Constitution Ave., NW
Washington, D.C. 20210-0001

Re:  *David M. Howard v. Apogee Coal Co., Arch Coal, Inc.,*
     *and Director, OWCP*
     BRB No.  20-0229 BLA
     Case No.  17-BLA-05163

Dear Judge Boggs:

Apogee Coal Company, self-insured through Arch Coal, Inc. (Employer), has moved the Board to reconsider its October 18, 2022, decision affirming Administrative Law Judge Lauren Boucher's February 25, 2020, decision and order awarding benefits and holding Employer liable as the responsible operator. The Board held that the ALJ had properly determined that Employer is liable and had properly denied Employer's efforts to obtain discovery into DOL Bulletin No. 16-01 (the Bulletin). On reconsideration, Employer argues that the Board erred in affirming the ALJ's rejection of Employer's arguments and untimely discovery efforts concerning the Bulletin, that the regulatory evidentiary deadlines are invalid, and that self-insurance liability is determined as of the date the claimant filed for benefits rather than the last date of the miner's coal mine employment. The Board should reject Employer's arguments as meritless.

The decisions below

  1. The ALJ's order granting Employer's motion to reconsider and denying request for subpoenas

The ALJ denied Employer's request for subpoenas seeking depositions and documents from DOL employees related to its liability and the Bulletin. June 17, 2019 Order. The ALJ reasoned that Employer failed to comply with the evidentiary regulations requiring the designation of liability witnesses and submission of liability evidence to the district director, and failed to demonstrate extraordinary circumstances justifying this failure. *Id.* at 4-6.

2. The ALJ's decision and order

In the Decision and Order, the ALJ found that Apogee, self-insured through Arch Coal, satisfied the criteria for designation as the responsible operator pursuant to 20 C.F.R. §§ 725.494 and 725.495. ALJ at 30-31. She found that Employer had presented no evidence to rebut the presumption that Apogee is capable of paying benefits through its self-insurance with Arch Coal. ALJ at 30. Relatedly, she found that it was not the Director's burden to prove that Apogee was self-insured through Arch Coal, as Employer's financial ability to pay benefits is presumed. ALJ at 30.

The ALJ also found Department of Labor Bulletin 16-01 irrelevant, given that she found Apogee, self-insured through Arch Coal, liable based on the black lung regulations and not on the guidance provided in the Bulletin. ALJ at 31-32.

The ALJ rejected Employer's argument that the Director had wrongly based Arch Coal's liability on Mr. Howard's last day of coal mine employment rather than the date he filed his claim, and that such liability would be proper under commercial insurance but not self-insurance. ALJ at 33. She found "no regulatory basis to refute the Director's arguments that Arch is liable here because it provided Apogee's self-insurance while Claimant was employed by Apogee, and Apogee, as owned and self-insured by Arch, meets the requirements of a potentially liable operator. Even if Employer's assertions about general principles of corporate and insurance law are correct, black lung liabilities are very specifically regulated, and I am bound to apply those regulations." ALJ at 33.

She thus found Apogee, self-insured through Arch Coal, liable, and declined to transfer liability to the Black Lung Disability Trust Fund.

3. The Board's affirmance

The Board affirmed the ALJ's decision to quash Employer's request for subpoenas and to exclude Employer's evidence related to its liability and Bulletin 16-01. The Board held that the ALJ had acted within her discretion in finding that Employer's discovery requests were related to its efforts to escape liability and were therefore untimely pursuant to 20 C.F.R. §§ 725.414(c) and 725.456(b)(1). Slip op. at 10-11.

The Board further held that "there is no regulatory authority to support Employer's argument that self-insurance liability is triggered by the date the claim is filed rather than the last day of the miner's coal mine employment." Slip op. at 14-15. Next, the Board affirmed the ALJ's finding that Employer's liability stemmed from the BLBA and implementing regulations rather than the Bulletin. Slip op. at 15-16. In addition, the Board rejected Employer's challenge to its liability based on the Bulletin, noting that "the D.C. Circuit rejected Employer's

argument that Bulletin No. 16-01 constitutes a substantive rule affecting Arch's rights and interests or governing its liabilities in any given case.. Slip op. at 16 (citing *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500-01 (D.C. Cir. 2018).

<u>Discussion</u>

On reconsideration, Employer argues that the Board erred in affirming the ALJ's rejection of its arguments about Bulletin 16-01; that the Bulletin, even if not a formal rule, is still a rule subject to notice and comment rulemaking requirements; that the liability evidentiary regulations are invalid; that self-insurance liability is based on the date the claim is filed rather than the date of the miner's last coal mine employment; and that the Director failed to prove that Arch Coal self-insured Apogee. The Board should reject all of Employer's arguments as meritless.

Employer begins by asserting that the D.C. Circuit's finding in *Acosta* that the Bulletin was not a rule is *dicta* because the court concluded that it lacked jurisdiction. Mot. at 4. Employer ignores that the court held that it lacked jurisdiction only because Bulletin 16-01 is not a rule. In *Acosta*, the court rejected Arch's request to raise its claims in federal court instead of the administrative process "based on objections to an enforcement policy, not a legislative 'rule.'" *Acosta*, 888 F.3d at 501 (citing 5 U.S.C. § 551(4) (2012)). The court found that unlike a rule that would take the Bulletin outside the administrative process, "the disputed Bulletin in this case does not 'alter the rights or interests of parties.'" *Id.* The court held, "[t]o the contrary, the Bulletin does not impose any liability on Arch under the BLBA or dispose of any benefits claim on the merits. It only requires District Directors to initiate proceedings concerning Arch's potential responsibility for BLBA claims related to Patriot." *Id.* The court thus concluded that Arch's argument should be decided through BLBA procedures rather than in federal court. The court could not have held that it lacked jurisdiction without first holding that the Bulletin was not a rule. Consequently, the court's ruling regarding the Bulletin is binding and not *dicta*.

Employer next argues that even if the Bulletin is not a rule, it is nevertheless subject to notice-and-comment rulemaking. Mot. at 4. However, Employer forfeited this argument by failing to raise it before the Board in its opening brief. *See* Employer's Aug. 10. 2020, opening brief to Board (Pet. Bf.); *see also Bannister v. Knox County Board of Education*, 49 F.4th 1000, 1011 (6th Cir. 2022) ("a party has forfeited an argument when the party belatedly asserts it on appeal after having failed to raise it" earlier); *Edd Potter Coal Co., Inc. v. Director, OWCP*, 39 F.4th 202, 206 (4th Cir. 2022) (argument not timely raised is

forfeited).[1] Even if the Board addresses Employer's argument, though, the D.C. Circuit already decided that the Bulletin is not subject to notice-and-comment rulemaking. *Acosta*, 888 F.3d at 501 ("It is well understood that the notice-and-comment provisions of section 553 of the APA do not apply to agency bulletins, policy statements, directives, guidances, opinion letters, press releases, advisories, warnings, or manuals that do not have the force of law."). Significantly, the ALJ properly reviewed Employer's liability arguments *de novo* and relied on the Act and relevant regulations, rather than the Bulletin, in holding Employer liable. ALJ D&O at 31-32.

Employer also argues on reconsideration that the liability evidentiary regulations are invalid. Mot. at 5-6. Employer asserts that the Board failed to consider this argument. *Id.* However, Employer failed to set forth a sufficient argument for the Board to address, merely asserting "DOL cannot divest the ALJ of her 'powers, duties, and responsibilities' including accepting and overseeing disputes concerning evidence.'" Pet. Bf. at 31 n.9. The Board properly declined to address an inadequately briefed issue. 20 C.F.R. §802.211(b); *Cox v. Benefits Review Board*, 791 F.2d 445, 446-47 (6th Cir. 1986). If the Board addresses Employer's argument on reconsideration, it should uphold its decision that the ALJ properly applied the liability evidentiary regulations to Employer. Slip op. at 11 n.13. Regardless, the validity of the regulations has been upheld. *National Min. Ass'n v. Department of Labor*, 292 F.3d 849, 871-74 (D.C. Cir. 2002).[2]

Finally, Employer argues that 20 C.F.R. §§ 726.102(b)(3) and 726.110(a) place liability on self-insurers based on the date the claim is filed rather than the date of the miner's last coal mine employment. Mot. at 7-8. But these regulations do not preclude Arch Coal's liability in this case. Indeed, section 726.102(b)(3) requires self-insurance applicants to provide "[a] list of the mine or mines to be covered by any particular self-insurance agreement." And section 726.110(a) requires an operator seeking self-insurance authorization to file an agreement and undertaking with OWCP. Nothing in either regulation suggests that the operative date for imposing liability on a self-insurer is the date on which the claim is filed. Further, the regulations require a self-insurer to certify that it will

---

[1] Employer raised this argument before the ALJ, Employer's Dec. 20, 2019 bf. at 28, but not before the Board. Employer thus forfeited the argument. 20 C.F.R. § 802.211(b).

[2] Employer further suggests that there is no evidence, and that Employer never conceded, that Arch ever self-insured Apogee. Mot. at 8. But Employer admitted that Arch self-insured Apogee: "On December 31, 2005, Arch Coal sold Apogee and its federal black lung liabilities to Magnum Coal. It promptly informed the Department of Labor ("DOL") of the sale and renewed and adjusted its self-insurance applications to exclude Apogee in 2006, 2012 and 2015." Pet. Bf. at 1-2. Moreover, Employer bore the burden of proving that it could not pay benefits. 20 C.F.R. § 725.495(c)(1). Employer offered no such evidence.

"pay when due, as required by the Act, all benefits payable on account of total disability or death of any of its employee-miners[.]" 20 C.F.R. § 726.110(a)(1). This clearly covers Arch Coal's liability for Mr. Howard's claim. Accordingly, the Board properly rejected this argument, finding "there is no regulatory authority to support Employer's argument that self-insurance liability is triggered by the date the claim is filed rather than the last day of the miner's coal mine employment." Slip op. at 14-15.

The Board should deny Employer's meritless reconsideration motion.


Sincerely,

BARRY H. JOYNER
Associate Solicitor
  for Black Lung and Longshore Legal Services

JENNIFER FELDMAN JONES
Deputy Associate Solicitor


By:   /s/ Jeffrey S. Goldberg
      Jeffrey S. Goldberg
      Attorney
      U.S. Department of Labor
      (202) 693-5650


cc:   Michael A. Pusateri, Esq. (email by permission)
      Robin Napier (email by permission)

DAVID M. HOWARD,                           )
                                           )
              Claimant,            )
                                           )
    v.                                     )      BRB No.     2020-0229 BLA
                                           )
APOGEE COAL CO.,                           )      OWCP No.  xxx-xx-6902
                                           )
              Employer,            )
                                           )
    and                                    )
                                           )
DIRECTOR, OFFICE OF WORKERS'               )
COMPENSATION PROGRAMS,                     )
                                           )
              Party-in-Interest.   )

## REPLY IN FURTHER SUPPORT OF
## MOTION FOR RECONSIDERATION

Arch Resources stands on the arguments in its Motion for Reconsideration, clarifying the following discrete points:

1.      The Director's concession that "self-insurance applicants" must "provide a list of the mine or mines to be covered by a particular self-insurance agreement," Resp. at 4, requires Arch's dismissal.

As Arch's Petition for Review and proffered exhibits in support make clear, Arch provided such a list when reapplying as a self-insurer, and "DOL approved Arch's agreement not to insure Apogee's liabilities after December 31, 2005." *See* Petition for Review at 33 (citing Ex. 17 (Declaration of Tim Mullarkey) at 1-2, Ex. 13 to Ex. 16).

The Director's Argument to the contrary relies on conclusory, unsupported characterizations of evidence that the agency not only failed to offer, but actually *opposed producing*. It must be discarded. *See Pyles v. Astrue*, No. 11-cv-116, 2012

WL 1165824, n. 3 (W.D.N.C. March 19, 2012) ("unsupported, conclusory argument" may be stricken); *see also Haynes v. Colvin*, No. 12-cv-00004, 2013 WL 5729538, at *6 (W.D.N.C. Oct. 22, 2013) (striking unsupported argument in social security appeal) (unpublished).

Even worse, DOL's strategy of opposing evidence's admission on the one hand, and, on the other, basing its position on that evidence's assumed contents, is a violation of due process, the constitution's prohibition against bills of attainder, and the *Acosta* Court's guarantee of meaningful participation in these proceedings. *See Arch v. Acosta*, 888 F.3d 493, 502 (D.C. Cir. 2018); *see also BellSouth Corp. v. F.C.C.*, 144, F.3d 58, 74 (D.D.C. 1998) (agency action that "short-circuits the factfinding and due process protections of trial" "runs afoul of the structural provisions embodied in the Constitution's Bill of Attainder Clause.") (Sentelle, J., dissenting).

Relatedly, the Director's argument presupposes that his current interpretation of the regulations (*i.e.* that the trigger date "on a self-insurer is the date on which the claim is filed"), is consistent with prior practice. It is not.

In *Allen v. Hobet Mining*, a PDO issued after Arch's sale to Magnum read:

> Effective 12/31/05 Arch sold the following subsidiaries [including Hobet] to Magnum Coal Company…Magnum Coal Company assumes all black lung claims liability…Effective 1/1/06 and continuing Brickstreet Mutual Ins. Co. [ ] provides coverage for the individual companies which were created following the sale of Arch Coal and subsidiaries to Magnum Coal Company.

*See* 2019-BLA-06231, Dx. 2 at 96-102. *Adkins v. Hobet*, No. B7MHB-2015029 is even more telling. There, a miner filed a claim against Patriot in January 2015 after retiring in 2002. A February 16, 2016 PDO, issued after Patriot's bankruptcy, accepted the Trust Fund's liability, stating:

> Hobet Mining Inc., a self-insured coal operator through Patriot Coal Company has been identified as the Responsible Operator in this claim; however, Patriot Coal Company is in bankruptcy and no longer possesses sufficient assets to secure the payment of benefits in this

claim.  **_Since the company was self-insured, a previous employer cannot be named liable in this matter._**  Therefore, this company is deemed not viable now and is considered to be the responsibility of the Black Lung Disability Trust Fund.

*See Adkins v. Hobet*, No. B7MHB-2015029, Proposed Decision & Order of Feb. 16, 2016 at 6 (attached) (emphasis added). Along with the PDO from *Allen*, this offers unmistakable proof of the changed policy the ALJ ignored.

Given the Director's past practice, proven unmistakably in public documents from *Adkins* and *Allen* but disclaimed affirmatively by the Director dating back to *Acosta*, itself, the Director's arguments opposing Arch's claimed detrimental reliance cannot lie. *See, e.g., Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984) ("estoppel is in equitable doctrine invoked to avoid injustice"); *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir. 1982) (estoppel claims exist wherever "the government's change in position threatens a serious injustice").

2.      Next, Arch's as-applied challenge to the evidentiary regulations was absolutely presented sufficiently—both to the Board and to the ALJ, herself. As argued below, the Act reserves exclusively for ALJs the "powers, duties, and responsibilities" of adjudication, including accepting and overseeing disputes concerning evidence. *See* Petition for Review at 31. As Arch explained with multiple citations to authority, *see id*., in constraining the ALJ's oversight to of those functions based on district director proceedings, the agency violated the Act.  No more was required to present the issue, which the Board failed to address.  *See Lincoln Elec. Co. v. St. Paul Fire*, 210 F.3d 672, 685 (6th Cir. 2000) (rejecting forfeiture argument where "the parties were sufficiently thorough in proffering to the district court their concerns, differences of opinion, and preferred sources of precedent"); *see also Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017) ("An *argument* is not forfeited on appeal because a particular authority or strain of the argument was not raised below, as long as the *issue* itself was properly raised."); *United Food & Commercial Workers Union v. Southwest Ohio*, 163 F.3d 341, 361

n.9 (6th Cir. 1998) (because the parties raise the….argument in substance and the issue involves purely legal questions, we shall consider the issue on appeal").

3.    Arch has argued throughout these proceedings, as well as in its initial complaint in *Acosta*, that the Bulletin required notice-and-comment rulemaking. *But see* Resp. at 3 ("Employer forfeited this argument."). That issue has been preserved. The Director's point that a more nuanced argument supporting that issue may not be made now, no less his miscited authority, does not support his argument for forfeiture.

Though the Black Lung Benefits Act requires exhaustion, those exhaustion principles apply to *issues*, not *arguments*. The Director, though, uses the expressions interchangeably as though they were synonyms. They are not.

Appreciating what the Director misses, Courts have "recognized a distinction between failing to properly raise a claim before the district court and failing to make an argument in support of that claim." *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022) (quoting *Leonor v. Provident Life & Acc. Co.*, 790 F.3d 682, 687 (6th Cir. 2015)); *Hugueley v. Mays*, 964 F.3d 489, 501 (6th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 509, 141 S. Ct. 1744 (2021) (same); *United States v. Hamm*, 952 F.3d 728, 742 (6th Cir. 2020), *cert. denied*, 206 L. Ed. 2d 837, 140 S. Ct. 2695 (2020), and *cert. denied sub nom. Shields v. United States*, 208 L. Ed. 2d 60, 141 S. Ct. 312 (2020) (same); *Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017) ("An *argument* is not forfeited on appeal because a particular authority or strain of the argument was not raised below, as long as the *issue* itself was properly raised.") (emphasis added); *Hintz v. JP Morgan*, 686 F.3d 505, 508 (8th Cir. 2012) ("there is a difference between a new argument and a new issue"). Thus, as long as an issue has been properly raised, "a party can make any argument in support of that claim." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992) (emphasis added).

Here, Arch preserved the issue of whether the Bulletin required rulemaking, having attempted to litigate the issue since its original complaint in *Acosta*:

- "This bulletin was not issued for notice and comment in accordance with 5 USC 553(b)). *See Complaint, Arch v. Perez*, No. 16-669 (D.D.C. 2016), at ¶ 43;

- "The Department of Labor has not published any of the [Bulletin's] regulatory changes in the Federal Register for notice, comment, or public participation, as is required by the APA and the Black Lung Benefits Act." *Id.* at ¶ 67;

- "Not only is DOL issuing new rules of liability under the guise of a "Bulletin" without following the APA's notice and comment requirements but "it is changing its longstanding interpretation of regulations through litigation, which is not permitted." *Howard v. Apogee*, No. 2017-BLA-05163, at 21-22

- "DOL now imposes liability on a self-insurer based on the miner's last day of work, rather than on the company who was responsible for the liability on the date the claim was filed…DOL's changed interpretation is evident in how it imposed liability in this case as well as several claims before Bulletin 16-01 was enacted… These cases clearly establish that DOL changed its interpretation of its self-insurance regulations without going through notice and comment rulemaking." *Id.* at 21-22;

- "DOL's newfound policy and corresponding change in its interpretation of its regulations is irrational, inconsistent with the BLBA and the APA, and violates fundamental principles of corporate and insurance law." Petition for Review at 32;

- "application of the policy reflected in Bulletin 16-01 imposes a new scheme of liability that violates the APA and the BLBA…These retroactive effects contravene the Constitution, the APA, and the BLBA, rendering the Bulletin policy invalid as applied. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994) (agency action is impermissibly retroactive if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed"); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998) ("retroactivity is not favored in the law"); *Klinger v. Missouri*, 80 U.S. 257, 261 (1871)(*ex post facto* laws are "repugnant in the law"); *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 859-60 (D.C. Cir. 2002)("an agency may not promulgate retroactive rules"). Its interpretation of the regulations cannot be invoked to hold Arch responsible." *Id.* at 33-35.

Nothing more was required to preserve the issue. *See, e.g., Barnard*, 869 F.3d at 483.

4.      Finally, as Arch's Motion for Reconsideration explained, the *Acosta* Court did not "h[o]ld that it lacked jurisdiction only because Bulletin 16-01 is not a rule." *Compare* Resp. at 3 *with* Motion for Reconsideration at 2-4.  The Director's observation that the *Acosta* Court "concluded that Arch's argument should be decided through BLBA procedures rather than in federal court" makes that plain.

## CONCLUSION

For the foregoing reasons and those articulated in Arch's prior briefing, the Board should vacate its October 18, 2022 Decision and Order and should remand the case to a constitutionally secure ALJ for full consideration of Arch's four-count complaint in *Acosta*.

Respectfully Submitted,

Michael A. Pusateri
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 533-2354/(202) 261-0106
pusaterim@gtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2022, the undersigned served the foregoing Reply in Further Support of Motion for Reconsideration on the following parties by electronic mail:

Jeffrey S. Goldberg, Esq.
BRB-BLLLS@dol.gov; mailto:liao.cynthia@dol.gov

Diane Jenkins, Lay Representative
djenkins@stonemtn.org


Michael A. Pusateri

**U.S. Department of Labor**    Benefits Review Board
200 Constitution Ave. NW
Washington, DC 20210-0001



BRB No. 20-0229 BLA
Case No. 2017-BLA-05163

DAVID M. HOWARD )
)
    Claimant-Respondent )
)
)
    v. )
)
APOGEE COAL COMPANY )
) **NOT-PUBLISHED**
    and )
)
ARCH COAL, INCORPORATED ) DATE ISSUED: 02/17/2023
)
    Employer/Carrier- )
    Petitioners )
)
DIRECTOR, OFFICE OF WORKERS' )
COMPENSATION PROGRAMS, UNITED )
STATES DEPARTMENT OF LABOR )
) ORDER on
    Party-in-Interest ) RECONSIDERATION

    Employer has filed a timely motion for reconsideration with suggestion for en banc review of the Benefits Review Board's decision in *Howard v. Apogee Coal Co.*, BLR , BRB No. 20-0229 BLA (Oct. 18, 2022); 33 U.S.C. §921(b)(5); 20 C.F.R. §802.407.

After consideration of Employer's motion, no member of the Board has voted to vacate or modify the Board's decision. Therefore, Employer's motion for reconsideration and suggestion for reconsideration en banc is denied. 20 C.F.R. §§801.301(b), (c), 802.407(b), (d), 802.409.

By Order of the Board:

Thomas O. Shepherd, Jr.
Clerk of the Appellate Boards

# CERTIFICATE OF SERVICE

2020-0229-BLA David M. Howard v. Apogee Coal Company, Arch Coal, Inc., Director, Office of Workers' Compensation Programs (Case No. 17-BLA-5163)

I certify that the parties below were served this day.

_02/17/2023_
(DATE)

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

David M. Howard
P.O. Box 135
Baxter, KY 40806
--*Certified*

Diane Jenkins
Stone Mountain Health Services
P.O. Box Drawer S
St. Charles, VA 24282
--*Certified*

Hon. Lauren C. Boucher
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

Mark Solomons
Greenberg Traurig LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
--*Certified*

Mr. Michael Chance
District Director
U.S. Department of Labor
Suite C-3515, NDOL
Washington, DC 20210

Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Washington, DC 20001
--Electronic

Office of the Solicitor, Division of Black Lung and Longshore Services
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210
--Electronic

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |  |
|---|---|---|---|
| APOGEE COAL COMPANY, <u>et al</u>. | ) | | |
| | ) | | |
| Petitioners, | ) | | |
| | ) | | |
| v. | ) | Case No. | _____ |
| | ) | | |
| DIRECTOR, OFFICE OF WORKERS' | ) | | |
| COMPENSATION PROGRAMS, UNITED | ) | | |
| STATES DEPARTMENT OF LABOR, and | ) | | |
| DAVID M. HOWARD, | ) | | |
| | ) | | |
| Respondents. | ) | | |

### PETITION FOR REVIEW OF ORDERS OF THE BENEFITS
### REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

Apogee Coal Company and Arch Resources, herewith petition this Court for review of the decision and order of the Benefits Review Board, United States Department of Labor, in <u>David M. Howard v. Apogee Coal Co., et al.</u>, BRB No. 2020-0229 BLA issued on October 18, 2022, and the related Order Denying Reconsideration on February 17, 2023.  This Court has jurisdiction of this matter pursuant to Section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c).

Respectfully submitted,

<u>s/Michael A. Pusateri</u>
Michael A. Pusateri
(202) 533-2354; pusaterim@gtlaw.com
Mark Solomons
(202) 533-2361; solomonsm@gtlaw.com

GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, D.C.  20037

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2023, a copy of the foregoing Petition for Review of Orders of the Benefits Review Board, United States Department of Labor was served on the following parties by electronic mail.

Jeffrey S. Goldberg, Esq.
Office of the Solicitor
U.S. Department of Labor
Suite N-2117
200 Constitution Avenue, N.W.
Washington, D.C. 20210
Goldberg.jeffrey@dol.gov

Diane Jenkins, lay representative
Stone Mountain Health Services
P.O. Box Drawer S
St. Charles, VA 24282
djenkins@stonemtn.org

s/Michael Pusateri
Michael Pusateri

U.S. DEPARTMENT OF LABOR

Office of Workers' Compensation
Division of Coal Mine Workers' Compensation
Central Mail Room
PO Box 8307
London, KY 40742-8307



Phone: 1-800-366-4599 or 606-218-9300, extension 701233
FAX: (606) 432-3574

NOTICE OF CLAIM

Date Issued: December 9, 2014

| Miner's Name: David M Howard | |
|---|---|
| Claimant's Name/Address | Claim Number |
| David M Howard<br>P O Box 135<br>Baxter, KY  40806 | XXX-XX-6902 LM C<br>CASE ID: B9JWB-2014324 |
| Potentially Liable Operator/Address | Insurance Carrier/Address |
| Apogee Coal Company Llc<br>% Patriot Coal Corp.<br>12312 Olive Blvd. Ste 400<br>St. Louis, MO 63141 | Self-insured thru Patriot Coal Company<br>C/O Underwriters  TPA<br>P. O. Box 23640<br>Louisville, KY 40223<br><br>Policy Number: N/A - Self-insured |

The claimant named above has filed a claim for benefits under the Black Lung
Benefits Act, 30 U.S.C. 901 et seq.  We are currently developing the claim to
determine the claimant's eligibility.  Enclosed is a copy of the claimant's
application and any evidence OWCP has obtained to date relating to the miner's
employment.

This Notice of Claim is issued pursuant to 20 C.F.R. 725.407.  We have
identified you as a 'potentially liable operator' in this claim.  A
"potentially liable operator" is an employer of the miner (or a successor of an
employer pursuant to 20 C.F.R. 725.492) who may be held liable for the payment
of benefits should the claimant be found entitled to them.  Designation as a
potentially liable operator does not constitute a determination that you are in
fact liable.  Where OWCP's records indicate you obtained a policy of insurance,
and the claim falls within such policy, we are sending a copy of this notice to
your insurer.  You and your insurer shall be considered parties to the claim
unless an adjudication officer dismisses you and you are not thereafter
notified again of your potential liability.

**Within 30 days of receipt of this Notice of Claim, you (or your insurer) must
file a response pursuant to 20 C.F.R. 725.408 indicating your intent to accept
or contest your identification as a potentially liable operator.**  This time
period may be extended for good cause shown if you file an extension request
with the District Director prior to expiration of the 30 days.  We have
enclosed a form entitled 'Operator Response to Notice of Claim' for your use.
Please send your response and any other correspondence to the Office of
Workers' Compensation Programs, Division of Coal Mine Workers' Compensation, at
the address shown above.

DIRECTOR'S EXHIBIT        21-1
NO.     21     CONSISTING
OF     7     PAGES

J.A. 284

If you accept liability for the payment of benefits should the claimant obtain an award (*i.e.* you accept that you are the 'responsible operator'), please mark the box in Section A (entitled 'Acceptance of Liability') on the Operator Response to Notice of Claim. **Accepting liability means only that you are the operator liable for the payment of any benefits due; it does not constitute a stipulation or admission that the claimant is entitled to benefits.**

If you wish to contest your status as a potentially liable operator, you must state the precise nature of your disagreement by accepting or denying each of the five assertions listed in Section B (entitled 'Contest of Potential Liability – Operator Assertions) on the Operator Response to Notice of Claim. The assertions are limited to information about your employment of the miner and your status as an operator. If you deny any of the five operator assertions, you have 90 days from your receipt of this notice to submit documentary evidence in support of your response. This time period may be extended for good cause shown if you file an extension request with the District Director prior to expiration of the 90 days. **Absent extraordinary circumstances, no documentary evidence relevant to the assertions set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim) may be admitted in any further proceedings unless it is submitted within 90 days of your receipt of this notice or an extended period authorized by the District Director.**

**If you do not respond within 30 days of your receipt of this Notice of Claim, you will not be allowed to contest your liability for payment of benefits on any of the grounds set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim).**

**Please note that your response need not include evidence about any other potentially liable operator and its employment of the miner.** At the conclusion of the initial evidence-gathering period, the District Director will issue a Schedule for the Submission of Additional Evidence pursuant to 20 C.F.R. 725.410. In that schedule, the District Director will select and designate one "responsible operator" from the potentially liable operators notified. All parties will then be given an opportunity to present evidence regarding the liability of the designated responsible operator or any other operator.

**NOTE: THE 'OPERATOR RESPONSE TO NOTICE OF CLAIM' MUST INCLUDE THE ORIGINAL SIGNATURE OF AN AUTHORIZED OFFICIAL FOR THE POTENTIALLY LIABLE RESPONSIBLE OPERATOR OR ITS INSURANCE CARRIER. WE CANNOT ACCEPT A COPY OF THE RESPONSE SENT BY FAX IN LIEU OF THE ORIGINAL DOCUMENT.**

We are available to assist you with this process. I may be contacted at the address and telephone number shown above.

Sincerely,

*Delia Dean for*

Dennis Glaze
Claims Examiner

Enclosures: Copy of claim and evidence relating to miner's employment history
Operator Response to Notice of Claim form (Form No. CM-2970a)

21-2

<u>PROOF OF SERVICE</u>

Claimant: David M Howard
CLAIM NO.: **PI** XXX-XX-6902 LM C
  **CASE ID: B9JWB-2014324**

<u>CERTIFICATION</u>

I hereby certify that on December 9, 2014, a copy of the Notice of Claim (CM971a) was mailed to the parties and their representatives at the addresses listed below.

_Delia Dean for_
_____
Dennis Glaze
Claims Examiner

<u>REGULAR MAIL</u>

David M Howard
P O Box 135
Baxter, KY  40806

Ron Carson, Program Director
Stone Mtn. Health Services
P O Drawer S
St Charles, VA  24282-0269

<u>CERTIFIED MAIL</u>

Apogee Coal Company Llc
% Patriot Coal Corp.
12312 Olive Blvd. Ste 400
St. Louis, MO 63141

Self-insured thru Patriot Coal Company
C/O Underwriters  Tpa
P. O. Box 23640
Louisville, KY 40223

21.3

# OPERATOR RESPONSE TO NOTICE OF CLAIM

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name: | Claimant's Name: | Claim Number: | OMB No.: 1240-0033 Expires: 03/31/2017 |
|---|---|---|---|
| **David M Howard** | **David M Howard** | **PI XXX-XX-6902 LM C CASE ID: B9JWB-2014324** | |

| Responsible Operator's Name: | Insurer's Name: | Policy No. |
|---|---|---|
| **Apogee Coal Company Llc** | **Self-Insured thru Patriot Coal Company** | **N/A - Self-Insured** |

**This information is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et.seq.) (20 CFR 725.408). Please check appropriate boxes and provide requested information. While you are not required to respond, if you fail to do so within 30 days of your receipt of the Notice of Claim you shall not be allowed to contest your liability for the payment of benefits on any of the five specific grounds set forth below in Section B. (20 CFR 725.408). You must send a copy of this response to the claimant by regular mail.**

## A. Acceptance of Liability

☐   The named potentially liable operator is the responsible operator within the meaning of the Black Lung Benefits Act

## B. Controversion of Liability

Indicate whether the named potentially liable operator accepts or denies the assertions that follows.
Acceptance of these assertions is not necessarily an acceptance of liability. You may still contest your liability on any other available grounds.

| Accepts | Denies | |
|---|---|---|
| ☐ | ☐ | This operator was an operator for any period after 06/30/73. |
| ☐ | ☐ | This operator employed the miner <u>as a miner</u> for a cumulative period of not less than one year. |
| ☐ | ☐ | The miner was exposed to coal mine dust while working for this operator. |
| ☐ | ☐ | The miner's employment with this operator included at least one working day after December 31, 1969. |
| ☐ | ☐ | This operator or its insurer is financially capable of assuming liability for the payment of benefits. |

**Time period for submission of evidence.** Within 90 days of the date on which you received the Notice of Claim, you may submit documentary evidence in support of your positions asserted in Section B. For any of the assertions you denied, you must submit all relevant documentary evidence within this 90 day period. The time period may be extended for good cause shown if an extension request is filed with the district director prior to expiration of the 90 days period. You must include a statement of reasons why you need additional time with your extension request.

### Privacy Act Statement

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR 410 or 20 CFR 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)

### Public Burden Statement

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N. W., Washington, D.C. 20210. **Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)**

### Notice

If you have a substantially limiting physical or mental impairment, Federal disability nondiscrimination law gives you the right to receive help from OWCP in the form of communication assistance, accommodation and modification to aid you in the claims process. For example, we will provide you with copies of documents in alternate formats, communication services such as sign language interpretation or other kinds of adjustments or changes to account for the limitations of your disability. Please contact our office or the claims examiner to ask about this assistance.

Form CM-2970a
Rev. Aug. 2013

21·4

## C. Additional Information

Please answer the questions below. If the space provided for any response is inadequate, please continue your response on a blank sheet of paper and attach it to the form. If you are unable to respond to these questions within the 30-day period for accepting or denying the assertions set forth in Section B above (*i.e.* within 30 days of receipt of the Notice of Claim), you should return this form in compliance with the 30-day time limitation and provide the information requested in this section within 90 days of your receipt of the Notice of Claim.

1. The miner was employed by the named potentially liable operator (list all periods of employment):

From: _____     To: _____

_____           _____

_____           _____

| Miner's Job Classification(s)/ Type(s) of Work Performed | Time Performed (Beginning and Ending Dates) | Name and Location of Mine or Facility (County and State) |
|---|---|---|
| | | |
| | | |
| | | |

2. Our records indicate that the potentially liable operator is insured as indicated in the header of page 1. If this information is incorrect, please complete information below.

| Insurance Carrier(s) | Policy Number | Dates of Coverage |
|---|---|---|
| | | |
| | | |

3. Is the named potentially liable operator affiliated in any way with any of the other firms identified in the Notice of Claim as potentially liable operators?  ☐ Yes  ☐ No  If yes, please explain the nature of the relationship.

_____

_____

_____

4. Has the named potentially responsible operator transferred or sold its mine, mines, or coal mining business, or substantially all of the assets thereof, to another person or business organization?  ☐ Yes  ☐ No  If yes, please explain the details of the transaction(s), including the name(s) of the person(s) or organization(s) acquiring the property.

_____

_____

_____

5. Please set forth any additional facts regarding potential liability you would like to have considered.

_____

_____

_____

| Name and Address of Firm Completing Form | Name of Person Completing Form | |
|---|---|---|
| | Title | |
| | Signature | Date |

Form CM-2970a
Rev. Aug. 2013

21-5

## -0015374352

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☒ Agent  ☐ Addressee

B. Received by (Printed Name)  _____  Correnct.  
C. Date of Delivery  12-12-14

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Apogee Coal Company Llc
% Patriot Coal Corp.
12312 Olive Blvd. Ste 400
St. Louis, MO 63141
        **CASE ID: B9JWB-2014324**

Notice of Claim

3. Service Type
☒ Certified Mail®  ☐ Priority Mail Express™
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

7014 1820 0001 2437 2255

PS Form 3811, July 2013  Domestic Return Receipt

21.6

-0015374352

UNITED STATES POSTAL SERVICE

MO 600

12 DEC '14

PM 9 L



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

° Sender: Please print your name, address, and ZIP+4® in this box°

## US DEPARTMENT OF LABOR
## DCMWC CENTRAL MAIL ROOM
## CORRESPONDENCE
## PO BOX 8307
## LONDON, KY 40742-8307

21-7

**-0003004351**

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>☐ Agent<br>☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Patriot Coal Company<br>C/O Underwriters Tpa<br>P. O. Box 23640<br>Louisville, KY 40223<br>     **CASE ID: B9JWB-2014324**<br><br><u>Notice of Claim</u> | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>DEC 1 1 2014<br><br>3. Service Type<br>☑ Certified Mail  ☐ Priority Mail Express™<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ Collect on Delivery<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7014 1820 0001 2437 2262 |
| PS Form 3811, July 2013 | Domestic Return Receipt |

21·8

-0003004351

United States Postal Service
KY 400
11 DEC '14
PM 1 L



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Central Mail Room**
**PO Box 8307**
**London, KY 40742-8307**



**Phone: 1-800-366-4599 or 606-218-9300, extension 701233**
**FAX: (606) 432-3574**

| Miner's Name | Designated Responsible Operator |
|---|---|
| David M Howard | Apogee Coal Company Llc |
| | % Patriot Coal Corp. |
| Claimant's Name | 12312 Olive Blvd. Ste 400 |
| David M Howard | St. Louis, MO 63141 |
| Claimant's Address | Insurer |
| P O Box 135 | Self-insured thru Patriot Coal Company |
| Baxter, KY 40806 | C/O Underwriters Tpa |
| | P. O. Box 23790 |
| | Louisville, KY 40223 |
| DOL Claim Number | Date Issued |
| PI XXX-XX-6902 LM C | August 25, 2015 |
| CASE ID: **B9JWB-2014324** | |

### SCHEDULE FOR THE SUBMISSION OF ADDITIONAL EVIDENCE

David M Howard filed an application for benefits under the Black Lung Benefits Act on November 19, 2014. We have reviewed the medical evidence developed under 20 C.F.R. § 725.405, and the evidence relevant to coal mine operator liability received under 20 C.F.R. § 725.408. A copy of our "Summary of Medical and Employment Evidence" is attached.

Based on a review of that evidence, we have made the following preliminary conclusions:

1. The claimant is entitled to benefits if we issued a decision at this time; and
2. The coal mine operator named above is the responsible operator liable for the payment of benefits.

**Entitlement**

We have reviewed the evidence developed thus far. Our preliminary analysis is that the claimant is entitled to benefits if we issued a decision at this time. Our analysis of the evidence and the reasons for our conclusions are set forth in the attached Summary. In addition, a "Guide for Submitting Additional Evidence" is attached, explaining the limitations on the quantity of evidence that each party may submit and the types of medical evidence sufficient to establish each element of entitlement.

The responsible operator may respond to this schedule by September 24, 2015, in the manner prescribed in 20 CFR 725.412(b) and either accept or reject the claimant's entitlement to benefits. If the responsible operator does not respond, it will be considered to have contested the claimant's entitlement, and will be liable for the cost of obtaining additional medical and other necessary evidence in the event that the claimant is ultimately found entitled to benefits. The Black Lung Disability Trust Fund will be liable for those costs if the claimant is ultimately found entitled to benefits and this office has not designated a responsible operator.

*26-1*

DIRECTOR'S EXHIBIT
NO. 26 CONSISTING
OF 23 PAGES

The claimant and the designated responsible operator listed above may now submit to this office additional medical evidence as to the claimant's entitlement. 20 C.F.R. § 725.414(a). After that evidence is submitted, and we complete any additional processing that we believe may be necessary (which may include an informal conference if all parties are represented and the other requirements of 20 C.F.R. § 725.416 are met), we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judges at that time.

The regulations implementing the Black Lung Benefits Act do not require that parties submit any additional medical evidence on entitlement at this point. Instead, parties may wait until the case is referred to the Office of Administrative Law Judges following a request for a hearing. 20 C.F.R. § 725.456(b)(2). If no party submits additional medical evidence on entitlement to our office, we will base our proposed decision and order on the preliminary conclusions stated above.

Any party that wishes to submit medical evidence must mail that evidence to this office, and send copies to the other parties to the claim. Such evidence must be postmarked on or before the dates shown below:

**October 24, 2015:** By this date, submit evidence that supports your position

**November 23, 2015:** By this date, submit evidence that responds to the evidence that:
(1) is on record already, as described in the attached documents, and/or
(2) may be submitted between now and **October 24, 2015** by some other party to this claim

Either party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above. See the enclosed document "Extensions of Time – Showing Good Cause," for important information about extension requests.

**Parties should take note that the amount of medical evidence that parties may submit is limited. 20 C.F.R. § 725.414. These limitations are explained in detail in the attached Guide. We encourage you to get advice from an attorney or other qualified representative before submitting any additional evidence. A claimant whose application is finally approved and who uses the services of an attorney in establishing entitlement may be entitled to a reasonable attorney's fee. If the designated responsible operator or the Trust Fund challenge the claimant's entitlement, and is ultimately determined to be liable, the responsible operator or the fund will also be liable for the claimant's attorney's fee. A claimant will not be liable for any attorney's fee if his or her claim is denied.** However, a claimant may be liable for a fee if he or she is represented by a person other than an attorney. If a party is represented by a person other than an attorney, the party and the representative should complete and sign the enclosed authorization form (CM-1078), and return it to this office.

The designated responsible operator has the right to require the miner to submit to a complete pulmonary evaluation. 20 C.F.R. § 725.414(a)(3)(i). This evaluation must take place within 100 miles of the miner's residence or at a location no farther from the claimant's residence than the distance that the miner traveled in order to obtain the complete pulmonary evaluation provided by the Department under 20 C.F.R. § 725.406, whichever is greater. A responsible operator may ask this office to approve a trip of greater distance.

Liability

Based on the evidence developed thus far, we have made a preliminary designation of Apogee Coal Company Llc as the responsible operator liable for the payment of benefits. Our analysis of that evidence and the reasons for our conclusions are set forth in the attached Summary.

The designated responsible operator may respond to this schedule by September 24, 2015, and accept or reject its designation. If the responsible operator does not respond, it will be deemed to accept its designation and to waive its right to contest its liability in any further proceedings.

26·2

The designated responsible operator listed above may now submit to this office additional documentary evidence relevant to liability, and may identify witnesses relevant to liability that the designated responsible operator intends to call if the case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.414(b), (c). Absent a showing of extraordinary circumstances, no documentary evidence relevant to liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.456(b)(1). In addition, the designated responsible operator may no longer submit evidence relevant to its status as a potentially liable operator; operators notified of their potential liability were required to submit all such evidence within 90 days after receiving notification. 20 C.F.R. § 725.408(b)(2). Accordingly, the designated responsible operator may now submit only that evidence relevant to whether another potentially liable operator should have been designated the responsible operator. Other potentially liable operators may also submit evidence relevant to liability.

Any party that wishes to submit liability evidence or identify liability witnesses, must mail that evidence or identification to this office, and a copy to the other parties to the claim, in accordance with the following schedule:

**October 24, 2015:**     Evidence that supports each party's position

**November 23, 2015:**     Evidence that responds to evidence submitted by another party

Any party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above.

After any additional evidence is submitted, we may undertake additional processing, including the notification of additional potentially liable operators and the designation of another responsible operator. After we conclude our processing, we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judge.

Please contact our office if you need assistance or have questions about the "Schedule for the Submission of Additional Evidence" or any of the other documents we have enclosed.

Sincerely,

*Dennis D. Glaze*

Dennis Glaze
Claims Examiner
1-606-218-9300 x701233

Enclosures:     Summary of Medical and Employment Evidence
Copy of evidence
Guide for Submitting Additional Evidence
Addendum for Certification Numbers; Extensions of Time – Showing Good Cause; Summary of Medical and Employment Evidence LM; LM Guide for Submitting Additional Evidence; CM2970; Coal Mine Average Earnings

26·3

**PROOF OF SERVICE**

Claimant:   David M Howard

Claim Number: **PI** XXX-XX-6902 LM C

Case ID: **B9JWB-2014324**

**CERTIFICATION**

I hereby certify that on August 25, 2015, the Schedule for the Submission of Additional Evidence of District Director Roger Belcher was filed in the office of the District Director and a copy mailed to the parties and their representatives at the addresses listed below.

*Dennis D. Glaze*
_____

Dennis Glaze
Claims Examiner
1-606-218-9300 x701233

**CERTIFIED MAIL**

David M Howard
P O Box 135
Baxter, KY 40806

Apogee Coal Company Llc
% Patriot Coal Corp.
12312 Olive Blvd. Ste 400
St. Louis, MO 63141

Ron Carson, Program Director
Stone Mtn. Health Services
P O Drawer S
St Charles, VA  24282-0269

Patriot Coal Company
C/O Underwriters Tpa
P. O. Box 23790
Louisville, KY 40223

26·4

# Addendum: Certified Receipt Numbers

Case ID: **B9JWB-2014324**

David M Howard
Certified Receipt No.: **70140150000002761080**

Ron Carson, Program Director
Certified Receipt No.: **70140150000002761097**

Apogee Coal Company Llc
Certified Receipt No.: **70140150000002761103**

Patriot Coal Company
Certified Receipt No.: **70140150000002761110**

26.5

**U.S. DEPARTMENT OF LABOR**

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Central Mail Room**
**PO Box 8307**
**London, KY 40742-8307**



**Phone: 1-800-366-4599 or 606-218-9300, extension 701233**
**FAX: (606) 432-3574**

Miner Name:  David M Howard
Claimant Name:  David M Howard
Claim Number:  PI XXX-XX-6902 LM 02
CASE ID:  **B9JWB-2014324**

**August 25, 2015**

## Attachment to Schedule for Submission of Additional Evidence (SSAE)

## Extensions of Time – Showing Good Cause

The District Office will *not* routinely authorize extensions of time for development beyond those already provided for by the enclosed Schedule for the Submission of Additional Evidence (SSAE). Any party may request that the SSAE's time periods be extended by showing *good cause*; accordingly, the following information is required so the request can be properly evaluated.

**All extension requests must specify:**

    1.)    **Why the extension is needed;**
    2.)    **Why the evidence cannot be submitted within the allotted SSAE time-frames;**
    3.)    **What evidence will be submitted; and**
    4.)    **When the evidence will be submitted.**

*Note*: If an extension is granted, the period for submitting rebuttal evidence will be extended as well, but *only* for rebuttal of the evidence submitted during the extension period.

If you are planning to schedule a medical appointment, please make arrangements promptly. Include in any request for an extension of time an explanation for your failure to begin making arrangements within 15 days of your receipt of the SSAE. Likewise, if you are developing other forms of medical evidence, please begin development promptly or explain in an extension request your failure to begin development within 15 days.

An unexplained delay in scheduling medical appointments and/or initiating development of other medical evidence may result in a denial of the extension request if the delay is the basis of the extension request.

Thank you for your cooperation.

Revised August 22, 2012

*26·6*

Date Issued: **August 25, 2015**     DOL Claim No.: PI XXX-XX-6902 LM C
Miner's Name: David M Howard     Claimant's Name: David M Howard
CASE ID: B9JWB-2014324
Coal Mine Company: Apogee Coal Company Llc
Insurance Carrier: Self-insured thru Patriot Coal Company

The claimant named above has filed an application under the Black Lung Benefits Act, 30 USC 901 et seq. We have received the medical and employment evidence summarized below. Based on a preliminary review of this evidence, we have concluded that Apogee Coal Company Llc is the responsible operator liable for the payment of any benefits in this claim. We have also concluded that the claimant is entitled to benefits if we made a decision at this time. A summary of the medical and employment evidence and an analysis of the evidence are set forth below. Copies of all the evidence are attached to this document.

In order to qualify for black lung benefits, the claimant must prove the following facts:

The claimant worked as a coal miner;
The claimant has pneumoconiosis (black lung disease);
The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
The claimant has a totally disabling respiratory or pulmonary impairment; and
The claimant's totally disabling impairment is caused at least in part by pneumoconiosis.

The evidence which we have received so far would support the following findings:

(X)     The claimant worked as a coal miner for 17+ years;
(X)     The claimant has pneumoconiosis;
(X)     The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
(X)     The claimant has a totally disabling respiratory or pulmonary impairment; and
(X)     The claimant's totally disabling impairment was caused at least in part by pneumoconiosis.

However, the evidence also indicates that:

()     The claimant did not work as a coal miner;
()     The claimant does not have pneumoconiosis;
()     The claimant's pneumoconiosis was not caused by exposure to coal mine dust;
()     The claimant does not have a totally disabling respiratory or pulmonary impairment; and
()     The claimant's totally disabling impairment was not caused at least in part by pneumoconiosis.

26·7

**ENTITLEMENT ANALYSIS:**

Based on the preliminary analysis of the medical evidence received to date, we have determined the following:

**PRIOR FILINGS:**

The claimant filed a prior claim on March 3, 2006. That claim was withdrawn on June 2, 2006. The claim is considered not to be filed per 20 CFR 725.306.

**RELATIONSHIP/DEPENDENCY:**

The file includes a marriage certificate indicating that the miner married Cynthia on September 7, 2001. Therefore, the requirements of 20 CFR 725.204(a)(1) and 725.205(a) and 725.205 (e) which relate to relationship and dependency are met.

**PRESENCE OF PNEUMOCONIOSIS (BLACK LUNG DISEASE):**

For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical or "clinical" pneumoconiosis and statutory or "legal" pneumoconiosis.

Clinical pneumoconiosis as defined in 20 CFR 718.201(c)(1): "those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate material in the lungs and the fibrotic reaction of the lung tissue to the deposition caused by dust exposure in coal mine employment. This includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

On 03/07/2015, Dr. DePonte, a Board-certified; B-reader, determined the x-ray taken of the miner's chest on 03/04/2014 as positive 1/1 for the presence of pneumoconiosis. On 06/08/2015, Dr. Gaziano, a B-reader, determined the quality of this x-ray as acceptable. Therefore, based on the x-ray evidence presented, it is determined this miner has clinical simple pneumoconiosis.

Legal pneumoconiosis is defined under 20 CFR 718.201(a)(2) as: "any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment, including any chronic pulmonary disease or respiratory impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

On 03/04/2015, Dr. Ajjarapu examined this miner and opined this miner has clinical pneumoconiosis based on the chest x-ray of the miner's chest taken on 03/04/2015. She further determined this miner suffers from legal pneumoconiosis based on the chronic bronchitis. Dr. Ajjarapu expounded that the miner's diagnosed chronic bronchitis is based on the presence of symptoms of daily cough with sputum production and shortness of breath. Dr. Ajjarapu noted that these findings are the definition of legal pneumoconiosis. Dr. Ajjarapu also noted the results of this miner's Pulmonary Functions Tests were below the Federal Black Lung Disability Standards. These tests were validated by Dr. Gaziano on 04/09/2015. Therefore, based on the professional medical opinion of Dr. Ajjarapu and the qualifying Pulmonary Functions Tests, it is determined that this miner suffers with legal pneumoconiosis. The medical evidence in the claim establishes the presence of pneumoconiosis. The presence of the disease is established by X-ray reading and corroborated by evidence of the disease based upon physical examination and a review of the objective testing. The requirements of 20 CFR 718.202 are met and, therefore, presence of the disease has been established.

Disease is established under the Fifteen Year Presumption pursuant to Section 1556(a) of the PPACA and Section 411(c)(4) of the Black Lung Benefits Act, 30 U.S.C. 921(c)(4).

20 CFR 718.202(a)(1) - established by x-ray
20 CFR 718.202(a)(4) - established by reasoned medical opinion

26·8

**RELATIONSHIP OF BLACK LUNG DISEASE TO COAL MINE EMPLOYMENT:**

On 03/04/2015, Dr. Ajjarapu provided a medical opinion that the miner's chronic bronchitis is based on the presence of respiratory symptoms. Dr. Ajjarapu continued to opine that the underlying etiology of this miner's underlying chronic bronchitis is his work in the mines and tobacco abuse. Dr. Ajjarapu determined that tobacco smoke and coal dust cause airway inflammation leading to bronchospasm and cause excessive airway secretions and bronchitic symptoms. In Dr. Ajjarapu's determination of the cause for the positive 1/1 reading of the x-ray, she opined that inhaled coal dust eventually causes macules and nodules to form in the lung tissue and these can be seen as opacities, as in the x-ray of this miner.

The miner was determined to have "legal pneumoconiosis" as that term is defined at 20 C.F.R. 718.201(a)(2), and therefore has proven a chronic lung disease or impairment arising out of coal mine employment. This finding was supported by a reasoned medical opinion (see C.F.R. 718.202(a)(4)). In light of this finding, no separate finding regarding disease causation is necessary.

The miner's pneumoconiosis was caused by his coal mine employment based upon the presumption in the regulations, 20 CFR 718.203(b) which states: If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment. The miner has established at least ten years of coal mine employment. A reasoned medical opinion also supports a finding that the disease arose at least in part out of coal mine employment. The presumption has not been rebutted.

20 CFR 718.201 (a) (2) established by regulation
20 CFR 718.203(b) - established by presumption

**DISABILITY AND RELATIONSHIP OF DISABILITY TO BLACK LUNG DISEASE:**

On 03/04/2015, Dr. Ajjarapu determined the spirometry shows severe pulmonary impairment; the arterial blood gases study show mild pre and post arterial hypoxemia and the miner's chest x-ray is positive for coal worker's pneumoconiosis. She concluded her examination with opining that based on the overall evaluation, this miner is totally disabled, his disability is multifactorial and it is due to both causes of extensive smoking and inhalational coal dust; this miner does not have the pulmonary capacity to do his previous employment.

The results of breathing tests (Pulmonary Function Studies) meet the regulatory standards to establish total disability. The results of the Arterial Blood Gas Studies do not meet the disability standards as set forth in the regulations. For the Pulmonary Function Studies to establish total disability under the regulations, that total disability must be DUE TO PNEUMOCONIOSIS. Because the presence of pneumoconiosis has been established, the claimant is considered to be disabled due to pneumoconiosis. The requirements of 20 CFR 718.204 are met and, therefore, total disability due to pneumoconiosis has been established.

20 CFR 718.204(b)(2)(i) - established by PFS

**FIFTEEN YEAR PRESUMPTION:**

This claim has been reviewed to determine if the changes in the Black Lung Benefits Act mandated by the Patient Protection and Affordable Care Act of 2010 (PPACA), Public Law 111-148 §1556(a), apply. Section 411(c)(4) of the Act provides presumptions of total disability due to pneumoconiosis or death due to pneumoconiosis under certain circumstances. The presumptions are applicable to claims that were filed before January 1, 1982 or after January 1, 2005, and were pending on or after March 23, 2010.

The presumption is available to miners who worked for a cumulative period of fifteen or more years in underground mining, or comparable surface mining, and the evidence establishes the existence of a totally disabling respiratory or pulmonary impairment. If a survivor establishes that the miner worked for fifteen or more years in coal mine employment and that the miner suffered from a totally disabling chronic respiratory or pulmonary impairment prior to death, it is presumed that the miner's death was due to pneumoconiosis. The determination of the existence of a

*26·9*

totally disabling respiratory or pulmonary impairment, for purpose of applying this presumption, shall be made in accordance with section 20 CFR 718.204.

For rebuttal in a miner's claim, the party opposing entitlement must establish either that the miner does not or did not have pneumoconiosis or that the miner's impairment did not arise out of or in connection with coal mine employment. In a survivor's case, the party opposing entitlement must provide evidence sufficient to rebut the presumption of death due to pneumoconiosis.

As discussed in the analysis of the admissible medical evidence, the evidence establishes that the miner has a disabling respiratory impairment as well as fifteen years of proven coal mine employment. The presumption has been invoked. The evidence establishes that the miner has a disabling respiratory impairment due to simple coal worker's pneumoconiosis and the presumption is not rebutted. An award is appropriate pursuant to Section 1556(a) of the PPACA and Section 411(c)(4) of the Black Lung Benefits Act, 30 U.S.C. 921(c)(4).

**SUBSEQUENT CLAIM**
This is a refiled claim rather than a modification request because more than one (1) year elapsed between the prior denial and the filing of this claim. This claim is approved pursuant to 20 CFR 725.309(d) as there has been a material change in condition.

**ENTITLEMENT**
Based upon the above, the claimant would be entitled to benefits.

**EMPLOYMENT ANALYSIS**
This miner was employed in our Nation's coal mining industry for 17+ years from 1978 thru 1996. This is based on a Social Security Earnings Record covering the period 1974 to 2013. The miner's last date of coal mine employment has been estimated to be December 3, 1996.

**LIABILITY ANALYSIS**
Apogee Coal Company Llc has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon the miner's self-reported employment history (911a) and his social security earnings record.

2. The miner's employment with this operator included at least one working day after 12/31/69 based upon the miner's self-reported employment history (911a) and his social security earnings record.

3. There is a rebuttable presumption that workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.

4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

5. This operator is the operator that most recently employed the miner according to the miner's self-reported employment history (911a) and his social security earnings record.

Based on the miner's self-reported employment history (911a) and his social security earnings record; the most recent coal mining company to employ this miner is Apogee Coal Company Llc from 1993 thru 1996. Information gathered from the Kentucky Worker's Compensation Office indicates that this miner suffered an on-the-job injury on December 3, 1996 and did not return to Apogee Coal Company Llc after the injury. The reported income for 1997 and 1998 from Apogee Coal Company Llc on the miner's social security earnings record has an undetermined origin.

26-10

Apogee Coal Company Llc was self-insured during this miner's employment. This miner has subsequent employment. However, the subsequent employment is not in the coal mining industry.

Therefore, it is determined that Apogee Coal Company Llc is the responsible operator in this claim.

A Notice of Claim was received by the potentially liable operator/carrier, Self-insured thru Patriot Coal Company, on December 11, 2014, as evidenced by the signed return receipt from the post office. The potentially liable operator/carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence. Therefore, in accordance with 20 CFR 725.408(b), no documentary evidence relevant to the grounds set forth in the Operator Assertions - 20 CFR 725.408(a)(2) - may be admitted in any further proceeding.

2611

# MEDICAL EVIDENCE

(The first letter of the letter codes with the test dates represents the submitting party for the evidence: "D" stands for Director (the Department of Labor), "R" for designated responsible operator, the employer, and "C" for claimant. The second letter of each code indicates if the evidence is "E" for Evidence of record, "N" for New evidence developed for this claim or "R" for Rebuttal evidence.)

**MINER:** David M Howard
**CLAIM NO.:** XXX-XX-6902 LM C
**CASE ID:** B9JWB-2014324

## X-ray Evidence

| X-RAY Film Date | Reread Date | Name of Reader | X-RAY Reader Qualifications | Film Quality | X-RAY Interpretation |
|---|---|---|---|---|---|
| 03/04/2015 | 03/07/2015 D-N | K. DePonte | B-reader; Board-certified | 1 | 1/1 |
| 03/04/2015 | 06/08/2015 D-N | D. Gaziano | B-reader | 1 | Quality Reading |

## Pulmonary Function Study (PFS) Evidence

| Date | Physician | Age/Height | FEV1 | MVV | FVC | FEV1 FVC | DISABILITY STANDARDS FEV1 | MVV | FVC | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/04/2015 D-N-Pre* | E. Ajjarapu | 56/68.0 | 167 | 71.23 | 2.65 | 6% | 1.97 | 079 | 2.50 | Yes |
| 03/04/2015 D-N-Post* | E. Ajjarapu | 56/68.0 | 1.89 | 69.59 | 2.87 | 66% | 1.97 | 079 | 2.50 | Yes |

* Validated by Dr. Gaziano on 04/09/2015

## Arterial Blood-gas (ABG) Evidence

| Date | Physician | Resting/Exercise? | PCO2 | PO2 | PO2 Disability Standards | Altitude | Valid? |
|---|---|---|---|---|---|---|---|
| 03/04/2015 D-N | E. Ajjarapu | Resting | 41 | 75 | 60.0 | 0-2999 | N/A |
| | | Exercise | 39 | 76 | 61.0 | 0-2999 | N/A |

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 03/04/2015 D-N | E. Ajjarapu - Board Certified in Family Practice | **Diagnosis** - Clinical pneumoconiosis based on the chest x-ray of the miner's chest taken on 03/04/2015. Legal pneumoconiosis based on the chronic bronchitis. Chronic bronchitis is based on the presence of symptoms of daily cough with sputum production and shortness of breath. **Etiology** - Chronic bronchitis is based on the presence of respiratory symptoms. He did describe presence of coughing and shortness of breath. Underlying etiologies of his underlying chronic bronchitis is his work in the mines and tobacco abuse. Both tobacco smoke and coal dust cause airway inflammation leading to bronchospasm and cause excessive airway secretions and bronchitic symptoms. Inhaled coal dust eventually causes macules and nodules to form in the lung tissue and these can be seen as opacities, as in the x-ray of this miner. **Impairment** - Spirometry shows severe pulmonary impairment, mild pre and post arterial hypoxemia and positive chest x-ray for coal worker's pneumoconiosis. Based on the overall evaluation, this miner is totally disabled. He has extensive work history and smoking history. He has no coronary artery disease. This miner's disability is multifactorial and it is due to both causes of extensive smoking and inhalational coal dust. He does not have the pulmonary capacity to do his previous employment. |

*26:12*

| 04/09/2015 D-N | D. Gaziano - Board Certified in Internal Medicine, Subspecialty in Pulmonary Disease NIOSH Certified B-reader | Pulmonary Functions Tests - The vents are acceptable. |
| --- | --- | --- |

### Length of Coal Mine Employment
The claimant has proven 17+ years of coal mine employment.

**GUIDE FOR SUBMITTING ADDITIONAL MEDICAL EVIDENCE**
**(MINER'S CLAIM)**

In order to receive Black Lung benefits, you must prove four medical "facts":

- You have pneumoconiosis (black lung disease);

- Your pneumoconiosis was caused at least in part by exposure to coal mine dust;

- You have a totally disabling respiratory or pulmonary impairment; and

- Your totally disabling impairment was caused at least in part by your pneumoconiosis.

"Pneumoconiosis" is a chronic lung disease caused by inhaling coal mine dust. X-ray, biopsy, and (in the case of a deceased miner) autopsy evidence may show the presence of certain types of pneumoconiosis in the lungs. Pneumoconiosis may also be diagnosed by a physician who finds a lung disease present which is caused by inhaling coal mine dust. "Totally disabled" means you are unable to perform the type of work you did as a coal miner because of a breathing impairment. Pneumoconiosis "causes" your total disability if the disease has a "material adverse effect" on your respiratory or pulmonary condition, or "materially worsens" a totally disabling impairment which is caused by another disease.

**NOTE: The Black Lung benefits program has limitations on the amount of medical evidence which the parties can submit. You are encouraged to get advice from an attorney or other qualified representative before submitting any additional evidence.**

The Black Lung benefits program regulations contain important limitations on the amount of medical evidence parties to a claim may submit. The following guidelines explain the quantity and types of evidence which you and the responsible operator (or the Department of Labor) may submit. You may submit the following types of evidence to prove you are entitled to benefits.

- No more than two chest X-ray interpretations. You may submit two x-ray readings of one film, or one reading each of two different films. NOTE: The professional training of the doctor who interprets the X-ray is important. If the doctor is trained as a "B"-reader and/or board-certified radiologist, his or her interpretation may be given more weight than an interpretation by a doctor who is not specially trained;

- No more than one report of each biopsy;

- No more than one report of an autopsy (if a survivor is pursuing a claim filed by a miner who is now deceased);

- The results of no more than two pulmonary function studies and two arterial blood gas studies; and

- No more than two medical reports containing a physician's assessment of the miner's respiratory or pulmonary condition.

**NOTE:** When you filed your application, you selected a physician to conduct a complete pulmonary examination, and the Department of Labor paid the costs of that examination. At your request, we will send the results of the objective testing to the physician of your choice. If your physician provides a medical report for our consideration, that report will count as one of the two reports which you may submit.

You may also submit the following types of evidence:

- No more than one physician's interpretation of each chest X-ray, pulmonary function study, arterial blood gas study, autopsy report, or biopsy report submitted by the responsible operator or the Department of Labor;

- No more than one physician's assessment apiece of any other test or procedure submitted by the responsible operator or the Department of Labor;

- No more than one statement from any physician who originally interpreted the chest X-ray or performed a biopsy or autopsy for you if the responsible operator or the Department of Labor submits rebuttal evidence involving that evidence;

26·14

- No more than one additional statement from a physician who prepared a medical report submitted by you if the responsible operator's or Department's rebuttal evidence tends to undermine your physician's conclusions.

- You may also submit treatment records from a hospital, clinic, or physician if your treatment involved a lung condition. There is no limit on the number of treatment records which you may submit.

- In order to assist you, the "Guide" describes each medical fact which you must prove and the evidence which may prove the fact. When we consider the evidence you submit, we must also consider any other properly submitted evidence as well.

**DISEASE:** You must prove you have pneumoconiosis. You may submit any or all of the following types of evidence:

- A chest X-ray interpreted by a doctor as showing simple or complicated pneumoconiosis.

- A biopsy report of your lung tissue.

- (For a claim filed by a miner who is now deceased), an autopsy of the deceased miner which includes a review of his or her lungs.

- A doctor's report which is based on an accurate knowledge of your work and medical history, symptoms, and medical testing. The doctor's report should not be based only on chest X-rays. The doctor must explain why he or she believes your lung condition is caused by working as a coal miner.

Each X-ray, biopsy report, autopsy report, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these procedures and reports.

**CAUSALITY:** You must prove your pneumoconiosis was caused at least in part by exposure to coal mine dust.

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked at least ten years as a coal miner you are entitled to a presumption that your Black Lung was caused by your exposure to coal mine dust. You are not required to submit any medical evidence. The Department of Labor or the responsible operator may submit evidence showing your Black Lung was not caused by exposure to coal mine dust. You may not exceed the limits on the amount of evidence required by the "Guide."

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked fewer than ten years as a coal miner you must submit evidence that your exposure to coal mine dust caused your Black Lung. An X-ray which shows you have Black Lung is not enough to prove that coal mine dust exposure caused the disease. A doctor's opinion that your Black Lung was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

- <u>If you submit a medical report from a physician who has diagnosed the presence of a lung disease</u> you must submit evidence that your exposure to coal mine dust caused the lung disease at least in part. A doctor's opinion that your lung disease was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

**TOTAL DISABILITY:** You must prove that you have a totally disabling respiratory or pulmonary impairment. You may submit any or all of the following types of evidence:

- A chest X-ray, biopsy, or autopsy interpreted by a doctor as showing complicated pneumoconiosis.

- The results of no more than two pulmonary function studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations for your gender, height, and age on the day you take the test.

26·15

- The results of no more than two arterial blood gas studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations.

- A doctor's report which is based on an accurate knowledge of your work and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your lung condition causes a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.

- Each X-ray, pulmonary function study, arterial blood gas study, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these studies and reports. The limitations on the amount of evidence which you may submit must be strictly observed.

**DISABILITY CAUSATION:** You must prove that your Black Lung is a "substantially contributing cause" of your totally disabling respiratory or pulmonary impairment. Proving that you are totally disabled is not enough to prove that Black Lung is one of the causes of your disability. A doctor's opinion may be sufficient to prove your Black Lung is the cause, or one of the causes, of your disability. The doctor should base his or her opinion on an accurate knowledge of your work and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your Black Lung causes, or contributes to, a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.

26·16

**OPERATOR RESPONSE TO
SCHEDULE FOR SUBMISSION OF
ADDITIONAL EVIDENCE**

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name:<br>**David M Howard** | Claimant's Name:<br>**David M Howard** | Claim Number:<br>**PI XXX-XX-6902 LM C<br>CASE ID: B9JWB-2014324** | OMB No.: 1240-0033<br>Expires: 03/31/2017 |
|---|---|---|---|
| Responsible Operator's Name:<br>**Apogee Coal Company Llc** | Insurer's Name:<br>**Self-insured thru Patriot Coal<br>Company** | Policy No.<br>**Self-insured** | |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.) (20 CFR 725.410). Please check appropriate boxes below. While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as the responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of any benefits to which the claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim. You also will be deemed to have contested the claimant's entitlement to benefits.

**A.   Liability**

The named responsible operator:

☐  Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.

☐  Disagrees with its designation as the responsible operator liable for the claim.

If you disagree, the schedule for the submission of additional evidence advises you of the time period within which you may submit evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2). Absent extraordinary circumstances, **no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the District Director in compliance with a schedule for the submission of additional evidence.**

**B.   Claimant's Entitlement**

The named responsible operator:

☐  Accepts the claimant's entitlement to benefits.

☐  Contests the claimant's entitlement to benefits.

If you do not accept the claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the claimant's entitlement. If you enter no response in this section, you will be deemed to have contested the claimant's entitlement to benefits.

| Name and Address of Firm Completing Form | Name of Person Completing Form |  |
|---|---|---|
| | Title | |
| | Signature | Date |

**Privacy Act Statement**

**The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR 410 or 20 CFR 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose**

**such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)**

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the U. S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. **Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)**

**Notice**

If you have a substantially limiting physical or mental impairment, Federal disability nondiscrimination law gives you the right to receive help from OWCP in the form of communication assistance, accommodation and modification to aid you in the claims process. For example, we will provide you with copies of documents in alternate formats, communication services such as sign language interpretation or other kinds of adjustments or changes to account for the limitations of your disability. Please contact our office or the claims examiner to ask about this assistance.

Form CM-2970
Rev Aug. 2013

26-17

# Table of Coal Mine Industry Average Earnings

| ANTHRACITE | | BITUMINOUS | | | |
|---|---|---|---|---|---|
| YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD |
| 1937 | 693.75 | 1937 | 585 00 | 1978 | 10038.75 |
| 1938 | 657.50 | 1938 | 525 00 | 1979 | 10878.75 |
| 1939 | 705.00 | 1939 | 598.75 | 1980 | 10927.50 |
| 1940 | 648.75 | 1940 | 617.50 | 1981 | 12100 00 |
| 1941 | 657.50 | 1941 | 750 00 | 1982 | 12698.75 |
| 1942 | 705.00 | 1942 | 857.50 | 1983 | 13720 00 |
| 1943 | 648.75 | 1943 | 1057.50 | 1984 | 14800 00 |
| 1944 | 733.75 | 1944 | 1267.50 | 1985 | 15250 00 |
| 1945 | 876.25 | 1945 | 1315.00 | 1986 | 15390 00 |
| 1946 | 1,060.00 | 1946 | 1362.50 | 1987 | 15750 00 |
| 1947 | 1,262.50 | 1947 | 1606.25 | 1988 | 15940 00 |
| 1948 | 1,342.50 | 1948 | 1691.25 | 1989 | 16250 00 |
| 1949 | 1,447.50 | 1949 | 1465 00 | 1990 | 16710 00 |
| 1950 | 1,553.75 | 1950 | 1633.75 | 1991 | 17080 00 |
| 1951 | 1,692.50 | 1951 | 1915 00 | 1992 | 17200 00 |
| 1952 | 1,750.00 | 1952 | 1880 00 | 1993 | 17260 00 |
| 1953 | 1,695.00 | 1953 | 2097.50 | 1994 | 17760 00 |
| 1954 | 1,775.00 | 1954 | 2022.50 | 1995 | 18440 00 |
| 1955 | 1,935.00 | 1955 | 2275.00 | 1996 | 18740.00 |
| 1956 | 2,083.75 | 1956 | 2472.50 | 1997 | 19010.00 |
| 1957 | 2,172.50 | 1957 | 2581.25 | 1998 | 19160.00 |
| 1958 | 2,130.00 | 1958 | 2415 00 | 1999 | 19340.00 |
| 1959 | 2,183.75 | 1959 | 2661.25 | 2000 | 19090.00 |
| 1960 | 2,266.35 | 1960 | 2687.50 | 2001 | 19040.00 |
| | ** | 1961 | 2645.00 | 2002 | 19640.00 |
| | ** | 1962 | 2717.50 | 2003 | 19900.00 |
| | ** | 1963 | 2835 00 | 2004 | 21570.00 |
| | ** | 1964 | 3031.25 | 2005 | 22060.00 |
| | ** | 1965 | 3222.50 | 2006 | 22080.00 |
| | ** | 1966 | 3438.50 | 2007 | 21960.00 |
| | ** | 1967 | 3662.50 | 2008 | 23270.00 |
| | ** | 1968 | 3801.25 | 2009 | 26140.00 |
| | ** | 1969 | 4261.25 | 2010 | 28230.00 |
| | | 1970 | 4777.50 | 2011 | 28450.00 |
| | | 1971 | 5008.75 | 2012 | 28560.00 |
| | | 1972 | 5576.25 | 2013 | 29310.00 |
| | | 1973 | 5898.75 | | |
| | | 1974 | 6080.00 | | |
| | | 1975 | 7405.00 | | |
| | | 1976 | 8008.75 | | |
| | | 1977 | 8987.50 | | |

* Figures for 1937-1970 were published by the Bureau of Census. Those for 1971 to present were published by the Bureau of Labor Statistics. All figures are based on annual industry wage survey. After 1990, the Bureau of Labor Statistics stopped keeping records on an annual basis. Standards from that year on are based on multiplying the average hourly rate by 1000 hours. A "year" as defined here is 125 working days.

** After 1960, average wage standards are the same for anthracite and bituminous mines.

26·18

-0013945271

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Danielle Gress_ ☐ Agent ☐ Addressee<br><br>B. Received by *(Printed Name)*    C. Date of Delivery<br>                     9 \| 11 |
| 1. Article Addressed to:<br><br>**David M Howard**<br>**P O Box 135**<br>**Baxter, KY 40806**<br>**CASE ID: B9JWB-2014324 SSAE** | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No<br><br><br>3. Service Type<br>  ☑ Certified Mail®  ☐ Priority Mail Express™<br>  ☐ Registered  ☐ Return Receipt for Merchandise<br>  ☐ Insured Mail  ☐ Collect on Delivery |
| | 4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |

2. Article Number
*(Transfer from service label)*

PS Form 3811, July 2013        Domestic Return Receipt

26.19

-0013945271



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307

26·20

-0021445251

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X _Jackie McPherson_  ☑ Agent  ☐ Addressee

B. Received by *(Printed Name)*  _Jackie McPherson_   C. Date of Delivery  9-3-15

1. Article Addressed to:

Ron Carson, Program Director
Stone Mtn. Health Services
P O Drawer S
St Charles, VA 24282-0269
CASE ID: B9JWB-2014324 SSAE

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☑ No

3. Service Type
   ☑ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*   7014 0150 0000 0276 1097

PS Form 3811, July 2013         Domestic Return Receipt

26.21

-0021445251

KNOXVILLE
UNITED STATES POSTAL SERVICE
TN 377
03 SEP '15
PM 4 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Sender: Please print your name, address, and ZIP+4® in this box●

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307

2830707

26·22

**-0024255251**

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ~~RMBint~~ ☐ Agent ☐ Addressee<br>B. Received by (*Printed Name*) — C. Date of Delivery<br>R.M Briney 9/3/16<br>D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |

1. Article Addressed to:

   Apogee Coal Company Llc
   % Patriot Coal Corp.
   12312 Olive Blvd. Ste 400
   St. Louis, MO 63141
   CASE ID: B9JWB-2014324 SSAE

3. Service Type
   ☑ Certified Mail®  ☐ Priority Mail Express™
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ Collect on Delivery
4. Restricted Delivery? (*Extra Fee*)  ☐ Yes

2. Article Number
   (*Transfer from service label*)

PS Form **3811**, July 2013          Domestic Return Receipt

26-23

-0024255251

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307

42830707

2624

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Patriot Coal Company
   C/O Underwriters Tpa
   P. O. Box 23790
   Louisville, KY 40223
   CASE ID: B9JWB-2014324 SSAE

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                            ☐ Agent
                                             ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail®        ☐ Priority Mail Express™
   ☐ Registered            ☐ Return Receipt for Merchandise
   ☐ Insured Mail          ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)     7014 0150 0000 0276 1110

PS Form 3811, July 2013        Domestic Return Receipt

26-25

UNITED STATES POSTAL SERVICE 

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

Sender: Please print your name, address, and ZIP+4® in this box●

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307

Ilɪ‧‧ɪ‧ɪᴵᴵɪɪᴵᴵᴵᴵᴵᴵɪ‧‧‧ᴵᴵᴵᴵᴵ‧ᴵᴵᴵᴵᴵ‧ᴵᴵᴵᴵᴵᴵᴵᴵᴵɪᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵ

26·23

**U.S. DEPARTMENT OF LABOR**     **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Central Mail Room**
**PO Box 8307**
**London, KY 40742-8307**



**Phone:  1-800-366-4599 or 606-218-9300, extension GD-O**
**FAX:  (606) 432-3574**

## NOTICE OF CLAIM

Date Issued: December 8, 2015

| Miner's Name: David M Howard | |
|---|---|
| Claimant's Name/Address | Claim Number |
| David M Howard<br>P O Box 135<br>Baxter, KY 40806 | XXX-XX-6902 LM C<br>CASE ID: B9JWB-2014324 |
| Potentially Liable Operator/Address | Insurance Carrier/Address |
| Apogee Coal Company Llc<br>C/O Underwriters Safety & Claims<br>PO Box 23790<br>Louisville, KY 40223 | Self-insured thru Arch Coal Inc.<br>1 City Place Drive, Ste 300<br>St Louis, MO 63141<br><br>Policy Number: Self-insured |

The claimant named above has filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. 901 et seq. We are currently developing the claim to determine the claimant's eligibility.  Enclosed is a copy of the claimant's application and any evidence OWCP has obtained to date relating to the miner's employment.

This Notice of Claim is issued pursuant to 20 C.F.R. 725.407. We have identified you as a 'potentially liable operator' in this claim.  A "potentially liable operator" is an employer of the miner (or a successor of an employer pursuant to 20 C.F.R. 725.492) who may be held liable for the payment of benefits should the claimant be found entitled to them.  Designation as a potentially liable operator does not constitute a determination that you are in fact liable. Where OWCP's records indicate you obtained a policy of insurance, and the claim falls within such policy, we are sending a copy of this notice to your insurer. You and your insurer shall be considered parties to the claim unless an adjudication officer dismisses you and you are not thereafter notified again of your potential liability.

**Within 30 days of receipt of this Notice of Claim, you (or your insurer) must file a response pursuant to 20 C.F.R. 725.408 indicating your intent to accept or contest your identification as a potentially liable operator.**  This time period may be extended for good cause shown if you file an extension request with the District Director prior to expiration of the 30 days.  We have enclosed a form entitled 'Operator Response to Notice of Claim' for your use. Please send your response and any other correspondence to the Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation, at the address shown above.

DIRECTOR'S EXHIBIT
NO 22 CONSISTING
OF 70 PAGES       22.1

If you accept liability for the payment of benefits should the claimant obtain an award (*i.e.* you accept that you are the 'responsible operator'), please mark the box in Section A (entitled 'Acceptance of Liability') on the Operator Response to Notice of Claim. **Accepting liability means only that you are the operator liable for the payment of any benefits due; it does not constitute a stipulation or admission that the claimant is entitled to benefits.**

If you wish to contest your status as a potentially liable operator, you must state the precise nature of your disagreement by accepting or denying each of the five assertions listed in Section B (entitled 'Contest of Potential Liability – Operator Assertions) on the Operator Response to Notice of Claim. The assertions are limited to information about your employment of the miner and your status as an operator. If you deny any of the five operator assertions, you have 90 days from your receipt of this notice to submit documentary evidence in support of your response. This time period may be extended for good cause shown if you file an extension request with the District Director prior to expiration of the 90 days. **Absent extraordinary circumstances, no documentary evidence relevant to the assertions set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim) may be admitted in any further proceedings unless it is submitted within 90 days of your receipt of this notice or an extended period authorized by the District Director.**

**If you do not respond within 30 days of your receipt of this Notice of Claim, you will not be allowed to contest your liability for payment of benefits on any of the grounds set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim).**

**Please note that your response need not include evidence about any other potentially liable operator and its employment of the miner.** At the conclusion of the initial evidence-gathering period, the District Director will issue a Schedule for the Submission of Additional Evidence pursuant to 20 C.F.R. 725.410. In that schedule, the District Director will select and designate one "responsible operator" from the potentially liable operators notified. All parties will then be given an opportunity to present evidence regarding the liability of the designated responsible operator or any other operator.

NOTE: THE 'OPERATOR RESPONSE TO NOTICE OF CLAIM' MUST INCLUDE THE ORIGINAL SIGNATURE OF AN AUTHORIZED OFFICIAL FOR THE POTENTIALLY LIABLE RESPONSIBLE OPERATOR OR ITS INSURANCE CARRIER. WE CANNOT ACCEPT A COPY OF THE RESPONSE SENT BY FAX IN LIEU OF THE ORIGINAL DOCUMENT.

We are available to assist you with this process. I may be contacted at the address and telephone number shown above.

Sincerely,

*Dennis D Glaze*

Dennis Glaze

Enclosures: Copy of claim and evidence relating to miner's employment history
Operator Response to Notice of Claim form (Form No. CM-2970a)

22-2

## PROOF OF SERVICE

Claimant: David M Howard
Claim No.: **PI XXX-XX-6902 LM C**
Case ID: **B9JWB-2014324**

## CERTIFICATION

I hereby certify that on December 8, 2015, a copy of the Notice of Claim (CM971a) was mailed to the parties and their representatives at the addresses listed below.

*Dennis R. Glaze*
_____

Dennis Glaze

## REGULAR MAIL

David M Howard
P O Box 135
Baxter, KY 40806

Ron Carson, Program Director
Stone Mtn. Health Services
P O Drawer S
St Charles, VA 24282-0269

## CERTIFIED MAIL

Apogee Coal Company Llc
C/O Underwriters Safety & Claims
PO Box 23790
Louisville, KY 40223

Arch Coal Inc.
1 City Place Drive, Ste 300
St Louis, MO 63141

223

# OPERATOR RESPONSE TO NOTICE OF CLAIM

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name: | Claimant's Name: | Claim Number: | OMB No.: 1240-0033 Expires: 03/31/2017 |
|---|---|---|---|
| **David M Howard** | **David M Howard** | **PI XXX-XX-6902 LM C CASE ID: B9JWB-2014324** | |
| Responsible Operator's Name: | Insurer's Name: | | Policy No. |
| **Apogee Coal Company Llc** | **Self-insured thru Arch Coal Inc.** | | **Self-insured** |

**This information is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et.seq.) (20 CFR 725.408). Please check appropriate boxes and provide requested information. While you are not required to respond, if you fail to do so within 30 days of your receipt of the Notice of Claim you shall not be allowed to contest your liability for the payment of benefits on any of the five specific grounds set forth below in Section B. (20 CFR 725.408).** You must send a copy of this response to the claimant by regular mail.

## A. Acceptance of Liability

☐   The named potentially liable operator is the responsible operator within the meaning of the Black Lung Benefits Act

## B. Controversion of Liability

Indicate whether the named potentially liable operator accepts or denies the assertions that follows.
Acceptance of these assertions is not necessarily an acceptance of liability. You may still contest your liability on any other available grounds.

| Accepts | Denies | |
|---|---|---|
| ☐ | ☐ | This operator was an operator for any period after 06/30/73. |
| ☐ | ☐ | This operator employed the miner <u>as a miner</u> for a cumulative period of not less than one year. |
| ☐ | ☐ | The miner was exposed to coal mine dust while working for this operator. |
| ☐ | ☐ | The miner's employment with this operator included at least one working day after December 31, 1969. |
| ☐ | ☐ | This operator or its insurer is financially capable of assuming liability for the payment of benefits. |

**Time period for submission of evidence.** Within 90 days of the date on which you received the Notice of Claim, you may submit documentary evidence in support of your positions asserted in Section B. For any of the assertions you denied, you must submit all relevant documentary evidence within this 90 day period. The time period may be extended for good cause shown if an extension request is filed with the district director prior to expiration of the 90 days period. You must include a statement of reasons why you need additional time with your extension request.

### Privacy Act Statement

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR 410 or 20 CFR 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)

### Public Burden Statement

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N. W., Washington, D.C. 20210. **Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)**

### Notice

If you have a substantially limiting physical or mental impairment, Federal disability nondiscrimination law gives you the right to receive help from OWCP in the form of communication assistance, accommodation and modification to aid you in the claims process. For example, we will provide you with copies of documents in alternate formats, communication services such as sign language interpretation or other kinds of adjustments or changes to account for the limitations of your disability. Please contact our office or the claims examiner to ask about this assistance.

Form CM-2970a
Rev. Aug. 2013

22·4

## C. Additional Information

Please answer the questions below. If the space provided for any response is inadequate, please continue your response on a blank sheet of paper and attach it to the form. If you are unable to respond to these questions within the 30-day period for accepting or denying the assertions set forth in Section B above (*i.e.* within 30 days of receipt of the Notice of Claim), you should return this form in compliance with the 30-day time limitation and provide the information requested in this section within 90 days of your receipt of the Notice of Claim.

1. The miner was employed by the named potentially liable operator (list all periods of employment):

From: _____     To: _____

_____     _____

_____     _____

| Miner's Job Classification(s)/ Type(s) of Work Performed | Time Performed (Beginning and Ending Dates) | Name and Location of Mine or Facility (County and State) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

2. Our records indicate that the potentially liable operator is insured as indicated in the header of page 1. If this information is incorrect, please complete information below.

| Insurance Carrier(s) | Policy Number | Dates of Coverage |
|---|---|---|
| _____ | _____ | _____ |

3. Is the named potentially liable operator affiliated in any way with any of the other firms identified in the Notice of Claim as potentially liable operators?  ☐ Yes ☐ No   If yes, please explain the nature of the relationship.

_____

_____

_____

4. Has the named potentially responsible operator transferred or sold its mine, mines, or coal mining business, or substantially all of the assets thereof, to another person or business organization?  ☐ Yes ☐ No   If yes, please explain the details of the transaction(s), including the name(s) of the person(s) or organization(s) acquiring the property.

_____

_____

_____

5. Please set forth any additional facts regarding potential liability you would like to have considered.

_____

_____

_____

| Name and Address of Firm Completing Form | Name of Person Completing Form |
|---|---|
| | Title |
| | Signature          \|          Date |

Form CM-2970a
Rev. Aug. 2013

*225*

# Addendum: Certified Receipt Numbers

Case ID: **B9JWB-2014324**

David M Howard
Certified Receipt No.: **N/A**

Self-insured thru Arch Coal Inc.
Certified Receipt No.: **70142120000447498087**

Ron Carson, Program Director
Certified Receipt No.: **N/A**

Apogee Coal Company Llc
Certified Receipt No.: **70142120000447498070**

22·6

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X *Conley*  ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*  C. Date of Delivery<br>*DEC 1 4 2015* |
| 1. Article Addressed to:<br><br>Arch Coal Inc.<br>1 City Place Drive, Ste 300<br>St Louis, MO 63141<br>CASE ID: B9JWB-2014324 NOC | D. Is delivery address different from item 1? ☑ Yes<br>If YES, enter delivery address below: ☐ No<br>*US·PS 63141* |
| | 3. Service Type<br>☑ Certified Mail®  ☐ Priority Mail Express™<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ Collect on Delivery<br>4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7014 2120 0004 4749 8087 |
| PS Form 3811, July 2013 | Domestic Return Receipt |

22·7

UNITED STATES POSTAL SERVICE

MD 5W

15 DEC '15

PH 51



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307

‖‖ᵢₗᵤₗₗᵢᵤ‖‖ᵢₗₗₗₗᵢₗᵤₗₗₗₗ‖‖‖‖ᵢₗᵤₗᵢₗᵤ‖ᵢₗᵢₗₗₗₗ‖

22-8

## -0013995348

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery |

1. Article Addressed to:

   Apogee Coal Company Llc
   C/O Underwriters Safety & Claims
   PO Box 23790
   Louisville, KY 40223
   CASE ID: B9JWB-2014324 NOC

D. Is delivery address different from Item 1? ☐ Yes
   If YES, enter delivery address below: ☑ No

3. Service Type
   ☑ Certified Mail ☐ Priority Mail Express
   ☐ Registered ☐ Return Receipt for Merchandise
   ☐ Insured Mail ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
   (Transfer from service label)

   7014 2120 0004 4749 8070

PS Form 3811, July 2013      Domestic Return Receipt

229

-0013995348

UNITED STATES POSTAL SERVICE

KY 400

11 DEC '15

PM 11



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

- Sender: Please print your name, address, and ZIP+4® in this box●

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307

2210

**U.S. DEPARTMENT OF LABOR**

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Central Mail Room**
**PO Box 8307**
**London, KY 40742-8307**



**Phone: 1-800-366-4599 or 606-218-9300, extension 701233**
**FAX: (606) 432-3574**

| Miner's Name | Designated Responsible Operator |
|---|---|
| David M Howard | Apogee Coal Company Llc<br>C/O Healthsmart Casualty Claims |
| Claimant's Name | PO Box 3389 |
| David M Howard | Charleston, WV 25333 |
| Claimant's Address | Insurer |
| P O Box 135<br>Baxter, KY 40806 | Self-insured thru Arch Coal Inc.<br>1 City Place Drive, Ste 300<br>St Louis, MO 63141 |
| DOL Claim Number | Date Issued |
| PI XXX-XX-6902 LM C<br>CASE ID: **B9JWB-2014324** | March 17, 2016 |

### SCHEDULE FOR THE SUBMISSION OF ADDITIONAL EVIDENCE

David M Howard filed an application for benefits under the Black Lung Benefits Act on November 19, 2014. We have reviewed the medical evidence developed under 20 C.F.R. § 725.405, and the evidence relevant to coal mine operator liability received under 20 C.F.R. § 725.408. A copy of our "Summary of Medical and Employment Evidence" is attached.

Based on a review of that evidence, we have made the following preliminary conclusions:

1. The claimant is entitled to benefits if we issued a decision at this time; and
2. The coal mine operator named above is the responsible operator liable for the payment of benefits.

#### Entitlement

We have reviewed the evidence developed thus far. Our preliminary analysis is that the claimant is entitled to benefits if we issued a decision at this time. Our analysis of the evidence and the reasons for our conclusions are set forth in the attached Summary. In addition, a "Guide for Submitting Additional Evidence" is attached, explaining the limitations on the quantity of evidence that each party may submit and the types of medical evidence sufficient to establish each element of entitlement.

The responsible operator may respond to this schedule by April 16, 2016, in the manner prescribed in 20 CFR 725.412(b) and either accept or reject the claimant's entitlement to benefits. If the responsible operator does not respond, it will be considered to have contested the claimant's entitlement, and will be liable for the cost of obtaining additional medical and other necessary evidence in the event that the claimant is ultimately found entitled to benefits. The Black Lung Disability Trust Fund will be liable for those costs if the claimant is ultimately found entitled to benefits and this office has not designated a responsible operator.

DIRECTOR'S EXHIBIT
NO. 27 CONSISTING
OF 20 PAGES

27-1

J.A. 329    Rec'd Date: 03/21/2016

The claimant and the designated responsible operator listed above may now submit to this office additional medical evidence as to the claimant's entitlement. 20 C.F.R. § 725.414(a). After that evidence is submitted, and we complete any additional processing that we believe may be necessary (which may include an informal conference if all parties are represented and the other requirements of 20 C.F.R. § 725.416 are met), we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judges at that time.

The regulations implementing the Black Lung Benefits Act do not require that parties submit any additional medical evidence on entitlement at this point. Instead, parties may wait until the case is referred to the Office of Administrative Law Judges following a request for a hearing. 20 C.F.R. § 725.456(b)(2). If no party submits additional medical evidence on entitlement to our office, we will base our proposed decision and order on the preliminary conclusions stated above.

Any party that wishes to submit medical evidence must mail that evidence to this office, and send copies to the other parties to the claim. Such evidence must be postmarked on or before the dates shown below:

| | |
|---|---|
| **May 16, 2016:** | By this date, submit evidence that supports your position |
| **June 15, 2016:** | By this date, submit evidence that responds to the evidence that: |
| | (1) is on record already, as described in the attached documents, and/or |
| | (2) may be submitted between now and **May 16, 2016** by some other party to this claim |

Either party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above. See the enclosed document "Extensions of Time – Showing Good Cause," for important information about extension requests.

**Parties should take note that the amount of medical evidence that parties may submit is limited. 20 C.F.R. § 725.414. These limitations are explained in detail in the attached Guide. We encourage you to get advice from an attorney or other qualified representative before submitting any additional evidence. A claimant whose application is finally approved and who uses the services of an attorney in establishing entitlement may be entitled to a reasonable attorney's fee. If the designated responsible operator or the Trust Fund challenge the claimant's entitlement, and is ultimately determined to be liable, the responsible operator or the fund will also be liable for the claimant's attorney's fee. A claimant will not be liable for any attorney's fee if his or her claim is denied.** However, a claimant may be liable for a fee if he or she is represented by a person other than an attorney. If a party is represented by a person other than an attorney, the party and the representative should complete and sign the enclosed authorization form (CM-1078), and return it to this office.

The designated responsible operator has the right to require the miner to submit to a complete pulmonary evaluation. 20 C.F.R. § 725.414(a)(3)(i). This evaluation must take place within 100 miles of the miner's residence or at a location no farther from the claimant's residence than the distance that the miner traveled in order to obtain the complete pulmonary evaluation provided by the Department under 20 C.F.R. § 725.406, whichever is greater. A responsible operator may ask this office to approve a trip of greater distance.

<u>Liability</u>

Based on the evidence developed thus far, we have made a preliminary designation of Apogee Coal Company Llc as the responsible operator liable for the payment of benefits. Our analysis of that evidence and the reasons for our conclusions are set forth in the attached Summary.

The designated responsible operator may respond to this schedule by April 16, 2016, and accept or reject its designation. If the responsible operator does not respond, it will be deemed to accept its designation and to waive its right to contest its liability in any further proceedings.

27.2

The designated responsible operator listed above may now submit to this office additional documentary evidence relevant to liability, and may identify witnesses relevant to liability that the designated responsible operator intends to call if the case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.414(b), (c). Absent a showing of extraordinary circumstances, no documentary evidence relevant to liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.456(b)(1). In addition, the designated responsible operator may no longer submit evidence relevant to its status as a potentially liable operator; operators notified of their potential liability were required to submit all such evidence within 90 days after receiving notification. 20 C.F.R. § 725.408(b)(2). Accordingly, the designated responsible operator may now submit only that evidence relevant to whether another potentially liable operator should have been designated the responsible operator. Other potentially liable operators may also submit evidence relevant to liability.

Any party that wishes to submit liability evidence or identify liability witnesses, must mail that evidence or identification to this office, and a copy to the other parties to the claim, in accordance with the following schedule:

**May 16, 2016:**     Evidence that supports each party's position

**June 15, 2016:**     Evidence that responds to evidence submitted by another party

Any party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above.

After any additional evidence is submitted, we may undertake additional processing, including the notification of additional potentially liable operators and the designation of another responsible operator. After we conclude our processing, we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judge.

Please contact our office if you need assistance or have questions about the "Schedule for the Submission of Additional Evidence" or any of the other documents we have enclosed.

Sincerely,

Dennis D. Glaze

Dennis Glaze
Claims Examiner
1-606-218-9300 x701233

Enclosures:     Copy of evidence; Addendum for Certification Numbers; Extensions of Time – Showing Good Cause;
Summary of Medical and Employment Evidence LM; LM Guide for Submitting Additional Evidence;
CM2970; Coal Mine Average Earnings

27-3

**PROOF OF SERVICE**

Claimant:   David M Howard

Claim Number: **PI** XXX-XX-6902 LM C

Case ID: **B9JWB-2014324**

**CERTIFICATION**

I hereby certify that on March 17, 2016, the Schedule for the Submission of Additional Evidence of District Director Roger Belcher was filed in the office of the District Director and a copy mailed to the parties and their representatives at the addresses listed below.


*Dennis D. Glaze*

Dennis Glaze
Claims Examiner
1-606-218-9300 x701233


**CERTIFIED MAIL**

David M Howard
P O Box 135
Baxter, KY 40806

Apogee Coal Company Llc
C/O Healthsmart Casualty Claims
PO Box 3389
Charleston, WV 25333

Ron Carson, Program Director
Stone Mtn. Health Services
P O Drawer S
St Charles, VA 24282-0269

Arch Coal Inc.
1 City Place Drive, Ste 300
St Louis, MO 63141

Underwriters Safety And Claims Tpa
PO Box 23640
Louisville, KY 40223


27-4

# Addendum: Certified Receipt Numbers

Case ID: **B9JWB-2014324**

David M Howard
Certified Receipt No.: **70153430000117525891**

Ron Carson, Program Director
Certified Receipt No.: **70153430000117525907**

Apogee Coal Company Llc
Certified Receipt No.: **70153430000117525914**

Arch Coal Inc.
Certified Receipt No.: **70153430000117525921**

Underwriters Safety And Claims Tpa
Certified Receipt No.: **70153430000117525938**

27.5

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Central Mail Room**
**PO Box 8307**
**London, KY 40742-8307**



**Phone: 1-800-366-4599 or 606-218-9300, extension 701233**
**FAX: (606) 432-3574**

| | |
|---|---|
| Miner Name: | David M Howard |
| Claimant Name: | David M Howard |
| Claim Number: | PI XXX-XX-6902 LM 02 |
| CASE ID: | **B9JWB-2014324** |

**March 17, 2016**

## Attachment to Schedule for Submission of Additional Evidence (SSAE)

### Extensions of Time – Showing Good Cause

The District Office will *not* routinely authorize extensions of time for development beyond those already provided for by the enclosed Schedule for the Submission of Additional Evidence (SSAE). Any party may request that the SSAE's time periods be extended by showing *good cause*; accordingly, the following information is required so the request can be properly evaluated.

**All extension requests must specify:**

1.) **Why the extension is needed;**
2.) **Why the evidence cannot be submitted within the allotted SSAE time-frames;**
3.) **What evidence will be submitted; and**
4.) **When the evidence will be submitted.**

***Note***: If an extension is granted, the period for submitting rebuttal evidence will be extended as well, but *only* for rebuttal of the evidence submitted during the extension period.

If you are planning to schedule a medical appointment, please make arrangements promptly. Include in any request for an extension of time an explanation for your failure to begin making arrangements within 15 days of your receipt of the SSAE. Likewise, if you are developing other forms of medical evidence, please begin development promptly or explain in an extension request your failure to begin development within 15 days.

An unexplained delay in scheduling medical appointments and/or initiating development of other medical evidence may result in a denial of the extension request if the delay is the basis of the extension request.

Thank you for your cooperation.

Revised August 22, 2012

27·6

J.A. 334    Rec'd Date: 03/21/2016

## SUMMARY OF MEDICAL AND EMPLOYMENT EVIDENCE
### (MINER'S CLAIM)

Date Issued: **March 17, 2016**        DOL Claim No.: PI XXX-XX-6902 LM C
Miner's Name: David M Howard         Claimant's Name: David M Howard
CASE ID: B9JWB-2014324
Coal Mine Company: Apogee Coal Company Llc
Insurance Carrier: Self-insured thru Arch Coal Inc.

The claimant named above has filed an application under the Black Lung Benefits Act, 30 USC 901 et seq. We have received the medical and employment evidence summarized below. Based on a preliminary review of this evidence, we have concluded that <u>Apogee Coal Company Llc</u> is the responsible operator liable for the payment of any benefits in this claim. We have also concluded that the claimant is entitled to benefits if we made a decision at this time. A summary of the medical and employment evidence and an analysis of the evidence are set forth below. Copies of all the evidence are attached to this document.

In order to qualify for black lung benefits, the claimant must prove the following facts:

The claimant worked as a coal miner;
The claimant has pneumoconiosis (black lung disease);
The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
The claimant has a totally disabling respiratory or pulmonary impairment; and
The claimant's totally disabling impairment is caused at least in part by pneumoconiosis.

The evidence which we have received so far would support the following findings:

(X)     The claimant worked as a coal miner for 17 years;
(X)     The claimant has pneumoconiosis;
(X)     The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
(X)     The claimant has a totally disabling respiratory or pulmonary impairment; and
(X)     The claimant's totally disabling impairment was caused at least in part by pneumoconiosis.

However, the evidence also indicates that:

()     The claimant did not work as a coal miner;
()     The claimant does not have pneumoconiosis;
()     The claimant's pneumoconiosis was not caused by exposure to coal mine dust;
()     The claimant does not have a totally disabling respiratory or pulmonary impairment; and
()     The claimant's totally disabling impairment was not caused at least in part by pneumoconiosis.

_27.7_

**ENTITLEMENT ANALYSIS:**
Based on the preliminary analysis of the medical evidence received to date, we have determined the following:

**PRIOR FILINGS:**
The claimant filed a prior claim on March 3, 2006. That claim was withdrawn on June 2, 2006. The claim is considered not to be filed per 20 CFR 725.306.

**RELATIONSHIP/DEPENDENCY:**
The file includes a marriage certificate indicating that the miner married Cynthia on September 7, 2001. Therefore, the requirements of 20 CFR 725.204(a)(1) and 725.205(a) and 725.205 (e) which relate to relationship and dependency are met.

**PRESENCE OF PNEUMOCONIOSIS (BLACK LUNG DISEASE):**
For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical or "clinical" pneumoconiosis and statutory or "legal" pneumoconiosis.

Clinical pneumoconiosis as defined in 20 CFR 718.201(c)(1): "those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate material in the lungs and the fibrotic reaction of the lung tissue to the deposition caused by dust exposure in coal mine employment. This includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

On 03/07/2015, Dr. DePonte, a Board-certified; B-reader, viewed the x-ray taken of the miner's chest on 03/04/2014 as positive 1/1 for the presence of pneumoconiosis. On 06/08/2015, Dr. Gaziano, a B-reader, determined the quality of this x-ray as acceptable. On 06/12/2013, Dr. Alexander, a Board-certified; B-reader, viewed the x-ray of the miner's chest taken on 05/09/2013 as 1/2 positive for the presence of pneumoconiosis. Therefore, based on the x-ray evidence presented, it is determined this miner has clinical simple pneumoconiosis.

Legal pneumoconiosis is defined under 20 CFR 718.201(a)(2) as: "any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment, including any chronic pulmonary disease or respiratory impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

On 03/04/2015, Dr. Ajjarapu performed a complete pulmonary evaluation on this miner consisting of a physical examination, pulmonary function study, arterial blood gas test and an electrocardiogram. She also noted the miner's clinical respiratory symptoms, smoking history and coal mine employment history.

Dr. Dr. Ajjarapu made the diagnosis of legal pneumoconiosis based on chronic bronchitis. Dr. Ajjarapu expounded that the miner's diagnosed chronic bronchitis is based on the presence of symptoms of daily cough with sputum production and shortness of breath and the miner's pulmonary functions tests were below the Federal Black Lung Disability Standards.

Dr. Dr. Ajjarapu attributed the miner's mild obstructive disease and moderate restrictive airway disease to, in part, the miner's 34 years of coal mine dust exposure and morbid obesity. Dr. Ajjarapu's diagnosis falls within the definition of "legal" pneumoconiosis as defined by 20 CFR 718.201 [any chronic lung disease or impairment arising out of coal mine employment].

Saint Charles Medical Respiratory Clinic performed a pulmonary function test for this miner on 10/28/2014. The results appear to be below the Federal Black Lung Disability Standards. However, these tests have not been validated for compliance.

278

The medical evidence in the claim establishes the presence of pneumoconiosis. The presence of the disease is established by X-ray reading and corroborated by the professional medical opinion of Dr. Ajjarapu based upon physical examination and a review of the objective testing. The requirements of 20 CFR 718.202 are met and, therefore, presence of the disease has been established.

Disease is established under the Fifteen Year Presumption pursuant to Section 1556(a) of the PPACA and Section 411(c)(4) of the Black Lung Benefits Act, 30 U.S.C. 921(c)(4).

20 CFR 718.202(a)(1) - established by x-ray
20 CFR 718.202(a)(4) - established by reasoned medical opinion

**RELATIONSHIP OF BLACK LUNG DISEASE TO COAL MINE EMPLOYMENT:**
The miner was determined to have "legal pneumoconiosis" as that term is defined at 20 C.F.R. 718.201(a)(2), and therefore has proven a chronic lung disease or impairment arising out of coal mine employment. This finding was supported by a reasoned medical opinion (see C.F.R. 718.202(a)(4)). In light of this finding, no separate finding regarding disease causation is necessary.

The miner's pneumoconiosis was caused by his coal mine employment based upon the presumption in the regulations, 20 CFR 718.203(b) which states: If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment. The miner has established at least ten years of coal mine employment. A reasoned medical opinion also supports a finding that the disease arose at least in part out of coal mine employment. The presumption has not been rebutted.

20 CFR 718.201 (a) (2) established by regulation
20 CFR 718.203(b) - established by presumption

**DISABILITY AND RELATIONSHIP OF DISABILITY TO BLACK LUNG DISEASE:**
On 03/04/2015, Dr. Ajjarapu determined the spirometry shows severe pulmonary impairment; the arterial blood gases study show mild pre and post arterial hypoxemia and the miner's chest x-ray is positive for coal worker's pneumoconiosis. She concluded her examination with opining that based on the overall evaluation, this miner is totally disabled, his disability is multifactorial and it is due to both causes of extensive smoking and inhalational coal dust; this miner does not have the pulmonary capacity to do his previous employment.

The pulmonary function tests were validated by the Department of Labor's medical consultant, Dr. Gaziano, on 04/09/2015.

The results of breathing tests (Pulmonary Function Studies) meet the regulatory standards to establish total disability. The results of the Arterial Blood Gas Studies do not meet the disability standards as set forth in the regulations. For the Pulmonary Function Studies to establish total disability under the regulations, that total disability must be DUE TO PNEUMOCONIOSIS. Because the presence of pneumoconiosis has been established, the claimant is considered to be disabled due to pneumoconiosis. The requirements of 20 CFR 718.204 are met and, therefore, total disability due to pneumoconiosis has been established.

20 CFR 718.204(b)(2)(i) - established by PFS

**FIFTEEN YEAR PRESUMPTION:**
This claim has been reviewed to determine if the changes in the Black Lung Benefits Act mandated by the Patient Protection and Affordable Care Act of 2010 (PPACA), Public Law 111-148 §1556(a), apply. Section 411(c)(4) of the Act provides presumptions of total disability due to pneumoconiosis or death due to pneumoconiosis under certain circumstances. The presumptions are applicable to claims that were filed before January 1, 1982 or after January 1, 2005, and were pending on or after March 23, 2010.

27.9

The presumption is available to miners who worked for a cumulative period of fifteen or more years in underground mining, or comparable surface mining, and the evidence establishes the existence of a totally disabling respiratory or pulmonary impairment. If a survivor establishes that the miner worked for fifteen or more years in coal mine employment and that the miner suffered from a totally disabling chronic respiratory or pulmonary impairment prior to death, it is presumed that the miner's death was due to pneumoconiosis. The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purpose of applying this presumption, shall be made in accordance with section 20 CFR 718.204.

For rebuttal in a miner's claim, the party opposing entitlement must establish either that the miner does not or did not have pneumoconiosis or that the miner's impairment did not arise out of or in connection with coal mine employment. In a survivor's case, the party opposing entitlement must provide evidence sufficient to rebut the presumption of death due to pneumoconiosis.

As discussed in the analysis of the admissible medical evidence, the evidence establishes that the miner has a disabling respiratory impairment as well as fifteen years of proven coal mine employment. The presumption has been invoked. The evidence establishes that the miner has a disabling respiratory impairment due to simple coal worker's pneumoconiosis and the presumption is not rebutted. An award is appropriate pursuant to Section 1556(a) of the PPACA and Section 411(c)(4) of the Black Lung Benefits Act, 30 U.S.C. 921(c)(4).

**ENTITLEMENT**
Based upon the above, the claimant would be entitled to benefits.

**EMPLOYMENT ANALYSIS**
This miner has been employed in our Nation's coal mining industry from 1978 thru 1996. This miner's estimated last date of coal mine employment is 12/03/1996. This is based on a Social Security Earnings Record covering the period 1974 to 2013, and the Kentucky State Worker's Compensation Office.

**LIABILITY ANALYSIS**
Apogee Coal Company Llc has been named as the designated responsible operator based upon the following:

1.  The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon the miner's self-reported employment history (911a) and his social security earnings record.

2.  The miner's employment with this operator included at least one working day after 12/31/69 based upon the miner's self-reported employment history (911a) and his social security earnings record.

3.  There is a rebuttable presumption that workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.

4.  This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

5.  This operator is the operator that most recently employed the miner according to the miner's self-reported employment history (911a) and his social security earnings record.

Based on the miner's self-reported employment history and his social security earnings record; the most recent coal mining company to employ this miner is Apogee Coal Company Llc from 1993 thru 1996. Information gathered from the Kentucky Worker's Compensation Office indicates that this miner suffered an on-the-job injury on December 3, 1996 and did not return to Apogee Coal Company Llc after the injury. The reported income from Apogee Coal Company Llc on the miner's social security earnings record has an undetermined origin. Apogee Coal Company Llc was self-insured during this miner's employment.

27-10

This miner has subsequent employment. However, the subsequent employment is not in the coal mining industry.

Therefore, it is determined that Apogee Coal Company Llc is the responsible operator in this claim.

A Notice of Claim was received by the potentially liable operator/carrier, Self-insured thru Patriot Coal Company, on December 11, 2014, as evidenced by the signed return receipt from the post office. The potentially liable operator/carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence. Therefore, in accordance with 20 CFR 725.408(b), no documentary evidence relevant to the grounds set forth in the Operator Assertions - 20 CFR 725.408(a)(2) - may be admitted in any further proceeding.

27-11

# MEDICAL EVIDENCE

(The first letter of the letter codes with the test dates represents the submitting party for the evidence: "D" stands for Director (the Department of Labor), "R" for designated responsible operator, the employer, and "C" for claimant. The second letter of each code indicates if the evidence is "E" for Evidence of record, "N" for New evidence developed for this claim or "R" for Rebuttal evidence.)

**MINER:** David M Howard
**CLAIM NO.:** XXX-XX-6902 LM C
**CASE ID:** B9JWB-2014324

## X-ray Evidence

| X-RAY Film Date | Reread Date | Name of Reader | X-RAY Reader Qualifications | Film Quality | X-RAY Interpretation |
|---|---|---|---|---|---|
| 03/04/2015 | 03/07/2015 D-N | K. DePonte | B-reader; Board-certified | 1 | 1/1 |
| 03/04/2015 | 06/08/2015 D-N | D. Gaziano | B-reader | 1 | Quality Reading |
| 05/09/2013 | 06/12/2013 C-N | Dr. Alexander | B-reader; Board-certified | 1 | 1/2 |

## Pulmonary Function Study (PFS) Evidence

| Date | Physician | Age/ Height | FEV1 | MVV | FVC | FEV1 FVC | DISABILITY STANDARDS FEV1 | MVV | FVC | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/04/2015 D-N-Pre* | E. Ajjarapu | 56/68.0 | 167 | 71.23 | 2.65 | 6% | 1.97 | 079 | 2.50 | Yes |
| 03/04/2015 D-N-Post* | E. Ajjarapu | 56/68.0 | 1.89 | 69.59 | 2.87 | 66% | 1.97 | 079 | 2.50 | Yes |
| 10/28/2014 C-N-Pre | St. Charles Respiratory Clinic | 56/69.0 | 1.47 | | 2.12 | 70% | 2.06 | 082 | 2.61 | N/A |

\* Validated by Dr. Gaziano on 04/09/2015

## Arterial Blood-gas (ABG) Evidence

| Date | Physician | Resting/ Exercise? | PCO2 | PO2 | PO2 Disability Standards | Altitude | Valid? |
|---|---|---|---|---|---|---|---|
| 03/04/2015 D-N | E. Ajjarapu | Resting | 41 | 75 | 60.0 | 0-2999 | N/A |
| | | Exercise | 39 | 76 | 61.0 | 0-2999 | N/A |

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 03/04/2015 D-N | E. Ajjarapu - Board Certified in Family Practice | **Diagnosis** – Clinical pneumoconiosis based on the chest x-ray of the miner's chest taken on 03/04/2015. Legal pneumoconiosis based on the chronic bronchitis. Chronic bronchitis is based on the presence of symptoms of daily cough with sputum production and shortness of breath. **Etiology** – Chronic bronchitis is based on the presence of respiratory symptoms. He did describe presence of coughing and shortness of breath. Underlying etiologies of his underlying chronic bronchitis is his work in the mines and tobacco abuse. Both tobacco smoke and coal dust cause airway inflammation leading to bronchospasm and cause excessive airway secretions and bronchitic symptoms. Inhaled coal dust eventually causes macules and nodules to form in the lung tissue and these can be seen as opacities, as in the x-ray of this miner. **Impairment** – Spirometry shows severe pulmonary impairment, mild pre and post arterial |

27-12

|  |  | hypoxemia and positive chest x-ray for coal worker's pneumoconiosis. Based on the overall evaluation, this miner is totally disabled. He has extensive work history and smoking history. He has no coronary artery disease. This miner's disability is multifactorial and it is due to both causes of extensive smoking and inhalational coal dust. He does not have the pulmonary capacity to do his previous employment. |
| --- | --- | --- |

## Length of Coal Mine Employment

The claimant has proven 17 years of coal mine employment.

27-13

## GUIDE FOR SUBMITTING ADDITIONAL MEDICAL EVIDENCE
## (MINER'S CLAIM)

In order to receive Black Lung benefits, you must prove four medical "facts":

- You have pneumoconiosis (black lung disease);
- Your pneumoconiosis was caused at least in part by exposure to coal mine dust;
- You have a totally disabling respiratory or pulmonary impairment; and
- Your totally disabling impairment was caused at least in part by your pneumoconiosis.

"Pneumoconiosis" is a chronic lung disease caused by inhaling coal mine dust. X-ray, biopsy, and (in the case of a deceased miner) autopsy evidence may show the presence of certain types of pneumoconiosis in the lungs. Pneumoconiosis may also be diagnosed by a physician who finds a lung disease present which is caused by inhaling coal mine dust. "Totally disabled" means you are unable to perform the type of work you did as a coal miner because of a breathing impairment. Pneumoconiosis "causes" your total disability if the disease has a "material adverse effect" on your respiratory or pulmonary condition, or "materially worsens" a totally disabling impairment which is caused by another disease.

**NOTE: The Black Lung benefits program has limitations on the amount of medical evidence which the parties can submit. You are encouraged to get advice from an attorney or other qualified representative before submitting any additional evidence.**

The Black Lung benefits program regulations contain important limitations on the amount of medical evidence parties to a claim may submit. The following guidelines explain the quantity and types of evidence which you and the responsible operator (or the Department of Labor) may submit. You may submit the following types of evidence to prove you are entitled to benefits.

- No more than two chest X-ray interpretations. You may submit two x-ray readings of one film, or one reading each of two different films. NOTE: The professional training of the doctor who interprets the X-ray is important. If the doctor is trained as a "B"-reader and/or board-certified radiologist, his or her interpretation may be given more weight than an interpretation by a doctor who is not specially trained;
- No more than one report of each biopsy;
- No more than one report of an autopsy (if a survivor is pursuing a claim filed by a miner who is now deceased);
- The results of no more than two pulmonary function studies and two arterial blood gas studies; and
- No more than two medical reports containing a physician's assessment of the miner's respiratory or pulmonary condition.

**NOTE:** When you filed your application, you selected a physician to conduct a complete pulmonary examination, and the Department of Labor paid the costs of that examination. At your request, we will send the results of the objective testing to the physician of your choice. If your physician provides a medical report for our consideration, that report will count as one of the two reports which you may submit.

You may also submit the following types of evidence:

- No more than one physician's interpretation of each chest X-ray, pulmonary function study, arterial blood gas study, autopsy report, or biopsy report submitted by the responsible operator or the Department of Labor;
- No more than one physician's assessment apiece of any other test or procedure submitted by the responsible operator or the Department of Labor;
- No more than one statement from any physician who originally interpreted the chest X-ray or performed a biopsy or autopsy for you if the responsible operator or the Department of Labor submits rebuttal evidence involving that evidence;

27.14

- No more than one additional statement from a physician who prepared a medical report submitted by you if the responsible operator's or Department's rebuttal evidence tends to undermine your physician's conclusions.

- You may also submit treatment records from a hospital, clinic, or physician if your treatment involved a lung condition. There is no limit on the number of treatment records which you may submit.

- In order to assist you, the "Guide" describes each medical fact which you must prove and the evidence which may prove the fact. When we consider the evidence you submit, we must also consider any other properly submitted evidence as well.

**DISEASE:** You must prove you have pneumoconiosis. You may submit any or all of the following types of evidence:

- A chest X-ray interpreted by a doctor as showing simple or complicated pneumoconiosis.

- A biopsy report of your lung tissue.

- (For a claim filed by a miner who is now deceased), an autopsy of the deceased miner which includes a review of his or her lungs.

- A doctor's report which is based on an accurate knowledge of your work and medical history, symptoms, and medical testing. The doctor's report should not be based only on chest X-rays. The doctor must explain why he or she believes your lung condition is caused by working as a coal miner.

Each X-ray, biopsy report, autopsy report, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these procedures and reports.

**CAUSALITY:** You must prove your pneumoconiosis was caused at least in part by exposure to coal mine dust.

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked at least ten years as a coal miner you are entitled to a presumption that your Black Lung was caused by your exposure to coal mine dust. You are not required to submit any medical evidence. The Department of Labor or the responsible operator may submit evidence showing your Black Lung was not caused by exposure to coal mine dust. You may not exceed the limits on the amount of evidence required by the "Guide."

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked fewer than ten years as a coal miner you must submit evidence that your exposure to coal mine dust caused your Black Lung. An X-ray which shows you have Black Lung is not enough to prove that coal mine dust exposure caused the disease. A doctor's opinion that your Black Lung was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

- If you submit a medical report from a physician who has diagnosed the presence of a lung disease you must submit evidence that your exposure to coal mine dust caused the lung disease at least in part. A doctor's opinion that your lung disease was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

**TOTAL DISABILITY:** You must prove that you have a totally disabling respiratory or pulmonary impairment. You may submit any or all of the following types of evidence:

- A chest X-ray, biopsy, or autopsy interpreted by a doctor as showing complicated pneumoconiosis.

- The results of no more than two pulmonary function studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations for your gender, height, and age on the day you take the test.

27.15

- The results of no more than two arterial blood gas studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations.

- A doctor's report which is based on an accurate knowledge of your work and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your lung condition causes a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.

- Each X-ray, pulmonary function study, arterial blood gas study, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these studies and reports. The limitations on the amount of evidence which you may submit must be strictly observed.

**DISABILITY CAUSATION:** You must prove that your Black Lung is a "substantially contributing cause" of your totally disabling respiratory or pulmonary impairment. Proving that you are totally disabled is not enough to prove that Black Lung is one of the causes of your disability. A doctor's opinion may be sufficient to prove your Black Lung is the cause, or one of the causes, of your disability. The doctor should base his or her opinion on an accurate knowledge of your work and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your Black Lung causes, or contributes to, a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.

27-16

## OPERATOR RESPONSE TO SCHEDULE FOR SUBMISSION OF ADDITIONAL EVIDENCE

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name:<br>**David M Howard** | Claimant's Name:<br>**David M Howard** | Claim Number:<br>**PI XXX-XX-6902 LM C**<br>**CASE ID: B9JWB-2014324** | OMB No.: 1240-0033<br>Expires: 03/31/2017 |
|---|---|---|---|

| Responsible Operator's Name:<br>**Apogee Coal Company Llc** | Insurer's Name:<br>**Self-insured thru Arch Coal Inc.** | Policy No.<br>**Self-insured** |
|---|---|---|

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.) (20 CFR 725.410). Please check appropriate boxes below. While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as the responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of any benefits to which the claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim. You also will be deemed to have contested the claimant's entitlement to benefits.

### A.  Liability

The named responsible operator:

☐  Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.

☐  Disagrees with its designation as the responsible operator liable for the claim.

If you disagree, the schedule for the submission of additional evidence advises you of the time period within which you may submit evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2). Absent extraordinary circumstances, **no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the District Director in compliance with a schedule for the submission of additional evidence.**

### B.  Claimant's Entitlement

The named responsible operator:

☐  Accepts the claimant's entitlement to benefits.

☐  Contests the claimant's entitlement to benefits.

If you do not accept the claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the claimant's entitlement. If you enter no response in this section, you will be deemed to have contested the claimant's entitlement to benefits.

| Name and Address of Firm Completing Form | Name of Person Completing Form | |
|---|---|---|
| | Title | |
| | Signature | Date |

**Privacy Act Statement**

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR 410 or 20 CFR 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose

such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the U. S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. **Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)**

**Notice**

If you have a substantially limiting physical or mental impairment, Federal disability nondiscrimination law gives you the right to receive help from OWCP in the form of communication assistance, accommodation and modification to aid you in the claims process. For example, we will provide you with copies of documents in alternate formats, communication services such as sign language interpretation or other kinds of adjustments or changes to account for the limitations of your disability. Please contact our office or the claims examiner to ask about this assistance.

Form CM-2970
Rev Aug. 2013

27·17

# Table of Coal Mine Industry Average Earnings

| ANTHRACITE | | BITUMINOUS | | | |
|---|---|---|---|---|---|
| YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD |
| 1937 | 693.75 | 1937 | 585 00 | 1978 | 10038.75 |
| 1938 | 657.50 | 1938 | 525 00 | 1979 | 10878.75 |
| 1939 | 705.00 | 1939 | 598.75 | 1980 | 10927.50 |
| 1940 | 648.75 | 1940 | 617.50 | 1981 | 12100 00 |
| 1941 | 657.50 | 1941 | 750 00 | 1982 | 12698.75 |
| 1942 | 705.00 | 1942 | 857.50 | 1983 | 13720 00 |
| 1943 | 648.75 | 1943 | 1057.50 | 1984 | 14800 00 |
| 1944 | 733.75 | 1944 | 1267.50 | 1985 | 15250 00 |
| 1945 | 876.25 | 1945 | 1315.00 | 1986 | 15390 00 |
| 1946 | 1,060.00 | 1946 | 1362.50 | 1987 | 15750 00 |
| 1947 | 1,262.50 | 1947 | 1606.25 | 1988 | 15940 00 |
| 1948 | 1,342.50 | 1948 | 1691.25 | 1989 | 16250 00 |
| 1949 | 1,447.50 | 1949 | 1465 00 | 1990 | 16710 00 |
| 1950 | 1,553.75 | 1950 | 1633.75 | 1991 | 17080 00 |
| 1951 | 1,692.50 | 1951 | 1915 00 | 1992 | 17200 00 |
| 1952 | 1,750.00 | 1952 | 1880 00 | 1993 | 17260 00 |
| 1953 | 1,695.00 | 1953 | 2097.50 | 1994 | 17760 00 |
| 1954 | 1,775.00 | 1954 | 2022.50 | 1995 | 18440 00 |
| 1955 | 1,935.00 | 1955 | 2275.00 | 1996 | 18740.00 |
| 1956 | 2,083.75 | 1956 | 2472.50 | 1997 | 19010.00 |
| 1957 | 2,172.50 | 1957 | 2581.25 | 1998 | 19160.00 |
| 1958 | 2,130.00 | 1958 | 2415 00 | 1999 | 19340.00 |
| 1959 | 2,183.75 | 1959 | 2661.25 | 2000 | 19090.00 |
| 1960 | 2,266.35 | 1960 | 2687.50 | 2001 | 19040.00 |
| | ** | 1961 | 2645.00 | 2002 | 19640.00 |
| | ** | 1962 | 2717.50 | 2003 | 19900.00 |
| | ** | 1963 | 2835 00 | 2004 | 21570.00 |
| | ** | 1964 | 3031.25 | 2005 | 22060.00 |
| | ** | 1965 | 3222.50 | 2006 | 22080.00 |
| | ** | 1966 | 3438.50 | 2007 | 21960.00 |
| | ** | 1967 | 3662.50 | 2008 | 23270.00 |
| | ** | 1968 | 3801.25 | 2009 | 26140.00 |
| | ** | 1969 | 4261.25 | 2010 | 28230.00 |
| | | 1970 | 4777.50 | 2011 | 28450.00 |
| | | 1971 | 5008.75 | 2012 | 28560.00 |
| | | 1972 | 5576.25 | 2013 | 29310.00 |
| | | 1973 | 5898.75 | 2014 | 30290.00 |
| | | 1974 | 6080.00 | | |
| | | 1975 | 7405.00 | | |
| | | 1976 | 8008.75 | | |
| | | 1977 | 8987.50 | | |

* Figures for 1937-1970 were published by the Bureau of Census. Those for 1971 to present were published by the Bureau of Labor Statistics. All figures are based on annual industry wage survey. After 1990, the Bureau of Labor Statistics stopped keeping records on an annual basis. Standards from that year on are based on multiplying the average hourly rate by 1000 hours. A "year" as defined here is 125 working days.

** After 1960, average wage standards are the same for anthracite and bituminous mines.

27-18

-0004356091

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Cindy Howard_ □ Agent □ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery<br>3|29|16 |

1. Article Addressed to:

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below: □ No

David M Howard
P O Box 135
Baxter, KY 40806

9590 9402 1323 5285 1374 44

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7015 3430 0001 1752 5891

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

27.19

-0004356091

**USPS TRACKING #**



9590 9402 1323 5285 1374 44

| First-Class Mail |
| Postage & Fees Paid |
| USPS |
| Permit No. G-10 |

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

US DEPARTMENT OF LABOR
DCMWC CENTRAL MAIL ROOM
CORRESPONDENCE
PO BOX 8307
LONDON, KY 40742-8307



27.20

OPERATOR RESPONSE TO
SCHEDULE FOR SUBMISSION OF
ADDITIONAL EVIDENCE

**U.S. Department of Labor**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name | | Claimant's Name | Claim Number | OMB No. 1240-0033 |
|---|---|---|---|---|
| David | M  Howard | David M. Howard | XXX-XX-6902 | Expires: 03-31-2017 |
| Responsible Operator's Name | | Insurer's Name | | Policy No. |
| Apogee Coal Co., LLC | | Self-insured through Patriot Coal | | |

This report is authorized by the Black Lung Benefits Act as amended (30 U.S.C. 901 et seq.) (20 CFR 725.410). Please check appropriate boxes below. While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as a responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of benefits to which the Claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim. You also will be deemed to have contested the Claimant's entitlement to benefits.

## A. Liability

The named responsible operator:

☐ Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.

☒ Disagrees with its designation as the responsible operator liable for this claim.

If you disagree, the schedule for the submission of additional evidence advises you of the time period within which you may submit evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2). Absent extraordinary circumstances, **no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the district director in compliance with a schedule for the submission of additional evidence.**

## B. Claimant's Entitlement

The named responsible operator:

☐ Accepts the Claimant's entitlement to benefits.

☒ Contests the Claimant's entitlement to benefits.

If you do not accept the Claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the Claimant's entitlement. If you enter no response in this section, you will be deemed to have contested the Claimant's entitlement to benefits.

| Name and Address of Firm Completing Form | Name of Person Completing Form |
|---|---|
| GREENBERG TRAURIG, LLP | W. William Prochot, Esq. |
| 2101 L STREET, N.W. | Title Attorney |
| SUITE 1000 | |
| WASHINGTON    DC    20037 | Signature             Date 04/11/2016 |

**Privacy Act Statement**

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR 410 or 20 CFR 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Miner Workers' Compensation, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. **Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)**

**Notice**

If you have a substantially limiting physical or mental impairment, Federal disability nondiscrimination law gives you the right to receive help from OWCP in the form of communication assistance, accommodation and modification to aid you in the claims process. For example, we will provide you with copies of documents in alternate formats, communication services such as sign language interpretation, or other kinds of adjustments or changes to account for the limitations of your disability. Please contact our office or the claims examiner to ask about this assistance.

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Central Mail Room**
**PO Box 8307**
**London, KY 40742-8307**



C.O.A.L. Mine Portal: https://eclaimant.dol-esa.gov/bl

**Phone: 1-800-366-4599 or 606-218-9300, extension 701233**
**FAX: (606) 432-3574**

In the Matter of the Claim for Benefits Under the Black
Lung Benefits Act

David M Howard

Claimant

v.

Apogee Coal Company Llc

Responsible Operator

and

Director, Office of Workers' Compensation Programs

**PROPOSED DECISION AND ORDER**
**Award of Benefits-Responsible Operator**

Miner:     David M Howard
CLAIM NO.: **PI XXX-XX-6902 LM C**
Case ID: **B9JWB-2014324**
Claim Date: 11/19/2014

Such development, examination, investigation, and review as is deemed necessary pursuant to the Black Lung
Benefits Act having been completed and duly considered, the District Director makes the following:

<u>FINDINGS OF FACT AND CONCLUSION OF LAW</u>

1.   That David M Howard, born May 14, 1958, hereinafter referred to as the miner, was employed as a coal
     miner in the Nation's coal mines for 17 years, from 1978 to December 03, 1996;

2.   That notice of disability and written claim for benefits was timely filed on November 19, 2014;

3.   That as a result of the conditions of his coal mine employment, the miner contracted pneumoconiosis, as
     that term is defined in the Act and the Regulations;

4.   That such disease has caused a breathing impairment of sufficient degree to establish total disability,
     within the meaning of the Act and the Regulations;

5.   That Apogee Coal Company Llc is the coal mine operator designated as responsible for payment of
     benefits due the claimant;

That the claimant is entitled to receive benefits on his own behalf and augmented on behalf of the following dependent:

| Dependent Name | Date of Birth | Relationship | Entitlement Start | End |
|---|---|---|---|---|
| Cynthia | 07/11/1968 | Wife | 11/2014 | N/A |

at the following rates:

| From | To | No. of Mos. | Monthly Rate | Offset | Net Amt | Total |
|---|---|---|---|---|---|---|
| 11/2014 | 12/2014 | 2 | $947.70 | | $1,895.40 | $1,895.40 |
| 01/2015 | 12/2015 | 12 | $957.20 | | $11,486.40 | $11,486.40 |
| 01/2016 | 08/2016 | 8 | $966.80 | | $7,734.40 | $7,734.40 |
| | | | | | **Total** | $21,116.20 |

And continuing at the monthly rate of $966.80, to be paid on the fifteenth day of the month following the month for which the benefits are due.

Based upon the foregoing Findings of Fact and Conclusions of Law, the District Director makes the following:

## AWARD

That Apogee Coal Company Llc shall pay to the claimant in the amount of $21,116.20 representing all benefits due up to and including August 2016, and shall thereafter continue to pay benefits to the claimant at the rate of $966.80 per month, subject to the limitations of the Act.

The designated responsible operator is also liable for the payment of all fees, charges, and other reasonable expenses incurred by the miner/claimant in developing the claim and for such medical examination, treatment, service, medicine and apparatus required due to the miner's disability.

Within 30 days after the date of issuance of this Proposed Decision and Order, any party may file a written request for revision or request a formal hearing before the Office of Administrative Law Judges. The party must specify the findings and conclusions with which they disagree, and shall serve the written request on the District Director and all other parties.

Signed in the office of the District Director on September 26, 2016

*Dennis D. Glaze*

Dennis Glaze

<div align="center">**PROOF OF SERVICE**</div>

Claimant:  David M Howard

Claim No.:  XXX-XX-6902 LM C

CASE ID:  **B9JWB-2014324**

<div align="center">CERTIFICATION</div>

I hereby certify that on September 26, 2016, the Decision and Order was filed in the office of the District Director and a certified copy mailed to the parties and their representatives at the addresses listed below.

This Order becomes final and effective thirty (30) days from the date printed on this Proof of Service, unless a party to the claim submits a timely request for revision or hearing before an Administrative Law Judge.  If payment is not made within thirty (30) days following the date that this Order becomes final and effective, the responsible operator becomes liable for interest, as provided in the regulations at 20 C.F.R. 725.608.  In addition, if payment is not made within ten (10) days after the 15th day of the month following the month for which benefits are payable, payment of additional compensation in the amount of 20% of the total compensation award will be due the claimant, in accordance with Section 14(f) of the Longshore and Harbor Workers' Compensation Act (LHWCA), as incorporated by Section 422(a) of the Black Lung Benefits Act, and 20 C.F.R. 725.607.

**NOTICE TO CLAIMANT**

**Once a final award has been issued (an award becomes final if no party files a timely request for revision or appeal) the claimant may apply for enforcement of any interest and/or payment of additional compensation due from the operator, if the operator failed to make timely payment of compensation, as specified above.**

**To apply for enforcement of interest and/or penalty, the beneficiary must file suit in the Federal District Court for the district in which the injury occurred (typically, the district in which the miner's last coal mine employment took place).**

*Dennis D. Glaze*

Dennis Glaze

**See the following page for a list of parties served this notice.**

**CERTIFIED MAIL**

David M Howard
P O Box 135
Baxter, KY  40806

Ron Carson, Program Director
Stone Mtn. Health Services
P O Drawer S
St Charles, VA  24282-0269

Apogee Coal Company Llc
C/O Healthsmart Casualty Claims
PO Box 3389
Charleston, WV 25333

Arch Coal Inc.
1 City Place Drive, Ste 300
St Louis, MO 63141

W. William Prochot, Esq.
Greenberg Traurig, LLP
2101 L Street Nw, Suite 1000
Washington, DC 20037

## TABLE OF MONTHLY BLACK LUNG BENEFIT RATES

| | PRIMARY | +1 | +2 | +3 |
|---|---|---|---|---|
| 07/01/73 - 09/30/73 | $ 169.80 | $ 254.70 | $ 297.10 | $ 339.50 |
| 10/01/73 - 09/30/74 | 177.60 | 266.40 | 310.80 | 355.20 |
| 10/01/74 - 09/30/75 | 187.40 | 281.10 | 328.00 | 374.80 |
| 10/01/75 - 09/30/76 | 196.80 | 295.20 | 344.40 | 393.50 |
| 10/01/76 - 09/30/77 | 205.40 | 308.10 | 359.50 | 410.80 |
| 10/01/77 - 09/30/78 | 219.90 | 329.80 | 384.80 | 439.70 |
| 10/01/78 - 09/30/79 | 232.00 | 348.00 | 405.90 | 463.90 |
| 10/01/79 - 09/30/80 | 254.00 | 381.00 | 444.50 | 508.00 |
| 10/01/80 - 09/30/81 | 279.80 | 419.60 | 489.60 | 559.50 |
| 10/01/81 - 09/30/82 | 293.20 | 439.80 | 513.10 | 586.40 |
| 10/01/82 - 12/31/83 | 304.90 | 457.40 | 533.60 | 609.80 |
| 01/01/84 - 12/31/84* | 317.10 | 475.60 | 554.90 | 634.20 |
| 01/01/85 - 12/31/86 | 328.20 | 492.30 | 574.30 | 656.40 |
| 01/01/87 - 12/31/87 | 338.00 | 507.00 | 591.50 | 676.00 |
| 01/01/88 - 12/31/88 | 344.80 | 517.20 | 603.40 | 689.50 |
| 01/01/89 - 12/31/89 | 358.90 | 538.40 | 628.10 | 717.80 |
| 01/01/90 - 12/31/90 | 371.80 | 557.70 | 650.70 | 743.60 |
| 01/01/91 - 12/31/91 | 387.10 | 580.60 | 677.40 | 774.10 |
| 01/01/92 - 12/31/92 | 403.30 | 605.00 | 705.80 | 806.60 |
| 01/01/93 - 12/31/93 | 418.20 | 627.30 | 731.90 | 836.40 |
| 01/01/94 - 12/31/95 | 427.40 | 641.10 | 748.00 | 854.80 |
| 01/01/96 - 12/31/96 | 435.10 | 652.70 | 761.50 | 870.20 |
| 01/01/97 - 12/31/97 | 445.10 | 667.70 | 779.00 | 890.20 |
| 01/01/98 - 12/31/98 | 455.40 | 683.10 | 796.90 | 910.70 |
| 01/01/99 - 02/31/99 | 469.50 | 704.30 | 821.60 | 939.00 |
| 01/01/00 - 12/31/00 | 487.40 | 731.00 | 852.80 | 974.70 |
| 01/01/01 - 12/31/01 | 500.50 | 750.80 | 875.90 | 1001.00 |
| 01/01/02 - 12/31/02 | 518.50 | 777.80 | 907.40 | 1037.00 |
| 01/01/03 - 12/31/03 | 534.60 | 801.90 | 935.50 | 1069.20 |
| 01/01/04 - 12/31/04 | 549.00 | 823.50 | 960.80 | 1098.00 |
| 01/01/05 - 12/31/05 | 562.80 | 844.10 | 984.80 | 1125.50 |
| 01/01/06 - 12/31/06 | 574.60 | 861.80 | 1005.50 | 1149.10 |
| 01/01/07 - 12/31/07 | 584.40 | 876.50 | 1022.60 | 1168.70 |
| 01/01/08 - 12/31/08 | 599.00 | 898.40 | 1048.10 | 1197.90 |
| 01/01/09 - 12/31/09 | 616.30 | 924.50 | 1078.50 | 1232.60 |
| 01/01/10 - 12/31/13 | 625.60 | 938.30 | 1094.70 | 1251.10 |
| 01/01/14 - 12/31/14 | 631.80 | 947.70 | 1105.70 | 1263.60 |
| 01/01/15 - 12/31/15 | 638.10 | 957.20 | 1116.70 | 1276.20 |
| 01/01/16 - | 644.50 | 966.80 | 1127.90 | 1289.00 |

*These benefit rates include the additional one-half percent increase that was granted retroactive to January 1,1984. The following rates were in effect prior to the retroactive payments:

| | PRIMARY | +1 | +2 | +3 |
|---|---|---|---|---|
| 01/01/84 - 06/30/84 | $ 315.60 | $ 473.30 | $ 552.20 | $ 631.10 |

Form CM-971d
Rev. January 2015

## SUMMARY OF MEDICAL AND EMPLOYMENT EVIDENCE
## PROPOSED DECISION AND ORDER

Date Issued: September 26, 2016　　　　　DOL Claim No.: XXX-XX-6902 LM C
Miner's Name: David M Howard　　　　　Claimant's Name: David M Howard
CASE ID: **B9JWB-2014324**
Coal Mine Company: Apogee Coal Company Llc
Insurance Carrier: Self-insured thru Arch Coal Inc.

The claimant named above has filed an application under the Black Lung Benefits Act, 30 USC 901 et seq. We have received the medical and employment evidence summarized below. Based on a review of this evidence, we have concluded that <u>Apogee Coal Company Llc</u> is the responsible operator liable for the payment of any benefits in this claim. We have also concluded that the claimant would be entitled to benefits. A summary of the medical and employment evidence and an analysis of the evidence are set forth below. Copies of any evidence received following the issuance of the Schedule for the Submission of Additional Evidence are attached to this document.

## ENTITLEMENT ANALYSIS:

Based on the preliminary analysis of the medical evidence received to date, we have determined the following:

## PRIOR FILINGS:

The claimant filed a prior claim on March 3, 2006. That claim was withdrawn on June 2, 2006. The claim is considered not to be filed per 20 CFR 725.306.

## RELATIONSHIP/DEPENDENCY:

The file includes a marriage certificate indicating that the miner married Cynthia on September 7, 2001. Therefore, the requirements of 20 CFR 725.204(a)(1) and 725.205(a) and 725.205 (e) which relate to relationship and dependency are met.

## PILOT CLAIM:

This claim is a Pilot Claim (See BLBA Bulletin #14-05).

A PILOT CLAIM is a living miner's claim in which the miner has established 15 or more years of qualifying coal mine employment, **AND** a Schedule for the Submission of Additional Evidence (SSAE) has been issued, describing a preliminary finding of entitlement, **AND** post-SSAE evidence has been received that appears to contradict the preliminary finding of entitlement.

In order to obtain the most comprehensive, accurate and current assessment of the miner's medical condition, DCMWC critically reviewed all evidence contained in this file, including all post-SSAE evidence received, and asked the original Department of Labor examining physician to prepare a supplemental report addressing all available and admissible evidence (20 CFR 725.414(a)(1); 725 457(d)).

This supplemental report has been received and reviewed. All the evidence presented in this case has been carefully weighed under Section 411 (c)(4) of the Act, 30 USC §921 (c)(4) and the DCMWC hereby renders the following:

**PRESENCE OF PNEUMOCONIOSIS (BLACK LUNG DISEASE):**

For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical or "clinical" pneumoconiosis and statutory or "legal" pneumoconiosis.

Clinical pneumoconiosis as defined in 20 CFR 718.201(c)(1): "those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate material in the lungs and the fibrotic reaction of the lung tissue to the deposition caused by dust exposure in coal mine employment. This includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

On 03/07/2015, Dr. DePonte, a Board-certified; B-reader, viewed the x-ray taken of the miner's chest on 03/04/2014 as positive 1/1 for the presence of pneumoconiosis. On 06/04/2015, Dr. Gaziano, a B-reader, determined the quality of this x-ray as acceptable. On 06/12/2013, Dr. Alexander, a Board-certified; B-reader, viewed the x-ray of the miner's chest taken on 05/09/2013 as 1/2 positive for the presence of pneumoconiosis. On 12/23/2015, Dr. Alexander, a Board-certified; B-reader, viewed the x-ray of the miner's chest taken on 03/04/2015 as 1/1 positive for the presence of pneumoconiosis. On 04/23/2016, Dr. Meyer, a Board-certified; B-reader, viewed the x-ray of the miner's chest taken on 05/09/2013 as negative for the presence of pneumoconiosis. On 04/23/2016, Dr. Meyer, a Board-certified; B-reader, viewed the x-ray of the miner's chest taken on 03/04/2015 as negative for the presence of pneumoconiosis. On 04/13/2016, Dr. Seaman, a Board-certified; B-reader, viewed the x-ray of the miner's chest taken on 05/09/2013 as negative for the presence of pneumoconiosis. On 04/13/2016, Dr. Seaman, a Board-certified; B-reader, viewed the x-ray of the miner's chest taken on 03/04/2015 as negative for the presence of pneumoconiosis. Therefore, based on the x-ray evidence from 05/09/2013 being considered negative for the presence of pneumoconiosis and the x-ray evidence from 03/04/2015 being in equipoise, this miner does not suffer with clinical pneumoconiosis.

Legal pneumoconiosis is defined under 20 CFR 718.201(a)(2) as: "any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment, including any chronic pulmonary disease or respiratory impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

On 03/04/2015, Dr. Ajjarapu performed a complete pulmonary evaluation on this miner consisting of a physical examination, pulmonary function study, arterial blood gas test and an electrocardiogram. She also noted the miner's clinical respiratory symptoms, smoking history and coal mine employment history.

Dr. Dr. Ajjarapu made the diagnosis of legal pneumoconiosis based on chronic bronchitis. She expounded that the miner's diagnosed chronic bronchitis is based on the presence of symptoms of daily cough with sputum production and shortness of breath with the miner's pulmonary functions tests were below the Federal Black Lung Disability Standards.

Dr. Dr. Ajjarapu attributed the miner's mild obstructive disease and moderate restrictive airway disease to, in part, the miner's 34 years of coal mine dust exposure and morbid obesity. Dr. Ajjarapu's diagnosis falls within the definition of "legal" pneumoconiosis as defined by 20 CFR 718.201 [any chronic lung disease or impairment arising out of coal mine employment].

On 05/10/2016, Dr. Rosenberg reviewed the medical evidence presented and diagnosed this miner as having severe airflow obstruction with a moderate reduction of forced vital capacity measurement compatible with restriction based on the valid pulmonary function studies performed on 03/04/2015.

On 08/09/2016, a pilot letter was drafted to ask Dr. Ajjarapu to review all the medical evidence of this claim and respond with her professional medical opinion. On 09/15/2016, Dr. Ajjarapu concluded her medical review of the submitted evidence and opined that she considers the x-ray evidence from the day of her examination shows this miner has clinical pneumoconiosis. However, she does concede that the totality of the x-ray evidence is either negative or in equipoise.

Dr. Ajjarapu opined that this miner does suffer with legal pneumoconiosis based on his chronic obstructive pulmonary disease, chronic bronchitis, sputum production, dyspnea on ambulation and shortness of breath due to the miner's cigarette smoking and his 17 years of coal dust exposure being a direst irritation to the miner's airway lining cells that causes the associated cough and sputum production. Dr. Ajjarapu's diagnosis continues to fall within the definition of "legal" pneumoconiosis as defined by 20 CFR 718.201 [any chronic lung disease or impairment arising out of coal mine employment].

The medical evidence in the claim establishes the presence of pneumoconiosis. The presence of the disease is established by the professional medical opinion of Dr. Ajjarapu based upon physical examination and a review of the objective testing. The requirements of 20 CFR 718.202 are met and, therefore, presence of the disease has been established.

Disease is established under the Fifteen Year Presumption pursuant to Section 1556(a) of the PPACA and Section 411(c)(4) of the Black Lung Benefits Act, 30 U.S.C. 921(c)(4).

20 CFR 718.202(a)(4) - established by reasoned medical opinion

**RELATIONSHIP OF BLACK LUNG DISEASE TO COAL MINE EMPLOYMENT:**

The miner was determined to have "legal pneumoconiosis" as that term is defined at 20 C.F.R. 718.201(a)(2), and therefore has proven a chronic lung disease or impairment arising out of coal mine employment. This finding was supported by a reasoned medical opinion (see C.F.R. 718.202(a)(4)). In light of this finding, no separate finding regarding disease causation is necessary.

20 CFR 718.201 (a) (2) established by regulation

**DISABILITY AND RELATIONSHIP OF DISABILITY TO BLACK LUNG DISEASE:**

On 03/04/2015, Dr. Ajjarapu determined the spirometry shows severe pulmonary impairment; the arterial blood gases study show mild pre and post arterial hypoxemia and the miner's chest x-ray is positive for coal worker's pneumoconiosis. She concluded her examination with opining that based on the overall evaluation, this miner is totally disabled, his disability is multifactorial and it is due to both causes of extensive smoking and inhalational coal dust; this miner does not have the pulmonary capacity to do his previous employment.

The pulmonary function tests tests were validated by the Department of Labor's medical consultant, Dr. Gaziano, on 04/09/2015.

Saint Charles Medical Respiratory Clinic performed a pulmonary function test for this miner on 10/28/2014. The results appear to be below the Federal Black Lung Disability Standards. However, these tests have not been validated for compliance.

Saint Charles Medical Respiratory Clinic performed a pulmonary function test for this miner on 04/26/2016. The results appear to be below the Federal Black Lung Disability Standards. This report was validated by Dr. Ajjarapu on 04/26/2016.

On 05/10/2015, Dr. Rosenberg concluded his review of the medical evidence and opined that this miner suffers with a pulmonary impairment. He stated that Mr. Howard does have a severe air flow obstruction with a bronchodilator response. He continued to express that the miner's spirometric measurements are qualifying. He also opined that Mr. Howard would be considered disabled from performing his previous coal mining job or similarly arduous types of labor.

On 09/15/2016, Dr. Ajjarapu concluded her review of all the medical evidence submitted in this claim and opined that, in relation to the miner's pulmonary function studies, if a person has preexisting loss of lung function for other reasons, a small additional loss of forced expiratory volume in one second from dust exposure may be enough to take him below the 65% predicted and may cause deleterious effects on his mortality. She also stated that both Dr. Rosenberg and she agree that this miner is disabled and that he does not have the pulmonary capacity to do his previous coal mine employment of 17 years.

The results of breathing tests (Pulmonary Function Studies) meet the regulatory standards to establish total disability. The results of the Arterial Blood Gas Studies do not meet the disability standards as set forth in the regulations. For the Pulmonary Function Studies to establish total disability under the regulations, that total disability must be DUE TO PNEUMOCONIOSIS. Because the presence of pneumoconiosis has been established, the claimant is considered to be disabled due to pneumoconiosis. The requirements of 20 CFR 718.204 are met and, therefore, total disability due to pneumoconiosis has been established.

20 CFR 718.204(b)(2)(i)   - established by PFS

## FIFTEEN YEAR PRESUMPTION:

This claim has been reviewed to determine if the changes in the Black Lung Benefits Act mandated by the Patient Protection and Affordable Care Act of 2010 (PPACA), Public Law 111-148 §1556(a), apply. Section 411(c)(4) of the Act provides presumptions of total disability due to pneumoconiosis or death due to pneumoconiosis under certain circumstances. The presumptions are applicable to claims that were filed before January 1, 1982 or after January 1, 2005, and were pending on or after March 23, 2010.

The presumption is available to miners who worked for a cumulative period of fifteen or more years in underground mining, or comparable surface mining, and the evidence establishes the existence of a totally disabling respiratory or pulmonary impairment. If a survivor establishes that the miner worked for fifteen or more years in coal mine employment and that the miner suffered from a totally disabling chronic respiratory or pulmonary impairment prior to death, it is presumed that the miner's death was due to pneumoconiosis. The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purpose of applying this presumption, shall be made in accordance with section 20 CFR 718.204.

For rebuttal in a miner's claim, the party opposing entitlement must establish either that the miner does not or did not have pneumoconiosis or that the miner's impairment did not arise out of or in connection with coal mine employment. In a survivor's case, the party opposing entitlement must provide evidence sufficient to rebut the presumption of death due to pneumoconiosis.

As discussed in the analysis of the admissible medical evidence, the evidence establishes that the miner has a disabling respiratory impairment as well as fifteen years of proven coal mine employment. The presumption has been invoked. The evidence establishes that the miner has a disabling respiratory impairment due to simple coal worker's pneumoconiosis and the presumption is not rebutted. An award is appropriate pursuant to Section 1556(a) of the PPACA and Section 411(c)(4) of the Black Lung Benefits Act, 30 U.S.C. 921(c)(4).

## ENTITLEMENT

Based upon the above, the claimant would be entitled to benefits.

**EMPLOYMENT ANALYSIS**

This miner has been employed in our Nation's coal mining industry from 1978 thru 1996. This miner's estimated last date of coal mine employment is 12/03/1996. This is based on a Social Security Earnings Record covering the period 1974 to 2013, and the Kentucky State Worker's Compensation Office.

**LIABILITY ANALYSIS**

Apogee Coal Company Llc has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon the miner's self-reported employment history (911a) and his social security earnings record.

2. The miner's employment with this operator included at least one working day after 12/31/69 based upon the miner's self-reported employment history (911a) and his social security earnings record.

3. There is a rebuttable presumption that workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.

4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

5. This operator is the operator that most recently employed the miner according to the miner's self-reported employment history (911a) and his social security earnings record.

Based on the miner's self-reported employment history, his pay stubs and his social security earnings record; the most recent coal mining company to employ this miner is Apogee Coal Company Llc from 1993 thru 1996. Information gathered from the Kentucky Worker's Compensation Office indicates that this miner suffered an on-the-job injury on December 3, 1996 and did not return to Apogee Coal Company Llc after the injury. The reported income from Apogee Coal Company Llc on the miner's social security earnings record has an undetermined origin. Apogee Coal Company Llc was self-insured during this miner's employment.

This miner has subsequent employment. However, the subsequent employment is not in the coal mining industry.

Therefore, it is determined that Apogee Coal Company Llc is the responsible operator in this claim.

A Notice of Claim was received by the potentially liable operator/carrier, Self-insured thru Patriot Coal Company, on December 11, 2014, as evidenced by the signed return receipt from the post office. The potentially liable operator/carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence. Therefore, in accordance with 20 CFR 725.408(b), no documentary evidence relevant to the grounds set forth in the Operator Assertions - 20 CFR 725.408(a)(2) - may be admitted in any further proceeding.

# MEDICAL EVIDENCE

(The first letter of the letter codes with the test dates represents the submitting party for the evidence: "D" stands for Director (the Department of Labor), "R" for designated responsible operator, the employer, and "C" for claimant. The second letter of each code indicates if the evidence is "E" for Evidence of record, "N" for New evidence developed for this claim or "R" for Rebuttal evidence.)

**MINER:** David M Howard
**CLAIM NO.:** XXX-XX-6902 LM C
**CASE ID:** B9JWB-2014324

## X-ray Evidence

| X-RAY Film Date | Reread Date | Name of Reader | X-RAY Reader Qualifications | Film Quality | X-RAY Interpretation |
|---|---|---|---|---|---|
| 03/04/2015 | 03/07/2015 D-N | K. DePonte | B-reader; Board-certified | 1 | 1/1 |
| 03/04/2015 | 06/04/2015 D-N | D. Gaziano | B-reader | 1 | Quality Reading |
| 05/09/2013 | 06/12/2013 C-N | M. Alexander | B-reader; Board-certified | 1 | 1/2 |
| 03/04/2015 | 12/23/2015 C-N | M. Alexander | B-reader; Board-certified | 1 | 1/1 |
| 05/09/2013 | 04/23/2016 R-N | C. Meyer | B-reader; Board-certified | 2 | Negative |
| 03/04/2015 | 04/23/2016 R-N | C. Meyer | B-reader; Board-certified | 1 | Negative |
| 05/09/2013 | 04/13/2016 R-R | D. Seaman | B-reader; Board-certified | 1 | Negative |
| 03/04/2015 | 04/13/2016 R-R | D. Seaman | B-reader; Board-certified | 1 | Negative |

## Pulmonary Function Study (PFS) Evidence

| Date | Physician | Age/ Height | FEV1 | MVV | FVC | FEV1 FVC | DISABILITY STANDARDS FEV1 | MVV | FVC | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/04/2015 D-N-Pre* | E. Ajjarapu | 56/68.0 | 1.67 | 71.23 | 2.65 | 63% | 1.97 | 079 | 2.50 | Yes |
| 03/04/2015 D-N-Post* | E. Ajjarapu | 56/68.0 | 1.89 | 69.59 | 2.87 | 66% | 1.97 | 079 | 2.50 | Yes |
| 10/28/2014 C-N-Pre | St. Charles Respiratory Clinic | 56/69.0 | 1.47 |  | 2.12 | 70% | 2.06 | 082 | 2.61 | N/A |
| 04/26/2016 C-N-Pre** | St. Charles Respiratory Clinic | 57/68.0 | 1.42 |  | 2.19 | 65% | 1.95 | 078 | 2.48 | N/A |

* Validated by the Department of Labor's medical consultant, Dr. Gaziano on 04/09/2015
**Validated by Dr. Ajjarapu on 04/26/2016.

## Arterial Blood-gas (ABG) Evidence

| Date | Physician | Resting/ Exercise? | PCO2 | PO2 | PO2 Disability Standards | Altitude | Valid? |
|---|---|---|---|---|---|---|---|
| 03/04/2015 D-N | E. Ajjarapu | Resting | 41 | 75 | 60.0 | 0-2999 | N/A |
|  |  | Exercise | 39 | 76 | 61.0 | 0-2999 | N/A |

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 03/04/2015 D-N | E. Ajjarapu - Board Certified in Family Practice | **Diagnosis –** Clinical pneumoconiosis based on the chest x-ray of the miner's chest taken on 03/04/2015. Legal pneumoconiosis based on the chronic bronchitis. Chronic bronchitis is based on the presence of symptoms of daily cough with sputum production and shortness of breath. **Etiology –** |

| | | Chronic bronchitis is based on the presence of respiratory symptoms. He did describe presence of coughing and shortness of breath. Underlying etiologies of his underlying chronic bronchitis is his work in the mines and tobacco abuse. Both tobacco smoke and coal dust cause airway inflammation leading to bronchospasm and cause excessive airway secretions and bronchitic symptoms. Inhaled coal dust eventually causes macules and nodules to form in the lung tissue and these can be seen as opacities, as in the x-ray of this miner.<br>**Impairment** –<br>Spirometry shows severe pulmonary impairment, mild pre and post arterial hypoxemia and positive chest x-ray for coal worker's pneumoconiosis. Based on the overall evaluation, this miner is totally disabled. He has extensive work history and smoking history. He has no coronary artery disease. This miner's disability is multifactorial and it is due to both causes of extensive smoking and inhalational coal dust. He does not have the pulmonary capacity to do his previous employment. |
|---|---|---|
| 05/10/2016 R-N | D. Rosenberg - Board-certified in Internal Medicine & Pulmonary Disease | **Medical report on submitted evidence** –<br>No clinical pneumoconiosis.<br>Legal pneumoconiosis based on the spirometry.<br>**Etiology** –<br>Smoking and coal worker's pneumoconiosis<br>**Impairment** –<br>From an impairment perspective, Mr. Howard does have severe air flow obstruction with a bronchodilator response. Overall, his spirometric measurements are qualifying. His gas exchange is preserved in association with exercise. Based on the above information, Mr. Howard would be considered disabled from performing his previous coal mine job or similarly arduous types of labor. |
| 09/15/2016 D-N | E. Ajjarapu - Board Certified in Family Practice | **Diagnosis** –<br>Legal pneumoconiosis<br>Chronic bronchitis<br>Chronis obstructive pulmonary disease<br>**Etiology** –<br>Smoking and 17 years of coal dust exposure.<br>**Impairment** –<br>Both Dr. Rosenberg and I agree that this miner is disabled and that he does not have the pulmonary capacity to do his previous coal mine employment. |

**Length of Coal Mine Employment**
The claimant has proven 17 years of coal mine employment.

# Addendum: Certified Receipt Numbers

Case ID: **B9JWB-2014324**

David M Howard
Certified Receipt No.:  **70160340000092885047**

Arch Coal Inc.
Certified Receipt No.: **70160340000092885078**

Ron Carson, Program Director
Certified Receipt No.: **70160340000092885054**

W. William Prochot, Esq.
Certified Receipt No.: **70160340000092885085**

Apogee Coal Company Llc
Certified Receipt No.: **70160340000092885061**

Underwriters Safety And Claims Tpa
Certified Receipt No.: **70160340000092885092**

CERTIFICATE OF FIRST PAYMENT OF BENEFITS    **U.S DEPARTMENT OF LABOR**
                                             OFFICE OF WORKERS' COMPENSATION PROGRAMS

**NOTE**: Within ten days after the first payment is made, file the original of this certificate with the initiating office.  Send a copy to the person receiving benefits.  The Black Lung Benefits Act (30 U.S.C. 901 et. seq.) requires this report.  Failure to report can result in a civil penalty of not more than $500 for each failure or refusal.

| 1. Name of Disabled or Deceased Coal Miner | 2. Miner's Claim Number |
|---|---|
| David M Howard | **CLAIM NO.: PI XXX-XX-6902 LM C**<br>**CASE ID: B9JWB-2014324** |

3. Name and Address of Person to Whom the Check is Made Payable (The Payee)
    David M Howard
    P O Box 135
    Baxter, KY  40806

| 4. Name and Address of Coal Mine Operator | 5. Name and Address of Insurance Carrier |
|---|---|
| Apogee Coal Company Llc<br>C/O Healthsmart Casualty Claims<br>PO Box 3389<br>Charleston, WV 25333 | Self-insured thru Arch Coal Inc.<br>1 City Place Drive, Ste 300<br>St Louis, MO 63141 |

6. Name(s) of Dependent(s) of Disabled or Deceased Coal Miner

    Cynthia

7. a. Last date DOL will issue a benefit check      _____ (month/day/year)

   b. Responsible Operator to reimburse the Trust Fund (Interim Benefits)  for    _____ - _____ (dates)

               $     0.00    (amount)

   c. Responsible Operator to begin payment for    September 2016 (month/year)

               $     966.80    (amount)

   d. Responsible Operator to pay lump sum to claimant    November 2014 - August 2016 (dates)

               $     21,116.20    (amount)

   e. Responsible Operator to reimburse the Trust Fund for:

                     medical costs  $     0.00    (amount)

                         interest  $     0.00    (amount)

**X** You will be notified of medical costs and interest at a future date.

☐ I hereby certify that **I AGREE** with the information contained in Item 7 of this form and that payments have been  initiated as indicated above.

☐ I hereby certify that **I DISAGREE** with the information contained in ITEM 7 of this form but have initiated benefits.

_____     _____
Signature of Person Authorized to Sign for Coal Mine Operator or Insurance Carrier      Date

_____
Print Name and Title

_____     _____
Address                                              Phone Number

                                                       CM-906
                                                   Rev. 10/83

**U.S. DEPARTMENT OF LABOR**     **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Central Mail Room**
**PO Box 8307**
**London, KY 40742-8307**



<u>C.O.A.L. Mine Portal</u>: https://eclaimant.dol-esa.gov/bl

**Phone: 1-800-366-4599 or 606-218-9300, extension 701233**
**FAX: (606) 432-3574**

|  |  |
|---|---|
| In the Matter of the Claim for Benefits Under the Black Lung Benefits Act | **AGREEMENT TO PAY BENEFITS** |
| David M Howard<br>Claimant | Miner:  David M Howard<br>CLAIM NO.: **PI XXX-XX-6902 LM C**<br>Case ID: **B9JWB-2014324**<br>Claim Date: 11/19/2014 |
| v. |  |
| Apogee Coal Company Llc<br>Responsible Operator |  |
| and |  |
| Director, Office of Workers' Compensation Programs |  |

The above-named Coal Mine Operator and/or Insurance Carrier agrees to pay benefits and other costs and expenses pursuant to the Black Lung Benefits Act (30 U.S.C., 931 et seq.), based upon the finding by the Department of Labor of the claimant's eligibility to be paid benefits on his or her own behalf and on behalf of the following dependents:

<u>Cynthia</u>

A Proposed Decision and Order issued by a District Director becomes effective on the 30th day after issuance of the Proposed Decision and Order if no party timely requests revision or a hearing. (20 C.F.R. 725.505(a)(2)) at that time benefits become due.

The responsible Coal Mine Operator agrees to begin to pay benefits by the 15th day of the month following the month that such benefit payments become due and to reimburse the Black Lung Disability Trust Fund for any benefit payments made and any medical development expenses incurred.  (20 C.F.R. 725.502(b)(1)).  The first payment will include benefits which have accrued from September 01, 2016, with subsequent payment of benefits to be made on the 15th day of each month thereafter.

The responsible Coal Mine Operator understands and agrees that this document may be the basis for the issuance of an Award of Benefits and Order to pay benefits in this claim.  Notice of First Payment of Payments (CM-906) should follow this agreement.

_____                    _____
Signature of Authorized Officer                                                      Date


_____
Name and Title

**U.S. Department of Labor**
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002

(856) 486-3800
(856) 486-3806 (FAX)



**Issue Date: 10 July 2019**

Case No.:    2017-BLA-05163

In the Matter of:

**DAVID M. HOWARD**
      Claimant

    v.

**APOGEE COAL COMPANY**
      Self-Insured Employer

   and

**ARCH COAL INC.**
      Carrier

**DIRECTOR, OFFICE OF WORKERS'**
**COMPENSATION PROGRAMS**
      Party-in-Interest

## <u>ORDER DENYING EMPLOYER'S MOTION TO TRANSFER LIABILITY</u>

This matter relates to the claim for benefits filed by David M. Howard ("Claimant") against Apogee Coal Co. LLC ("Apogee"), as self-insured by Arch Coal Inc. ("Arch"), under the Black Lung Benefits Act ("Act"), 30 U.S.C. §§ 901-945, and its implementing regulations, 20 C.F.R. Parts 718 and 725. A hearing is scheduled for July 18, 2019.

On June 19, 2019, Arch filed a Motion to Transfer Liability to Trust Fund. Arch asserts that, because it did not receive proper notice of this claim, the Black Lung Disability Trust Fund ("Trust Fund") must assume liability for this claim. On July 3, 2019, the Director of the Office of Workers' Compensation Programs ("Director") filed a response arguing that Arch received proper notice of this claim and has had a meaningful opportunity to defend itself.

The applicable regulations indicate that the "district director may identify one or more operators potentially liable for the payment of benefits" and "shall notify each such operator of the existence of the claim." 20 C.F.R. § 725.407(b). Additionally, "the notice provided pursuant to this section shall also be sent to the operator's [insurance] carrier. Any operator or carrier notified of the claim shall thereafter be considered a party to the claim." § 725.407(b).

The regulations also require the district director to issue a schedule for the submission of additional evidence ("SSAE") to give the parties an opportunity to submit additional evidence. § 725.410(a) The district director "shall serve a copy of the [SSAE], together with a copy of all of the evidence developed, on the claimant, the designated responsible operator, and all other operators which received notification pursuant to §725.407. The schedule shall be served on each party by certified mail." § 725.410(c).

Finally, the Proposed Decision and Order ("PDO") issued by the district director "must reflect the district director's final designation of the responsible operator liable for the payment of benefits. ... [N]o operator may be finally designated as the responsible operator unless it has received notification of its potential liability pursuant to §725.407, and the opportunity to submit additional evidence pursuant to §725.410." § 725.418(d). The PDO must be served on all parties by certified mail. § 725.418(b).

In this case, on December 8, 2015, the district director issued a Notice of Claim identifying Apogee as the potentially liable operator and Arch as the insurance carrier. (DX 22.) The service sheet and certified mail receipts reflect that the notice was served on both Apogee and Arch. (DX 22 at 3, 6, 7, 9.) On January 5, 2016, Arch (through counsel) responded to the Notice of Claim and acknowledged that Apogee and Arch "have been notified that they may be responsible for the payment of compensation and other benefits in this claim." (DX 25 at 4.)

On March 17, 2016, the district director issued an SSAE naming Apogee as the designated responsible operator and Arch as the insurer. (DX 27.) The service sheet and a list of certified mail receipt numbers reflect that the SSAE was served on Apogee and Arch by certified mail, but the certified mail receipts are not included in the record. (DX 27 at 4-5.) On April 11, 2016, Arch (through counsel) filed a response to the SSAE. (DX 29.)

On September 26, 2016, the district director issued the PDO. (DX 44.) The service sheet and certified mail receipts reflect that the PDO was served on Apogee and Arch via certified mail. (DX 44 at 5, 14, 19, 23.) The heading of the summary of evidence associated with the PDO lists Apogee as the operator and Arch as the insurance carrier. (DX 44 at 7.) The "Certificate of First Payment of Benefits" to be filed by the responsible operator or carrier lists Apogee as the operator and Arch as the insurance carrier. (DX 44 at 15.) On October 5, 2016, Arch (through counsel) responded to the PDO, requested a hearing, and noted that "DOL incorrectly named it as a party." (DX 45.)

Arch emphasizes that the district director also issued a Notice of Claim (DX 21) and an SSAE (DX 26) identifying Patriot Coal Company ("Patriot") as the insurance carrier. Most importantly, in the section concluding that Apogee is the responsible operator in this claim, the text of the PDO identifies Patriot as Apogee's self-insurance carrier. (DX 44 at 11.) Arch concludes: it was not properly named in the PDO, the district director's failure to provide proper notice constitutes a violation of due process, it cannot be held liable for this claim, and liability must be transferred to the Trust Fund.

Regarding the PDO, Arch contends: "by all outward appearances, it appeared that the district director had agreed that Arch Coal was not liable for any benefits due in this case." (Mot.

4.) To the contrary, I conclude a fair reading of the PDO and associated documents leads to the conclusion that Arch was named as the self-insurer, and the lone reference to Patriot in the analysis section was a typographical error. If Arch was confused as to whether it was a party to this claim or could be held responsible for this claim, it should have raised that issue in its response to the PDO. It does not appear that, at any point prior to this motion, Arch raised any due process concerns.

Moreover, I conclude any defect in the PDO does not rise to the level of a due process violation. As set forth above, Arch was properly served with a Notice of Claim. Although the certified mail receipt for service of the SSAE on Arch is not in the record, I conclude Arch was in fact properly served because the record reflects a certified mail number (DX 27 at 5) and because Arch responded to the SSAE (DX 29). Additionally, as set forth above, Arch was also properly served with the PDO. Though there is a reference to Patriot in the PDO, that typographical error does not render these proceedings or the outcome thereof fundamentally unfair or unreliable.

For these reasons, Arch's Motion to Transfer Liability to Trust Fund is **DENIED**.



Digitally signed by Lauren C. Boucher
DN: CN=Lauren C. Boucher,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=CHERRY HILL, S=NJ, C=US
Location: CHERRY HILL NJ

**LAUREN C. BOUCHER**
Administrative Law Judge

Cherry Hill, New Jersey

3

# SERVICE SHEET

Case Name: **HOWARD_DAVID_M_v_APOGEE_COAL_COMPANY__**

Case Number: **2017BLA05163**

Document Title: **ORDER DENYING EMPLOYER'S MOTION TO TRANSFER LIABILITY**

I hereby certify that a copy of the above-referenced document was sent to the following this 10th day of July, 2019:



Digitally signed by Donna M. Broome
DN: CN=Donna M. Broome, OU=Paralegal
Specialist, O=US DOL Office of
Administrative Law Judges, L=CHERRY
HILL, S=NJ, C=US
Location: CHERRY HILL NJ

**Donna M. Broome**
Paralegal Specialist

District Director
United States Department of Labor
OWCP_DCMWC
200 Constitution Ave., NW
RM N3464
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Associate Regional Solicitor
U. S. Department of Labor
Suite 230
618 Church Street
NASHVILLE TN 37219-2456
*{Hard Copy - Regular Mail}*

Mark Solomons, Esq.
Greenberg Traurig, LLP
2101 LStreet N.W. Suite 1000
WASHINGTON DC 20037
*{Hard Copy - Regular Mail}*

Matt Shepherd, Esq.
Associate Regional Solicitor
US Dept of Labor
Suite 230
Church Street
NASHVILLE TN 37219
*{Hard Copy - Regular Mail}*

Ron Carson, Program Director
Stone Mountain Health Services
P.O. Drawer S
ST. CHARLES VA 24282-0269
*{Hard Copy - Regular Mail}*

W. William Prochot, Esq.
Greenberg Traurig, LLP
2101 L Street, NW, STE 1000
WASHINGTON DC 20037
*{Hard Copy - Regular Mail}*

David M. Howard
P.O. Box 135
BAXTER KY 40806
*{Hard Copy-Registered Mail}*

J.A. 368

Apogee Coal Company Inc.
c/o Healthsmart CCS
P.O. Box 3389
CHARLESTON WV 25333
          *{Hard Copy - Regular Mail}*

Arch Coal Inc.
1 City Place Drive, STE 300
ST. LOUIS MO 63141
          *{Hard Copy - Regular Mail}*