No. 23-3332

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**APOGEE COAL COMPANY; ARCH RESOURCES,**

**Petitioners**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR**

**and**

**DAVID M. HOWARD,**

**Respondents**

**On Petition for Review of an Order of the Benefits Review Board, United States Department of Labor**

## BRIEF FOR THE FEDERAL RESPONDENT

**SEEMA NANDA**
Solicitor of Labor
**BARRY H. JOYNER**
Associate Solicitor
**JENNIFER FELDMAN JONES**
Deputy Associate Solicitor
**SEAN G. BAJKOWSKI**
Counsel for Appellate Litigation
**SARAH M. HURLEY**
Attorney
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C.  20210
(202) 693-5660
Attorneys for the Director, Office of
Workers' Compensation Programs

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... i

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT REGARDING ORAL ARGUMENT ............................... xi

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ............................................................. 3

STATEMENT OF THE CASE ................................................................. 5

    A. Statutory and Regulatory Background ...................................... 5

        1. The BLBA's liability regulations .................................... 5

        2. Black Lung claims procedures ....................................... 7

        3. The BLBA's liability-evidence rules .............................. 9

            a. The liability-evidence rules at the district director level .......... 9

            b. The liability-evidence rules at the ALJ level .......................... 13

    B. Relevant Facts ....................................................................... 14

        1. Apogee, Arch, and Patriot ........................................... 14

        2. Bulletin 16-01 and *Arch v. Acosta* ............................. 15

    C. Proceedings Below ................................................................ 16

        1. Proceedings before the district director ....................... 16

        2. Proceedings before ALJ Boucher ................................ 18

        3. Proceedings before the Benefits Review Board ........... 19

SUMMARY OF THE ARGUMENT ..................................................... 21

ARGUMENT ............................................................................. 24

    A.  Standard of Review ................................................................. 24

    B.  Arch is liable for this claim because Apogee was covered by Arch's
    self-insurance umbrella on the last day of Howard's mining work ............. 25

    C.  The fact that Apogee was no longer an Arch subsidiary when
    Howard filed this claim is irrelevant because black lung liability
    is based on the miner's last day of employment
    with the responsible operator ...................................................... 28

        1.  Self-insurance liability uses the same last-mining-employment
        occurrence trigger that an employer's direct liability does .............. 28

        2.  Arch's proposed claim trigger would produce absurd results ...... 33

        3.  Applying an occurrence trigger does not ignore
        Arch's corporate form .......................................................... 35

    D.  There is no evidence in the record suggesting that DOL released
    Arch from its liability for claims based on employment with Apogee
    while it was an Arch subsidiary ................................................... 36

        1.  Arch submitted no evidence that it was released from liability
        and its attempt to make its case with non-record evidence
        should be rejected ............................................................... 36

        2.  The ALJ correctly applied the liability-evidence rules ................. 39

            a.  The liability-evidence rules apply to this case ......................... 41

            b.  The ALJ's application of the liability evidence rules below
            is consistent with *Arch v. Acosta* ................................... 43

            c.  The liability-evidence rules are valid ...................................... 44

(i)  The liability-evidence rules are consistent with Section 19(d) of the Longshore Act ........................................ 46

(ii)  Even if the liability-evidence rules conflict with Section 19(d), the BLBA gives DOL the authority to alter incorporated Longshore Act provisions .................... 48

E.  The district director properly notified Arch of its liability for this claim ................................................................................ 51

CONCLUSION ........................................................................................ 54

CERTIFICATE OF COMPLIANCE ...................................................... 55

CERTIFICATE OF SERVICE ............................................................... 56

# **TABLE OF AUTHORITIES**

**Cases:**                                                                                                   **Page:**

*Abbott v. McCoy Elkhorn Coal Co.*,
  No. 2019-BLA-5029 (DOL OALJ Feb. 19, 2019) ..............................................32

*Adkins v. Hobet Mining*,
  Case No. 2021-BLA-05409 (OALJ hearing Aug. 9, 2022) .................................33

*Albina Engine & Machine v. Director, OWCP*,
  627 F.3d 1293 (9th Cir. 2010) ....................................................................................49

*Allen v. Hobet Mining*,
  2019-BLA- 06231 (OALJ 2022) .......................................................................33

*Amax Coal Co. v. Director, OWCP*,
  312 F.3d 882 (7th Cir. 2002) ................................................................................50

*Arch Coal, Inc. v. Acosta*,
  888 F.3d 493 (D.C. Cir. 2018) ...........................................................15,16,33,43

*Arch Coal, Inc. v. Hugler*,
  242 F. Supp. 3d 13 (D.D.C. 2017) ......................................................................15

*Arch of Ky, Inc. v. Director, OWCP*,
  556 F.3d 472 (6th Cir. 2009) ..............................................................................24

*Arkansas Coals v. Lawson*,
  739 F.3d 309 (6th Cir. 2014) ...........................................................................5,13

*Auer v. Robbins*,
  519 U.S. 452 (1997) ............................................................................................25

*Browning v. Arch of KY*,
  OALJ Case No. 2017-BLA-05005 ......................................................................52

iv

*Chapman v. Apogee Coal Co.*,
    ALJ Case No. 21-BLA-05572 (Mar. 6, 2023) ..................................................... 39

*Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ....................................................................................... 24

*Chitwood v. Arch of KY*,
    OALJ Case No. 2017-BLA-05097 ................................................................... 52

*Connolly v. Pension Benefit Guaranty Corp.*,
    475 U.S. 211 (1986) ....................................................................................... 27

*Director, OWCP v. Greenwich Collieries*,
    512 U.S. 267 (1994) ................................................................................... 49,50

*Director, OWCP v. Ogelbay Norton Co.*,
    877 F.2d 1300 (6th Cir. 1989) ........................................................................ 5

*Elm Grove Coal Co. v. Director, OWCP*,
    480 F.3d 278 (4th Cir. 2007) ......................................................................... 48

*Grimmett v. Arch of West Virginia*,
    OALJ Case No. 2017-BLA-06184 ................................................................... 52

*Healy Tibbetts Builders, Inc. v. Cabral*,
    201 F.3d 1090 (9th Cir. 2000) ......................................................................... 8

*In re James River Coal Co.*,
    No. 14-31848 (Bankr. E.D. Va) ..................................................................... 48

*International Union, UAW v. Michigan*,
    886 F.2d 766 (6th Cir. 1989) ......................................................................... 25

*Island Creek Kentucky Mining v. Ramage*,
    737 F.3d 1050 (6th Cir. 2013) ....................................................................... 24

*Kisor v. Wilkie*,
    --- U.S. ---, 139 S. Ct. 2400 (2019) ............................................................... 25

*Lovilia Coal Co. v. Williams*,
   143 F.3d 317 (7th Cir. 1988)................................................................27

*Lynch v. Old Ben Coal Co.*,
   BRB No. 10-0209 BLA, 2010 WL 8111398 (DOL BRB Dec. 8, 2010) ...............32

*Mourning v. Family Publications Service, Inc.*,
   411 F.3d 1388 (1973).....................................................................24

*Mullins Coal Co. v. Director, OWCP*,
   484 U.S. 135 (1988)......................................................................25

*National Mining Ass'n v. Chao*,
   160 F.Supp. 2d 47 (D.D.C. 2001) .........................................................50

*National Mining Ass'n v. Secretary of Labor*,
   292 F.3d 859 (D.C. Cir. 2002) ....................................................26,46,50

*Old Ben Coal Co. v. Battram*,
   7 F.3d 1273 (7th Cir. 1993) ................................................................3

*Old Ben Coal Co. v. OWCP*,
   476 F.3d 418 (7th Cir. 2007) .............................................................32

*Olenick v. Olenick Brothers Coal Co.*,
   BRB No. 11-0833 BLA, 2012 WL 5267588 (DOL BRB Sept. 19, 2012) .........11

*Plutt v. Benefits Review Board*,
   804 F.2d 597 (10th Cir. 1986).............................................................37

*Prince v. Island Creek Coal Co.*,
   76 F. App'x 67 (6th Cir. 2003).............................................................25

*Saginaw Mining Co. v. Mazzulli*,
   818 F.2d 1278 (6th Cir. 1987)..............................................................8

*United States v. Insurance Co. of North America*,
   83 F.3d 1507 (D.C. Cir. 1996).............................................................29

*United States v. Johnson*,
  440 F.3d 832 (6th Cir. 2006) ................................................................. 41

*United States on behalf of Dep't of Labor v. Insurance Co. of North America*,
  131 F.3d 1037 (D.C. Cir. 1997) ........................................................... 30

*U.S. Dep't of Labor v. Triplett*,
  494 U.S. 715 (1990) ............................................................................. 27

*Ward v. Catenary Coal Co.*,
  2018-BLA-06329 (DOL OALJ Nov. 30, 2023) (decision) ................................ 39

*Ward v. Catenary Coal Co.*,
  2018-BLA-06329 (DOL OALJ Dec. 3, 2021) (discovery order) ......................... 47

*Wyoming Fuel Co. v. Director, OWCP*,
  90 F.3d 1502 (10th Cir. 1996) ........................................................... 48

## **Statutes:**

Administrative Procedure Act,
  5 U.S.C. § 551 *et seq.*

  5 U.S.C. § 556(d)...................................................................................50

Black Lung Benefits Act,
  30 U.S.C. §§ 901-944

  30 U.S.C. § 901(a)...................................................................................5
  30 U.S.C. § 922 .......................................................................................5
  30 U.S.C. § 932(a)................................................................2,7,8,44,48,50
  30 U.S.C. § 932(c)...................................................................................5
  30 U.S.C. § 932(i)(1)-(2) ......................................................................34
  30 U.S.C. § 933(a)...................................................................................6
  30 U.S.C. § 932(h)...................................................................................6
  30 U.S.C. § 934(b) ..................................................................................2
  30 U.S.C. § 936(a)................................................................................6,25

Internal Revenue Code,
  26 U.S.C. §1 *et seq.*

  26 U.S.C. § 9501(d)(1)(A)(ii) ................................................................2
  26 U.S.C. § 9501(d)(1)(B) ......................................................................5

Longshore and Harbor Workers' Compensation Act,
  33 U.S.C. § 901 *et seq.*

  33 U.S.C. § 919(a)-(c) .............................................................................7
  33 U.S.C. § 919(d) ...............................................8,44,46,48,49,50
  33 U.S.C. § 921(a)...................................................................................2
  33 U.S.C. § 921(b)(3)..............................................................................2
  33 U.S.C. § 921(b)-(c) .............................................................................8
  33 U.S.C. § 921(c)...................................................................................2
  33 U.S.C. § 923 ...................................................................................8,50
  33 U.S.C. § 927 .......................................................................................8
  33 U.S.C. § 927(a)..................................................................................45

**Regulations:**

20 C.F.R. § 718.201(c) ........................................................................34

20 C.F.R. § 725.350(b) ..........................................................................7
20 C.F.R. § 725.351(a) ..........................................................................8
20 C.F.R. § 725.407(a) ........................................................................10
20 C.F.R. § 725.407(b) ........................................................................10
20 C.F.R. § 725.407(c) ........................................................................10
20 C.F.R. § 725.408 ............................................................................42
20 C.F.R. § 725.408(a)(1) ....................................................................10
20 C.F.R. § 725.408(a)(2) ............................................................41,42,44
20 C.F.R. § 725.408(a)(2)(i)-(v) ..........................................................10
20 C.F.R. § 725.408(a)(2)(v) ...........................................................10,42
20 C.F.R. § 725.408(b) ........................................................................44
20 C.F.R. § 725.408(b)(1) ...............................................................10,40
20 C.F.R. § 725.408(b)(2) ...............................................................11,43
20 C.F.R. § 725.409(c) ..........................................................................9
20 C.F.R. § 725.410(a) ........................................................................11
20 C.F.R. § 725.410(b) ...............................................................11,40,44
20 C.F.R. § 725.412(a)(1) ....................................................................11
20 C.F.R. § 725.414(b) ........................................................................44
20 C.F.R. § 725.414(b)(1) ....................................................................42
20 C.F.R. § 725.414(c) .............................................................11,12,13,42,44
20 C.F.R. § 725.414(d) ............................................................12,42,43,44
20 C.F.R. § 725.418 ...........................................................................8,13
20 C.F.R. § 725.418(d) ..................................................................9,13,49
20 C.F.R. § 725.419(a) ........................................................................13
20 C.F.R. § 725.455 ............................................................................13
20 C.F.R. § 725.455(a) ........................................................................13
20 C.F.R. § 725.456(b) ........................................................................44
20 C.F.R. § 725.456(b)(1) .........................................................11,12,13,47
20 C.F.R. § 725.457(c) ........................................................................47
20 C.F.R. § 725.457(c)(1) ....................................................................44
20 C.F.R. § 725.494 ..........................................................................6,28
20 C.F.R. § 725.494(a)-(e) ................................................................6,19
20 C.F.R. § 725.494(e) ........................................................................26
20 C.F.R. § 725.494(e)(1)-(2) ..............................................................42
20 C.F.R. § 725.495 ............................................................................28
20 C.F.R. § 725.495(a)(1) .............................................................7,26,31

20 C.F.R. § 725.495(c) ...................................................................26
20 C.F.R. § 725.522 ........................................................................2

20 C.F.R. § 726.1 .............................................................................6
20 C.F.R. § 726.101(b)(3) ..............................................................31
20 C.F.R. § 726.105 ........................................................................31
20 C.F.R. § 726.110(a) .....................................................................6
20 C.F.R. § 726.110(a)(3) ................................................................6
20 C.F.R. § 726.114(a) ...................................................................31
20 C.F.R. § 726.203 ........................................................................28
20 C.F.R. § 726.203(a)-(b) .............................................................28

20 C.F.R. § 802.406 ..........................................................................2
20 C.F.R. § 802.407(a) .....................................................................2

## Other Sources:

Arch Resources Comments on Proposed BLBA Changes (Apr. 18, 2023)
(available at www.regulations.gov/comment/WCPO-2023-0001-0017) ..............34

BLBA Bulletin 16-01 (Nov. 12, 2015)..................................................15

Fed. R. App. P. 16(a) .......................................................................37

Petitioner's Corrected Brief, *Hobet Mining Co. v. Director, OWCP*,
    4th Cir. No. 23-1126, 2023 WL 4202019 (June 21, 2023) .....................32

Regulations Implementing the Federal Coal Mine Safety and Health
Act of 1969, as Amended: Final Rule, 65 Fed. Reg. 79920-80107 (Dec.
20, 2000).....................................................................................

    65 Fed. Reg. 79990-91 ...............................................................49
    65 Fed. Reg. 79991......................................................................45
    65 Fed. Reg. 80001 .....................................................................12
    65 Fed. Reg. 80008......................................................................49
    65 Fed. Reg. 80027......................................................................28

United States Government Accountability Office, GAO-20-21,
    Black Lung Benefits Program: Improved Oversight of Coal Mine
    Operator Insurance Is Needed (2020)..................................................31

## STATEMENT REGARDING ORAL ARGUMENT

The Director does not object to the Petitioners' request for oral argument.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

## No.  23-3332

### APOGEE COAL COMPANY;
### ARCH RESOURCES

**Petitioners**

v.

### DIRECTOR, OFFICE OF WORKERS' COMPENSATION
### PROGRAMS, UNITED STATES DEPARTMENT OF LABOR

**and**

### DAVID M. HOWARD

**Respondents**

**On Petition for Review of an Order of the Benefits
Review Board, United States Department of Labor**

### BRIEF FOR THE FEDERAL RESPONDENT

### STATEMENT OF JURISDICTION

This appeal involves a claim for benefits under the Black Lung Benefits Act (BLBA or the Act), 30 U.S.C. §§ 901-944, by David M. Howard, a former coal miner. On February 25, 2020, Administrative Law Judge (ALJ) Lauren C. Boucher issued a decision and order awarding benefits to Howard, and ordering Apogee Coal Company, self-insured through Arch Resources (Arch), Howard's former coal

1

mine employer, to pay them. Joint Appendix (JA) 109.

Arch appealed the ALJ's decision to the United States Department of Labor (DOL) Benefits Review Board on March 20, 2020 (JA 144), within the thirty-day period prescribed by 33 U.S.C. § 921(a) of the Longshore and Harbor Workers' Compensation Act (Longshore Act), as incorporated into the BLBA by 30 U.S.C. § 932(a). The Board had jurisdiction to review the ALJ's decision pursuant to 33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a).

On October 18, 2022, the Board affirmed the award. JA 235. Arch filed a timely motion for reconsideration on November 17, 2022. JA 258. 20 C.F.R. § 802.407(a). The Board denied the motion on February 17, 2023. JA 279. This Court received Arch's petition for review on April 18, 2023 (JA 282), within sixty days of the Board's February 17, 2023, order. 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a); 20 C.F.R. § 802.406. Howard's exposure to coal mine dust—the injury contemplated by 33 U.S.C. § 921(c)—occurred in Kentucky, within this Court's territorial jurisdiction. *See* JA 237 n.4.[1]

---

[1] Although Howard passed away in July 2023, during the pendency of Arch's appeal before this Court, there remains a live case or controversy for the Court to adjudicate. When Arch declined to meet its statutory obligation to pay benefits owed under the ALJ's decision, the Black Lung Disability Trust Fund paid Howard interim benefits pending final adjudication of his claim as required by the statute. *See* 26 U.S.C. § 9501(d)(1)(A)(ii); 20 C.F.R. § 725.522. Those benefits exceed $150,000. If the ALJ's decision is ultimately affirmed, Arch will have to reimburse all benefits paid by the Trust Fund. 30 U.S.C. § 934(b). Thus, there remains a justiciable controversy between the Trust Fund and Arch,

## STATEMENT OF THE ISSUES

There is no dispute that Howard is entitled to BLBA disability benefits. This case is only about whether the ALJ and Board correctly held that Arch is liable for those benefits. Arch attacks those rulings on three general grounds.

Apogee was covered by Arch's self-insurance umbrella on Howard's last day of work for the company. The default rule in BLBA cases is that liability for a miner's benefits is based on their last day of coal-mining work. The operator that employed the miner on that day is directly liable for those benefits, even if the claim is filed after the employment relationship ends. If the operator has commercial insurance coverage, the insurer that issued the policy in effect on that day is liable, even if the claim is filed after the policy period. Nothing in the statute, regulations, or caselaw suggests that self-insurance liability—which is designed to backstop an employer's direct liability in the absence of commercial insurance—should be treated any differently.

> **The first issue presented is whether the ALJ and Board correctly held that Arch is liable for Howard's BLBA benefits.**

---

notwithstanding any interests Howard's estate or his survivors may also have in this litigation. *Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1275 (7th Cir. 1993) (taking jurisdiction over coal company's appeal of an award of benefits, despite deaths of both the miner and his widow, because Trust Fund had paid interim benefits to the miner and was entitled to reimbursement unless employer was successful in its appeal).

3

The black lung program's liability-evidence rules require parties notified of their potential liability to submit liability evidence and identify liability witnesses at the district director level, the initial stage of the adjudication process. Once a claim is referred for a formal de novo hearing before an ALJ, parties are precluded from submitting new liability evidence.[2] While this case was pending before the district director, Arch submitted no liability evidence and identified no liability witnesses other than Howard. When Arch attempted to develop and submit liability evidence at the ALJ level, the ALJ denied these attempts as untimely under the liability-evidence rules.

> **The second issue presented is whether the ALJ properly applied the liability-evidence rules.**

The initial stage of the BLBA claims process ends with a "Proposed Decision and Order" which contains, among other things, the district director's final designation of the liable party. The PDO here states that the responsible operator is Apogee, "self-insured thru [*sic*] Arch Coal Inc." and was served on Arch and its counsel.[3] The PDO also notes that an initial notice of claim was sent

---

[2] There is an exception allowing parties to submit untimely liability evidence if extraordinary circumstances exist, such as when a piece of evidence was not available when the claim was at the district director level. The ALJ found that no such circumstances existed justifying Arch's attempt to submit untimely liability evidence, JA 57, and Arch does not challenge that finding in its opening brief.

[3] JA 352-53, 355.

to Apogee, "self-insured thru Patriot Coal Company" but does not mention the later notice sent to Arch.[4] Arch responded to the PDO by requesting a hearing and stating that "DOL incorrectly named it [Arch] as a party."[5]

> **The third issue presented is whether the PDO gave Arch sufficient notice of its liability for this claim.**

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

### 1. The BLBA's liability regulations

The BLBA provides disability benefits to miners who are totally disabled by pneumoconiosis. 30 U.S.C. §§ 901(a), 922, 932(c). Congress intended to have liability for these benefits fall on the miner's employer "to the maximum extent feasible[.]" *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 313 (6th Cir. 2014) (quoting *Director, OWCP v. Oglebay Norton Co.*, 877 F.2d 1300, 1304 (6th Cir. 1989). Congress thus made individual coal mine operators liable for benefits if the miner's disability or death arose "at least in part" out of coal mine employment with the operator after December 31, 1969, with the Black Lung Disability Trust Fund (Trust Fund) assuming liability only when there is "no operator who is liable for the payment of such benefits." 30 U.S.C. § 932(c); 26 U.S.C. § 9501(d)(1)(B).

---

[4] JA 359.

[5] Director's Exhibit ("DX") 45

5

The BLBA requires coal mine operators to secure their liability by either purchasing commercial insurance or obtaining DOL's permission to self-insure. 30 U.S.C. § 933(a); 20 C.F.R. § 726.1. To qualify as a self-insurer under the regulations, operators must "execute and file with the Office an agreement and undertaking . . . in which the applicant shall agree" to pay BLBA benefits to entitled miners and their survivors. 20 C.F.R. § 726.110(a). In addition to a self-insured operator's responsibility to pay awarded benefits, an operator must also "provide security in a form approved by the Office . . . and in an amount established by the Office." *Id.* § 726.110(a)(3).

The BLBA gives DOL the power "to issue such regulations" as the Secretary of Labor "deems appropriate to carry out" the Act. 30 U.S.C. § 936(a). It also specifically invests DOL with broad authority to promulgate regulations "for determining whether pneumoconiosis arose out of employment in a particular coal mine" or "for apportioning liability" among operators. 30 U.S.C. § 932(h). The regulation at 20 C.F.R. § 725.494 outlines the five criteria an employer must satisfy to be a potentially liable operator.[6] Ultimate liability for a claim falls on the

---

[6] An operator is "potentially liable" if (i) the miner's disability or death arose out of employment with the operator; (ii) the entity was an operator after June 30, 1973; (iii) the miner worked for the operator for at least one year; (iv) the miner's employment with the operator included at least one working day after December 31, 1969; and (v) the operator is financially capable of assuming liability for the claim. 20 C.F.R. § 725.494(a)-(e). Only the last element is relevant to this appeal.

"responsible operator," which is the potentially liable operator that most recently employed the miner. 20 C.F.R. § 725.495(a)(1).

## 2. Black Lung claim procedures

The BLBA provides that black lung claims are to be processed in accordance with the procedural provisions of the Longshore Act, "except as otherwise provided . . . by regulations of the Secretary." 30 U.S.C. § 932(a). Section 19 of the Longshore Act prescribes the basic claims procedure: claims are filed with a deputy commissioner (now known as a "district director"), who notifies all interested parties, investigates the claim, and orders a hearing at the request of any interested party. 33 U.S.C. §§ 919(a)-919(c), as incorporated by 30 U.S.C. § 932(a); *see also* 20 C.F.R. § 725.350(b) ("the district director is that official of the DCMWC [Division of Coal Mine Workers' Compensation] or his designee who is authorized to perform functions with respect to the development, processing, and adjudication of claims in accordance with this part").

To facilitate these functions, the regulations authorize district directors to:

> (1) make determinations with respect to claims as is provided in this part; (2) conduct conferences and informal discovery proceedings as provided in this part; (3) compel the production of documents by issuance of a subpoena; (4) prepare documents for the signature of parties; (5) issue appropriate orders as provided in this part; (6) do all other things necessary to enable him or her to discharge the duties of the office.

7

20 C.F.R. § 725.351(a); *see also* 33 U.S.C §§ 923, 927, as incorporated by 30 U.S.C. § 932(a).[7] Proceedings before district directors end in a "proposed decision and order" addressing the claimant's entitlement to benefits and identifying the party the district director believes is liable for those benefits. 20 C.F.R. § 725.418.

Neither the claimant nor the named operator is obligated to accept the proposed decision. Either can request a formal, de novo hearing before an administrative law judge.[8] 33 U.S.C. § 919(d), as incorporated. Any party dissatisfied with an ALJ's decision can appeal to the Benefits Review Board and, in turn, the federal courts of appeals. 33 U.S.C. § 921(b)-(c).

---

[7] Claims examiners, working under the supervision of district directors, often perform the development of individual BLBA cases, as happened here. *See* JA 320, 331. To avoid confusion, this brief does not distinguish between district directors and claims examiners working under their supervision.

[8] Before 1972, district directors also conducted hearings. Section 19(d) of the Longshore Act, 33 U.S.C. § 919(d), was amended that year to transfer the authority to conduct hearings from district directors to ALJs. But the amendment did not remove the district director's investigatory and claim-processing functions. *See Healy-Tibbetts Builders, Inc. v. Cabral*, 201 F.3d 1090,1094-1095 (9th Cir. 2000) (noting that section 919(d) merely relieved district directors of the responsibility of holding hearings and transferred those duties to ALJs); *Saginaw Mining Co. v. Mazzulli*, 818 F.2d 1278, 1282 (6th Cir. 1987) (same).

### 3. The BLBA's liability-evidence rules

#### a. The liability-evidence rules at the district director level

The BLBA regulations require the parties to develop and submit all documentary evidence concerning liability, and to identify any potential witnesses concerning that issue, during this initial stage before the district director. Liability evidence not submitted to the district director, and the testimony of witnesses not identified to the district director, cannot be considered by an ALJ during the formal adjudication absent extraordinary circumstances. The reason for these requirements is simple: after the district director designates a responsible operator and refers the claim for hearing, OWCP has no further opportunity to impose liability on another entity.[9] 20 C.F.R. § 725.418(d) (district director's proposed decision is final designation of the responsible operator; other potentially liable operators must be dismissed from the claim). If the ALJ (or Board or reviewing court) determines that another party should have been designated the responsible operator, the Trust Fund will bear liability for the claim.[10]

---

[9] The regulations carve out one limited exception to this rule that does not apply here. *See* 20 C.F.R. § 725.409(c) (involving cases dismissed by OWCP as abandoned).

[10] Regulations Implementing the Federal Coal Mine Safety and Health Act of 1969, as Amended: Final Rule, 65 Fed. Reg. 79990 ¶ (b) (Dec. 20, 2000) ("In the event the responsible operator designated by the district director is adjudicated not liable for a claim, the Black Lung Disability Trust Fund will pay any benefit award.").

In administering a claim, the district director issues a series of documents designating a responsible operator and setting deadlines for the submission of evidence.

***Notice of Claim***: Once a BLBA claim is filed, the district director determines if there are any potentially liable operators for the claim. 20 C.F.R. § 725.407(a). If the district director identifies a potentially liable operator, they issue a Notice of Claim requesting the operator accept or contest liability for the claim. 20 C.F.R. § 725.407(b), (c).

The notified operator has thirty days to respond to the notice. 20 C.F.R. § 725.408(a)(1). If the operator disputes its liability, it must admit or deny five "assertions" concerning its status as a potentially liable operator. 20 C.F.R. § 725.408(a)(2)(i)-(v). This includes its ability to assume liability for the payment of any benefits awarded. 20 C.F.R. § 725.408(a)(2)(v).

The operator has ninety days to submit evidence supporting its denial of any of those assertions. 20 C.F.R. § 725.408(b)(l). It may request additional time if it shows good cause. *See* JA 320 (Notice form explaining that the ninety-day period "may be extended for good cause shown"). Failure to submit documentary evidence within that time period precludes the admission of any evidence

---

This prevents a claimant from having to litigate their claim a second time against another operator or insurer.

contradicting the five assertions in "any further proceedings." 20 C.F.R.

§ 725.408(b)(2). An ALJ can nevertheless admit such evidence if "extraordinary

circumstances" exist. 20 C.F.R. § 725.456(b)(1).

***Schedule for the Submission of Additional Evidence (SSAE):*** After the

notified operator or operators have responded to the Notice of Claim and the

parties have submitted their initial evidence, the district director makes preliminary

determinations in a document called a Schedule for the Submission of Additional

Evidence (SSAE). The SSAE contains the district director's initial designation of

the responsible operator and initial opinion on the claimant's entitlement to

benefits. 20 C.F.R. § 725.410(a).

The operator designated in the SSAE has thirty days to object to the district

director's proposed finding. 20 C.F.R. § 725.412(a)(1). If it objects, the operator

has a minimum of sixty days to submit "evidence relevant to the liability of the

designated responsible operator." 20 C.F.R. § 725.410(b). This includes not only

documentary evidence, but also "the name and current address of any potential

witness whose testimony pertains to the liability of a potentially liable operator or

the designated responsible operator." 20 C.F.R. § 725.414(c).[11] The sixty-day time

---

[11] While the regulations explicitly refer to evidence regarding the identity of the
responsible operator, they also apply to evidence relevant to an insurer's liability.
*Olenick v. Olenick Bros. Coal Co.*, BRB No. 11-0833 BLA, 2012 WL 5267588
(Ben. Rev. Bd. Sept. 19, 2012).

limit can be extended for good cause. *See* JA 331 (SSAE form explaining that "[a]ny party may request that these time periods be extended by showing good cause.").

This is the last step of evidentiary development on the liability issue before the district director. Liability testimony by any witness who was not identified to the district director at this stage cannot be considered by an ALJ absent extraordinary circumstances. 20 C.F.R. § 725.414(c) ("Absent such notice, the testimony of a witness relevant to the liability of . . . the designated responsible operator shall not be admitted in any hearing unless the administrative law judge finds that the lack of notice should be excused due to extraordinary circumstances."). Such a witness is barred from testifying at the hearing or by deposition. *See* 65 Fed. Reg. at 80001 ¶ (b). The same rule applies to documentary evidence relevant to liability that was not submitted to the district director. *See* 20 C.F.R. § 725.456(b)(1) (Documentary evidence pertaining to liability that was not submitted to the district director "shall not be admitted into the record in the absence of extraordinary circumstances."); *accord* 20 C.F.R. § 725.414(d).

***Proposed Decision and Order (PDO):*** After considering the evidence submitted after the SSAE, the district director will issue either a new SSAE designating a different responsible party or a Proposed Decision and Order (PDO). This PDO contains the district director's final determinations on liability and the

12

claimant's entitlement to benefits. 20 C.F.R. § 725.418. The PDO must dismiss all other previously notified potentially liable operators as parties to the claim. 20 C.F.R. § 725.418(d). The remaining parties have thirty days to request a formal hearing before an administrative law judge. 20 C.F.R. § 725.419(a).

### b. The liability-evidence rules at the ALJ level

ALJs have broad discretion over hearings, including pre-hearing procedures. 20 C.F.R. § 725.455. The liability-evidence rules nevertheless apply. As a result, ALJs generally cannot consider documentary evidence pertaining to liability that was not timely submitted to the district director, or testimony related to liability from witnesses who were not timely identified to the district director. 20 C.F.R. §§ 725.414(c) (witnesses), 725.456(b)(1) (documents). But neither rule is absolute. An ALJ can consider liability-related documents that were not timely submitted and testimony from witnesses who were not timely identified if "extraordinary circumstances" exist justifying that failure. *Id.* For example, an ALJ has the discretion to consider documents not submitted to the district director because they were not available to the operator at that time.

ALJs adjudicate BLBA claims de novo and are not bound by a district director's factual findings on liability or entitlement. 20 C.F.R. § 725.455(a); *Arkansas Coals Inc.*, 739 F.3d at 313. If the ALJ, the Benefits Review Board, or a reviewing court ultimately determines that the district director

13

named the wrong liable party, the Trust Fund is obligated to pay benefits to the claimant if the claim is awarded. *See supra* at 9.

## B. Relevant Facts

### 1. Apogee, Arch, and Patriot

David Howard mined coal for Apogee from 1993-1997, the last part of a seventeen-year career in the mines. JA 350; *see* DX 7, 8. During that time, Apogee was an Arch subsidiary and its BLBA liabilities were self-insured through Arch. JA 149, 180. In 2005, Arch sold Apogee to Magnum Coal Company. *Id*. Magnum was acquired by Patriot Coal Corporation in 2008. JA 149; OB 3.

In 2011, Patriot was authorized to self-insure its BLBA liabilities and those of its subsidiaries, including Apogee. OB 3. Patriot's self-insurance was retroactive, meaning that it covered claims by miners like Howard as well as miners who kept working for Apogee after Patriot acquired it. *Id.* In 2015, Patriot and most of its subsidiaries, including Apogee, went bankrupt and were released from any BLBA liability. OB 4.

### 2. Bulletin 16-01 and *Arch v. Acosta*

In the wake of Patriot's bankruptcy, DOL issued Bulletin 16-01 to its claims processing staff.[12] The Bulletin explains that its purpose is "[t]o provide guidance for district office staff in adjudicating claims in which the miner's last coal-mine employment of at least one year was with one of the 50 subsidiary companies that have been affected by the Patriot Coal Corporation bankruptcy." Bulletin at 1. The Bulletin instructed OWCP staff to, among other things, notify Arch of its liability for claims based on employment with Apogee before January 1, 2006 (before it was sold to Magnum, when Apogee was "under the self-insurance authority of Arch Coal, Inc."). *Id.* at 3.

Arch filed suit challenging the Bulletin arguing, among other things, that it was a legislative rule improperly adopted without notice-and-comment rulemaking. This argument was rejected by the district court. *Arch Coal, Inc. v. Hugler*, 242 F. Supp. 3d 13 (D.D.C. 2017). On appeal, the D.C. Circuit agreed, explaining that the Bulletin was not a rule because it does not "impose any liability on Arch under the BLBA or dispose of any benefits claim on the merits." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 501 (D.C. Cir. 2018) ("It is well understood that the notice-and-

---

[12] BLBA Bulletin No. 16-01 (Nov. 12, 2015) is included in the addendum to Arch's opening brief at 385-388. It is also available at: www.dol.gov/sites/dolgov/files/owcp/dcmwc/blba/indexes/BL16.01OCR.pdf.

comment provisions of section 553 of the APA do not apply to agency bulletins, policy statements, directives, guidances, opinion letters, press releases, advisories, warnings, or manuals that do not have the force of law."). It also held that "mine operators seeking to contest their liability for black lung benefits claims must exhaust the administrative remedies [i.e., the BLBA claims process] provided in the statute before seeking review in a U.S. court of appeals." *Id.* at 499. Describing the suit as "an attempt by Arch to jump the gun and make an end run around the BLBA's statutory scheme[,]" the court dismissed the case, explaining that Arch's proper course was to challenge its liability in individual BLBA adjudications.

## C. Proceedings Below[13]

### 1. Proceedings before the district director

**Notice of Claim**: Howard filed this claim on November 19, 2014. DX 2. On December 9, 2014, the district director initially issued a Notice of Claim to Apogee, self-insured through Patriot. JA 284. Patriot's claims administrator responded, denying liability, but did not submit any evidence. DX 23. In October 2015, before the district director issued a proposed decision and order, Patriot went bankrupt and stopped paying BLBA claims. *See* DX 25; OB 4.

---

[13] Only those proceedings relevant to the liability dispute at issue in this appeal are summarized.

On December 8, 2015, the district director issued a Notice of Claim to Apogee, self-insured through Arch, giving it ninety days to submit liability evidence. JA 319. Arch contested its liability, but did not submit any evidence or request an extension of the deadline to do so. DX 24, 25.

**SSAE**: The district director issued the SSAE on March 17, 2016. JA 329. It set May 16, 2016, as the deadline by which Arch could submit additional evidence concerning the identification of Apogee, self-insured through Arch, as the responsible operator. *Id*. Arch contested its liability and identified Howard as a potential liability witness but did not submit any documentary evidence on liability or identify any other potential liability witnesses. *See* DX 29; JA 349. Nor did it request additional time to submit such evidence. *Id.*

**PDO**: The district director issued a PDO awarding benefits and assigning liability to Apogee, as self-insured by Arch, on September 26, 2016. JA 350, 355. The district director served the PDO on, *inter alia*, Apogee, Arch, and Arch's attorney. DX 44 at 19, 21, 23. Arch requested a hearing. DX 45. On November 18, 2016, the case was referred for a formal hearing before an ALJ.

**2. Proceedings before ALJ Boucher**

The case was ultimately heard by ALJ Lauren Boucher.[14] On April 29, 2019, Arch requested subpoenas for DOL employees Michael Chance and Kim Kasmeier "for deposition testimony and the production of documents at deposition regarding issues related to Arch Coal's coverage for this claim and DOL's violation of the Administrative Procedure Act." JA 28. The Director objected and, on May 28, 2019, the ALJ issued an Order Denying Request for Subpoenas, finding that Arch had failed to identify the two DOL employees as liability witnesses before the district director, and had failed to establish extraordinary circumstances excusing that failure. JA 49. Arch sought reconsideration, but the ALJ again denied the request. JA 52. The ALJ explained that Arch had failed to submit any liability evidence or even seek discovery of any liability-related documents when the case was before the district director. JA 55-57.

On June 19, 2019, Arch moved to transfer liability to the Trust Fund, arguing it had not received proper notice of the claim and should not be liable. *See* JA 365. The ALJ denied the motion on July 10, 2019, finding that the PDO had properly identified and given adequate notice to Arch. JA 365-67.

---

[14] The case was initially assigned to ALJ Scott Morris before being transferred to ALJ Boucher for reasons unrelated to this appeal. *See* JA 81, 241.

18

At the July 17, 2019, hearing, the ALJ excluded nine exhibits Arch attempted to submit as untimely submitted liability evidence. 2019 Hearing Transcript at 15-16 (rejecting Employer's Exhibits 12-17 and 19-21).

The ALJ issued her decision and order awarding benefits against Arch on February 25, 2020. JA 109-141. The ALJ ruled that Apogee, self-insured through Arch, satisfied the criteria for designation as the responsible operator pursuant to 20 C.F.R. § 725.494(a)-(e). JA 138. In particular, she noted that Arch had "presented no evidence that Apogee is incapable of paying benefits, particularly through its self-insurance with Arch." JA 138. The ALJ added that Arch was properly notified of its liability in this claim as Apogee's self-insurer but "failed to timely offer or seek through discovery any evidence that it is not liable." *Id*. In short, Arch had the opportunity to prove that it was not liable for the claim as Apogee's self-insurer, but "simply failed to avail itself of that opportunity." *Id*.

### 3. Proceedings before the Benefits Review Board

Arch appealed to the Board which affirmed the ALJ's order in a published opinion on October 18, 2022. JA 235-257. The Board observed that "Employer does not dispute it did not submit any liability evidence or designate any liability witnesses other than the Claimant, while this case was before the district director." JA 245. It agreed with the ALJ that Arch's explanation that it did not do so because the Director had allegedly not complied with discovery requests in other cases was

19

insufficient to establish extraordinary circumstances in this case. JA 246. The Board therefore affirmed the ALJ's decision rejecting Arch's late-submitted evidence and discovery requests. JA 244-46.

The Board also affirmed the ALJ's finding that Apogee, self-insured through Arch, met the regulatory requirements for liability under the Act. JA 247-48. And it rejected Arch's argument that the district director failed to properly serve Arch with the PDO, thereby violating Arch's due process rights. JA 243-44. The Board agreed with the ALJ that the PDO's service sheet reflected proper service on both Arch and Apogee, that Arch timely responded to the PDO and controverted its liability, and that the PDO's lone reference to Patriot was a typographical error and did not operate to release Arch from liability. JA 243-44.

## SUMMARY OF THE ARGUMENT

Arch is liable for this claim because Apogee was an Arch subsidiary covered by Arch's self-insurance on the last day of Howard's work for Apogee. The fact that Arch sold Apogee to Magnum after Howard retired is irrelevant. Magnum (which was later purchased by Patriot) may have agreed to pay BLBA benefits to miners like Howard who only worked for Apogee when it was owned by Arch. But neither DOL nor Howard were parties to that contract. It therefore could not eliminate Arch's statutory liabilities to DOL and Howard.

Arch's primary argument is that a BLBA self-insurer's liability is based on the coverage in effect on the day a claim is filed (a "claim trigger") rather than the coverage in effect on the miner's last day of employment with the responsible operator (an "occurrence trigger"). Not so. The BLBA's implementing regulations explicitly adopt the occurrence trigger for both an employer's direct liability and an insurance carrier's liability. They do not explicitly state that a self-insurer's liability is also governed by an occurrence trigger. But such a rule would be unnecessary. Self-insurance allows an employer to guarantee its own BLBA liabilities. And those liabilities are themselves governed by an occurrence trigger. There is no legal error in the ALJ's liability ruling.

Arch also argues that DOL released it from liability. That never happened. Perhaps more importantly for purposes of this appeal, there is no evidence in the

record to support that claim. In fact, this is no evidence of any kind supporting Arch's liability theory at all because it failed to timely submit or even attempt to develop that evidence when the claim was pending before the district director. The ALJ properly relied on the liability-evidence rules to bar Arch's attempt to develop and submit such evidence later.

Arch attempts to circumvent this lack of evidence by submitting an extensive addendum with its opening brief. For the most part, it consists of evidence that was admitted into the record in other claims, but not this one. It should therefore be ignored. In any event, nothing in the addendum is a release.

Arch also argues that the liability-evidence rules do not apply to questions of self-insurance coverage. This is flatly belied by the regulations, which require parties to submit all evidence relevant to liability—explicitly including the question of whether the responsible operator is able to assume liability for benefits by virtue of being covered by self-insurance—at the district director level.

Nor is there any merit to Arch's argument that the liability-evidence rules are invalid because they allow district directors to usurp hearing-management duties that, by statute, are reserved to ALJs. This argument is doubly flawed. First, the rules do not give district directors any power over hearings, including the admission of evidence. Those decisions are made by ALJs. All the liability-evidence rules do is set timeliness requirements for the submission of liability

22

evidence. That is perfectly consistent with the statute Arch relies on, Section 19(d) of the Longshore Act. Second, the BLBA gives DOL the authority to alter Longshore Act provisions that are incorporated into the BLBA, including Section 19(d). Thus, the liability-evidence rules would be valid even if they conflicted with Section 19(d).

Finally, Arch argues that it should be excused from liability because the district director did not adequately notify Arch of its liability. This is based solely on the fact that the body of the Proposed Decision and Order refers to the initial notice of claim in this case (that identified Patriot as the liable self-insurer) rather than the second notice identifying Arch. This slender reed cannot bear the weight Arch puts upon it. The PDO explicitly identified Arch as Apogee's self-insurer and was served on Arch and its counsel, who responded to the PDO by requesting a hearing and claiming that the PDO incorrectly named Arch "as a party." As the ALJ found, this was adequate notice to Arch. The decisions below should be affirmed.

## ARGUMENT

### A. Standard of Review

The Court must affirm a decision of the Benefits Review Board unless the Board committed legal error or did not adhere to the substantial evidence standard in reviewing the ALJ's factual findings. *Arch of Ky., Inc. v. Director, OWCP*, 556 F.3d 472, 477 (6th Cir. 2009) (citation omitted)*. This Court "review[s] the BRB's legal conclusions de novo." *Id.*

The Director's interpretation of the BLBA, as expressed in its implementing regulations, is entitled to *Chevron* deference. *Island Creek Kentucky Min. v. Ramage*, 737 F.3d 1050, 1058 (6th Cir. 2013) (citing *Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Under that standard, a properly promulgated regulation must be affirmed "as long as Congress has not spoken directly on the issue and the agency's interpretation is reasonable." *Id.*; *see also Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 369 (1973) ("Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be

sustained so long as it is reasonably related to the purposes of the enabling legislation.") (citations and quotation marks omitted).[15]

The Director's interpretation of any genuinely ambiguous provision in the BLBA's implementing regulations is "deserving of substantial deference unless it is plainly erroneous or inconsistent with the regulation." *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159 (1988) (citation and quotation marks omitted); *see Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *Kisor v. Wilkie*, --- U.S. ---, 139 S. Ct. 2400, 2414-15 (2019).

Finally, discovery rulings "do not amount to reversible error unless there is an abuse of discretion and substantial prejudice." *International Union, UAW v. Michigan*, 886 F.2d 766, 771 (6th Cir. 1989); *see also Prince v. Island Creek Coal Co.*, 76 F. App'x 67, 69 (6th Cir. 2003) ("An ALJ's discretionary rulings, such as the exclusion of evidence, are reviewed for abuse of discretion.").

## B. Arch is liable for this claim because Apogee was covered by Arch's self-insurance umbrella on the last day of Howard's mining work.

The ALJ correctly found that Apogee, as self-insured through Arch, is responsible for Howard's black lung benefits. As Howard's last mining employer, Apogee is the responsible operator so long as it satisfies all five elements of a

---

[15] 30 U.S.C. § 936(a) authorizes the Secretary of Labor the power "to issue such regulations as [she] deems appropriate to carry out the provisions of [the BLBA]."

potentially liable operator. 20 C.F.R. § 725.495(a)(1). Apogee satisfies those elements, including the ability to assume liability for the payment of benefits. 20 C.F.R. § 725.494(e).[16] Apogee's bankruptcy is no bar, because an operator that "qualified as a self-insurer . . . during the period in which the miner was last employed by the operator" is "deemed capable of assuming its liability for a claim[.]" 20 C.F.R. § 724.494(e)(2).[17]

There is no question that Arch would be liable for this claim if it had never sold Apogee. Arch admits that Apogee was covered by its self-insurance umbrella on Howard's last day of employment in 1997. It just claims that those responsibilities disappeared when it sold Apogee to Magnum in 2005, eight years after Howard retired.[18]

According to Arch, the sale agreement excused Arch from all BLBA liability, even for miners like Howard who only worked for Apogee before the sale.

---

[16] There is no dispute that Apogee satisfies the other four elements of the potentially liable operator test. *See supra* at 6 n.6.

[17] The designated liable operator bears the burden of proving that it is unable to pay benefits. 20 C.F.R. § 725.495(c); *see Nat'l Mining Ass'n v. Secretary of Labor*, 292 F.3d 859,  872 (D.C. Cir. 2002) (upholding burden-shifting regulation against APA challenge). Arch does not cite, much less challenge, this regulation in its opening brief.

[18] *See, e.g.*, JA 180 (Arch's BRB brief stating that "Arch's self-insurance obligation ended on December 31, 2005, and with it Arch's responsibility to cover this claim ended."); OB 11 ("Arch ceased self-insuring claims against Apogee when it sold Apogee.").

OB 2-3, 14-15. That agreement is not in the record, though Arch belatedly attempts to include a single page of it in the addendum to its opening brief. *See infra* at 39. But even if the agreement were in the record and even if Magnum agreed to assume Arch's BLBA liabilities for miners like Howard who worked only before the sale, it would do nothing to advance Arch's case because neither DOL nor Howard were parties to that agreement.

Magnum was free to agree to pay Arch's BLBA liabilities. So was Patriot. But those private contracts do not absolve Arch from its statutory liabilities.[19] At most, such a contract could give Arch an indemnification action against the buyer. Arch cites no authority for the extraordinary claim that parties can contract away statutory obligations like this one. Thus, that sale contract could not end Arch's BLBA obligations to DOL or Howard, even if it purported to do so.

---

[19] *See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 718 (1990) (provisions of a contract between private parties are invalid if they conflict with black lung regulations); *see also Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 223-24 (1986) ("Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them.") (citation omitted); *Lovilia Coal Co. v. Williams*, 143 F.3d 317 (7th Cir. 1998) (holding that insurance contract could not be construed to limit an insurer's BLBA liability).

**C. The fact that Apogee was no longer an Arch subsidiary when Howard filed this claim is irrelevant because black lung liability is based on the miner's last day of employment with the responsible operator.**

**1. Self-insurance liability uses the same last-mining-employment occurrence trigger that an employer's direct liability does.**

Liability for BLBA claims is based on the miner's last day of work for the responsible operator (an "occurrence trigger"), not the day a claim is filed (a "claim trigger"). The ALJ correctly held that Arch is liable for this claim because its self-insurance umbrella covered Apogee on Howard's last day of work for that company.

The regulations explicitly provide that this is true for an employer's direct liability, 20 C.F.R. §§ 725.494-495, and an insurance carrier's liability, 20 C.F.R. § 726.203.[20] As Arch points out, the regulations do not explicitly address the trigger date for a self-insurer's liability. From this, Arch concludes that self-insurance liability must be governed by a claim trigger. OB 16-21. If so, Arch would be off the hook because Howard filed this claim in 2014, long after Arch

---

[20] There is a narrow exception, not applicable here—or to hardly any contemporary claims. Claims based on employment before an operator had any insurance coverage (generally, claims based on employment before January 1, 1974, when operators were first required to secure their BLBA liabilities) are covered by the policy in effect when the claim is filed. 20 C.F.R. § 726.203(a)-(b); *see* 65 Fed. Reg. 80027. In that circumstance, an occurrence trigger is impossible because there was no coverage when the miner was last exposed to dust. The claim trigger therefore applies as a backup.

sold Apogee. This proposition is the analytic lynchpin of most of Arch's brief. It is also wrong.

The absence of an explicit regulation addressing a self-insurer's liability trigger is hardly surprising. Such a rule would be redundant. As the name suggests, self-insurance allows an employer to guarantee its own liabilities. It would be irrational to use a claim trigger to determine self-insurance coverage when the liabilities being covered use an occurrence trigger. This is not an illicit attempt to "elide the distinction" between commercial insurance and self-insurance by "importing concepts from operator liability[.]" OB 12. It is simple common sense.[21]

This conclusion is reinforced by the fact that the surety bonds self-insureds often procure to secure their liability are also occurrence-based. *United States v. Insurance Company of North America*, 83 F.3d 1507 (D.C. Cir. 1996) (*INA I*) explicitly held that BLBA surety bonds have an occurrence trigger. *Id.* at 1513 (holding that a BLBA surety is liable for "claims for which [the principal] became

---

[21] Arch's argument that holding it liable for this claim obliterates the regulatory distinction between commercial insurance and self-insurance boils down to: Arch's argument that (1) commercial insurance and self-insurance are different, (2) BLBA commercial insurance uses an occurrence trigger, ergo (3) self-insurance must use a claim trigger. OB 16-17, 19-20. But that conclusion does not follow. While distinct, commercial insurance and self-insurance are not opposites in every respect.

the 'responsible operator' . . . between . . . the bond's effective date, and . . . the date it was cancelled, by virtue of an employee's completion of one full year of employment with [the principal] during that period."). After remand, the D.C. Circuit reiterated that holding. *United States on Behalf of Dep't of Lab. v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997) (*INA II*) ("Because liability under the Act is assigned only to the operator with which a miner was most recently employed for at least one year . . . we held that INA was liable under the 1982 bond only for claims in which the miner had completed at least one year's employment with [the principal] during the bond period."). There would be no point in using an occurrence-trigger surety bond unless the liabilities being guaranteed—the principal's BLBA liabilities as a self-insurer—were also occurrence-based.[22]

Arch claims to find support for a claim trigger in the regulations governing the minimum requirements for receiving self-insurance authorization and DOL's

---

[22] In *INA II*, the D.C. Circuit left open the question of whether the relevant "occurrence" triggering liability is the last day of a miner's employment with the responsible operator or the last day of the first year of a miner's employment with the responsible operator. 131 F.3d at 1043. The Director has consistently taken the former view. This issue is not relevant here. Apogee was owned by Arch, and covered by Arch's self-insurance, throughout Howard's entire tenure with the company. JA 138.

periodic review of a self-insurer's security.[23] But Arch overlooks the regulation on setting the amount of that security, which states that DOL "shall require the amount of security which it deems necessary and sufficient *to secure the performance by the applicant of all obligations imposed upon him as an operator by the Act*." 20 C.F.R. 726.105 (emphasis added). The central obligation that the Act imposes on operators is, of course, the duty to pay benefits to disabled miners and their survivors. And the operator's liability for those benefits is based on the miner's last day of employment, not the day their claim is filed. *See* 20 C.F.R.§ 725.495(a)(1).[24]

Nor is there any merit to Arch's claim that DOL applied a claim trigger in claims affected by the bankruptcies of James River Coal Company and Horizon Natural Resources. OB 23. This charge is difficult to respond to because Arch cites no specific examples. But DOL has named self-insured parents that sold

---

[23] In particular, Arch cites 20 C.F.R. § 726.101(b)(3) (providing that one of the minimum requirements for an operator to receive self-insurance authorization is that its net assets must exceed the amount the operator is projected to pay in BLBA benefits in the next year plus the annual premium cost of a surety bond securing its liability) and 20 C.F.R. § 725.114(a) (explaining that DOL can adjust the amount of security a self-insured operator is required to post annually).

[24] Arch also argues that a sentence in a GAO report stating that self-insured coal mine operators pay claims as they are "incurred" supports its view that BLBA surety bonds adopt a claim trigger. OB 17 (quoting U.S. Gov't Accountability Off., GAO-20-21 at 9 (2020)). But that report says nothing at all about whether a self-insurer's or surety's BLBA liabilities have an occurrence or a claim trigger.

subsidiaries to James River liable for claims based on employment before the sale, just as it did here with Arch. *See, e.g.*, *Abbott v. McCoy Elkhorn Coal Corp.*, No. 2019-BLA-5029 (DOL OALJ Feb. 19, 2019) (remanding case after James River subsidiary McCoy Elkhorn, self-insured through former parent company Transco Energy, agreed to "accept liability and pay benefits").[25] And it has similarly named sureties that issued bonds covering now-defunct self-insured parents that sold subsidiaries to Horizon as liable for claims based on pre-sale employment. *See*, *e.g.*, *Old Ben Coal Co. v. OWCP*, 476 F.3d 418, 420 (7th Cir. 2007); *Lynch v. Old*

---

[25] Transco owned McCoy Elkhorn when the miner last worked for the company. McCoy Elkhorn was later sold to James River and went bankrupt with its new parent. *See in re James River Coal Co.*, No. 14-31848 (Bankr. E.D. Va.). As Arch points out, the bulletin OWCP issued to its staff handling claims affected by the James River bankruptcy does not explicitly state that Transco should be identified as liable for claims based on employment with McCoy Elkhorn before the sale. That does not change the fact that Transco was held liable for such claims.

*Ben Coal Co.*, BRB No. 10-0209 BLA, 2010 WL 8111398, at *7 (DOL Ben. Rev. Bd. Dec. 8, 2010). [26] This is consistent with the way Arch was treated here. [27]

**2. Arch's proposed claim trigger would produce absurd results.**

Arch's proposed claim trigger would be particularly unsuited to the BLBA context. Unlike most other workers' compensation programs, the BLBA presents substantial "long tail" liability. Because pneumoconiosis is a latent and progressive disease, former miners may not become entitled to benefits until years or decades

---

[26] The two ALJ cases Arch cites to support its theory of a change in policy are easily distinguished. OB 24. In *Allen v. Hobet Mining*, 2019-BLA-06231, DOL designated Magnum Coal as responsible in a claim by a miner who worked for an Arch subsidiary before its sale to Magnum. However, that case does not evidence a change in policy; rather it evidences a change in facts. As discussed above, Magnum and Patriot were held liable when they owned the subsidiaries and were financially capable of assuming liability, a fact that changed after Patriot's bankruptcy.

In *Adkins v. Hobet Mining,* OWCP No. B7MHB-2015029 (issued three months after the Bulletin), the district director mistakenly identified the Trust Fund as responsible for a claim that should be Arch's responsibility. This mistake has been rectified. Adkins filed a new claim after his first was denied on the merits, and Arch was properly identified and remains a party to the claim, which is pending before ALJ Ramaley. *See* ALJ Case No. 21-BLA-05409 (ALJ hearing held August 9, 2022).

[27] This fact also undermines Arch's claim that Bulletin 16-01 "marks a change of regulatory direction[.]" OB 31. In any event, the Bulletin is irrelevant. It is "an enforcement policy, not a legislative 'rule'" and "does not alter the rights or interests of parties[.]" *Acosta*, 888 F.3d 493, 501. Accordingly, neither the ALJ nor the Board cited the Bulletin as a basis for Arch's liability here. *See* JA 139-140, 249-50. That liability is based on the BLBA, its implementing regulations, and the evidentiary record. The result here would have been the same if the Bulletin did not exist.

after they leave the mines.[28] This means that, at any given time, a self-insured operator likely has significant BLBA liabilities that have not yet materialized as claims.[29] But a self-insured operator could sell its mining subsidiaries at any time. Under Arch's claim-trigger scheme, BLBA liabilities based on employment with the seller would be transferred to the buyer—no matter how marginal that buyer's finances are. It is hard to see why the DOL would ever authorize a self-insurer under that regime.[30]

The bifurcated system Arch proposes—an occurrence trigger for commercial insurance coverage but a claim trigger for self-insurance coverage—would also

---

[28] *See* 20 C.F.R. § 718.201(c) (pneumoconiosis is "a latent and progressive disease which may become detectable only after the cessation of coal mine dust exposure.").

[29] Arch has acknowledged that most of its BLBA liability is tied to claims that have not yet been filed. In its comments on a proposed regulation that would change the BLBA's self-insurance program in several respects, Arch noted that "the unpaid costs associated with IBNR [incurred but not reported] claims make up approximately 82% of [Arch's] total unpaid costs for Federal Black Lung claims as of June 30, 2019." Arch Resources Comments on Proposed BLBA Changes at 9 (Apr. 18, 2023) (available at www.regulations.gov/comment/WCPO-2023-0001-0017). Under a typical state workers' compensation system, by contrast, IBNR liabilities represent only 5-10% of an employer's liability. *Id.*

[30] Arch claims that an occurrence trigger would "stifle corporate transactions like Arch's sale of Apogee[.]" OB 23 n.2. This is supported only by a declaration that is not in the record and only represents the views of Arch's own witness. It is also hard to square with Arch's admission that the BLBA imposes continuing liability on operators that sell mines. OB 15 (citing 30 U.S.C. § 932(i)(1)-(2)). If companies can value and sell mines despite retaining "perpetual liability" for claims by miners who worked there before the purchase, it is hard to see why they could not similarly value and sell mining subsidiaries like Apogee.

34

make it impossible for an operator to change from one form of coverage to the other without creating significant coverage gaps. Consider an operator that is self-insured from 2000-2009 and commercially insured from 2010-2019. In this scenario, there would be no coverage for a miner who last worked in 2005 and filed a claim in 2014. The occurrence happened when the company was self-insured, and the claim happened when it was commercially insured. Under Arch's theory, liability for such a claim would fall to the Trust Fund—a result plainly contrary to congressional intent. Nothing in the Act or its regulations compels this absurd result. Arch's argument that a self-insurer's liability should be based on a claim trigger should be rejected.

### 3. Applying an occurrence trigger does not ignore Arch's corporate form.

This failure of Arch's claim-trigger argument also undermines its claim that the decisions below unlawfully ignored Arch's "corporate separateness" from Magnum, Apogee, and Patriot. OB 14-16. According to Arch, "the ALJ and Board erred in requiring Arch to self-insure a different company's subsidiary when it never agreed to do so" and treating Apogee as if it "remained part of Arch following its sale to Magnum." OB 16.

If DOL were treating Arch as self-insuring Apogee after the sale, it would hold Arch liable for claims by *all* former Apogee miners. But it does not. It holds Arch liable only for claims by miners who last worked for Apogee when Apogee

was an Arch subsidiary covered by Arch's self-insurance umbrella. Benefits to miners who last worked for Apogee after the sale, when Apogee was covered only by Patriot's self-insurance program, are paid by the Trust Fund. The Department is not engaging in any *de facto* veil piercing or otherwise ignoring the fact that Arch, Magnum, and Patriot are distinct corporations. It is simply holding Arch liable for BLBA claims that it agreed to self-insure.

### D. There is no evidence in the record suggesting that DOL released Arch from its liability for claims based on employment with Apogee while it was an Arch subsidiary

#### 1. Arch submitted no evidence that it was released from liability and its attempt to make its case with non-record evidence should be rejected.

While the regulations placed liability for this claim on Arch, the company contends that DOL released it from liability. But there is no evidence in the record suggesting that happened. This is unsurprising, because no such release exists. What may be surprising is that there is no liability evidence in the record even purporting to support Arch's position because, as the ALJ ruled, Arch failed to timely submit any liability evidence at all. JA 140, 141.

As explained above, liability evidence must be submitted at the district director level. Arch, however, submitted nothing to the district director. It did not even submit evidence that was already in its possession (*e.g.*, the sale agreement

that Arch says transferred all of its liabilities to the buyer). Nor did it submit any discovery requests in an attempt to obtain such evidence. Arch simply did nothing.

In light of its failure to timely submit any liability evidence, Arch tries to make its case with non-record evidence in the form of a 20-item, 479-page Addendum (Addm.). Even if everything in the addendum was in the record here, it would do nothing to help Arch's case. But the addendum largely consists of evidence admitted into the record in other cases or discovery requests and responses in other cases. These documents are not part of the administrative record and should not be considered by the Court. Fed. R. App. P. 16(a); *see Plutt v. Ben. Rev. Bd*., 804 F.2d 597, 599 (10th Cir. 1986) (rejecting claimant's attempt to submit new evidence on appeal).

In particular, the Director objects to any consideration of the following: Items 2-4[31] (internal DOL emails and instructions that Arch requested and received in discovery in other claims but did not timely request or submit in this one); Item 5[32] (a privilege log and related documents DOL produced in response to discovery requests in another claim); Items 7-8[33] (testimony by an Arch employee and a

---

[31] Addm. 2-10.

[32] Addm. 11-97.

[33] Addm. 104-198.

hired consultant); and Items 16-17[34] (correspondence between Arch and DOL in 2006 and 2012).

Any issues Arch has with DOL's responses to discovery requests in other claims can be addressed in appeals of those claims. Arch does not argue that either the documents or the testimony in its addendum could not have been timely requested or submitted when this case was before the district director. These materials should therefore not be considered.[35]

This alone is a significant problem for Arch, which heavily relies on this non-record evidence for many of the key assertion in its brief. *See* OB 2, 3, 5, 14[36], 15, 20, 23, 24.[37] But Arch's real problem runs much deeper. Even if these materials

---

[34] Addm. 395-401.

[35] The Director does not object to Addendum materials that are decisions, orders, and briefs filed in other cases (Items 1, 6, 15, 19, and 20); a 1997 proposed regulation that was not adopted and comments on it (Items 10-12); publicly available Government Accountability Office reports (Item 9); or BLBA bulletins issued by OWCP (Items 14 and 18). None of them, however, support the proposition that DOL released Arch from its liability for miners like Howard.

[36] The Addendum citation given on page 14 of the brief is to page 404 but is clearly referring to Item 16 (Addm. 305-400).

[37] The brief also cites the Addendum for documents that it does not appear to contain. *See* OB 29 (stating that page 367 of the Addendum contains a letter from the President of the American Bar Association to then Secretary of Labor Herman commenting on a proposed BLBA regulation in 1997; the Addendum contains no such letter and the cited page contains a 2016 ABA resolution proposing general changes to the APA with no particular reference to the BLBA or its implementing regulations).

were considered, they would do little to aid the company. Notably absent from the Addendum is the one thing it needs to escape liability: a release from DOL.[38]

## 2. The ALJ correctly applied the liability-evidence rules.

Given Arch's heavy reliance on evidence that was not timely submitted under the liability-evidence rules, it unsurprisingly spends much of its brief arguing that those rules either do not apply or are invalid. Both attacks miss the mark.

As an initial matter, any suggestion that the liability-evidence rules prevented Arch from developing evidence to support its defense is undermined by the fact that it has successfully developed and submitted liability evidence in similar cases governed by these same regulations—the very evidence that Arch tries to put before the Court in its Addendum.[39] Indeed, Arch claims that the evidence it timely submitted in those other cases proves that DOL's decision to hold Arch liable for claims like this one is a departure from past practice. OB 30.

---

[38] The addendum contains what purports to be one page of the sale agreement between Arch and Magnum. Addm. 400. But the fact that Magnum agreed to pay Arch's BLBA liabilities does not eliminate Arch's underlying statutory obligations to DOL or miners like Howard. It would merely give Arch a contractual indemnification right against Magnum. *See supra* at 26-27.

[39] *See, e.g.*, *Chapman v. Apogee Coal Co.*, ALJ Case No. 21-BLA-05572, slip op. at 20 (Mar. 16, 2023) (noting that Arch deposed two DOL witnesses); *Ward v. Catenary Coal Co.*, No. 2018-BLA-06329, slip op. at 11 (DOL OALJ Nov. 30, 2023) (noting that "DOL has complied with my discovery orders and has produced hundreds of pages of documents").

Arch went further in a recent brief to the Fourth Circuit, claiming that the fruits of its discovery in other claims "prove that DOL fully excused Arch from liability for Hobet claims" in 2006.[40]

The evidence admitted into the record in those other claims does not, in fact, prove either proposition. But it does prove something else: that the regulations did not deprive Arch of the opportunity to develop and submit such evidence here. It simply chose not to do so.

The regulations gave Arch ninety days to submit liability evidence in response to the December 8, 2015, Notice of Claim. 20 C.F.R. § 725.408(b)(1). It could have requested an extension of that time limit. JA 320. It did not. During those three months, Arch did nothing. It requested no discovery from DOL. It did not even submit documents in its own possession that were obviously relevant to its liability arguments, such as the sale agreement Arch claims transferred its BLBA liabilities to Magnum.

The rules also gave Arch sixty days from the March 17, 2016, Schedule for the Submission of Additional Evidence to identify liability witnesses and submit additional liability evidence. 20 C.F.R. § 725.410(b). In total, Arch had 150 days from the notice of claim to identify—not to depose, but merely identify—liability

---

[40] Petitioners' Corrected Brief, *Hobet Mining Co. v. Director, OWCP*, 4th Cir. No. 23-1126, 2023 WL 4202019, *35 (June 21, 2023).

witnesses. It identified one, the claimant. DX 29. It did not even identify its own employees who possessed information relevant to Arch's liability theory. *See, e.g.,* Addm. 104-07 (Declaration of Tim Mullarkey, Arch's Director of Risk Management and Insurance since 2012). Nor did Arch request any documents or submit any documentary evidence at this stage.

In its opening brief, Arch does not challenge the ALJ's finding that it failed to establish extraordinary circumstances sufficient to excuse its failure to timely develop and submit evidence at the district director level. That argument is therefore forfeited. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (issues not raised in an opening brief, or raised only in a perfunctory manner, are forfeited).

Instead, it argues that the liability-evidence rules (1) do not apply to it and (2) are invalid. Neither argument holds water.

### a. The liability-evidence rules apply to this case.

Arch claims that the liability-evidence rules, by their "unambiguous text" (OB 31), do not apply to bar its proffered exhibits or discovery requests. OB 13, 29-32. The company points out that the documentary evidence an operator must submit after receiving a notice of claim only applies to documents relevant to the five liability elements listed in 20 C.F.R. § 725.408(a)(2). OB 31-32. Arch argues that it was free to ignore the liability-evidence rules because "[c]hallenging the

41

Bulletin and proving the agency's release of Arch from responsibility for Apogee in 2006 have nothing to do with the five assertions[.]" OB 32. This argument is doubly flawed.

First, section 725.408 explicitly applies to evidence relevant to whether "the operator is capable of assuming liability for the payment of benefits." 20 C.F.R. § 725.408(a)(2)(v). And an operator's insurance or self-insurance coverage is directly relevant to its capability to assume that liability. 20 C.F.R. § 725.494(e)(1)-(2) ("An operator will be deemed capable of assuming liability for a claim" if it "obtained a policy or contract of insurance" or "qualified as a self-insurer . . .during the period in which the miner was last employed by the operator[.]"). Given Apogee's bankruptcy, whether Arch's self-insurance covered this claim was central to the question of whether Apogee satisfied this requirement. Thus, the plain language of these regulations compels the conclusion that section 725.408 applies to evidence about the operator's insurance or self-insurance coverage.

Second, section 725.408 is not the only liability-evidence rule that applies to documents. Liability evidence that is not related to the subjects specified in 20 C.F.R. § 725.408(a)(2) must also be submitted to the district director, albeit later in the process—after the schedule for the submission of additional evidence. 20 C.F.R. § 725.414(b)(1), (d). All liability witnesses must be identified in that same timeframe. 20 C.F.R. § 725.414(c), (d). Arch, of course, submitted no

liability evidence to the district director at any time, and identified no liability witnesses other than the claimant. Thus, even if section 725.408(b)(2) did not bar Arch's attempt to introduce liability evidence before the ALJ, section 725.414(d) would.

In sum, the absence of liability evidence in this record is not due to the fact that the liability-evidence rules make developing such evidence impossible, or that the rules were arbitrarily and capriciously applied in this case. Rather, it is due to Arch's failure to make any effort to timely develop or submit evidence.

### b. The ALJ's application of the liability-evidence rules is consistent with *Arch v. Acosta*.

Arch also suggests that the discovery rulings in this case were inconsistent with *Acosta*'s observation that Arch could engage in meaningful discovery on liability issues in the BLBA claims process. OB 34. But *Acosta* did not promise Arch unlimited discovery. It stated that "Arch is entitled to *reasonable* discovery before the Department to the full extent *allowed by the BLBA and its implementing regulations.*" 888 F.3d at 502 (emphasis added). That is exactly what Arch received here – discovery to the full extent permitted by the rules. *Acosta* does not trump the

regulatory timeliness rules, especially where Arch failed to take advantage of the opportunities offered by those rules.[41]

### c. The liability-evidence rules are valid.

Arch also argues that its failure to comply with the liability-evidence rules is irrelevant because those rules are invalid.[42] OB 26-29, 32-34. In particular, it argues that those rules conflict with section 19(d) of the Longshore Act, 33 U.S.C. § 919(d), which is incorporated into the BLBA by 30 U.S.C. § 932(a). But there is no conflict.

Section 19(d) provides:

> Notwithstanding any other provisions of this chapter, any hearing held under this chapter shall be conducted in accordance with the provisions of section 554 of title 5. Any such hearing shall be

---

[41] Arch claims that it is trapped in "an intolerable Catch-22: the government told the D.C. Circuit that Arch could develop its record in the agency proceeding, but it then refused because Arch's administrative claims do not implicate the five points on which it permits evidence before the district director." OB 35. Arch is trying to convert its own tardiness into a Constitutional violation. Arch can and has developed its record in claims where it followed the rules or showed that an extraordinary circumstance applied. And it points to no case where DOL refused to accept any liability evidence on the ground that it was not relevant to the five issues specified in 20 C.F.R. § 725.408(a)(2). Finally, Arch did not even try to develop any liability evidence when this case was before the district director.

[42] As detailed above, the liability-evidence rules forbid parties in an ALJ hearing from introducing documentary evidence that was not submitted to the district director, or witnesses that were not identified to the district director, in the absence of extraordinary circumstances. The regulations governing liability documents are 20 C.F.R. §§ 725.408(b); 725.410(b); 725.414(b), (d); and 725.456(b). The rules for liability witnesses are 20 C.F.R. §§ 725.414(c) and 725.457(c)(1).

44

> conducted by a[n] administrative law judge qualified under section 3105 of that title. All powers, duties, and responsibilities vested by this chapter, on October 27, 1972, in the [district directors] with respect to such hearings shall be vested in such administrative law judges.

The "powers, duties, and responsibilities" referred to in this provision include conducting hearings and managing discovery.[43] In essence, section 19(d) provides that Longshore Act hearings will be conducted by ALJs and governed by the APA's adjudication rules.

According to Arch, the liability-evidence rules are invalid because they impair an ALJ's ability to manage discovery during a hearing. OB 10, 28.[44] This argument fails for at least two reasons. First, the rules do not divest ALJs of the power to conduct hearings or manage discovery. They only set timeliness requirements for the submission of certain evidence. Second, even if there was a

---

[43] The specific hearing functions transferred from district directors to ALJs are the powers to "preserve and enforce order during any such proceedings; to issue subpoenas for, to administer oaths to, and to compel the attendance and testimony of witnesses, or the production of books, papers, documents, and other evidence, or the taking of depositions before any designated individual competent to administer oaths; to examine witnesses; and to do all things conformable to law which may be necessary to enable him eff[ectively] to discharge the duties of his office." 33 U.S.C. § 927(a).

[44] As noted above, the liability-evidence rules distinguish between documents (which must be submitted to the district director) and witnesses (who must merely be identified to the district director). The identity of liability witnesses can still aid a district director's investigation into the correct liable party. *See* 65 Fed. Reg. at 79991. Arch's complaint that district directors lack the power to administer oaths, OB 33, is therefore irrelevant.

conflict between section 19(d) and the rules, the BLBA invests DOL with the

authority to alter incorporated provisions of the Longshore Act by regulation.

### (i) The liability-evidence rules are consistent with Section 19(d) of the Longshore Act.

Arch argues that the rules are inconsistent with section 19(d) because they

"exclude[e] the normal process of discovering liability evidence from ALJ

oversight," allowing district directors to assume the work of ALJs. OB 28; *see also*

OB 10. But the rules do no such thing. They do not, for example, bar ALJs from

admitting evidence that a district director believed to be irrelevant or privileged.

Those calls are the ALJ's to make. All discretionary elements relevant to discovery

management and the admission of evidence remain with the ALJ.

The liability-evidence rules merely set timelines for the submission or

identification of evidence. The only time those rules can bar a piece of evidence

from admission in an ALJ hearing is when it was not timely submitted. That is a

result of *the parties'* actions, not the district director's. The ALJ here did not refuse

to admit Arch's evidence in this case because of anything the district director did.

She did so because *Arch* failed to submit that evidence in a timely manner under

the liability-evidence rules. JA 140.[45]

---

[45] Time limits on the submission of evidence are, of course, common and do not
conflict with the APA's adjudication rules. *See Nat'l Min. Ass'n*, 292 F.2d at 873.

Significantly, an ALJ can admit evidence that is untimely under the liability-evidence rules if the untimely submission is justified by extraordinary circumstances. 20 C.F.R. §§ 725.456(b)(1), 725.457(c). ALJs have correctly applied this exception to protect Arch in similar claims affected by the Patriot bankruptcy. If Arch timely requests relevant liability documents at the district director level, but does not receive those documents, its consequent failure to submit those requested-but-not-received documents is not held against the company. ALJs can and do admit those documents under the extraordinary-circumstances exception. *See* Order Admitting Employer Exhibits In Part and Closing Evidentiary Record, *Ward v. Catenary Coal Co.,* 2018-BLA-06329, slip op. at 4 (DOL OALJ Dec. 3, 2021) ("As a general proposition, if a 'liability' related document was timely sought by the Employer/Carrier while the claim was pending before the District Director[,] there is no evidence that the Employer/Carrier was dilatory in their discovery efforts, and the now proffered document is relevant and material to issues for adjudication by me, I will find the Employer/Carrier has met its burden to establish extraordinary circumstances").

Of course, the extraordinary circumstances exception does not apply here. This is not a case where Arch requested discovery from the district director but did

---

(rejecting argument that the APA "permits introduction of unlimited amounts of evidence" in BLBA proceedings).

not timely receive it. Arch submitted nothing and requested nothing. Its attempt to obtain and introduce liability-related documents and depose liability-related witnesses at the ALJ level in this case was straightforwardly barred by the liability-evidence rules.

### (ii) Even if the liability-evidence rules conflict with Section 19(d), the BLBA gives DOL the authority to alter incorporated Longshore Act provisions.

The second problem with Arch's challenge to the liability-evidence rules is that this is a BLBA case, not a Longshore Act case. Section 19(d), like the other incorporated Longshore Act provisions, applies to black lung claims "except as otherwise provided . . . by regulations of the Secretary." 30 U.S.C. § 932(a). This provision gives the Secretary of Labor broad authority to adopt regulations that differ from the incorporated Longshore Act. *See, e.g.*, *Wyoming Fuel Co. v. Director, OWCP*, 90 F.3d 1502, 1506 (10th Cir. 1996) (upholding BLBA regulation that conflicted with an incorporated Longshore Act provision); *Elm Grove Coal Co. v. Director, OWCP*, 480 F.3d 278, 297 (4th Cir. 2007) (upholding BLBA regulation limiting the amount of medical evidence parties can submit as "a reasonable and valid exercise of the Secretary's authority to regulate evidentiary development in Black Lung Act proceedings").

If the liability-evidence rules depart from section 19(d), that departure is a sensible one that adapts the Longshore Act provision to the particular

circumstances of the black lung program. In BLBA claims, district directors must identify only one liable operator. 20 C.F.R. § 725.418(d). If an ALJ, the Benefits Review Board, or a reviewing court holds that the district director designated the wrong employer, DOL cannot designate another. Instead, liability transfers to the Black Lung Disability Trust Fund. *See* 65 Fed. Reg. 80008. It is therefore crucial that the district director be in a position to review the liability evidence before the case is referred to an ALJ. *See* 20 C.F.R. § 725.418(d) (district director's proposed decision is final designation of the responsible operator, and other potentially liable operators are dismissed from the claim); 65 Fed. Reg. at 79990-01 ¶ (b) ("In the event the responsible operator designated by the district director is adjudicated not liable for a claim, the Black Lung Disability Trust Fund will pay any benefits award."). This is not true in Longshore Act claims, which can be referred for ALJ hearings with multiple potentially liable employers. *See, e.g.*, *Albina Engine & Mach. v. Director, OWCP*, 627 F.3d 1293, 1304 (9th Cir. 2010) (discussing allocation of liability in Longshore Act claim with multiple potentially liable employers and insurers).

The fact that section 19(d) itself incorporates the APA's adjudication rules into the Longshore Act does not change the outcome. Arch claims that *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994) forbids DOL from varying the APA provisions incorporated into the BLBA. OB 27. *Greenwich Collieries*

49

does nothing of the sort. To the contrary, it explicitly recognizes that the BLBA "incorporates the APA (by incorporating parts of the LHWCA), but it does so 'except as otherwise provided . . . by regulations of the Secretary.'" 512 U.S. at 271 (quoting 30 U.S.C. § 932(a)). The Court ruled that DOL had not, in fact, issued a BLBA regulation altering the APA section at issue in *Greenwich Collieries*. Consequently, the Court did not need to rule on the scope of DOL's power to alter the APA. *Id.*[46] But it did not hold that DOL cannot promulgate such regulations.

*Greenwich Collieries* is therefore no barrier to DOL's ability to alter section 19(d)—including section 19(d)'s incorporation of the APA's adjudication rules— for BLBA purposes. *See, e.g. Amax Coal Co. v. Director, OWCP*, 312 F.3d 882, 893 (7th Cir. 2002) ("under the express language of the BLBA, the APA does not trump the regulation"); *Nat'l Mining Ass'n v. Chao*, 160 F. Supp. 2d 47, 70 (D.D.C. 2001), *rev'd in part on other grounds, Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849 (D.C. Cir. 2002) ("Defendants argue that it is permissible for the DOL to promulgate BLBA regulations that deviate from [an APA provision], and

---

[46] Arch may be confusing 33 U.S.C. § 923 (a Longshore Act provision stating, among other things, that technical procedural rules do not apply to claims proceedings) with 30 U.S.C. § 932 (a BLBA provision incorporating various sections of the Longshore Act into the BLBA). *Greenwich Collieries* rejected an argument that 33 U.S.C. § 923 trumped 5 U.S.C. § 556(d)'s burden-of-proof rule, an APA section incorporated into the Longshore Act by section 19(d).

that if any of the challenged regulations conflict with the APA, the regulations

trump the statute. Defendants are correct.").

Arch has fallen far short of demonstrating that the liability-evidence rules

are invalid. These regulations are well within DOL's regulatory authority,

consistent with the BLBA, and reasonably adapt incorporated Longshore Act

provisions to the particularities of black lung litigation. They should be upheld.

## E. The district director properly notified Arch of its liability for this claim.

Arch's final argument is that it should be excused from liability because the

district director failed to identify it as the responsible party in the Proposed

Decision and Order. OB 36-38.[47] But the PDO explicitly states that Apogee is

"Self-Insured thru Arch Coal Inc." JA 355. Arch is also listed as Apogee's self-

insurer in the attached Certificate of First Payment of Benefits. JA 363. Arch and

its counsel are listed on the certificate of service, JA 352, and certified mail

receipts confirm that they received the PDO, JA 362.

Arch, ignoring all these references to itself, relies on the following sentence

in the PDO: "A Notice of Claim was received by the potentially liable

operator/carrier, Self-insured thru Patriot Coal Company, on December 11, 2014."

---

[47] Arch makes the inexplicable assertion that "[n]o one disputes that the PDO named only Patriot." OB 37. The Director vigorously disputed this contention below. JA 203-205, 365.

JA 359.[48] In this statement, the PDO mistakenly referenced the first Notice of

Claim issued in the case, which was directed to Patriot, instead of the most recent

Notice of Claim issued to Arch. JA 284, 319.

The ALJ found that "the lone reference to Patriot in the analysis section was

a typographical error." JA 367. Finding that the PDO named Arch as the self-

insurer and that Arch was properly served with the PDO, the ALJ properly

determined "any defect in the PDO does not rise to the level of a due process

violation." *Id*.[49]

While this mistake could more properly be called a scrivener's or clerical

error rather than a typographical one, the ALJ's analysis is correct. The PDO

identifies Apogee, self-insured through Arch, as the liable party. No reasonable

person in Arch's position would understand this document as "indicating the

district director's agreement with Arch[.]" OB 37. Arch certainly did not interpret

the PDO that way at the time. Nine days after the district director issued the PDO,

---

[48] That sentence is the only mention of Patriot in the PDO.

[49] Arch claims the Trust Fund accepted liability in three "indistinguishable" cases "where the PDO did not name [Arch] as a party." OB 36 n.10 (citing *Chitwood v. Arch of Ky.*, 2017-BLA-05096 (DOL OALJ Dec. 12, 2018); *Browning v. Arch of Ky.*, 2017-BLA-05005 (DOL OALJ Feb. 27, 2019); and *Grimmett v. Arch of West Va.*, 2017-BLA-06184 (DOL OALJ Jan. 22, 2019). But that very fact distinguishes them from this case, where the PDO identifies Arch as the liable party. Moreover, in those cases Arch was not served with a notice of claim, SSAE, or PDO. Those are not the facts here, where Arch was named in and served with all three. DX 22, 27, 44.

Arch's counsel acknowledged receipt of the PDO, disagreed with its findings, asserted that "Arch Coal also contends that DOL incorrectly *named it as a party*[,]" and requested a formal ALJ hearing. DX 45 (emphasis added). The Court should reject Arch's claim that it was not properly designated as liable for this claim.

In sum, Arch failed to timely introduce any evidence that it was released from liability for this claim, failed to prove that the regulations absolve it of that liability, and failed to demonstrate that it was not adequately notified of that liability. The ALJ's ruling that Arch is liable for Howard's BLBA benefits was therefore correct.

## CONCLUSION

The petition for review should be denied.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

BARRY H. JOYNER
Associate Solicitor

JENNIFER FELDMAN JONES
Deputy Associate Solicitor

SEAN G. BAJKOWSKI
Counsel for Appellate Litigation

/s/ Sarah M. Hurley
SARAH M. HURLEY
Attorney, U.S. Department of Labor
Office of the Solicitor, Suite N-2117
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693-5654
BLLS-SOL@dol.gov
hurley.sarah@dol.gov

Attorneys for the Director, Office
of Workers' Compensation Programs

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief is proportionally spaced, using Times New Roman 14-point typeface, and contains 12,605 words, as counted by Microsoft Word 365.

/s/ Sarah M. Hurley
SARAH M. HURLEY
Attorney
U.S. Department of Labor
BLLS-SOL@dol.gov
hurley.sarah@dol.gov

## CERTIFICATE OF SERVICE

I hereby certify that on, January 2, 2024, a copy of the foregoing pleading was served electronically via the CM/ECF system on the counsel of record.

s/ Sarah M. Hurley
SARAH M. HURLEY
Attorney
U.S. Department of Labor